# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE, | : | Civil Action |
| Plaintiff, | : | |
| | : | Case No. |
| vs. | : | |
| VISUAL TECHNOLOGY INNOVATIONS, INC. | : | **COMPLAINT** |
| and | : | |
| MATHU G. RAJAN, | : | |
| Defendants. | : | |

## INTRODUCTION

This case involves a financial scheme in which the individual defendant, Mathu G. Rajan, fraudulently induced the plaintiff, Mark L. Bunce, to loan the corporate defendant $1,050,000, which the corporate defendant then failed to repay under the terms of the loan. Plaintiff seeks recovery of his losses from both defendants, through a breach of contract claim against the corporation, Visual Technology Innovations, Inc. ("VTI"), and a fraudulent inducement claim, among others, against Rajan.

As set forth more fully below, Rajan and his agent misled Plaintiff into believing that VTI was a company with substantial assets and intellectual property (relating to a patented system of watching flatscreen television in 3D (three dimensions) without the use of 3D glasses) that needed $1 million in seed money to leverage at least $29 million in investments and to complete pending sales of its innovative 3D products for public and private usage. The problem was that, unknown to Plaintiff Bunce, Rajan's story was false. VTI had no assets, no intellectual property, no products

1

for sale, no customers, and no right to receive any additional investment once it received Bunce's seed money.

In reality, Rajan wanted the money for himself and for his own personal purposes, not for any VTI products, services or investments. After VTI received the $1 million loan from Bunce, Rajan became evasive when pressed about details on the status of the company, the promised $29 million investment, and the claimed sales of product to customers. On information and belief, the $1 million Bunce loaned to VTI was never used for company sales and expansion, as Rajan had claimed, and instead was used by Rajan for his own personal purposes. When VTI failed to make the first payment on the loan, Bunce pressed and Rajan admitted that repayment was due; but Rajan otherwise responded with delay, obfuscation and lies. VTI has since defaulted in repaying any and all of the loan and has breached its contracts with Bunce.

Plaintiff Mark L. Bunce therefore complains as follows:

## PARTIES

1. Plaintiff Mark L. Bunce ("Bunce") is an individual and a citizen of the United Kingdom, residing permanently in St. Peter Port in the Bailiwick of Guernsey.

2. Defendant Visual Technology Innovations, Inc. ("VTI") is a corporation organized under the laws of Nevada and has its principal place of business in Bensalem, Pennsylvania. It is therefore a citizen of Nevada and of Pennsylvania.

3. Defendant Mathu G. Rajan ("Rajan") is an individual and a citizen of the Commonwealth of Pennsylvania. Rajan resides in Bensalem, Bucks County, Pennsylvania. At all relevant times, Rajan was a primary shareholder in and officer of VTI (President, Secretary, Treasurer, and Director) and controlled VTI.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the defendants as both defendants are citizens of the Commonwealth of Pennsylvania.

5. VTI has its principal place of business in Pennsylvania and breached its contract with Bunce via conduct that occurred in Pennsylvania. There is specific and general personal jurisdiction over VTI in Pennsylvania.

6. Rajan resides in Pennsylvania and engaged in misconduct in Pennsylvania relevant to this action. There is general and specific personal jurisdiction over Rajan in Pennsylvania.

7. This Court has subject matter jurisdiction over this matter as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of Pennsylvania and a of a foreign state. 28 U.S.C. § 1332(a)(2).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

9. At all times, Rajan was a shareholder in and officer of Stream TV Networks, Inc., a Delaware corporation ("Stream TV"). Rajan, and his family, controlled Stream TV.

10. Stream TV owned patents for technological processes for making flat computer and television screens generate 3D images without the need for viewers to use 3D glasses.

11. In 2019 and 2020, Stream TV became insolvent and defaulted on loans exceeding a total of $100 million.

12. In 2020, creditors of and lenders to Stream TV sought to resolve Stream TV's liabilities and unpaid debts to them by creating a new entity, SeeCubic, Inc. ("SeeCubic"), and

transferring Stream TV's patents and other assets to SeeCubic. The intent was to pay the debts and loans by operating SeeCubic at a profit. Directors of Stream TV agreed to this transaction.

13. Rajan, personally unhappy about losing control over Stream TV's assets, caused Stream TV to sue in Delaware state court in 2020 to try to unwind the SeeCubic transaction.

14. In January 2021, Rajan formed VTI, which he wholly owned and controlled. On information and belief, other than Rajan, VTI did not have an operating board or fulltime staff and it had no products, services, operations, substantial assets or corporate processes, and it operated as an alter ego of Rajan.

15. In or around early 2021, Rajan retained Glen R. Davis, as a finder and broker to secure loans or investments for VTI, and, on information and belief, Rajan provided Davis with false and fraudulent information about VTI in order to secure such cash infusions.

16. At all relevant times, including in all his communications with Bunce, Davis was acting as a broker for and agent of Rajan and VTI.

17. On February 17, 2021, Davis contacted Bunce by phone. During that call, Davis, communicating on behalf of Rajan, said that VTI was raising money to take over Stream TV's patents and other assets. He also told Bunce that VTI itself was in the process of developing a new technology for viewing screens in 3D without glasses.

18. During that phone call, acting on behalf of Rajan, Davis represented to Bunce that VTI had reached a binding agreement with Burlington Resources Asia Limited, through Knights Asia Limited, to provide up to $30 million to VTI to fund its operations. Davis told Bunce that the agreement between VTI and Burlington Resources Asia Limited first required VTI to obtain seed funding of $1 million. Davis told Bunce that it would be profitable for Bunce to provide $1 million to VTI because he would have the right to convert the loan shares into shares that would exceed

the value of his loan. Unknown to Bunce, Burlington Resources Asia Limited and Knights Asia Limited in fact had no binding obligation to provide any funding to VTI. Rajan, through Davis, falsely represented to Bunce that there was such an agreement in order to induce Bunce into loaning money to VTI. When Bunce later loaned money to VTI, he reasonably relied on the representation that Burlington Resources Asia Limited had agreed to fund VTI through Knights Asia Limited.

19. Also on February 17, 2021, acting on behalf of Rajan, Davis emailed Bunce information and documents about VTI provided to him by Rajan. Davis and Rajan intended such information and documents to mislead Bunce to provide $1 million in seed funding to VTI. The documents included: an investor presentation deck touting VTI and glasses-free technology; an initial public offering document stating that, after VTI received funding, it would promptly reverse merge into a publicly traded company and then offer its shares publicly, thereby increasing the value of ownership in VTI; a deal summary; and an outline of VTI's business plan. This email and the documents referenced above are attached to this Complaint as **Exhibit 1**.

20. The documents and information that Davis and Rajan provided to Bunce on February 17, 2021, falsely represented to Bunce, among other things, that VTI had well-established business relationships and agreements with Google, Lenovo, and other Silicon Valley companies to help VTI develop and sell 3D technologies. In fact, unknown to Bunce, VTI had no contracts with such entities. These documents also falsely represented to Bunce that VTI already had pending firm orders for products, such as 3D computer tablets and large 3D screens for use in public places, which VTI was ready to sell once it obtained seed funding from Bunce. In fact, unknown to Bunce, VTI had no products to sell and had no firm orders for any products.

21. In response to Bunce's request for more information, on February 20, 2021, Davis—acting as broker for and agent of Rajan and VTI—emailed additional information to Bunce. In this email, Davis falsely represented to Bunce on behalf of Rajan and VTI that Bunce's "cash injection would be to finance working capital for delivery of product that has firm orders," among other claims. Davis also falsely represented on behalf of Rajan that VTI had pending but unfulfilled firm agreements for 5,000 computer tablets for glasses-free 3D viewing and pending but unfulfilled firm purchase orders for several large glasses-free 3D computer screens for viewing in airports and shopping malls. In fact, VTI had no such agreements.

22. On February 21, 2021, Bunce spoke over the phone with Davis. Davis, continuing to act as broker for and agent of Rajan and VTI, represented to Bunce that, once VTI had received $1 million in seed funding, it was possible and expected for Rajan to complete the reverse merger and for VTI to begin offering its shares for public purchase within five or six weeks. That representation was false. At that time, Stream TV did not have control over its patents and other assets; the patents and assets were instead under the control of SeeCubic. Davis falsely represented to Bunce that his seed money would be only a short-term investment on the basis that VTI was ready to go public on NASDAQ. Davis also falsely represented to Bunce that VTI had products it was ready to sell as soon as it got seed funding.

23. On February 21, 2021, Davis, continuing to act as broker for and agent of Rajan and VTI, emailed Bunce additional documents and information he had received from Rajan. The documents included a supposed letter from Knights Asia Limited saying it was "ready, willing and able upon the express instructions of our client Burlington Resources FZE (a wholly owned subsidiary of Burlington Resources Asia Limited) to make payment of US$30 million from our bank DBS, Singapore to purchase certain shares in VTI . . . ." (**Exhibit 2**, attached.) Unknown to

Bunce, Burlington Resources Asia Limited was not in fact obligated to provide $30 million to VTI. On information and belief, the Knights Asia Limited letter was created and provided solely to fraudulently induce Bunce to loan VTI $1 million.

24. On February 22, 2021, Davis, Bunce, and others had a Microsoft Teams call with Rajan. Rajan sought to persuade Bunce to loan $1 million to VTI. During this call, Rajan falsely represented the following:

    a. that VTI owned $150 million worth of innovative technology for the presentation of glasses-free 3D images on flat computer screens;

    b. that VTI was ready to sell 2,500 computer tablets for glasses-free 3D viewing and 250 very large glasses-free 3D computer screens for viewing in airports and shopping malls;

    c. that VTI was ready to make these sales in March through May 2021 provided that VTI obtained $1 million in seed funding;

    d. that it was possible and intended for VTI to complete its merger and public-offering transactions within a couple of months after receiving Bunce's $1 million loan;

    e. that VTI had Chinese-branded glasses-free 3D products that were already being sold;

    f. that VTI already had prototype very large glasses-free 3D screens installed in various locations, such as airports, and that it already had reached agreements to put large glasses-free 3D screens in various airports across the United States;

g. that VTI's plans were being opposed by other persons who had invested in Stream TV and that VTI's plans could not go forward without Bunce's investment of $1 million in seed funding; and

h. that if Bunce obtained shares in VTI, his shares would dramatically increase in value once VTI soon went public on NASDAQ.

25. In fact, unknown to Bunce, none of these representations were true, and Rajan knew when he made them that they were not true. Rajan also lacked the present intent to use money from Bunce for the purposes he stated to Bunce.

26. Also on February 22, 2021, and at other times, Davis falsely represented to Bunce on behalf of Rajan that proceedings were going well for Rajan to regain control over Stream TV's patents and other assets. These false assurances, on information and belief, were provided at the direction of Rajan.

27. On February 22, 2021, Davis, acting as broker for and agent of Rajan and VTI, again provided Bunce with the letter from Knights Asia Limited falsely representing that it was ready, willing, and able to provide up to $30 million from Burlington Resources Asia Limited to VTI. Davis falsely represented to Bunce that funds had already been set aside to do so.

28. In late February 2021, to induce Bunce to invest in VTI, Davis, acting as broker for and agent of Rajan and VTI, provided Bunce with letters from attorneys prepared at Rajan's request describing and touting the legitimacy of VTI's proposed merger and public offering. The transaction was not legitimate, as represented to Bunce in the letters.

29. On February 24, 2021, Davis, acting as an agent of Rajan, falsely represented to Bunce that Stream TV had around $6 million to $8 million in recurring product sales. In fact, Stream TV did not have and never had any product for sale.

30. On or about February 25, 2021, Bunce, relying on the fraudulent information provided to him by Rajan and his agent, Davis, agreed to loan at least $1 million to VTI as seed funding. On that date Bunce executed a note for a $150,000 loan to VTI (attached as **Exhibit 3**.) In connection with the note, and as consideration for his loan, VTI also provided Bunce with warrants permitting him, at his sole option, to execute the warrants and thereby convert his loan into shares in VTI at a price favorable to Bunce. Bunce wire transferred $150,000 to VTI.

31. Bunce was awaiting money to be invested by Burlington Resources Asia Limited before loaning another $850,000. On February 26, 2021, acting on behalf of Rajan, Davis falsely represented to Bunce in a phone call that the investment by Burlington Resources Asia Limited was imminently on its way.

32. On March 2, 2021, on behalf of VTI and Rajan, Suby Joseph, who was represented to be an officer of VTI, emailed to Bunce, Rajan, Davis, and others a document entitled "Exercise of Drawdown Rights," which was executed by Rajan for VTI and purportedly by Timothy McCarthy for Burlington Resources Asia Limited. (**Exhibit 4**, attached.) This document stated, among other things, that "The Investor [Burlington Resources Asia Limited] is hereby exercising it's the rights under clause 4 of the Agreement" to invest $29 million in VTI, which would occur through a wire transfer. Unknown to Bunce, Burlington Resources Asia Limited was not in fact ready to make this investment, did not intend to make it, and never made it. Rajan and Davis knew this letter was false and misleading and provided it to Bunce to induce him to loan another $850,000 to VTI.

33. On March 5, 2021, Bunce had a Zoom meeting with Rajan, Davis, and others. Rajan and Davis stated to Bunce that a delay had arisen in the transfer of $29 million from Burlington Resources Asia Limited to VTI. Rajan and Davis described various contractual arrangements by

which the funds from Burlington Resources Asia Limited could be secured. Davis falsely represented to Bunce that Burlington Resources Asia Limited was ready to provide the funds in the near future.

34. To hide their deception, at various times Davis and Rajan represented to Bunce that if he independently contacted other persons involved in the VTI transactions, it could derail investment by Burlington Resources Asia Limited and impede the effort to take VTI public.

35. To induce Bunce to provide more money to VTI, on March 6 and 7, 2021, Rajan emailed to Bunce various documents indicating that a standby letter of credit was being used to enable Burlington Resources Asia Limited to make its investment in VTI. Unknown to Bunce, the proposed use of a standby letter of credit was false and misleading.

36. On March 8, 2021, having been induced by misrepresentations from Rajan and his agents, Bunce executed a note by which he agreed to loan a total of $1 million to VTI. (**Exhibit 5**, attached.) In connection with the note, and as consideration for his loan, VTI also provided Bunce with warrants permitting him, at his sole option, to execute the warrants and thereby convert his loan into shares in VTI at a price favorable to Bunce. Bunce wire transferred $850,000 to VTI.

37. In March through May 2021, in response to repeated inquiries from Bunce and to hide Rajan's deception, Davis, Rajan, Joseph, and others falsely represented to Bunce that the investment by Burlington Resources Asia Limited had been agreed to and would occur imminently, but it had just been delayed due to working out the administrative details of the transaction.

38. On March 27, 2021, Davis, acting as broker for and agent of Rajan and VTI, forwarded to Bunce an email stating in part: "Burlington Resources Asia Limited is fully committed to VTI and to invest $ 30 million in advance of its imminent IPO on NASDAQ for a

controlling stake. We are making the investment through an SBLC and working through this with Mathu who has arranged to monetise the Bank instrument for our investment. We will close this in the next few days." These representations were false.

39. In reliance on representations from Davis, Joseph, and others that funding from Burlington Resources Asia Limited was ready to occur but had been delayed by technicalities, on April 5, 2021, Bunce agreed to amend his notes with VTI to extend their maturity date, in exchange for warrants permitting him, at his sole option, to execute the warrants and thereby convert his loan into shares in VTI at a price favorable to Bunce. (**Exhibit 6**, attached.) The amendment of the notes was accepted by VTI.

40. On April 9, 2021, acting on behalf of Rajan, Davis falsely represented to Bunce via email that Burlington Resources Asia Limited was closing on its investment in VTI by wiring money via Wells Fargo Bank.

41. On April 16, 2021, Rajan emailed Bunce, stating falsely that Bunce's warrants in VTI were worth up to or over $100 million, which Bunce could soon monetize by going ahead and converting his loan into shares in the VTI. Rajan made this false representation to hide his deception and to induce Bunce to convert his loan into shares in VTI, thereby making it harder for Bunce to ever recover his $1 million.

42. On April 20, 2021, Rajan represented to Bunce that VTI had a production unit in China that had failed to pay its rent timely, and so the landlord was threatening to take over VTI's equipment. Rajan said VTI quickly needed Bunce's help. Rajan used this and other representations to try to convince Bunce to loan more money to VTI or to buy shares in VTI.

43. On April 27 and 28, 2021, Bunce emailed and had a phone call with Davis. To influence Bunce to provide yet more money to VTI, Davis, on behalf of Rajan, represented that he

had a friend, Patrick Allen, who had also invested a large amount in both Stream TV and VTI, thereby suggesting to Bunce that he could trust Rajan and should have no qualms about providing more money to VTI. Frances Knight-Davis, Davis's wife and business partner at Knight-Davis LLP, represented on behalf of Knight-Davis to Bunce that she and her family members had personally invested in VTI, thereby suggesting to Bunce that he should have no qualms about providing more money to VTI.

44. On April 29, 2021, using contact information from Davis, acting on behalf of Rajan, Bunce spoke with someone calling himself Patrick Allen, who assured Bunce that he had previously invested in VTI and was sending additional funds to VTI.

45. On April 29 and 30, 2021, to induce Bunce to provide more money to VTI, someone calling himself Patrick Allen emailed Bunce, stating among other things to Bunce that "I am delighted to see that they [VTI] are finally beginning to deliver their product against an array of obstruction. Please take this email as confirmation that I will be investing a further $50,000 into VTI, which I have now input with HSBC this evening." This statement, if not entirely false, at least falsely represented that VTI was delivering products for sale. VTI in fact had no products for sale. This statement was made on behalf of Rajan.

46. On April 30, 2021, acting on behalf of Rajan, Davis tried to induce Bunce to provide more money to VTI by stating that "I understand from a conversation with Mathu this morning that the Chinese Landlord has agreed to hold off pending receipt of an imminent payment."

47. On May 4, 2021, Bunce, relying on the false representations of Davis, as agent of Rajan, agreed to loan VTI an additional $50,000. In connection with the note (attached as **Exhibit 7**, attached), and as consideration for his loan, Bunce received the right to convert his loan into shares in VTI at a price favorable to Bunce. Bunce wire transferred $50,000 to VTI.

48. Bunce eventually learned that Rajan had caused Stream TV to file for Chapter 11 reorganization bankruptcy in the United States Bankruptcy Court for the District of Delaware. Bunce understood that bankruptcy proceeding was another strategy by which Rajan sought to regain control over Stream TV's patents and other assets.

49. Burlington Resources Asia Limited never invested any money in VTI. At all relevant times, VTI did not obtain and could not possibly have imminently obtained the patents and other assets from Stream TV because Stream TV did not control those assets at that time.

50. In June through the fall of 2021, Bunce inquired to Rajan and Davis about the status of Burlington Resources Asia Limited's investment and VTI's merger and public offering. To hide their deception, Rajan and Davis falsely represented to Bunce that VTI was trying to resolve technical details of those transactions and to overcome administrative hurdles to complete them.

51. Unknown to Bunce, Rajan used the $1,050,000 received from Bunce for other purposes of Rajan's own to benefit himself instead of to enable VTI to produce and sell products, as he had represented to Bunce.

52. Unknown to Bunce, Rajan dominated VTI and used it merely as his alter ego for Rajan's own personal purposes that differed from what Rajan had represented to Bunce about VTI.

53. Having later lost confidence that the investment by Burlington Resources Asia Limited and VTI's merger and public offering would in fact occur anytime in the reasonably foreseeable future, Bunce demanded that VTI pay back the $1 million as permitted and required by the notes. To hide his deception and to string Bunce along, on November 18, 2021, Rajan emailed Bunce stating that VTI could not presently pay back the $1,050,000 but falsely represented that VTI was anticipating receiving a $5 million investment in December 2021.

54. On November 23, in consideration of not taking immediate legal action and other consideration, Bunce and VTI agreed to amend the notes and did amend them to provide for full repayment by April 23, 2022. (**Exhibit 8**, attached.)

55. To hide his deception, and to string Bunce along, Rajan has repeatedly made false excuses that, due to circumstances beyond its control, VTI was not in a position to repay the notes as agreed. Rajan also tried to convince Bunce to exercise his option to convert his loan into shares in VTI, in order to make it harder for Bunce ever to recover the $1,050,000 he had loaned to VTI.

56. Bunce has demanded in writing that VTI repay the amounts due to him under the notes. Despite repeated demands from Bunce for repayment of all amounts due, VTI has never repaid the $1,050,000 owed to Bunce under the notes or any portion of it.

57. All exhibits to this Complaint are genuine.

## COUNT I

## BREACH OF CONTRACT

## BUNCE v. VTI

58. All previous allegations in this Complaint are incorporated in this paragraph.

59. A cause of action for breach of contract requires the plaintiff to show the existence of a contract, the breach of a duty owed under the contract, and damages caused by the breach.

60. As set forth more fully above and in the attached exhibits, Bunce entered into contracts with VTI, the notes, under which Bunce loaned $1,050,000 to VTI.

61. As was his contractual right, Bunce chose not to execute the warrants to convert his loan into shares in VTI. Under the notes, as amended, VTI was contractually obligated required to pay back $1,050,000 to Bunce in full by April 23, 2022.

62. Because VTI did not make the first payment of $225,000 that was due on December 23, 2021, Bunce has the contractual right under the notes as amended to demand that the loan be immediately repaid in full. Bunce has demanded to VTI and Rajan that VTI repay the loan in full.

63. As of the date this Complaint was filed, VTI has made no payment of any amount to Bunce. VTI has therefore breached its contracts with Bunce.

64. VTI has breached its contracts by means of bad faith and unfair dealing, violating the implied covenant of good faith and fair dealing.

65. As a direct result of VTI's breach of contract, Bunce has suffered financial damages of at least $1,050,000, which VTI is legally obligated to pay to Bunce.

66. As a direct result of VTI's breach of contract, Bunce also has suffered additional and incidental damages in an amount to be proved at trial.

## COUNT II

## FRAUDULENT INDUCEMENT

## BUNCE v. RAJAN

67. All previous allegations in this Complaint are incorporated in this paragraph.

68. A cause of action for fraudulent inducement requires the plaintiff to show that: the defendant made representations that were material to the transactions at hand; the representations were made falsely, with knowledge of falsity or with recklessness as to whether they were true or false; the representations were made with the intent of misleading the plaintiff into relying on the representations; and the plaintiff reasonably and justifiably relied on the representations, thereby suffering damages that were proximately caused by the misrepresentations.

69. To induce Bunce to loan money to VTI, Rajan made numerous false representations of fact to Bunce that were material to Bunce's decision to loan $1,050,000 to VTI, as set forth above in this Complaint, particularly paragraphs 17 through 57.

70. Rajan knew that each of the false representations he made to Bunce, directly or through his agent, Davis, was false, and he specifically intended that Bunce rely on those false representations to Bunce's detriment and to Rajan's benefit. Rajan made each of the false representations to Bunce with the intent that Bunce would rely on those representations to loan money to VTI.

71. Bunce reasonably and justifiably relied on the false representations, set out above in this Complaint, made to him by Rajan and by his agent, Davis. Rajan used his actual involvement with Stream TV to help mislead Bunce about VTI. Absent Rajan's false representations to Bunce made directly by Rajan, and indirectly through his broker and agent Davis and others, Bunce would never have loaned any money to VTI.

72. Rajan and Davis, acting as Rajan's broker and agent, made representations to Bunce that were intended to conceal Rajan's fraud from Bunce and that did conceal the fraud and string Bunce along.

73. As a direct and proximate result of Rajan's false representations of material fact and present intent, made both directly and indirectly through his broker and agent and others, Bunce has suffered financial damages of at least $1,050,000 plus additional damages in an amount to be proved at trial.

74. Rajan's actions were malicious and in knowing and willful violation of the law and of Bunce's rights.

## COUNT III

## UNJUST ENRICHMNT

## BUNCE v. RAJAN

75. All previous allegations in this Complaint are incorporated in this paragraph.

76. A cause of action for unjust enrichment requires a plaintiff to demonstrate three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

77. Bunce conferred a benefit on Rajan by loaning his company, VTI, $1,050,000.

78. Rajan appreciated and received the benefit of that loan by dominating and controlling VTI to the extent that he then used the funds for his own personal purposes, and not for the legitimate business purposes of VTI or those indicated in his prior representations to Bunce relating to the loan.

79. It would be inequitable and unjust for Rajan to retain the benefit of these funds without repayment to Bunce of the value received.

80. As a direct and proximate result of Rajan's actions, Bunce has suffered financial damages of at least $1,050,000 plus additional damages in an amount to be proved at trial.

74. Rajan's actions were malicious and in knowing and willful violation of the law and of Bunce's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mark L. Bunce requests the following relief:

75. A judgment declaring that VTI breached its contract with Bunce and awarding him no less than the $1,050,000 loaned, per the notes.

76. Alternatively, a judgment declaring that Bunce is entitled to rescind his contracts with VTI and to be reimbursed in an amount to be proved at trial and awarding him no less than $1,050,000.

77. A judgment declaring that Bunce is entitled to recover from Rajan damages for fraudulent inducement in an amount to be proved at trial and awarding him no less than $1,050,000.

78. A judgment declaring that Bunce is entitled to recover from Rajan damages for unjust enrichment in an amount to be proved at trial and awarding him no less than $1,050,000.

79. A judgment that Rajan engaged in conduct that is outrageous, malicious, and in wanton disregard of Bunce's rights, including by recruiting and directing third persons to mislead Bunce and by Rajan making false statements and then misappropriating and misusing the loaned funds for his own personal benefit, therefore entitling Bunce to recover from Rajan punitive damages in an amount to be proved and awarded at trial.

80. A judgment awarding Bunce's fees and costs in this action, including without limitation his reasonable attorneys' fees and costs.

81. An award to Bunce of pre-judgment and post-judgment interest.

82. Such other relief as the Court deems just and appropriate.

Respectfully submitted,

By: */s/ Michael D. Homans*
    Michael D. Homans
    ID No. 76624
    HOMANSPECK, LLC
    230 Sugartown Road
    Suite 218
    Wayne, PA 19087
    (215) 419-7463
    mhomans@homanspeck.com

    *Attorneys for Plaintiff Mark L. Bunce*

Michael P. Kohler*
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
(404) 962-6100
Michael.Kohler@millermartin.com

*Attorneys for Plaintiff Mark L. Bunce*

_____
*Motion for admission *pro hac vice* to be filed