IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 23-1740 |
| VISUAL TECHNOLOGY INNOVATIONS, | : | |
| INC., and MATHU RAJAN, | : | |
| *Defendants*. | : | |

## MEMORANDUM OPINION

**Scott, J.**                                                         **March 6, 2024**

Asserting a breach of contract claim against the corporate defendant Visual Technology Innovations, Inc. ("VTI"), and fraud in the inducement and unjust enrichment claims against the primary shareholder and officer of VTI, Mathu Rajan, plaintiff Mark Bunce claims that Mr. Rajan duped him into lending VTI $1,050,000.00, which VTI then failed to repay under the terms of the loan.

The defendants have moved for a stay of this action pending the resolution of the bankruptcy proceeding of a company that they claim is "related" to Mr. Bunce's investment in this case. In the alternative, they move to dismiss all counts in the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court will deny the defendants' motion in its entirety.

## BACKGROUND

According to the complaint, Mr. Rajan and his family owned and controlled a Delaware company called Stream TV Networks, Inc. ("Stream TV"), which was trying to develop 3D technology for flat video screens that did not require viewers to wear 3D glasses. *See* Compl. (ECF No. 1) at 1, ¶¶ 9–10. Although Mr. Rajan raised over $100 million in loans for Stream TV,

which in fact developed valuable patents and other assets, Stream TV eventually became insolvent. *Id.* ¶¶ 10–11. Bunce alleges that Mr. Rajan and his agent misled him into believing that VTI was a company with existing assets, patents, marketable products, employees, customers, and co-venturers that was set to obtain additional, valuable patents and other assets from Stream TV and then merge into a publicly traded company. *Id.* ¶¶ 14, 17, 19–25, 29, 38, 42–46. He alleges that instead of enabling VTI to produce and sell products, Mr. Rajan was trying to transfer Stream TV's assets to a company that he solely controlled and use the company for his own personal benefit. *Id.* ¶¶ 12–14, 51, 78. Stream TV filed bankruptcy in 2023. *Id.* ¶ 48

## MOTION FOR A STAY

The defendants move for a stay of this action pending resolution of the Stream TV bankruptcy proceeding. They note that Stream TV is being restructured in the Stream TV Bankruptcy proceeding, and point to a single reference to "Stream TV" in one of the three Notes at issue. They contend that Mr. Bunce's claims "may fully be resolved through the Stream TV Bankruptcy since his investment relates to [Stream TV] and the 3D project." *See* Mem. of Law in Support of Motion to Dismiss and/or Stay (ECF No. 7-2) at 6. They assert that "there will likely be a global resolution of all lawsuits involving Stream TV and Defendant Mathu Rajan," which would include this action. *Id.* On that basis, they argue that "costs will be avoided by staying this proceeding until final resolution of the Stream TV Bankruptcy," and "[j]udicial efficiency will reign." *Id.* They conclude by asserting that "Plaintiff's claims would not be prejudiced by such a stay." *Id.*

The power to stay proceedings is part of the federal courts' "inherent" equitable, discretionary powers to promote fair and efficient adjudication of their cases. *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994) (citing *Gold v. Johns-Manville Sales Corp.*, 723 F.2d

1068, 1077 (3d Cir. 1983)); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant a stay, the court considers the following factors: (1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay.'" *Donald J. Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476, 503 (W.D. Pa. 2020) (citation omitted); *Landis*, 299 U.S. at 254–55 (courts must consider the "economy of time and effort for itself, for counsel, and for litigants . . . [by] weigh[ing] competing interests and maintain[ing] an even balance."). "A stay is an extraordinary measure," requiring "compelling reasons for its issuance." *Breyer*, 41 F.3d at 893. Thus, the party seeking a stay "must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255).

The defendants have not put forth "compelling reasons" for a stay to be issued. They make unsupported assertions that the Stream TV Bankruptcy is related to Mr. Bunce's claims. Stream TV is not a party to this case, and neither VTI nor Mr. Rajan are debtors in the bankruptcy matter. Further, the defendants provide no evidence that Mr. Bunce's claims "may fully be resolved through the Stream TV Bankruptcy," or how staying this action would promote judicial economy. Finally, they provide no basis to conclude that Mr. Bunce would suffer no prejudice if his case is stayed. Because the defendants have not met their burden of demonstrating clear hardship or inequity if a stay is not issued, their request for a stay is denied.

## MOTION TO DISMISS

### *Standard of Review*

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). However, the plaintiff must allege facts necessary to make out each element of each claim he asserts. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 563 n.8). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

*Breach of Contract Claim*

The defendants move to dismiss the breach of contract claim against VTI on the ground that Mr. Bunce's lawsuit is premature. They point to an amendment to the "Maturity Provision" in the March 8, 2021 Note, which provided for the Note to mature "10 days after the confirmation that the Company has received an aggregate total of US dollars (US $10,000,000) in new capital from the date of this Amendment." Defs.' Mem. of Law at 7 (citing April 5, 2021 Amendment to Note, attached as Ex. 6 to the Complaint).

However, as alleged in the complaint, the Maturity Provision was amended on November 23, 2021. In that amendment, the parties agreed that all of the Notes had to be repaid according to

4

a defined schedule, with the first payment due December 23, 2021, and the last due April 23, 2022.
*See* Nov. 23, 2021 Amendment to Note, attached as Ex. 8 to the Complaint.  When VTI failed to make that payment, Mr. Bunce demanded under the Notes that the loan be immediately repaid in full.  VTI failed to repay the amounts under the Notes.  On that basis, the complaint alleges VTI breached the parties' contracts, and as a direct result of that breach Mr. Bunce has suffered damages of at least $1,050,000.  Compl. ¶¶ 61–65.  Thus, the complaint states a plausible claim for breach of contract.

*Fraudulent Inducement Claim*

The defendants move to dismiss Mr. Bunce's claim against Mr. Rajan for fraudulent inducement on the grounds that (1) Mr. Bunce failed to allege he relied on Mr. Rajan's false representations; (2) Mr. Bunce did not plead fraudulent inducement with the requisite particularity; and (3) Mr. Bunce's fraud claim fails because he warranted that he had conducted due diligence.  Defs.' Mem. of Law at 7.

Mr. Bunce has stated a plausible claim against Mr. Rajan for fraudulent inducement.  The complaint alleges in immense detail how Mr. Rajan made numerous false representations of fact to Mr. Bunce, which were material to his decision to loan VTI $1,050,000.  For example, in paragraph 24, the plaintiff alleges the following:

> On February 22, 2021, Davis, Bunce, and others had a Microsoft Teams call with Rajan. Rajan sought to persuade Bunce to loan $1 million to VTI. During this call, Rajan falsely represented the following:
>
> a. that VTI owned $150 million worth of innovative technology for the presentation of glasses-free 3D images on flat computer screens;
>
> b. that VTI was ready to sell 2,500 computer tablets for glasses-free 3D viewing and 250 very large glasses-free 3D computer screens for viewing in airports and shopping malls;

    c. that VTI was ready to make these sales in March through May 2021 provided that VTI obtained $1 million in seed funding;

    d. that it was possible and intended for VTI to complete its merger and public offering transactions within a couple of months after receiving Bunce's $1 million loan;

    e. that VTI had Chinese-branded glasses-free 3D products that were already being sold;

    f. that VTI already had prototype very large glasses-free 3D screens installed in various locations, such as airports, and that it already had reached agreements to put large glasses-free 3D screens in various airports across the United States;

    g. that VTI's plans were being opposed by other persons who had invested in Stream TV and that VTI's plans could not go forward without Bunce's investment of $1 million in seed funding; and

    h. that if Bunce obtained shares in VTI, his shares would dramatically increase in value once VTI soon went public on NASDAQ.

Compl. ¶ 24(a)-(h).

The complaint is replete with numerous other allegations of Mr. Rajan's misrepresentations to Mr. Bunce, on which he reasonably relied, which include their date, means of communication, and precise content. *See* Compl. ¶¶ 17-29, 31–35, 37–38, 40–46, 50, 52, 55, 71–73. That Mr. Bunce warranted that he had conducted due diligence does not preclude his fraudulent inducement claim. An "independent investigation will not preclude reliance where," as here, "the falsity of the defendant's statements is not apparent from the inspection, where the plaintiff is not competent to judge the facts without expert assistance, or where the defendant has superior knowledge about the matter in issue." *Blanchard v. Blanchard*, 839 P.2d 1320, 1323 (Nev. 1992) (citation and emphasis omitted).

*Unjust Enrichment Claim*

The defendants move to dismiss the unjust enrichment claim against Mr. Rajan as duplicative of his breach of contract claim against VTI.

This claim will be permitted to stand for two reasons. First, since Mr. Bunce had a contract with VTI, not Mr. Rajan, his unjust enrichment claim against Mr. Rajan is not duplicative of the contract claim he has asserted against VTI. The complaint alleges that he conferred a benefit on Mr. Rajan by loaning $1,050,000 to VTI, which money Mr. Rajan, who dominates VTI as his alter ego, used for his own purposes, and personally benefited from by keeping those funds for himself. Second, the two claims are alternative theories of recovering the same monies, one million dollars. The Federal Rules of Civil Procedure permit the pleading of alternative and inconsistent theories for relief. See Fed. R. Civ. P. 8(d)(2) & (d)(3).

*Forum Selection Clause*

Finally, long after their motion was fully briefed, the defendants filed a "Supplement" to their motion, in which they appear to be asking the Court to transfer this action to Nevada pursuant to an exclusive forum selection clause in "paperwork" signed by Mr. Bunce. *See* Supplement to Pending Motion to Dismiss (ECF No. 20). The defendants acknowledge that the loan Notes, which are attached as exhibits to the complaint, contain a permissive forum selection clause, which allows claims arising from the contracts to be brought anywhere. *See id.* ¶ 2. But they now cite Convertible Note Agreements, which contain an exclusive forum selection clause designating Nevada courts as the sole forum in which to litigate claims under the contract. *See id.* ¶¶ 2, 4.

The Convertible Note Agreements do not govern the claims in this case. They pertain to Mr. Bunce's option to turn loaned amounts into shares in VTI. Because Mr. Bunce did not convert

his loans into shares, the Convertible Note Agreements do not govern repayment under the Notes, which is the basis for the claims in this case.  Only the Notes themselves govern the claims.  Thus, because the Notes do not contain an exclusive forum selection clause, there is no basis to transfer or dismiss this action based on the permissive forum selection clause contained in the Notes.

## CONCLUSION

Because the defendants have not provided compelling reasons to stay the proceedings in this case until the Stream TV Bankruptcy is resolved, their request for a stay is denied.  Because the plaintiff has stated a plausible claim for breach of contract against VTI, and has alleged the facts necessary to make out each element of his fraudulent inducement and unjust enrichment claims against Mr. Rajan, the motion to dismiss is likewise denied.  Finally, because the Notes themselves -- not the Convertible Note Agreements -- govern the claims in this case, the defendants' request that the court transfer this action to Nevada pursuant to an exclusive forum selection clause in the Convertible Note Agreements is denied.