**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE, | : | Civil Action |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. C.A. No. 2:23-cv- |
| | : | 01740 |
| VISUAL TECHNOLOGY INNOVATIONS, INC. | : | |
| | : | |
| and | : | |
| MATHU G. RAJAN, | : | |
| | : | |
| Defendants/Counterclaim and Third-Party Plaintiffs | : | |
| vs. | : | |
| Mark Bunce        and | | |
| Timothy McCarthy | : | |
| Third-Party Defendant | : | |
| | : | |

## ANSWER, AFFIRMATIVE  DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS

**Answer**

### RESPONSIVE INTRODUCTION

Plaintiff's Introduction section contains numerous assertions in an improper format as specified by the rules.  All the assertions in the introduction are denied.  Defendants assert counterclaims and claims against a third party to join in this action.  Plaintiff seeks repayment of several promissory notes he provided in reliance that another investor by the name of Timothy

McCarthy was planning on investing in VTI at the same time as him or after him.  Plaintiff counted on McCarthy's investment size, in the vicinity of $30 million US dollars, to be used to repay him quickly after investing in Defendant Visual Technology Innovations ("**VTI**").  Plaintiff made his repayment entirely contingent on VTI raising more money.  He did not tell VTI that he wanted his money back regardless of the money from McCarthy.  Only months later did Plaintiff bully VTI to force them to repay him regardless of McCarthy or more investment money. This document raises counterclaims against Plaintiff for not telling VTI his true intentions and his promises to VTI regarding McCarthy and just fairness under the investment documents.

## PARTIES

1.      Admitted.  However, the exact address of Plaintiff is not provided.

2.      Admitted but the choice of law in Plaintiff's contracts specify Nevada law not Pennsylvania law.   Visual Technology Innovations, Inc. ("VTI") is a corporation registered in Nevada.

3.      Admitted.

## JURISDICTION AND VENUE

4.      Denied.  This averment is a legal conclusion to which no response is required.

5.     Denied.  VTI is registered in Nevada.  The alleged breach of contract dispute should be heard in Nevada as provided in the contracts between Plaintiff and VTI.

6.      Denied.  Rajan did not engage in any misconduct.  Rather any fraud was conducted exclusively by another person Timothy McCarthy who is being sued in federal court in Nevada.

7.      Denied as Stated. Diversity of parties exist.  This averment is a legal conclusion to which no response is required.  However, this lawsuit should be determined in Nevada not Pennsylvania.

8.      Denied.  This averment is a legal conclusion to which no response is required.

However, the venue of this lawsuit is in Las Vegas, Nevada as provided in the investment contracts not Pennsylvania.

## STATEMENT OF FACTS

9.      Admitted.  Stream TV Networks, Inc may be abbreviated herein as "**Stream TV**".

10.      Admitted.

11.      Denied as stated.  Stream TV had more debt on its balance sheet than equity shortly after its inception in 2010 since some investors chose to invest through venture debt and not equity. However, Stream TV never missed payroll for its employees since its inception and only got into financial problems when the venture debt investors chose to unlawfully take everything and ignore their written debt-to-equity conversion agreements to eliminate their debt. However, the venture debt investors refused to convert debt to equity, in spite of many promises, in order to seize the 3D technology for themselves.

12.      Denied.  A faction of investors plotted with venture lenders to unlawfully take away all of the assets of Stream TV.  Many lawsuits in many other courts exist as a result of those unlawful actions by a few former executives and former board members of Stream TV.

13.      Denied.  Mathu Rajan always felt the 3D assets of Stream TV were taken away illegally and he was joined in that opinion by many independent lawyers, Plaintiff, and Timothy McCarthy ("**McCarthy**"), mentioned below.  Subsequently, the Delaware Supreme Court, sitting *en banc*, ruled unanimously in a fashion that proved the opinions of illegality were correct.

14.      Admitted in part and denied in part.  The implication that VTI was created to regain the 3D assets taken from Stream TV is admitted.  It is denied that VTI was anything but a proper entity which Plaintiff and McCarthy verified before executing investment paperwork.

15.      Denied as stated.  Both Rajan and Glen Davis of Knight Davis Associates, LLP., ("**Knight Davis**") provided Plaintiff with accurate information. Knight Davis and Glen Davis were

retained by VTI not Rajan. In addition, Plaintiff undertook extensive due diligence before he executed any paperwork.

16.     Denied as stated.  Knight Davis is an introducer and worked for and agent of VTI only.

17.     Denied as stated.  The information provided to Plaintiff was more extensive than what is described. Bunce was fully aware that VTI had little assets at the time except for an inferior technology called "stitching and tiling" and VTI had to recover (acquire) the superior technology of Stream TV and that is why he required a bankruptcy filing to get those assets of Stream TV.

18.  Plaintiffs paragraph contains numerous allegations. They are all denied. At the time that Plaintiff describes, Burlington had signed investment documents already. The obvious fraudulent letter came from McCarthy and bears a date after the date of the phone call Plaintiff describes.  VTI through Davis only told Plaintiff about that letter afterwards.  VTI was duped by McCarthy as well as Plaintiff.

19.     Plaintiffs paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

20.  Plaintiff's paragraph contains numerous allegations. They are all denied. Plaintiff knew fully that VTI was to contest Court rulings by an appeal.  Plaintiff knew his money and the money of McCarthy would go towards regaining assets of Stream TV.  That is why Plaintiff put in a requirement in his first loan documents requiring Stream TV to seek bankruptcy protection and to regain Stream TV assets.  Plaintiff admits that his money was to be repaid only when McCarthy invested larger monies(or VTI raises other money.

21.     Plaintiff knew that McCarthy duped him and VTI.  That is why he promised to help VTI to sue McCarthy until he was told to take a different path for legal strategy reasons.

22.   Plaintiffs paragraph contains numerous allegations. They are all denied.

23.   Plaintiffs paragraph contains numerous allegations. They are all denied.

24.     Admitted except for the part of the allegations that refers to "false representation", which is specifically denied.

24a.     Denied.

24b.     Denied.

24c.     Denied.

24d.   Denied.

24e.   Denied

24f.     Denied.

24g.   Denied.

24h.     Denied.

25.     Plaintiff's paragraph contains numerous allegations. They are all denied.

26.     Plaintiffs paragraph contains numerous allegations. They are all denied.

27.     Plaintiffs paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

28.      Plaintiffs paragraph contains numerous allegations.  The writing speaks for itself and any implications or additional extraneous facts are denied.

29.     Plaintiff's paragraph contains numerous allegations. They are all denied.

30.     Plaintiff's paragraph contains numerous allegations. They are all denied.

31.     Plaintiff's paragraph contains numerous allegations which are all denied.

32.   Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

33.   Plaintiff's paragraph contains numerous allegations. They are all denied.

34.   Denied.  Plaintiff conducted extensive due diligence including talking to anyone he wished.   In fact, his documents state specifically that he "…acknowledges that it [he] has conducted to its [his] satisfaction an independent investigation and verification of the financial condition, results of operations, assets, liabilities, properties and projected operations of the Company and, in making its determination to proceed with the transactions contemplated by this Agreement, Investor has relied on the results of its own independent investigation and verification…"

35.   Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.  McCarthy did not keep his written promises to either VTI or Plaintiff Mark Bunce.

36.   Plaintiff's paragraph contains numerous allegations. They are all denied.

37.   Plaintiff's paragraph contains numerous allegations. They are all denied.

38.  Plaintiff's paragraph contains numerous allegations. They are all denied, and, in addition, the referenced document speaks for itself.

39.   Plaintiff's paragraph contains numerous allegations. They are all denied, in addition, the referenced document speaks for itself.

40.   Denied.  The writing speaks for itself.  In addition, it is clear from the writing that VTI and Bunce were duped by McCarthy.

41.   Denied.  The writing speaks for itself.

42.   Denied as stated.

43.  Denied. To the contrary, Plaintiff Mark Bunce and his wife were sure of investment by McCarthy.  Plaintiff was so sure of money from McCarthy he repeatedly inserted in his investment documents with VTI that he could only be repaid after VTI raised more money ($1m initially then $10m).  Plaintiff did not tell anyone at VTI that he would want his money back

regardless and without contingency if McCarthy's investment took too long..

44.     Denied as stated.

45.     Denied as stated.

46.     Denied. The writing speaks for itself and is incomplete.

47.     Denied.  The plain language in Plaintiff's notes refute these assertions.  Plaintiff

required a bankruptcy filing his investment documents.

48.     Denied.  Plaintiff's own writings required that bankruptcy filing.

49.     Admitted in part and denied in part.  It is admitted that Burlington Resources Asia

Limited never invested any money in VTI, in spite of McCarthy's repeated assurances.  Any further

part of the assertion is legal conclusions which are denied and require no responsive pleading.

50.     Denied.

51.     Denied.  Bunces loans were used for lawful business purposes only.

52.     Denied.

53.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself,

and any implications or additional extraneous facts are denied.

54.     Denied. The writings speak for themselves.

55.     Denied.

56.     Denied.  Plaintiff did not want his money back until VTI raised more money.

57.     This averment is a legal conclusion to which no responsive pleading is required.

## COUNT I

## BREACH OF CONTRACT

## BUNCE v. VTI

58.     This averment requires no responsive pleading.

59.    This paragraph states a legal conclusion to which no responsive pleading is required.  The assertions are denied if it is determined that a responsive pleading was required.

60.    Denied.  The contracts speak for themselves as they are written documents.

61.    This paragraph contains numerous assertions.  The writing mentioned speaks for itself.  The whole instance happened due to Plaintiff investing in reliance on investment by McCarthy and indicated that he could wait for his investment for repayment (maturity was dependent on more money in VTI).

62.    Denied.  This paragraph avers numerous allegations, and they are all denied.  Some of the averments are legal conclusions to which no responsive pleading is required.

63.    Denied.  The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required,

64.    Denied.  The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required,

65.    The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required,

66.    The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required,

## COUNT II

## FRAUDULENT INDUCEMENT

## BUNCE v. RAJAN

67.    This averment requires no responsive pleading.

68.    This paragraph contains numerous averments.  Some averments are legal

conclusions to which no responsive pleading is required.  To the extent that some facts are intertwined in the averment they are denied.

69.     Denied.   This paragraph provides  legal  conclusions  to  which  no  responsive pleading is required.

70.     Denied.   This paragraph provides  legal  conclusions  to  which  no  responsive pleading is required.

71.     Denied.   This paragraph provides  legal  conclusions  to  which  no  responsive pleading is required. Plaintiff conducted his own due diligence and warranted in writing that he performed independent verifications.

72.     Denied.   This paragraph provides  legal  conclusions  to  which  no  responsive pleading is required.  Davis worked for VTI not Rajan.

73.     Denied.   This paragraph provides  legal  conclusions  to  which  no  responsive pleading is required.

74.     Denied.   This paragraph provides  a  legal  conclusion  to  which  no  responsive pleading is required.

**COUNT III**

**UNJUST ENRICHMT**

**BUNCE v. RAJAN**

75.     This averment requires no responsive pleading

76.     Denied.   This paragraph provides  numerous  legal  conclusions  to  which  no responsive pleadings are required.

77.     Denied.  Plaintiff Mark Bunce provided no benefit to VTI by misleading it in order to obtain warrants for equity.

78.     Denied. This averment states legal conclusions to which no responsive pleading is

required.

79.     Denied. This averment states legal conclusions to which no responsive pleading is required.

80.     Denied.  This averment states legal conclusions to which no responsive pleading is required.

74.     This paragraph is numbered erroneously as it provides again the number 74 but after the number 80.  The averment states a legal conclusion to which no responsive pleadings are required.

## PRAYER FOR RELIEF

75.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

76.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

77.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

78.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

79.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

80.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

81.     This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

82.     This averment is incorrectly numbered, but it states a legal conclusion to which no

responsive pleading is required.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**

Plaintiff's amendment to his debt that eliminated the pre-condition for repayment/maturity, exhibit 8 to Complaint, is invalid as it was based on duress, undue influence, and other forms of undue pressure in a manner that invalidates that contract/amendment. Referred to as Repayment Amendment as fully described below.

**Second Affirmative Defense**

Alternatively, Plaintiff's amendment to his debt that eliminated the pre-condition for repayment/maturity, exhibit 8 to Complaint, was worded so that it provided an installment payment in addition to VTI raising $10,000,000.  It did not use replacement language for the $10,000,000 precondition like the language used in other contracts called amendments.  For that reason, Plaintiff's loans are not yet mature.

**Third Affirmative Defense**

The loans/investments of Plaintiff Mark Bunce are not yet mature nor collectable.

**Fourth Affirmative Defense**

The contracts of Plaintiff were induced through the misrepresentation and false promises of Timothy McCarthy not VTI, Mathu Rajan, or any of the representatives of VTI.

**Fifth Affirmative Defense**

The third-party claims against Timothy McCarthy should be used to offset and pay Plaintiff.

**Sixth Affirmative Defense**

Timothy McCarthy induced and is responsible for any harm of Mark Bunce.

**Seventh Affirmative Defense**

Plaintiff's lawsuit should be heard in Nevada and not in Pennsylvania.

**Eighth Affirmative Defense**

A claim for unjust enrichment cannot exist in the same lawsuit when a breach of contract is also claimed.

## COUNTERCLAIM AND THIRD-PARTY CLAIMS

83.     All of the averments, responses of Defendants and information in the Defenses are incorporated herein by reference as if fully set forth.

### Parties

84.     Plaintiff, Mark Bunce, who is a counterclaim Defendant is identified in Plaintiff's Complaint.

85.     Another person is being joined in this lawsuit as a third-party Defendant; his name is Timothy McCarthy ("**McCarthy**").

86.      McCarthy is an adult individual with an address of Blackfoot Point, #104, 8826 Blackfoot Trail SE Calgary AB | T2J 3J1.

87.     McCarthy formerly resided in the United Kingdom not too far from Mark Bunce, who lives in the prestigious area of the Channel Island of Guernsey, but McCarthy absconded to Canada after defrauding Mr. Bunce and VTI.

88.     Adding/joining McCarthy to this lawsuit will not destroy diversity jurisdiction as Plaintiff and Defendants and the third party Defendant reside in different countries.

### Jurisdiction

89.     As stated by Plaintiff in his Complaint, jurisdiction in federal Court is based on 28 U.S. Code § 1332.  The requirements of that statute are met.

90.     However, there is dispute between Plaintiff and Defendants if this lawsuit should be properly heard in federal Court in Nevada as opposed to being heard in federal court in Pennsylvania.

91.    In fact, a lawsuit is commencing or has commenced already against McCarthy in Nevada federal court.

92.    The third-party action against McCarthy in this case is only about his legal responsibility to Mark Bunce.

93.    Jurisdiction is based on diversity and the joinder of the third-party Defendant does not change the jurisdiction of the federal courts.

**Jury Demand**

94.    A trial by Jury is demanded by Defendants.

**Background**

95.    McCarthy signed investment paperwork through his company Burlington Resources Asia Limited ("**Burlington**") with VTI on or about February 10, 2021.

96.    McCarthy did not close on that written promise and gave VTI all kinds of excuses.

97.     McCarthy insisted that VTI find an investor of one million dollars or more to invest in VTI before his money closed so that he could call his money "growth investment."

98.     That insistence by McCarthy led to VTI finding Mark Bunce.

99.    At all times Mark Bunce was to be an investor to help conclude the money of McCarthy that was promised in writing but not yet closed.

100.    Mark Bunce invested only seventeen (17) days from the date that McCarthy had signed investment paperwork with VTI.

101.    Mark Bunce never told VTI that he wanted his repayment regardless of McCarthy closing in VTI.

102.    In fact, Mark expressed the opposite in his investment writings—that repayment of his investment loans were entirely contingent on more money in VTI.

103.    Mark Bunce the first investment of VTI specified that he could not seek repayment

<u>until</u> another company called Stream TV Networks, Inc declared bankruptcy and that one million ($1,000,000) of the thirty million promised to VTI closed.  That requirement by Mark Bunce was a condition to his investment.

104.     That is the exact amount of the investment promised VTI by McCarthy.

105.     Even in the second investment, Mark Bunce signed an amendment that he could not seek repayment until ten million ($10,000,000) was invested in VTI.  That amendment is attached hereto as **Exhibit A** hereto and is incorporated herein by reference ("**<u>Contingency Amendment</u>**").

106.     The Contingency Amendment delayed maturity for repayment **<u>only when</u>** "…the Company has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("Maturity Date").

107.     Mark Bunce increased his contingency trigger for repayment to ten million dollars ($10,000,000) from one million dollars ($1,000,000) in his First Loan.

108.     Mark Bunce agreed to the contingency again when he invested more money in VTI in his third his third investment.

109.     The third investment of Mark Bunce provided that it does not mature until VTI has received ten million dollars ($10,000,000).  Exhibit 7 to Complaint, section 1.

110.     Mark Bunce spoke directly to McCarthy to independently verify McCarthy's intentions regarding VTI since Mark Bunce relied on monies from McCarthy so he could be repaid.

111.     Before those direct communications between McCarthy and Bunce, VTI only represented to Bunce what McCarthy had informed VTI and its representatives.

112.     Eventually, Plaintiff Mark Bunce became doubtful of investment of McCarthy in VTI as McCarthy was constantly delaying actually closing on his investment promises with VTI.

113.     Even after his initial skepticism Mark Bunce invested in VTI again hopeful of the investment money from McCarthy finally coming through.

114.     Mark Bunce wanted to believe McCarthy may close with VTI and again put in a "contingency" for repayment.

115.     Mark Bunce was a very sophisticated investor as he was investing for over forty (40) years.

116.     Finally, around the Fall of 2021, Mark Bunce wanted all his monies back.

117.     He knew or should have known his investment documents did not allow him to get his money back from VTI since the paperwork tied repayment only when VTI received ten million dollars ($10,000,000).

118.     Therefore, Plaintiff Mark Bunce realized he had to get a new replacement contract to try legally even to recoup his money from VTI; otherwise, his investment loans would not mature until VTI raised at least $10,000,000.

119.     Mark Bunce pressured VTI by Mathu Rajan to execute a new amendment no matter what the cost.

120.     Mark Bunce bullied VTI through Mathu Rajan and caused him severe apprehension where he felt he had to succumb to a new amendment of Mark Bunce.

121.     Attached as **Exhibit B** is an email from Mark Bunce to Mathu Rajan that conveyed immediate repayment.  That email was sent November 4, 2021.

122.     Only three (3) days later Mark Bunce sent another email to Mathu Rajan threatening to cause massive disruption to VTI.  That email is attached hereto as **Exhibit C**.

123.     When Mathu Rajan spoke to Mark Bunce, he made it clear that he wanted repayment immediately or he would shut down VTI and its desire to regain the assets and technology of Stream TV which VTI hoped to recover.

124.     Mathu Rajan worried that many other people would be affected by the threats of Mark Bunce since VTI had many other investors who were shareholders.

125.     Mathu Rajan finally signed the new amendment because he felt he had no choice.  That amendment is attached to the Complaint of Plaintiff Mark Bunce as exhibit 8 thereto.  (hereafter called the "**Repayment Amendment**").

126.     Plaintiff Mark Bunce entire breach of contract claim against VTI is based on that Repayment Amendment as all other prior documents made repayment only due after $1-$10 million dollars was invested in VTI.

127.     If it was not for the Repayment Amendment, VTI could not even be accused of alleged breach of contract.

128.     Under the words of the Repayment Amendment, the installment payment requirements may be in addition to VTI raising $10,000,000.

129.     Even in the Repayment Amendment, Mark Bunce insisted on getting another 7 million warrants for equity.

130.     Mark Bunce knew he and VTI were misled and duped by McCarthy.

131.     Mark Bunce complained about McCarthy's delay and how it was unfair to him and VTI.

132.     Mark Bunce expressed to VTI that he would help it sue McCarthy in a court of law but instead, after consulting advisors, Mark Bunce demanded that he be repaid regardless of McCarthy.

133.     Mark Bunce chose to sue only VTI and Mathu Rajan without McCarthy for legal strategy reasons.

**Claims**

### COUNT I
### (VTI Counterclaim against Mark Bunce)
### MISREPRESENTATION

134.     All the averments above are incorporated herein as if fully set forth.

135.     Mark Bunce and his wife misrepresented to VTI that they would wait unconditionally for repayment of his investment monies.

136.     Mark Bunce had a legal obligation to inform VTI that he would or even might want his money back regardless of further investment or other monies into VTI.

137.     That type of disclosure is very common for investors to tell a potential company before investment.

138.     Mark Bunce never told, either orally or in writing, VTI that he wanted his money back regardless of McCarthy or more investment money in VTI before he invested in VTI.

139.     Investors assume risks associated with investments so full disclosure and transparency is paramount.

140.     Had VTI been told of the lack of contingency for repayment Mark Bunce, the suitability of Mark Bunce as an investor in VTI would have been assessed.

141.     Mark Bunce never gave VTI the chance to evaluate the suitability of his investment because he misrepresented contingency for repayment in all of investments (3).

142.     The failure to disclose the lack of "contingency" for repayment is misrepresentation.

143.     When a company raises investment capital it can be some form of stock, or it can be a loan which can be converted to equity or it is repaid.

144.      It is material to any company considering investment to know if an investor is willing to use an equity structure which has no repayment right or a loan which may be repaid.

145.     As stated above, Mark Bunce should have disclosed that he wanted his money back (repaid) with or without VTI raising more money (presumably from McCarthy).

146.     Mark Bunce could have, as an example, indicated he wanted his money back (repayment) in so many days to give VTI a reasonable chance to secure more monies.

147.     Mark Bunce could have structured his investment as a loan only, with no equity

conversion rights, and with a specific date for repayment; it could have been structured with ample time for McCarthy to complete his investment.

148.    Mark Bunce intentionally chose not to tell VTI through its representatives.

149.    VTI relied on that representation by Mark Bunce in accepting his investments.

150.    Mark Bunce swore in his investment documents that he "...*is aware that an investment in the securities of any kind involves a number of very significant risks and understands any of such risk may materially adversely affect the Company's operations and future prospects...*"

151.    VTI has suffered injury and harm as a result of that misrepresentation.

152.    The written language of Mark Bunce is an indication and an example of the false statements of Mark Bunce.

153.    At all times before the Repayment Amendment and the threats and email preceding the same, Mark Bunce portrayed himself and his investment as only requiring repayment after McCarthy or other larger money in VTI.

154.    Mark Bunce falsely portrayed himself as the perfect investor to invest before McCarthy as he did not want his money back until after the investment of McCarthy closed.

155.    Even on the third loan/investment of Mark Bunce he provided language of a contingency before repayment was legally due.

156.    Mark Bunce wrote in pertinent part that "…Maturity Date. The Note will Mature 10 days after the confirmation that the Company [VTI] has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("Maturity")." (clarification added).

157.    VTI should have been given the opportunity to not accept the loans of Mark Bunce or deny it if they were told the truth of the intentions of Mark Bunce.

158.    Mark Bunce knew or should have known he would want his money back regardless of

monies from McCarthy or other investors in VTI.

159.     Mark Bunce intended to induce VTI to accept his loans so that he would have the opportunity to invest alongside McCarthy.

160.     Mark Bunce knew that if he told VTI of his true intentions, he would not be allowed to invest/lend to VTI.

161.     Mark Bunce also obtained equity in VTI with his loans which he would not have received had he told the truth before his loans.

162.     Mark Bunce deceived VTI because he knew that if he told the truth before his loans were accepted, he would not be able to invest alongside McCarthy.

163.     Those representations by Mark Bunce were false and misleading and induced VTI to accept his monies.

164.     Mark Bunce obtained warrants for equity as a direct result of his misrepresentations.

165.     The false statements and misrepresentation of Mark Bunce were material to VTI.

166.     VTI has been much worse as a result of the falsities of Mark Bunce.

Mark Bunce is sophisticated and knew or should have known that his false representation may cause problems for VTI, yet he proceeded anyway in disregard to VTI.

167.     VTI was totally justified in believing Mark Bunce and his representations, which proved to be false.

168.     VTI has suffered damage as a result of the false representations of Mark Bunce.

169.     VTI, through Mathu Rajan, relied on Plaintiff's false representations and accepted the investment monies of Mark Bunce.

170.     Mark Bunce contributed to or caused the collapse of VTI operating.

171.     The perceived value of VTI was based on the asset that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

172.     Once the Stream TV assets were reacquired by Mathu Rajan and VTI, the enterprise value would have been over five hundred million dollars ($500,000,000).

## COUNT II
### (VTI Counterclaim against Mark Bunce)
### GOOD FAITH AND FAIR DEALING

173.     All of the averments above are incorporated herein as if fully set forth.

174.     All of Mark Bunce original investment documents only required repayment/maturity after VTI raised one million dollars ($1,000,000) to ten million dollars ($10,000,000).

175.     That is a contingency or pre-condition before repayment.

176.     All contracts imply a duty of good faith and fair dealing.

177.     Bunce breached that duty of good faith and fair dealing by asking the contingency for repayment is removed by reason of a new amendment called the Repayment Amendment.

178.     That breach has caused VTI injury and damages.

179.     As stated above, the perceived value of VTI was based on the asset that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

180.     Also as stated above, the enterprise value would have been over five hundred million dollars ($500,000,000) once the Stream TV assets were reacquired by Mathu Rajan and VTI.

181.     That value was lost due to the actions of Mark Bunce.

## COUNT III
### (VTI Counterclaim against Mark Bunce)
### BREACH OF ORAL CONTRACT/PROMISE

182.     All of the averments above are incorporated herein as if fully set forth.

183.     VTI through Mathu Rajan, only executed the Repayment Amendment due to a) immense pressure of Mark Bunce and b) the promise of Mark Bunce that he will help Mathu Rajan and VTI pursue McCarthy to recoup losses from his apparent fraud.

184.     The promise of helping Mathu Rajan and VTI to support suit against McCarthy was a promise with sufficient detail to be viewed as a contract.

185.     Mark Bunce breached that contract and caused VTI harm and damage.

186.     As stated above, the perceived value of VTI was based on the asset that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

187.     Also as stated above, the enterprise value would have been over five hundred million dollars ($500,000,000) once the Stream TV assets were reacquired by Mathu Rajan and VTI.

188.     That value was lost due to the actions of Mark Bunce.

## COUNT IV
### (Third-Party Claim against Timothy McCarthy)
### MISREPRESENTATION/FRAUD

189.     All of the averments above are incorporated herein as if fully set forth.

190.     McCarthy became intimately involved with VTI.

191.     McCarthy portrayed himself as a seasoned investor in very big deals which he knew would be relied on by VTI and other investors in VTI like Mark Bunce.  Attached is a copy of the description McCarthy describes himself from the internet.  **Exhibit D.**

192.     Mark Bunce spoke directly to McCarthy numerous times.

193.     Mark Bunce performed extensive diligence before all of his investments particularly with regard to McCarthy.

194.     Later, Bunce even admitted he knew McCarthy and/or his brother and their affiliation with Sir Richard Branson.

195.     McCarthy defrauded Mark Bunce not VTI or Mathu Rajan.

196.     McCarthy's own declaration indicates how he portrayed his investment prowess and investment interest in VTI.  Declaration of McCarthy attached as **Exhibit E** hereto and incorporated by reference s if fully set forth.

197.    McCarthy told lies to VTI, which they in turn passed on as information to Mark Bunce..

198.    **Exhibit F** hereto is a bank statement that McCarthy showed VTI in a virtual call.

199.    The bank statement shows over $103,018,461.95 in a bank account owned by McCarthy or his company.

200.    Representatives of VTI took a screen shot of the bank statement and verbally passed on information to Mark Bunce that they had seen a bank statement indicating that McCarthy had substantial money in his bank account.

201.    McCarthy caused Mark Bunce to be defrauded also by sending a letter from a company called Knight Asia Limited in Hong Kong that allegedly represented McCarthy and/or his company.

202.    Mark Bunce knows that he was defrauded by McCarthy as he attached that letter from Knight Asia Limited to his Complaint as exhibit 2.

203.    Knight Asia Limited has no affiliation or relationship whatsoever with VTI or Mathu Rajan.

204.    Attached as **Exhibit G** is an email from VTI confirming a call with McCarthy in which he (McCarthy) expressed enthusiasm for his investment.  It provides in pertinent part, that

I was good to hear you so enthusiastic now that you are so close to getting your deal away, and I'm confident that I am not alone in wishing you good luck during this closing phase. (emphasis added)

205.    Exhibit G, also asks McCarthy to talk to Bunce directly and keep him updated.

206.    McCarthy's representation that he would invest in VTI was fraud.

207.    McCarthy perpetrated that fraud numerous times.

208.    McCarthy knew or should have known that many people including Mark Bunce relied on his false promises to invest and/or wait for repayment.

209.    Mark Bunce has suffered injury or losses caused as a result of the falseness of McCarthy.

210.     McCarthy is responsible to Mark Bunce not VTI or Mathu Rajan.

**Prayer for Relief**

VTI and Mathu Rajan ask that

a) judgment be entered in their favor against Mark Bunce;

b) award them damages of the $500,000,000 or an amount proven at trial;

c) enter a finding or judgment that Timothy Mcarthy is responsible to Mark Bunce for all damages including the monies Bunce invested in VTI:

d) Award any other relief the Court deems appropriate.


## <u>Attachments</u>

Exhibit A- Amendment making Bunce 2nd Loan Contingent
Exhibit B- Email of Mark Bunce wanting Repayment (11/4/2021)
Exhibit C- Email of Mark Bunce wanting Repayment (11/7/2021)
Exhibit D McCarthy Biography
Exhibit E- McCarthy Declaration
Exhibit F- McCarthy Bank Statement
Exhibit G-Email Confirming McCarthy Enthusiasm and Contact Directly



Respectfully submitted,

/s/ Raja Rajan

Raja Rajan, Esquire
Attorney I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002
visualtechnologyinnovations@gmail.com

*Attorney for all Defendants*


Dated: March 26, 2024

**–Exhibit A–**

Amendment making Bunce 2nd Loan Contingent

Bunce-VTi Amendment 2104055

## AMENDMENT TO NOTE

THIS AMENDMENT dated as of April 5, 2021 ("**Amendment**") is between Mark Leonard Bunce or his/her/its registered assigns ("**Holder**") and Visual Technology Innovations, Inc., a Nevada USA corporation (the "**Company**"), with its principal offices at 1105 William Penn Drive, Bensalem, PA 19020 USA and amends the Convertible Note (Note VN21019-00) dated on or about March 8, 2021 or signed simultaneously between the Company and Purchaser ("**Note**"). All capitalized terms not herein defined shall have the meaning ascribed to them in the Agreement, as amended.

## W I T N E S S E T H

**WHEREAS**, the Company and Holder wish to amend the Note.

**NOW, THEREFORE**, the parties hereto, in consideration of the mutual promises herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby agree to amend the Note as follows:

1. Unless otherwise specified herein, each term used herein that is defined in the Note, as amended, shall have the meaning assigned to such term in the Note.

2. Section 1 of the Note VN21019-00 shall amended in its entirety and will read as follows:

> The Note will Mature 10 days after the confirmation that the Company has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("**Maturity Date**").

3. Section 3 of the Note VN21019-00 shall be amended in its entirety and will read as follows:

> The Holder may convert the Total Value of the Note any time into Class A Common Shares of the Company ("**Shares**") at a price of $0.23 per Share or the Company may convert the Total Value of the Note into Shares at a price of $0.23 per Share upon the Maturity Date ("**Conversion Expiry**").

4. The Holder may request repayment with a notice of 10 business days for the Total Value at any time six (6) months after the date of this Amendment but prior to Conversion Expiry.

5. The Holder will be issued additional 300,000 bonus warrants in the same form of the warrants VW21025 as previously issued.

6. Except as expressly amended by this Amendment, the provisions of the Note, as amended, shall remain in full force and effect.

Bunce-VTI Amendment 2104055

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed on
the date first above written.

| | | | |
|---|---|---|---|
| **COMPANY:** | Visual Technology Innovations, Inc. | **HOLDER:** | Mark Leonard Bunce |
| **SIGNED:** **NAME:** | Mathu Rajan | **SIGNED:** **NAME:** | Mark Leonard Bunce |
| **TITLE:** | President | **TITLE:** | M. L. Bunce. |
| **DATE:** | Apr 6, 2021 | **DATE:** | 6 April 2021 |

Page 2 of 2

**–Exhibit B–**
Email of Mark Bunce wanting Repayment (11/4/2021)

| | |
|---|---|
| **From:** | Mark Bunce |
| **To:** | Mathu Rajan |
| **Cc:** | Glen Davis; Frances Knight-Davis; Suby Joseph |
| **Subject:** | Convertible Loan Note #VN2021-00 |
| **Date:** | Thursday, November 4, 2021 1:50:05 PM |

Dear Mathu

I understand that Vti ("the Company") has failed one of the Conditions of the Convertible Note ≠ VN21021-00, issue date May 4 2021, namely to raise the US$10m specified.

Therefore I am now, today, November 04 2021 giving notice that I expect repayment of such amount no later than 10 business days after the expiry date, November 04 2021, namely on or before November 18 2021.

The amount to be repaid stands at US$1,050,000.

Please confirm by return that funds will be received and the date repayment is expected to be made.

We reserve all rights to take action should funds not be forthcoming.

Regards

Mark Bunce

**-Exhibit C-**
Email of Mark Bunce wanting Repayment (11/7/2021)

| | |
|---|---|
| **From:** | Mark Bunce |
| **To:** | Mathu Rajan |
| **Cc:** | Glen Davis; Frances Knight-Davis; Suby Joseph |
| **Subject:** | Re: Convertible Loan Note #VN1021-00 |
| **Date:** | Sunday, November 7, 2021 5:59:17 AM |

Dear Mathu

I would appreciate confirmation of receipt of my email below. If not I will ask for it to be served in person to Vti.

Regards

Mark Bunce

> On 4 Nov 2021, at 17:50, Mark Bunce <marklbunce@me.com> wrote:
>
> Dear Mathu
>
> I understand that Vti ("the Company") has failed one of the Conditions of the Convertible Note ≠ VN21021-00, issue date May 4 2021, namely to raise the US$10m specified.
>
> Therefore I am now, today, November 04 2021 giving notice that I expect repayment of such amount no later than 10 business days after the expiry date, November 04 2021, namely on or before November 18 2021.
>
> The amount to be repaid stands at US$1,050,000.
>
> Please confirm by return that funds will be received and the date repayment is expected to be made.
>
> We reserve all rights to take action should funds not be forthcoming.
>
> Regards
>
> Mark Bunce

**-Exhibit D-**
McCarthy Biography



# BURLINGTON RESOURCES ASIA LIMITED

## MENU

  

Burlington Resources Asia Limited provides financial and managerial services to a range of clients and joint venture partners.The company has a presitigious list of clients.

## Our Services

- Mergers, acquisitions and divestitures
- Corporate finance advisory
- Strategic consultancy
- Private capital raising and venture capital
- Sourcing of acquisitions and investment opportunities
- Reorganisations and debt/equity restructurings for companies under administration
- Project management of infrastructure related projects
- Cross border feasibility and transactions

## Our Clients

- Public and private corporations, from small to large cap
- Partnerships and joint ventures

- Institutions
- Entrepreneurs
- Investment funds
- High-net-worth individuals



# Leadership

The company retains Tim McCarthy as a special advisor. He is a graduate of Cambridge University in the UK and has an MBA from Cass Business School, City, University of London.

Tim has over 35 years' experience as an investment banker, stockbroker for Japan and South East Asia, corporate finance specialist and entrepreneur. Previously he worked in the City of London from 1979-93 with Morgan Grenfell & Co, Bank of America International Limited , WI Carr, Swiss Bank Corporation and was a director of Asia Equity a South East Asian brokerage which subsequently merged with Banque Paribas.

He has been on the boards of public and private companies, most notably as a director of Victory Corporation plc, Sir Richard Branson's Virgin branded cosmetics

and clothing company and his record label V2 Music Holdings plc. He has also been a director of a major private property group in Delhi, India - Sweta Estates Pvt. Ltd.

---

Copyright © Burlington Resources Asia Limited 2016

**–Exhibit E–**
McCarthy Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Stream TV Networks, Inc. | : Case No. 21-10433 (KBO) |
| | : |
| Debtor. | : |
| | : |
| | : |

## DECLARATION OF BURLINGTON RESOURCES ASIA LIMITED IN SUPPORT OF DEBTOR'S RESPONSE TO STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING THE MOTIONS TO DISMISS THIS CHAPTER 11 CASE AND JOINDER TO THE OMNIBUS OBJECTION

1.      I, Tim McCarthy, hereby state that at all times relevant hereto, I have been over 18 years old and am competent to make this declaration.

2.      I am a Special Advisor and lead the business at Burlington Resources Asia Limited ("Burlington"), a Hong Kong Limited Company. Burlington is funding Visual Technology Innovations, Inc. ("VTI") which is the proposed Debtor- in-Possession financier in the above captioned bankruptcy matter. A copy of documents showing the background and bona fides of me and Burlington Resources Asia Ltd. are attached hereto as **Exhibit 1**.

3.      I have conducted due diligence on the Debtor and VTI, and I am generally familiar with the Debtor's day-to-day operations, organization, financial affairs, and books and records.

4.      I have over thirty-five years of experience as an investment banker and stockbroker for Japan and South East Asia. Previously, I worked in the City of London from



1979 to 1993 with Morgan Grenfell & Co, Bank of America International Limited, and WI Carr, Swiss Bank Corporation.  I also was a director of Asia Equity a South East Asian brokerage which subsequently merged with Banque Paribas.

5.      Further, I have served on the boards of public and private companies, most notably as a director of Victory Corporation plc, which is Sir Richard Branson's Virgin branded cosmetics and clothing company, and V2 Music Holdings plc., which is a record label.  Finally, I have served as a director of a major private property group in Delhi, India - Sweta Estates Pvt. Ltd.

6.      I have committed to fund certain operations and activities of VTI and its business, including and not limited to, Debtor-in-Possession financing for Stream TV Networks, Inc. ("Stream"), as well as the financing that will be needed for Stream to fund exit financing through the bankruptcy process.

7.      As part of this commitment, Burlington and its associates are providing VTI with USD $180 million with an option to go to $230 million and have executed agreements with VTI on Monday, May 3, 2021.  Because these funds are coming from overseas to the United States, and from institutional investors of Burlington, the transfer of funds will need to take a few business days due to regulatory and banking procedures involved in the large transfer of funds cross borders.  But this process is being initiated on the opening of business, May 3, 2021  and has been closed.   Prior commitments have been restructured to address the disputed, but outstanding debt alleged by certain alleged secured creditors of the Debtor.



2

Signed under the pains and penalties of perjury.

Date: May 2, 2021                                BURLINGTON RESOURCES ASIA LTD.

                                                 By:

                                                 Timothy McCarthy
                                                 Special Advisor

**–Exhibit F–**

McCarthy Bank Statment

 **DBS**

**Account Details**

| Account Number : | ▮▮▮▮ - USD | Account Name : | BURLINGTON RESOURCES ASIA LIMITED - ▮▮▮▮ - USD |
|---|---|---|---|
| Product Type : | FOREIGN CCY SAVINGS ACCOUNT | | |
| Opening Balance : | 103,032,089.05  04-Feb-2021 | Earmark Amount : | 0.00 |
| Ledger Balance : | 103,018,435.47  24-Feb-2021 | Overdraft Limit : | 0.00 |
| Available Balance : | 103,018,435.47  24-Feb-2021 | | |

| Date | Value Date | Transaction Details | Debit | Credit | Running Balance |
|---|---|---|---|---|---|
| 06-Feb-2021 | 06-Feb-2021 | TRANSFER REMITTANCE 0807OI0263042 Mgt Fee Jan UNION ALPHA C.P.A Mgt Fee Jan UETR Ref:b9327e7b-3ed9-4b0e-b5a4-12deea0ae88a | 13,627.10 | | 103,018,461.95 |
| 06-Feb-2021 | 06-Feb-2021 | TRANSFER REMITTANCE CHARGES 0807OI0263042 Mgt Fee Jan UNION ALPHA C.P.A Mgt Fee Jan UETR Ref:b9327e7b-3ed9-4b0e-b5a4-12deea0ae88a | 7.07 | | 103,018,454.88 |
| 07-Feb-2021 | 07-Feb-2021 | TRANSFER BK CHG OI0263042 | 19.41 | | 103,018,435.47 |

| | Total Debit Count : | 3 | Total Debit Amount : | 13,653.58 |
|---|---|---|---|---|
| | Total Credit Count : | 0 | Total Credit Amount : | 0.00 |

Transactions performed on a non-working day will be posted on the next working day
If date requested is a non business day, please select the next business day to view your transaction(s)

**END OF REPORT**

**-Exhibit G-**
Glen Davis Email of McCarthy enthusiasm

**From:** Glen Davis [mailto:g.davis@knightdavis.com]
**Sent:** 09 April 2021 15:28
**To:** Timothy McCarthy (tim@burlingtonresources-asia.com)
**Cc:** mark@bunce.club
**Subject:** SBLC $50m

Tim hi

Thank you for your time on the call with Mark earlier, who has authorised me to send over his email (above) and his mobile number + 44 (0) 7512 131312.

As agreed can you please keep Mark abreast of events over the course of today, this weekend and it would be appreciated if you would continue with the updates until the Burlington's $30m arrives and is cleared into  VTI's Wells Fargo bank account.

Can you also include in your first email update a very brief description of the SBLC procedures, appropriate and timely Proof of Funds and the approximate timelines you outlined.  This will assist and keep us all on the same page and avoid any misunderstandings.

I was good to hear you so enthusiastic now that you are so close to getting your deal away, and I'm confident that I am not alone in wishing  you good luck during this closing phase.

Kind regards

Glen

Glen R Davis
Partner Specialist Sectors
Knight - Davis Associates LLP
Mob + 44 (0) 7885 361789
g.davis@knightdavis.com
www.knightdavis.com

Knight-Davis Associates LLP is a limited Liability Partnership incorporated in England and Wales with registered number OC366497

**CONFIDENTIALITY: Privileged or Confidential Information may be contained in this message. If you are not the addressee of this message (or responsible for its delivery to the addressee), you may not review or copy it, deliver it to anyone else or use information contained herein. In such a case, you should destroy this message and kindly notify the sender by reply email. Opinions, conclusions and other information in this message that do not relate to the official business of Knight-Davis Associates LLP are neither given nor endorsed by it.**