**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK L. BUNCE, | |
| Plaintiff, | Civil Action |
| vs. | Case No. 2:23-cv-01740 |
| VISUAL TECHNOLOGY INNOVATIONS, INC. | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE BREACH OF CONTRACT CLAIM** |
| and | |
| MATHU G. RAJAN, | |
| Defendants. | |

Michael P. Kohler
*admitted pro hac vice*
Georgia Bar No. 427727
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
(404) 962-6100
Michael.Kohler@millermartin.com

Michael D. Homans
ID No. 76624
HOMANSPECK, LLC
230 Sugartown Road
Suite 218
Wayne, PA 19087
(215) 419-7463
mhomans@homanspeck.com

Robert F. Parsley
*admitted pro hac vice*
Tennessee Bar No. 23819
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
(423) 756.6600
Bob.Parsley@millermartin.com

*Attorneys for Plaintiff Mark L. Bunce*

**Table of Contents**

Table of Authorities .................................................................................................. 6

I.   Background and Introduction ............................................................................ 6

II.  Undisputed Material Facts .................................................................................. 7

    A.  Bunce loaned $1,050,000 to VTI in exchange for the right to convert his loan into shares in VTI at a favorable price. ......................................................... 7

    B.  VTI has not repaid the loan as contractually required. .................................... 9

III. Argument. ............................................................................................................ 10

    A.  Summary judgment standard. ......................................................................... 10

    B.  The Court should hold that VTI has breached its contract with Bunce and owes him $1,050,000 in compensatory damages. ................................... 10

    C.  The Court should award Bunce prejudgment interest. .................................... 13

       1.  The Court should award Bunce prejudgment interest under Nevada law. ................. 14

       2.  Alternatively, the Court should award Bunce prejudgment interest under Pennsylvania law. ............................................................................... 17

IV.  Conclusion. ....................................................................................................... 17

## Table of Authorities

Page(s)

**Cases**

*Chamberlain v. Giampapa*,
   210 F.3d 154 (3d Cir. 2000) .................................................................................. 10

*Collins v. Mary Kay, Inc.*,
   874 F.3d 176 (3d Cir. 2017) .................................................................................. 10

*Contreras v. Am. Family Mut. Ins. Co.*,
   135 F. Supp. 3d 1208 (D. Nev. 2015) ................................................................... 11

*Cottman Transmission Sys., Inc. v. Melody*,
   869 F. Supp. 1180 (E.D. Pa. 1994) ....................................................................... 10

*D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*,
   755 F. Supp. 2d 1122 (D. Nev. 2010) ........................................................ 14, 15, 16

*ECEM European Chem. Mktg. B.V. v. The Purolite Co.*,
   CIV.A. 05-3078, 2010 WL 4069188 (E.D. Pa. Oct. 15, 2010) .............................. 14

*Engel v. Ernst*,
   102 Nev. 390, 724 P.2d 215 (1986) ...................................................................... 11

*Fernandez v. Levin*,
   519 Pa. 375, 548 A.2d 1191 (1988) ...................................................................... 17

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
   716 F.3d 764 (3d Cir. 2013) .................................................................................. 10

*Hanna v. Lincoln Fin. Grp.*,
   498 F. Supp. 3d 669 (E.D. Pa. 2020) .................................................................... 11

*Hartunian v. Racusin*,
   120 F. App'x 698 (9th Cir. 2005) .......................................................................... 14

*Ideal Elec. Co. v. Flowserve Corp.*,
   CVS-02-1092 DAE LRL, 2007 WL 1108537 (D. Nev. Apr. 10, 2007) ................. 16

I*n re Stream TV Networks, Inc.*,
   23-10763 (MDC), 2024 WL 87639 (Bankr. E.D. Pa. Jan. 5, 2024) ........................ 6

*Kargbo v. FedEx Ground Package Sys., Inc.*,
   2:09-CV-2152-KJD-RJJ, 2010 WL 3896121 (D. Nev. Sept. 29, 2010) ................. 11

*Kerala Props., Inc. v. Familian*,
    122 Nev. 601, 137 P.3d 1146 (2006) .................................................................. 14, 15, 16

*Leaman v. Wolfe*,
    718 F. App'x 154 (3d Cir. 2017)........................................................................ 17

*Messer LLC v. Devault Packing Co.*,
    CV 18-4705, 2020 WL 5820747 (E.D. Pa. Sept. 29, 2020)................................... 11

*Meyer v. CUNA Mut. Ins. Soc.*,
    648 F.3d 154 (3d Cir. 2011) ............................................................................... 13

*Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc.*,
    CIV.A. 09-0956, 2013 WL 1311094 (E.D. Pa. Apr. 1, 2013) ................................ 14

*Progressive Gulf Ins. Co. v. Faehnrich*,
    130 Nev. 167, 327 P.3d 1061 (2014) .................................................................. 11

*Rhino Servs., LLC v. DeAngelo Contracting Servs., LLC*,
    CV 21-3840, 2023 WL 5186254 (E.D. Pa. Aug. 11, 2023)................................... 13

*Schoepe v. Pacific Silver Corp.*,
    111 Nev. 563, 893 P.2d 388 (1995) ..................................................................... 14

*State Drywall, Inc. v. Rhodes Design & Dev.*,
    122 Nev. 111, 127 P.3d 1082 (2006) ................................................................... 14

*TZE Glob. Dis Ticaret A.S. v. Papers Unlimited, Inc.*,
    20-CV-02600, 2023 WL 3241701 (E.D. Pa. May 4, 2023) ................................... 17

**Statutes**

Nev. Rev. Stat. Ann. § 99.040 ................................................................................... 16

Nev. Rev. Stat. Ann. § 99.040(1)(a) ..................................................................... 14, 15

41 Pa. Stat. Ann. § 202 ............................................................................................ 17

**Court Rules**

Fed. R. Civ. P. 56................................................................................................... 6, 10

Fed. R. Civ. P. 56(a) ................................................................................................... 7

Judge Kai N. Scott, Policies & Procedures, § III.E.4 (Feb. 16, 2023)........................ 6, 7

**Other Authorities**

Prime Interest Rate, Nevada Commissioner of Financial Institutions, *available at*
http://fid.nv.gov/Resources/Fees_and_Prime_Interest_Rate/ ................................................... 15

Under Federal Rule of Civil Procedure 56 and Judge Scott's Policies and Procedures § III.E.4, Plaintiff Mark L. Bunce respectfully moves for Partial Summary Judgment as to his Breach of Contract claim, Count I of the Complaint, and seeks an award of $1,050,000 in contract damages, plus prejudgment interest, against Defendant Visual Technology Innovations, Inc.

## I.      Background and Introduction

In his Complaint, Bunce alleges that Defendant Mathu G. Rajan ("Rajan") induced Bunce to loan $1,050,000 to Rajan's company, Visual Technology Innovations, Inc. ("VTI"). As alleged in the Complaint, Rajan's stated purpose for the loan was to enable VTI to obtain valuable intellectual property from another company owned by Rajan, Stream TV Networks, Inc., which filed for Chapter 11 bankruptcy in Delaware (and later in Pennsylvania). *See* Doc. 1 at 3–5 ¶¶ 9–18; *In re Stream TV Networks, Inc.*, Case No. 21-10433 in the United States Bankruptcy Court for the District of Delaware; *see also In re Stream TV Networks, Inc*., BR 23-10763 (MDC), 2024 WL 87639, at *1–13 (Bankr. E.D. Pa. Jan. 5, 2024) (summarizing litigation relating to Stream TV Networks, Inc.). Bunce could potentially profit by converting his loan into shares in VTI at the contract price once VTI had merged into a publicly traded company. *See* Doc. 1 at 3–5 ¶¶ 9–18.

Bunce has asserted three causes of action: (1) Count I, a claim for breach of contract against VTI; (2) Count II, a claim for fraudulent inducement against Rajan; and (3) Count III, a claim for unjust enrichment against Rajan. Doc. 1 at 14–17 ¶¶ 58–74. Bunce has also requested, among other remedies, an award of prejudgment interest. Doc. 1 at 18 ¶ 81.

This motion for partial summary judgment addresses only Bunce's claim against VTI for breach of contract. Doc. 1 at 14–15 ¶¶ 58–66. Bunce entered into notes with Defendant VTI, under which he loaned a total of $1,050,000 to VTI. Bunce loaned this money in consideration of his right to convert his loans into shares in VTI at a favorable set price. The notes, as amended,

provided a schedule for repayment. But the repayment period expired without VTI making any payment. Despite Bunce's written demand for repayment in full, VTI has repaid nothing. The Court should hold that VTI has breached its contract with Bunce and owes him $1,050,000 in compensatory damages. The Court should also award Bunce prejudgment interest.

## II.    Undisputed Material Facts.

Bunce proposes that the following facts are material to Bunce's claim for breach of contract against VTI and are not subject to genuine dispute. *See* Fed. R. Civ. P. 56(a). Record citations are to Bunce's separate Statement of Undisputed Material Facts and to **Exhibits A** through **J** that make up Bunce's appendix. *See* Scott, J., Policies & Procedures § III.E.4.

### A.    *Bunce loaned $1,050,000 to VTI in exchange for the right to convert his loan into shares in VTI at a favorable price.*

In February 2021, Bunce and VTI entered into Convertible Note, #VN21017-00, dated February 25, 2021, which identifies a principal loan amount to VTI of $150,000 in United States dollars. *See* Plaintiff's Statement of Undisputed Material Facts ("Facts") at 1 ¶ 2; *see also* Defendants' Responses to First Requests for Admission ("Defendants' RFA Resps."), **Ex. A** at 2 ¶ 9; February 25, 2021 Note, **Ex. B**; *id.*, Doc. 1-3; Declaration of Mark L. Bunce, **Ex. C** at 1, 3 ¶¶ 2, 13. In consideration for loaning this money to VTI, the note gave Bunce the choice to convert his loan into shares in VTI at a set price. *See* February 25, 2021 Note, **Ex. B** at §§ 3–4. Along with the February 25, 2021 Note, VTI provided investment warrants, signed by Rajan for VTI, which Bunce could execute to convert his loan into shares in VTI at the set price. *See* February 25, 2021 Note, **Ex. B** at 6–22. On or about February 25, 2021, Bunce caused $150,000 in United States dollars to be wire transferred to VTI, which VTI received and accepted. *See* Facts at 1–2 ¶¶ 3–4; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3–4; Payment Records, **Ex. D** at 2–3, 6.

In March 2021, Bunce and VTI entered into Convertible Note #VN21019-00 dated March 8, 2021, which identifies an overall principal loan amount of $1,000,000 in United States dollars. *See* Facts at 2 ¶ 5; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 11; Bunce Decl., **Ex. C** at 2 ¶ 5; March 8, 2021 Note, **Ex. E**; Doc. 1-5. In consideration for loaning more money to VTI, the note gave Bunce the choice to convert his loan into shares in VTI at a set price. *See* March 8, 2021 Note, **Ex. E** at 1 §§ 3–4. Along with the March 8, 2021 Note, VTI provided investment warrants signed by Rajan for VTI, which Bunce could execute to convert his loan into shares in VTI at the set price. *See* March 8, 2021 Note, **Ex. E** at 6–22. On or about March 8, 2021, Bunce caused $850,000 in United States dollars to be wire transferred to VTI, which VTI received and accepted. *See* Facts at 2 ¶¶ 4, 6–7; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3, 5; Payment Records, **Ex. D** at 2, 4, 6.

In April 2021, Bunce and VTI entered into an Amendment to Note dated April 5, 2021. *See* Facts at 2 ¶¶ 8–9; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 12; Bunce Decl., **Ex. C** at 2 ¶ 6; April 5, 2021 Amendment, **Ex. F**; *id.*, **Ex. G**; *id.*, Doc. 1-6. Along with the April 5, 2021 Amendment, VTI provided investment warrants signed by Rajan for VTI, which Bunce could execute to convert his loan into additional shares in VTI. *See* April 5, 2021 Amendment, **Ex. F** at 4–11. The April 5, 2021 Amendment amended the maturity date for repaying the overall $1,000,000 loan. *See* April 5, 2021 Amendment, **Ex. F** at 2; **Ex. G** at 2.

In May 2021, Bunce and VTI entered into Convertible Note #VN21021-00 dated May 4, 2021. *See* Facts at 2 ¶ 9; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 13; Bunce Decl., **Ex. C** at 2 ¶ 7; May 4, 2021 Note, **Ex. H** at 19–22; *id.*, Doc. 1-7. The May 4, 2021 Note provides for an overall principal amount of up to $1,350,000, with an initial additional principal loan amount of $50,000 in United States dollars. *See* May 4, 2021 Note, **Ex. H** at 19 1–2 & §§ 2, 7. In consideration for loaning more money to VTI, the note gave Bunce the choice to convert his loan into shares in

VTI at a set price. *See* May 4, 2021 Note, **Ex. H** at 19 at 1 § 4. On or about May 4, 2021, Bunce

caused $50,000 to be wire-transferred to VTI, which VTI received and accepted. *See* Facts at 2–3

¶¶ 4, 10; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3, 8; Payment Records, **Ex. D** at 6. Bunce loaned a total of

$1,050,000 to VTI.

      B.      *VTI has not repaid the loan as contractually required.*

In November 2021, in consideration for the option to convert his loan into additional shares

in VTI, Bunce and VTI entered into an Amendment to Note dated November 23, 2021. *See* Facts

at 3 ¶ 12; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 14; Bunce Decl., **Ex. C** at 2–3 ¶ 9;

November 23, 2021 Amendment, **Ex. I**; *id*., Doc. 1-8. Among other provisions, the November 23,

2021 Amendment further amended the above-referenced notes by providing the following

repayment schedule as the "Maturity Date" for these notes:

    a.   $225,000 to be paid on or before December 23, 2021
    b.   $225,000 to be paid on or before January 23, 2022
    c.   $200,000 to be paid on or before February 23, 2022
    d.   $200,000 to be paid on or before March 23, 2022
    e.   $200,000 to be paid on or before April 23, 2022.

*See* November 23, 2021 Amendment, **Ex. I** at 2 § 2. The November 23, 2021 Amendment further

states in part: "If any of the payment schedules described in clause 2 are missed by the Company,

the Company has a 5-day cure period to get back on schedule. If not rectified within 5 days, a

single payment default will make the whole of the remaining debt to be due for immediate

payment." *Id*. at 2 § 3.

Bunce has chosen not to execute or exercise any of the investment warrants for converting

the loan into shares in VTI, and he has not converted his loan into shares in VTI. *See* Facts at 3 ¶

12; *see also* Bunce Decl., Ex. C at 3 ¶ 10. VTI made no payment to Bunce on or before December

23, 2021, or within five days after that date. *See* Facts at 3 ¶ 15; *see also* Bunce Decl., Ex. C at 3

¶ 12. Bunce has demanded in writing that VTI repay to him the full loaned amount of $1,050,000.

*See* Facts at 3 ¶¶ 13–14; *see also* Bunce Decl., **Ex. C** at ¶ 11; **Ex. J**. As of the date of Bunce's Declaration, VTI has made no payment to Bunce of any amount. *See* Facts at 3 ¶ 15; *see also* Bunce Decl., **Ex. C** at 3 ¶ 12.

**III.    Argument.**

The Court should hold that, based on the undisputed material facts, VTI breached its contract with Bunce and owes him $1,050,000 in compensatory damages, plus prejudgment interest.

  *A.    Summary judgment standard.*

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant"—here, Bunce—"shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citation omitted). In deciding the motion for summary judgment, the Court "must draw all reasonable inferences in favor of the nonmoving party," VTI, and the Court "may not make credibility determinations or weigh the evidence." *See id.* (citation omitted).

  *B.    The Court should hold that VTI has breached its contract with Bunce and owes him $1,050,000 in compensatory damages.*

A "federal court sitting in diversity," as here, "must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). In "diversity cases such as this one, [the Court must] look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). "Pennsylvania courts have traditionally held that a choice of law provision in a contract will be upheld as long as the transaction bears a 'reasonable relationship to the state whose law is governing,'" *Cottman Transmission Sys., Inc. v. Melody*, 869

F. Supp. 1180, 1184 (E.D. Pa. 1994) (citation omitted), and as long as applying the chosen state's law would not contravene the fundamental public policy of the forum state, *Messer LLC v. Devault Packing Co*., CV 18-4705, 2020 WL 5820747, at *2 (E.D. Pa. Sept. 29, 2020) (applying Pennsylvania law).

The Court should apply Nevada contract law to Bunce's breach-of-contract claim against VTI. The notes, as amended, state they "shall be governed by, and construed in accordance with, the laws of the State of Nevada USA." February 25, 2021 Note, **Ex. B** at 4 § 10; *see* March 8, 2021 Note, **Ex. E** at 4 § 10; April 5, 2021 Amendment, **Ex. F** at 2 § 6; May 4, 2021 Note, **Ex. H** at 21 § 13; November 23, 2021 Amendment, **Ex. I** at 2 § 5. Nevada has a substantial relationship to this action because VTI was organized under Nevada law. *See Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 171, 327 P.3d 1061, 1064 (2014). As in Pennsylvania, "Nevada courts 'routinely honor' choice-of-law provisions in contracts." *Kargbo v. FedEx Ground Package Sys., Inc*., 2:09-CV-2152-KJD-RJJ, 2010 WL 3896121, at *1 (D. Nev. Sept. 29, 2010) (citing *Engel v. Ernst*, 102 Nev. 390, 395, 724 P.2d 215, 216 (1986)). And, in any event, Nevada and Pennsylvania's elements for breach of contract do not materially differ. *Compare Contreras v. Am. Family Mut. Ins. Co*., 135 F. Supp. 3d 1208, 1224 (D. Nev. 2015) (Nevada law) *with Hanna v. Lincoln Fin. Grp*., 498 F. Supp. 3d 669, 684 (E.D. Pa. 2020) (Pennsylvania law).

To establish his claim against VTI for breach of contract, Bunce must show: (1) the existence of a valid contract; (2) the breach of a duty imposed by the contract; and (3) damages suffered due to the breach. *Contreras*, 135 F. Supp. 3d at 1224; *accord Hanna*, 498 F. Supp. 3d at 684. The Court should hold that, based on undisputed facts, VTI has breached its contract with Bunce and must pay Bunce $1,050,000 in compensatory damages.

**First**, Bunce has proved the existence of contracts with VTI. Bunce entered into a series of related contracts with VTI, under which Bunce agreed to loan money to VTI and did loan money to VTI in consideration for the option to convert the loaned money into shares in VTI at a set price:

1. The February 25, 2021 Note, in consideration for which Bunce loaned $150,000 to VTI. *See* Facts at 1–2 ¶¶ 2–4; *see also* Defendants' RFA Resps., **Ex. A** at 2 ¶ 9; February 25, 2021 Note, **Ex. B**; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3–4; Payment Records, **Ex. D** at 2–3, 6.

2. The March 8, 2021 Note, in consideration for which Bunce loaned $850,000 to VTI. *See* Facts at 1–2 ¶¶ 2–4, 6–7; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 11; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3, 5; March 8, 2021 Note, **Ex. E**; Payment Records, **Ex. D** at 2, 4, 6.

3. The April 5, 2021 Amendment, which amended the Maturity Date for the loans under the February 25, 2021 Note and the March 8, 2021 Note, in consideration for the option to obtain additional shares in VTI. *See* Facts at 2 ¶¶ 8–9; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 12; Bunce Decl., **Ex. C** at 2 ¶ 6; April 5, 2021 Amendment, **Ex. F**; *id.*, **Ex. G**.

4. The May 4, 2021 Note, in consideration for which Bunce loaned $50,000 to VTI. *See* Facts at 2–3 ¶¶ 4, 9–10; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 13; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3, 7–8; May 4, 2021 Note, **Ex. H**; Payment Records, **Ex. D** at 6.

5. The November 23, 2021 Amendment, which amended the Maturity Date of the notes by providing for repayment according to a defined schedule in consideration for the option to obtain additional shares in VTI. *See* Facts at 3 ¶ 12; *see also* Defendants' RFA Resps., **Ex. A** at 3 ¶ 14; Bunce Decl., **Ex. C** at 2–3 ¶ 9; November 23, 2021 Amendment, **Ex. I**.

Bunce could profit from his loans if he converted them into shares at a time when the contractually set share price was below market price for the shares. *Cf.* February 25, 2021 Note, **Ex. B** at §§ 3–4; March 8, 2021 Note, **Ex. E** at 1 §§ 3–4; May 4, 2021 Note, **Ex. H** at 19 at 1 § 4.

**Second**, VTI has breached its duties under its contracts with Bunce to repay the loan. Bunce chose not to exercise his right to convert his loan into shares in VTI. *See* Facts at 3 ¶ 12; *see also* Bunce Decl., Ex. C at 3 ¶ 10. The November 23, 2021 Amendment expressly requires VTI to repay the total loaned amount, $1,050,000, per the following repayment schedule:

        a.        $225,000 to be paid on or before December 23, 2021
        b.        $225,000 to be paid on or before January 23, 2022
        c.        $200,000 to be paid on or before February 23, 2022
        d.        $200,000 to be paid on or before March 23, 2022
        e.        $200,000 to be paid on or before April 23, 2022.

*See* November 23, 2021 Amendment, **Ex. I** at 2 § 2. The November 23, 2021 Amendment further provides that "[i]f any of the payment schedules described in clause 2 are missed by the Company [VTI], the Company has a 5 day cure period to get back on schedule. If not rectified within 5 days, a single payment default will make the whole of the remaining debt to be due for immediate payment." *Id*. at 2 § 3.

VTI did not make the first installment payment by December 23, 2021 or within five days thereafter. *See* Facts at 3 ¶ 15; *see also* Bunce Decl., Ex. C at 3 ¶ 12. Despite Bunce's written demand for repayment, VTI has not subsequently paid any amount to Bunce. *See* Facts at 3 ¶¶ 13–15; *see also* Bunce Decl., **Ex. C** at ¶ 11–12; **Ex. J**.

**Third**, due to VTI's breach, Bunce has suffered $1,050,000 in compensatory damages, the total loaned amount that VTI has not repaid. *See* Facts at 1–3 ¶¶ 3–5, 8–10, 15; *see also* Bunce Decl., **Ex. C** at 1–3 ¶¶ 3–5, 7–10, 12; Payment Records, **Ex. D**.

    *C.    The Court should award Bunce prejudgment interest.*

Prejudgment interest compensates a plaintiff who has been wrongfully deprived of money for the loss of use of that money from the time payment became due until a final judgment has been entered. The Court should award Bunce prejudgment interest.

The Court's "decision to award prejudgment interest in an action based on diversity of citizenship," such as this case, "is a question of state law." *Meyer v. CUNA Mut. Ins. Soc*., 648 F.3d 154, 162 (3d Cir. 2011); *see Rhino Servs., LLC v. DeAngelo Contracting Servs., LLC*, CV 21-3840, 2023 WL 5186254, at *6 (E.D. Pa. Aug. 11, 2023). Under both Nevada law and Pennsylvania law, prejudgment interest is necessary to make the plaintiff completely whole. *See*

*ECEM European Chem. Mktg. B.V. v. The Purolite Co.*, CIV.A. 05-3078, 2010 WL 4069188, at
*6 (E.D. Pa. Oct. 15, 2010) (Pennsylvania law), *aff'd sub nom. ECEM European Chem. Mktg. B.V.
v. Purolite Co.*, 451 F. App'x 73 (3d Cir. 2011); *State Drywall, Inc. v. Rhodes Design & Dev.*, 122
Nev. 111, 117–18, 127 P.3d 1082, 1086–87 (2006). For the same reasons that Nevada law should
govern Bunce's claim against VTI for breach of contract, Nevada law should govern Bunce's
request for prejudgment interest. *Supra* at 10–11.

    1.   <u>The Court should award Bunce prejudgment interest under Nevada law.</u>

Under Nevada law, prejudgment interest is recoverable in breach-of-contract actions "as a
matter of right." *Hartunian v. Racusin*, 120 F. App'x 698, 703 (9th Cir. 2005) (quoting *Schoepe v.
Pacific Silver Corp.*, 111 Nev. 563, 565, 893 P.2d 388, 389 (1995)). In other words, under Nevada
law, an award of prejudgment interest for breach of contract "under N.R.S. 99.040 is *mandatory*,
not discretionary." *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc.*, CIV.A. 09-0956,
2013 WL 1311094, at *64 (E.D. Pa. Apr. 1, 2013) (applying Nevada law).

Under Nevada law, "three items must be determined to enable the trial court to make an
appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and
(3) the amount of money to which the rate of interest must be applied." *D.E. Shaw Laminar
Portfolios, LLC v. Archon Corp.*, 755 F. Supp. 2d 1122, 1128 (D. Nev. 2010) (quoting *Kerala
Props., Inc. v. Familian*, 122 Nev. 601, 604, 137 P.3d 1146, 1149 (2006)), *aff'd sub nom. D.E.
Shaw Laminar Portfolios, L.L.C. v. Archon Corp.*, 483 F. App'x 358 (9th Cir. 2012).

**First**, because no interest rate is provided in the notes as amended, the rate of prejudgment
interest is governed by Nevada Revised Statutes Annotated § 99.040. *See Nippo*, 2013 WL
1311094, at *64; *D.E. Shaw Laminar Portfolios*, 755 F. Supp. 2d at 1128–29; *Schoepe*, 111 Nev.
at 565, 893 P.2d at 389. This statute provides that interest is based on Nevada's prime rate:

> When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases: (a) Upon contracts, express or implied, other than book accounts....

Nev. Rev. Stat. Ann. § 99.040(1)(a). The "date of the transaction" is the date when the contract at issue was originally signed. *See Kerala Props.*, 122 Nev. at 604, 137 P.3d at 1149.

The notes, as amended, were originally entered into on February 25, 2021. *See* Facts at 1–2 ¶¶ 2–4; *see also* Defendants' RFA Resps., **Ex. A** at 2 ¶ 9; February 25, 2021 Note, **Ex. B**; Bunce Decl., **Ex. C** at 1–2 ¶¶ 3–4. Nevada's prime interest rate as of that date was 3.25% per annum. *See* Prime Interest Rate, Nevada Commissioner of Financial Institutions, *available at* http://fid.nv.gov/Resources/Fees_and_Prime_Interest_Rate/ (select "Prime Interest Rate") (visited Mar. 27, 2024). The fixed "rate must be adjusted accordingly on each January 1 and July 1 thereafter." Nev. Rev. Stat. Ann. § 99.040(1)(a). The following rate schedule thus applies:

| Date Range | Nevada Prime Interest Rate | Statutory Prejudgment Interest Rate |
|---|---|---|
| January 1, 2021 – June 30, 2021 | 3.25% | 5.25% |
| July 1, 2021 – December 31, 2021 | 3.25% | 5.25% |
| January 1, 2022 – June 30, 2022 | 3.25% | 5.25% |
| July 1, 2022 – December 31, 2022 | 4.75% | 6.75% |
| January 1, 2023 – June 30, 2023 | 7.50% | 9.50% |
| July 1, 2023 – December 31, 2023 | 8.25% | 10.25% |
| January 1, 2024 – June 30, 2024 | 8.50% | 10.50% |

*See D.E. Shaw Laminar Portfolios*, 755 F. Supp. 2d at 1128–30 (providing example of rate schedule). Once a final judgment has been entered in this case, further applicable rates can be determined.

**Second**, prejudgment interest started running on December 29, 2021, the time the entire $1,050,000 loaned amount "became due" for repayment. *See* Nev. Rev. Stat. Ann. § 99.040(1)(a).

The November 23, 2021 Amendment required VTI to repay Bunce a first installment of $225,000 on December 23, 2021. *See* November 23, 2021 Amendment, **Ex. I** at 2 § 2. VTI did not pay that amount by December 23, 2021 or cure that default within five days. *See* Facts at 3 ¶ 15; *see also* Bunce Decl., **Ex. C** at 3 ¶ 12. This "single payment default" thus rendered "the whole of the remaining debt to be due for immediate payment." *See* November 23, 2021 Amendment, **Ex. I** at 2 § 3; *see also* **Ex. J** (demands for repayments).

**Third**, the "amount of money to which the rate of interest must be applied" is $1,050,000. *See* November 23, 2021 Amendment, **Ex. I** at 2 § 2; *D.E. Shaw Laminar Portfolios*, 755 F. Supp. 2d at 1128; *Kerala Props.*, 122 Nev. at 604, 137 P.3d at 1149.

The Court should thus award Bunce prejudgment interest on the principal amount of $1,050,000 as provided in the following schedule:

| Date Range | Nevada Prime Interest Rate | Statutory Prejudgment Interest Rate | Simple Interest Due |
|---|---|---|---|
| December 29, 2021 – December 31, 2021 | 3.25% | 5.25% | $453.08 |
| January 1, 2022 – June 30, 2022 | 3.25% | 5.25% | $27,562.50 |
| July 1, 2022 – December 31, 2022 | 4.75% | 6.75% | $35,437.50 |
| January 1, 2023 – June 30, 2023 | 7.50% | 9.50% | $49,875.00 |
| July 1, 2023 – December 31, 2023 | 8.25% | 10.25% | $53,812.50 |

Prejudgment interest for the period December 29, 2021 through December 31, 2023 thus totals $167,140.58. Additional amounts of prejudgment interest for January 1, 2024 through the date a final judgment is entered can easily be calculated at that time.[1]

---

[1] Nevada's statute does not state whether prejudgment interest is simple or compounded. At least one federal court has concluded that Nevada Revised Statutes Annotated § 99.040 provides for simple interest. *See Ideal Elec. Co. v. Flowserve Corp.*, CVS-02-1092 DAE LRL, 2007 WL 1108537, at *6 (D. Nev. Apr. 10, 2007).

2.     Alternatively, the Court should award Bunce prejudgment interest under Pennsylvania law.

Alternatively, should the Court determine that Pennsylvania law governs prejudgment interest, it should award Bunce prejudgment interest on the principal amount of $1,050,00 at the rate of 6% per annum. *See* 41 Pa. Stat. Ann. § 202; *Leaman v. Wolfe*, 718 F. App'x 154, 156 (3d Cir. 2017). Under Pennsylvania law, the "rate of prejudgment interest is calculated as simple interest at a rate of six percent per year." *TZE Glob. Dis Ticaret A.S. v. Papers Unlimited, Inc*., 20-CV-02600, 2023 WL 3241701, at *11 (E.D. Pa. May 4, 2023) (citation omitted). As under Nevada law, under Pennsylvania law prejudgment interest for breach of contract is a "legal right." *Id.* at 10–11 (citing *Fernandez v. Levin*, 519 Pa. 375, 379, 548 A.2d 1191, 1193 (1988)). Under Pennsylvania law, prejudgment interest for the period December 29, 2021, through December 31, 2023 would total $126,517.81. Additional amounts of prejudgment interest through the date a final judgment is entered can easily be calculated at that time.

## IV.   Conclusion.

The Court should grant partial summary judgment for Bunce, holding that VTI has breached its contract with Bunce to repay the loan. To remedy that breach, the Court should award Bunce $1,050,000 in compensatory damages.

The Court also should award Bunce prejudgment interest. Applying Nevada law, Bunce is entitled to $167,140.58 in prejudgment interest for the period December 29, 2021, through December 31, 2023. Alternatively, applying Pennsylvania law, Bunce is entitled to $126,517.81 in prejudgment interest. In either event, the Court should order that Bunce may apply for a further award of prejudgment and post-judgment interest upon the entry of a final judgment.

Bunce reserves the right to seek post-judgment interest and all other applicable remedies for breach of contract and his other causes of action, including an award of attorneys' fees.

Respectfully submitted,

By: *s/ Michael D. Homans*
     Michael D. Homans
     ID No. 76624
     HOMANSPECK, LLC
     230 Sugartown Road
     Suite 218
     Wayne, PA 19087
     (215) 419-7463
     mhomans@homanspeck.com

     *Attorneys for Plaintiff Mark L. Bunce*

Michael P. Kohler, *admitted pro hac vice*
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
(404) 962-6100
Michael.Kohler@millermartin.com

Robert F. Parsley, *admitted pro hac vice*
Tennessee Bar. No. 23819
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Office: 423.756.6600
Bob.Parsley@millermartin.com

*Attorneys for Plaintiff Mark L. Bunce*

Date: March 29, 2024