**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE, | : | Civil Action |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. C.A. No. 2:23-cv-01740 |
| | : | |
| VISUAL TECHNOLOGY INNOVATIONS, INC. | : | |
| and | : | |
| MATHU G. RAJAN, | : | |
| | : | |
| Defendants/Counterclaim and Third-Party Plaintiffs | : | |
| vs. | : | |
| Mark Bunce and | : | |
| Timothy McCarthy | : | |
| Third-Party Defendant | : | |

**AMENDED
ANSWER, AFFIRMATIVE DEFENSES,
COUNTERCLAIMS, AND THIRD-PARTY CLAIMS**

**RESPONSIVE
INTRODUCTION**

Plaintiff's Introduction section contains numerous assertions in an improper format as specified by the rules. All the assertions in the Introduction are denied. Defendants assert counterclaims and claims against a third party to join in this action. Plaintiff seeks repayment of several promissory notes he provided in reliance that another investor by the name of Timothy

1

McCarthy was planning on investing in Defendant Visual Technology Innovations ("**VTI**") at the same time as him or after him. Plaintiff counted on McCarthy's investment size, in the vicinity of $30 million US Dollars, to be used to repay him quickly after investing in VTI. Plaintiff made his repayment entirely contingent on VTI raising more money. He did not tell VTI that he wanted his money back regardless of the money from McCarthy. Only months later did Plaintiff bully VTI to force it to repay him regardless of McCarthy or more investment money. This document raises counterclaims against Plaintiff for not informing VTI of his true intentions and his promises regarding McCarthy and t fairness under the investment documents.

## PARTIES

1.      Admitted. However, the exact address of Plaintiff is not provided.

2.      Admitted but the choice of law in Plaintiff's contracts specify Nevada law not Pennsylvania law. VTI is a corporation registered in Nevada.

3.      Admitted.

## JURISDICTION AND VENUE

4.      Denied. This averment is a legal conclusion to which no response is required.

5.      Denied. VTI is registered in Nevada. The alleged breach of contract dispute should be heard in Nevada as provided in the contracts between Plaintiff and VTI.

6.      Denied. Defendant Rajan did not engage in any misconduct. Rather, any fraud was conducted exclusively by another person Timothy McCarthy who is being sued in federal court in Nevada.

7.      Denied as Stated. Diversity of parties exist. This averment is a legal conclusion to which no response is required. However, this lawsuit should be determined in Nevada and not Pennsylvania.

8.      Denied. This averment is a legal conclusion to which no response is required.

However, the venue of this lawsuit is in Las Vegas, Nevada as provided in the investment contracts and not Pennsylvania.

## STATEMENT OF FACTS

9. Admitted. Stream TV Networks, Inc. may be abbreviated herein as "**Stream TV**".

10. Admitted.

11. Denied as stated. Stream TV had more debt than equity on its balance sheet shortly after its inception in 2009 since some investors chose to invest through venture debt and not equity. However, Stream TV never missed payroll for its employees since its inception until 2020 and only got into financial problems when the venture debt investors chose to unlawfully take everything and ignore their written debt-to-equity conversion agreements to eliminate their debt. However, the venture debt investors refused to convert the debt to equity, in spite of many promises, in order to seize Stream TV's 3D technology for themselves.

12. Denied. A faction of investors plotted with venture lenders to unlawfully take away all of the assets of Stream TV. Many lawsuits in many other courts exist as a result of the unlawful actions by certain former executives and board members of Stream TV.

13. Denied. Defendant Rajan always felt that the 3D assets of Stream TV were taken away illegally and he was joined in that opinion by many independent lawyers, Plaintiff, and Timothy McCarthy ("**McCarthy**"), mentioned below. Subsequently, the Delaware Supreme Court, sitting *en banc*, ruled unanimously in a fashion that proved the opinions of illegality were correct.

14. Admitted in part and denied in part. The implication that VTI was created to regain the 3D assets taken from Stream TV is admitted. It is denied that VTI was anything but a proper entity which Plaintiff and McCarthy verified before executing investment paperwork.

15. Denied as stated. Both Defendant Rajan and Glen Davis of Knight Davis

3

Associates, LLP., ("**<u>Knight Davis</u>**") provided Plaintiff with accurate information. Knight Davis and Glen Davis were retained by VTI and not Defendant Rajan. In addition, Plaintiff undertook extensive due diligence before he executed any paperwork.

16.     Denied as stated. Knight Davis is an introducer which was working for and agent of VTI.

17.     Denied as stated. The information provided to Plaintiff was more extensive than what is described. Plaintiff was fully aware that VTI had little assets at the time except for an inferior technology called "stitching and tiling" and VTI had to recover (acquire) the superior technology of Stream TV and that is why he required a bankruptcy filing to get those assets of Stream TV.

18.     Plaintiff's paragraph contains numerous allegations. They are all denied. At the time that Plaintiff describes, Burlington had already signed investment documents. The obviously fraudulent letter came from McCarthy and bears a date after the date of the phone call Plaintiff describes. VTI through Davis only told Plaintiff about that letter afterwards. VTI was duped by McCarthy as well as Plaintiff.

19.     Plaintiff's paragraph contains numerous allegations. The writing speaks for itself, and any implications or additional extraneous facts are denied.

20.     Plaintiff's paragraph contains numerous allegations. They are all denied. Plaintiff knew fully that VTI was to contest the Court rulings by an appeal. Plaintiff knew his money and the money of McCarthy would go towards regaining assets of Stream TV. That is why Plaintiff added a requirement in his first loan documents requiring Stream TV to seek bankruptcy protection and to regain Stream TV's assets. Plaintiff admits that his money was to be repaid only when either McCarthy invested larger sums of funds or VTI raised money from other sources.

21.     Plaintiff knew that McCarthy duped him and VTI. That is why he promised to help VTI to

sue McCarthy until he was told to take a different path for legal strategy reasons.

22.  Plaintiffs paragraph contains numerous allegations. They are all denied.

23.  Plaintiffs paragraph contains numerous allegations. They are all denied.

24.  Admitted except for the part of the allegations that refers to "false representation", which is specifically denied.

24a.     Denied.

24b.     Denied.

24c.     Denied.

24d.      Denied.

24. e.     Denied

24f.     Denied.

24g.     Denied.

24h.     Denied.

25.     Plaintiff's paragraph contains numerous allegations. They are all denied.

26.     Plaintiff's paragraph contains numerous allegations. They are all denied.

27.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

28.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself and any implications or additional extraneous facts are denied.

29.     Plaintiff's paragraph contains numerous allegations. They are all denied.

30.     Plaintiff's paragraph contains numerous allegations. They are all denied.

31.      Plaintiff's paragraph contains numerous allegations which are all denied.

32.      Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

33.     Plaintiff's paragraph contains numerous allegations. They are all denied.

34.     Denied.  Plaintiff conducted extensive due diligence including talking to anyone he wished.   In fact, his documents state specifically that he "…acknowledges that it [he] has conducted to its [his] satisfaction an independent investigation and verification of the financial condition, results of operations, assets, liabilities, properties and projected operations of the Company and, in making its determination to proceed with the transactions contemplated by this Agreement, Investor has relied on the results of its own independent investigation and verification…"

35.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.  McCarthy did not keep his written promises to either VTI or Plaintiff Mark Bunce.

36.     Plaintiff's paragraph contains numerous allegations. They are all denied.

37.     Plaintiff's paragraph contains numerous allegations. They are all denied.

38.     Plaintiff's paragraph contains numerous allegations. They are all denied, and, in addition, the referenced document speaks for itself.

39.     Plaintiff's paragraph contains numerous allegations. They are all denied, in addition, the referenced document speaks for itself.

40.     Denied.  The writing speaks for itself.  In addition, it is clear from the writing that VTI and Bunce were duped by McCarthy.

41.     Denied.  The writing speaks for itself.

42.     Denied as stated.

43.     Denied. To the contrary, Plaintiff Bunce and his wife were sure of investment by McCarthy.  Plaintiff was so sure of money from McCarthy he repeatedly inserted in his investment documents with VTI that he could only be repaid after VTI raised more money (USD $1 million

initially then USD $10 million). Plaintiff did not tell anyone at VTI that he would want his money back regardless and without contingency if McCarthy's investment took too long.

44. Denied as stated.

45. Denied as stated.

46. Denied. The writing speaks for itself and is incomplete.

47. Denied. The plain language in Plaintiff's notes refutes these assertions. Plaintiff required a bankruptcy filing his investment documents.

48. Denied. Plaintiff's own writings required that bankruptcy filing.

49. Admitted in part and denied in part. It is admitted that Burlington Resources Asia Limited never invested any money in VTI, despite McCarthy's repeated assurances. Any further part of the assertion are legal conclusions which are denied and require no responsive pleading.

50. Denied.

51. Denied. Plaintiff Bunce's loans were used for lawful business purposes only.

52. Denied.

53. Plaintiff's paragraph contains numerous allegations. The writing speaks for itself, and any implications or additional extraneous facts are denied.

54. Denied. The writings speak for themselves.

55. Denied.

56. Denied. Plaintiff did not want his money back until VTI raised more money.

57. This averment is a legal conclusion to which no responsive pleading is required.

**COUNT I**
**BREACH OF CONTRACT**
**BUNCE v. VTI**

58.     This averment requires no responsive pleading.

59.     This paragraph states a legal conclusion to which no responsive pleading is required.  The assertions are denied if it is determined that a responsive pleading was required.

60.     Denied.  The contracts speak for themselves as they are written documents.

61.     This paragraph contains numerous assertions.  The writing mentioned speaks for itself.  The whole instance happened due to Plaintiff investing in reliance on investment by McCarthy and indicated that he could wait for his investment for repayment (maturity was dependent on more money in VTI).

62.     Denied.  This paragraph avers numerous allegations, and they are all denied.  The averments are legal conclusions to which no responsive pleading is required.

63.     Denied.  The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

64.     Denied.  The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

65.     The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

66.     The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.


**COUNT II**
**FRAUDULENT INDUCEMENT**
**BUNCE v. RAJAN**

67.     This averment requires no responsive pleading.

68.     This paragraph contains numerous averments.  The averments are legal conclusions

to which no responsive pleading is required.  To the extent that some facts are intertwined in the averment, they are denied.

69.     Denied.   This  paragraph  provides  legal  conclusions  to  which  no  responsive pleading is required.

70.     Denied.   This  paragraph  provides  legal  conclusions  to  which  no  responsive pleading is required.

71.     Denied.   This  paragraph  provides  legal  conclusions  to  which  no  responsive pleading is required. Plaintiff conducted his own due diligence and warranted in writing that he performed independent verifications.

72.     Denied.   This  paragraph  provides  legal  conclusions  to  which  no  responsive pleading is required.  Davis worked for VTI not Defendant Rajan.

73.     Denied.   This  paragraph  provides  legal  conclusions  to  which  no  responsive pleading is required.

74.     Denied.   This  paragraph  provides  a  legal  conclusion  to  which  no  responsive pleading is required.

**COUNT III**
**UNJUST**
**ENRICHMENT**
**BUNCE v. RAJAN**

75.     This averment requires no responsive pleading

76.     Denied.   This  paragraph  provides  numerous  legal  conclusions  to  which  no responsive pleadings are required.

77.     Denied.  Plaintiff Bunce provided no benefit to VTI by misleading it in order to obtain warrants for equity.

78.     Denied. This averment states legal conclusions to which no responsive pleading is

required.

79.    Denied. This averment states legal conclusions to which no responsive pleading is required.

80.    Denied.  This averment states legal conclusions to which no responsive pleading is required.

74.    This paragraph is numbered erroneously as it provides again the number 74 but after the number 80.  The averment states a legal conclusion to which no responsive pleadings are required.

### PRAYER FOR RELIEF

75.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

76.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

77.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

78.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

79.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

80.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

81.    This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

82.    This averment is incorrectly numbered, but it states a legal conclusion to which no

responsive pleading is required.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**

Plaintiff's amendment to his debt that eliminated the pre-condition for repayment/maturity, Exhibit 8 to Complaint, is invalid as it was based on duress, undue influence, and other forms of undue pressure in a manner that invalidates that contract/amendment. Referred to as Repayment Amendment as fully described below. Also, there was no meeting of the minds for contract formation.

**Second Affirmative Defense**

Alternatively, Plaintiff's amendment to his debt that eliminated the pre-condition for repayment/maturity, Exhibit 8 to Complaint, was worded so that it provided an installment payment in addition to VTI raising $10,000,000. It did not use replacement language for the $10,000,000 precondition like the language used in other contracts referenced as amendments. For that reason, Plaintiff's loans are not yet mature. There was no meeting of the minds for contract formation.

**Third Affirmative Defense**

The loans/investments of Plaintiff Bunce are not yet mature nor collectable for the reasons mentioned in the background and counterclaims.

**Fourth Affirmative Defense**

The loans/investments of Plaintiff Bunce should be cancelled, rescinded, or voided for the reasons mentioned in the background and counterclaims including the fraud of Plaintiff Bunce.

**Fifth Affirmative Defense**

The contracts of Plaintiff were induced through the misrepresentation and false promises of Timothy McCarthy and not VTI, Defendant Rajan, or any of the representatives of VTI.

**Sixth Affirmative Defense**

The third-party claims against McCarthy should be used to offset and pay Plaintiff.

**Seventh Affirmative Defense**

McCarthy is responsible for any harm to Plaintiff Bunce since he induced him directly or indirectly to invest in VTI.

**Eighth Affirmative Defense**

Plaintiff's lawsuit should be heard in Nevada and not in Pennsylvania.

**Nineth Affirmative Defense**

A claim for unjust enrichment cannot exist in the same lawsuit when a breach of contract is also claimed.

**Tenth Affirmative Defense**

No meeting of the minds occurred with regard to a contract called "Amendment to Note" executed November 23, 2021 (the document is attached to Complaint as Exhibit 8). No contract or contract obligations were ever created.

**Eleventh Affirmative Defense**

The fraud of Plaintiff Bunce invalidated or voided any obligations to Plaintiff Bunce.

**Twelfth Affirmative Defense**

Exhibit 8 to the Complaint, Plaintiffs contract to seek immediate repayment of his unmatured loans is based on mistake or other reasons for not formatting a contract.

**Thirteenth Affirmative Defense**

Exhibit 8 to the Complaint, Plaintiffs contract to seek immediate repayment of his unmatured loans never formed as it lacked consideration to repay a debt earlier than maturity.

**Fourteenth Affirmative Defense**

Exhibit 8 to the Complaint, fails as it was based on untruths told to obtain execution by fraud.

## COUNTERCLAIMS AND THIRD-PARTY CLAIM

83.     All of the averments, responses of Defendants and information in the Defenses are incorporated herein by reference as if fully set forth.

### Parties

84.     Plaintiff, Mark Bunce, who is a Counterclaim Defendant is identified in Plaintiff's Complaint.

85.     Another person is being joined in this lawsuit as a third-party Defendant; his name is Timothy McCarthy ("**McCarthy**").

86.      McCarthy is an adult individual with an address of Blackfoot Point, #104, 8826 Blackfoot Trail SE Calgary AB | T2J 3J1.

87.     McCarthy formerly resided in the United Kingdom not too far from Mark Bunce, who lives in the prestigious area of the Channel Island of Guernsey, but McCarthy absconded to Canada after defrauding Mr. Bunce and VTI.

88.     Adding/joining McCarthy to this lawsuit will not destroy diversity jurisdiction as Plaintiff and Defendants and the third party Defendant reside in different countries.

### Jurisdiction

89.     As stated by Plaintiff in his Complaint, jurisdiction in Federal Court is based on 28 U.S. Code § 1332.  The requirements of that statute are met.

90.     However, there is dispute between Plaintiff and Defendants if this lawsuit should be

properly heard in Federal Court in Nevada as opposed to being heard in Federal Court in Pennsylvania.

91.     In fact, a lawsuit has commenced already against McCarthy in Nevada Federal Court at 2:24-cv-00728-ART-EJY.

92.     The third-party claim against McCarthy in this case is only about his legal responsibility to Mark Bunce instead of Defendants.

93.     Jurisdiction is based on diversity of citizenship and the joinder of the third-party Defendant does not change the jurisdiction of the Federal Courts.

**Jury Demand**

94.     A trial by Jury is demanded by Defendants.

**Background**

95.     McCarthy signed investment paperwork through his company Burlington Resources Asia Limited ("**Burlington**") with VTI on or about February 10, 2021.

96.     McCarthy did not close on that written promise and gave VTI all kinds of excuses.

97.      McCarthy insisted that VTI find an investor of USD one million dollars or more to invest in VTI before his money closed so that he could call his money "growth investment."

98.      That insistence by McCarthy led to VTI finding Mark Bunce.

99.     At all times Mark Bunce was to be an investor to help conclude the money of McCarthy that was promised in writing but not yet closed.

100.    Mark Bunce invested only seventeen (17) days from the date that McCarthy had signed investment paperwork with VTI.

101.    Mark Bunce never told VTI that he wanted his repayment regardless of McCarthy closing in VTI.

102.    In fact, Mark Bunce expressed the opposite in his investment writings—that

repayment of his investment loans was entirely contingent on more money into VTI.

103.    McCarthy and Mark Bunce spoke privately on the phone several times.

104.    Mark Bunce and his spouse Andrea Bunce were convinced that McCarthy would close the monies he promised in VTI.

105.    The Bunces performed extensive due diligence for their investments in VTI.

106.    Mark Bunce represented in a writing to VTI that he had conducted his own diligence before investing.

107.    Mark Bunce also wrote that he knew the risks associated with investing.

108.    Despite Mark Bunce's great experience and that of his spouse Andrea Bunce, he wrote in the loan documents a precondition or contingency before the investment loans matured or could be repaid.

109.    In the first investment of Mark Bunce, he specified that he could not seek repayment until a) another company called Stream TV Networks, Inc. declared bankruptcy and b) that USD One Million ($1,000,000) of the Thirty Million promised to VTI had closed.

110.    Those conditions explain the mentality of Mark Bunce when he invested in VTI three (3) times.

111.    That pre-condition of USD One Million ($1,000,000) was exactly the amount of the investment promised VTI by McCarthy with another $29,000,000 to follow.

112.    Mark Bunce increased his contingency for repayment to USD Ten Million ($10,000,000) before he could demand repayment; Mark Bunce made that change less than thirty (30) days after the second loan through an amendment.  That amendment is attached as Exhibit 8 to the Complaint.  ("**Contingency Amendment**").

113.    The Contingency Amendment delayed maturity for repayment **only when** "…the Company has received an aggregate total of US Dollars Ten Million (US $10,000,000) in new capital

from the date of this Amendment ("Maturity Date")".

114.    Before that amendment, maturity date in the  second loan was thirty (30) days.

115.    Mark Bunce increased his contingency trigger for repayment to USD Ten Million Dollars ($10,000,000) from USD One Million Dollars ($1,000,000) in his First Loan.

116.    Mark Bunce agreed to the contingency again when he invested more money in VTI in his third his third investment.

117.    The third investment of Mark Bunce provided that it does not mature until VTI has received USD Ten Million Dollars ($10,000,000).  Exhibit 7 to Complaint, section 1.

118.    Mark Bunce spoke directly to McCarthy to independently verify McCarthy's intentions regarding VTI since Mark Bunce relied on monies from McCarthy so he could be repaid.

119.    VTI only represented to Bunce what McCarthy had informed them representative to them until Mark Bunce began talking directly to McCarthy.

120.    Eventually, Plaintiff Mark Bunce became doubtful of investment of McCarthy in VTI as McCarthy was constantly delaying the actual closing on his investment promises with VTI.

121.    McCarthy even testified under oath in front of a federal judge to assure all parties that his intention to invest in VTI was coming.

122.    Even after his initial skepticism, Mark Bunce invested in VTI again, hopeful of the investment money from McCarthy finally coming through.

123.    Mark Bunce wanted to believe McCarthy may close with VTI and again put in a "contingency" for repayment with his last investment/loan.

124.    Mark Bunce was and is a very sophisticated investor as he invested for over forty (40) years.

125.    The wife of Mark Bunce, Andrea Bunce, also was a very knowledgeable investor as she worked in the business of securing money for companies.

126.     Andrea Bunce obtained training and gained experience in legal matters related to deals involving investment capital for companies.

127.     She also knew which lawyers or law firms specialized in investing in companies; she knew from her work which legal advisers are extremely knowledgeable in securities and investments in the same manner of the transaction contemplated with VTI.

128.     Mark Bunce and Andrea Bunce lied to VTI as to their investments in order that VTI would view them as suitable as a precursor investor to Timothy McCarthy.

129.     The Bunces knew Defendant Rajan, the CEO of VTI, had raised million dollars in investments before and that if Mark Bunce did not appear suitable for McCarthy, Defendant Rajan would go to another investor instead of Mark Bunce.

130.     Mark Bunce did not tell VTI that they would invest in VTI but structure it a loan with repayment due on a date certain; rather Mark Bunce wrote that he would get no repayment options until VTI raised more money (initially $1,000,000 and then $10,000,000); Mark Bunce write that contingency to fool them.

131.     Mark Bunce, with Andrea's legal knowledge and ability to retain legal advisers, could have and should have structured their loan repayments to have no contingency or pre-condition for repayments; for example, they could have and should structure the loan that matures and is repaid after on 12/31/2021.

132.     They provided a date certain for maturity in the second loan documents until it they changed it by written amendment a few days later.

133.     A loan that is to bridge to another investment event (like the McCarthy investment) is known as a "bridge" loan; whereas the typical loan matures on a date certain, with no contingency, and is known as a "straight" loan.

134.     Mark Bunce started regretting his lie to VTI.

135.     Mark Bunce started wanting his money back when he got tired of waiting for McCarthy for repayment.

136.     Mark Bunce stopped talking to Knight Davis, who were agents for VTI; they were friendly to McCarthy and only acted as the messenger to transmitted investment paperwork to him from VTI.

137.     Mark Bunce knew or should have known his investment documents did not allow him to get his money back from VTI since the paperwork tied repayment only when VTI received USD Ten Million Dollars ($10,000,000).

138.     Therefore, Plaintiff Mark Bunce realized he had to get a new replacement contract to try to recoup his money from VTI; otherwise, his investment loans would not mature until VTI raised at least $10,000,000.

139.     Mark Bunce pressured VTI to have Defendant Rajan to execute a new amendment no matter what the cost.

140.     Mark Bunce and his representative told Defendant Rajan he would not be sued if he signed the amendment mentioned below as Repayment Amendment and that Plaintiff Bunce would only sue McCarthy.

141.     Mark Bunce bullied VTI through Defendant Rajan and caused him severe apprehension where he felt he had to succumb to a new amendment of Mark Bunce.

142.     Attached as **Exhibit B** is an email from Mark Bunce to Defendant Rajan that conveyed demand for immediate repayment.  That email was sent November 4, 2021.

143.     Only three (3) days later Mark Bunce sent another email to Defendant Rajan threatening to cause massive disruption to VTI.  That email is attached hereto as **Exhibit C**.

144.     When Defendant Rajan spoke to Mark Bunce, Bunce made it clear that he wanted repayment immediately or he would shut down VTI and its desire to regain the assets and technology

of Stream TV which VTI hoped to recover.

145. Defendant Rajan worried that many other people would be affected by the threats of Mark Bunce since VTI had many other investors who were shareholders.

146. Defendant Rajan finally signed the new amendment because he felt he had no choice. That amendment is attached to the Complaint of Plaintiff Bunce as Exhibit 8 thereto (hereafter called the "**Repayment Amendment**")..

147. Plaintiff Bunce's entire breach of contract claim against VTI is based on that Repayment Amendment since all other prior documents made repayment only due only after USD $1-$10 Million Dollars was invested in VTI.

148. The entire breach of contract claim is based entirely on the Repayment Amendment since all prior contracts required repayment only after $10,000, 000 was invested in VTI.

149. The Repayment Amendment was written in opposite of the lie (material omission) that Mark Bunce told VTI to invest into VTI.

150. The lie (material omission) of Mark Bunce created his own legal problems.

151. But the Repayment Amendment did not contain a phrase that was used many times before - a phrase that specified that the amendment replaced a previous section and now the section reads what the amendment specified.

152. For that reason and what was in the mind of Defendant Rajan, he executed the Repayment Amendment thinking that installments were only due if VTI obtained the USD $10,000,000 precondition.

153. In essence, Defendant Rajan did not intend the Repayment Amendment to replace the USD $10,000,000 precondition but rather was an additional requirement.

154. The Repayment Amendment shows Mark Bunce's greed as he obtained another seven (7) million warrants for equity from VTI.

155.     Mark Bunce knew he and VTI were misled and duped by McCarthy.

156.     Mark Bunce complained about McCarthy's investment delay and how it was unfair to he and VTI.

157.     Mark Bunce expressed to VTI that he would help sue McCarthy in a court of law but instead, after consulting advisors, Mark Bunce chose to sue only VTI and Defendant Rajan without McCarthy for legal strategy reasons.

## CLAIMS

### COUNT I
### (VTI Counterclaim against Mark Bunce)
### COMMON LAW FRAUD

158.     All the averments above are incorporated herein as if fully set forth.

159.     Mark Bunce and his wife misrepresented to VTI that they would wait unconditionally for repayment of his investment monies.

160.     That was a lie and fraud on VTI to induce it to take the investment money of Mark Bunce to invest with McCarthy.

161.     The fraud/lie was to convince VTI (by material omission) that he, Mark Bunce, would be a perfect precursor investor before McCarthy's monies.

162.     Mark Bunce convinced VTI by lying to VTI that he would not seek repayment until VTI closed on another $10,000,000 which Mark Bunce assumed would be from McCarthy or new investors that Mcarthy knew.

163.     Mark Bunce thought that it was not risky as an investment because McCarthy had already promised VTI that he, McCarthy, would invest USD $30,000,000.

164.     Mark Bunce had known Defendant Rajan had raised USD $100,000,000 from many

angel investors in other 3D ventures and that he, Mark Bunce, would be rejected as an investor if he did not lie to VTI (by material omission).

165.     His lie is contained in his first investment, which triggered the repayment option (maturity) after VTI raised USD $1,000,000.

166.     In his second loan he forgot that contingency, so he amended the loan paperwork so that the maturity was changed to have a precondition that VTI raise another USD $10,000,000.

167.     In his third loan, Mark Bunce added the contingency again, so it said very clearly that the loan only matured after USD $10,000,000 more was raised.

168.     Mark Bunce had a legal obligation to inform VTI that he would or might want his money back regardless of further investment or other monies into VTI.

169.     He had that obligation to VTI to disclose that fact before any monies were exchanged.

170.     That type of disclosure is very common for investors to tell a potential company before investment.

171.     Had Mark Bunce invested in the common stock of VTI, he would never have been able to seek repayment —he could only profit through capital gains.

172.     Mark Bunce wanted a loan but never told, either orally or in writing, VTI that he wanted his money back regardless of McCarthy's or more investment money into VTI before he invested in VTI.

173.     Investors assume risks associated with investments, so full disclosure and transparency is paramount.

174.     Had VTI been told of the lack of contingency for repayment to Mark Bunce, the suitability of Mark Bunce as an investor in VTI would have been reassessed.

175.     Mark Bunce never gave VTI the chance to reevaluate the suitability of his investment because he misrepresented contingency for repayment in all of his investments (3).

176.     Mark Bunce should have disclosed that he wanted his money back (repaid) with or without VTI raising more money (presumably from McCarthy).

177.     Mark Bunce could have, as an example, indicated he wanted his money back (repayment) in so many days to give VTI a reasonable chance to secure more monies elsewhere; for example, Mark Bunce could have had all his investments/loans matured and due for repayments at the end of 2021.

178.     Mark Bunce intentionally chose not to tell such to VTI through its representatives.

179.     VTI relied on that representation by Mark Bunce in accepting his investments.

180.     Mark Bunce swore in his investment documents that he "...*is aware that an investment in the securities of any kind involves a number of very significant risks and understands any of such risk may materially adversely affect the Company's operations and future prospects...*"

181.     VTI has suffered injury and harm as a result of relying on the untruths by Mark Bunce.

182.     The written language of Mark Bunce is an indication and an example of his false statements.

183.     At all times before the Repayment Amendment and the threats and email preceding the same, Mark Bunce portrayed himself and his investment as only requiring repayment after McCarthy or other larger money into VTI.

184.     Mark Bunce falsely portrayed himself as the perfect investor to invest before McCarthy as he did not want his money back until after the investment of McCarthy closed.

185.     Even on the third loan/investment of Mark Bunce, he provided language of a contingency before repayment was legally due.

186.     Mark Bunce wrote in pertinent part that "…Maturity Date. The Note will Mature 10 days after the confirmation that the Company [VTI] has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("Maturity")."

(clarification added).

187.     VTI should have been given the opportunity to not accept the loans of Mark Bunce or deny it if it were told the truth of the intentions of Mark Bunce.

188.     Mark Bunce knew or should have known he would want his money back regardless of monies from McCarthy or other investors into VTI.

189.     Mark Bunce intended to induce VTI to accept his loans so that he would have the opportunity to invest alongside McCarthy.

190.     Mark Bunce knew that if he told VTI of his true intentions, he would likely not be allowed to invest in/lend to VTI.

191.     Mark Bunce also obtained equity in VTI with his loans which he would not have received had he told the truth before his loans.

192.     Mark Bunce deceived VTI because he knew that if he told the truth before his loans were accepted, he would likely not be able to invest alongside McCarthy.

193.     Those representations by Mark Bunce were false and misleading to induced VTI to accept his monies.

194.     Mark Bunce obtained warrants for equity as a direct result of his misrepresentations.

195.     The false statements and misrepresentation of Mark Bunce were material to VTI.

196.     VTI has been much worse off because of the falsities of Bunce.

197.     Mark Bunce is sophisticated and knew or should have known that his false representation may cause problems for VTI, yet he proceeded anyway in disregard to VTI.

198.     VTI was totally justified in believing Mark Bunce and his representations, which proved to be false.

199.     VTI has suffered damage as a result of the false representations of Mark Bunce.

200.     VTI, through Defendant Rajan, relied on Plaintiff's false representations and accepted

the investment monies of Mark Bunce.

201.    Mark Bunce contributed to or caused the collapse of VTI's operations.

202.    The perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

203.    Once the Stream TV assets were reacquired by Defendant Rajan and VTI, the enterprise value would have been over USD Five Hundred Million Dollars ($500,000,000).

## COUNT II
### (VTI Counterclaim against Mark Bunce)
### GOOD FAITH AND FAIR DEALING

204.    All of the averments above are incorporated herein as if fully set forth.

205.    All of Mark Bunce's original investment documents required repayment/maturity only after VTI raised USD One Million Dollars ($1,000,000) to USD Ten Million Dollars ($10,000,000).

206.    That is a contingency or pre-condition before repayment.

207.    All contracts imply a duty of good faith and fair dealing; and the contracts that imposed that duty in Mark Bunce are identified below.

208.    Mark Bunce made his first investment as a loan with two (2) contracts, namely a Convertible Note Agreement and a Convertible Note.

209.    The second investment/loan also involved a Convertible Note Agreement and a Convertible Note.

210.    The second loan documents defined "maturity" as thirty (30) days later from the execution.

211.    Then less than thirty (30) days later, Mark Bunce Amended the second loan documents and redefined maturity as only occurring after VTI had raised USD $10,000,000.

212.    The third investment/loan also involved a Convertible Note Agreement and a Convertible Note. (All of those documents are attached to Plaintiff's Complaint and are not added

24

here again to save length.)

213. The duty of good faith and fair dealing emanates from all those contracts that largely impose the same obligations between Mark Bunce and VTI.

214. Mark Bunce breached the duties of good faith and fair dealing in all of these contracts by demanding his money back before they were due or mature as specified.

215. Bunce breached that duty of good faith and fair dealing by asking that the contingency for repayment be removed by reason of a new amendment called the Repayment Amendment.

216. That breach has caused VTI injury and damage.

217. As stated above, the perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

218. Also as stated above, the enterprise value would have been over USD Five Hundred Million Dollars ($500,000,000) once the Stream TV assets were reacquired by Defendant Rajan and VTI.

219. That value was lost due to the actions of Mark Bunce.

**COUNT III**
**(VTI Counterclaim against Mark Bunce)**
**BREACH OF CONTRACT**

220. All of the averments above are incorporated herein as if fully set forth.

221. The investment contracts of Mark Bunce with VTI are contained as attachments to the Complaint, as Exhibits, 3, 5, and 7.

222. The documents for Exhibit 5 to them Complaint were amended by the documents attached to Complaint as Exhibit 6 to the Complaint. (there was another amendment also)

223. VTI, through Defendant Rajan, only executed the amendment called the Repayment Amendment due to a) immense pressure of Mark Bunce, b) misunderstanding that the Repayment Amendment required immediate payment even before VTI raised more money and c) the promise of

Mark Bunce that he will help Defendant Rajan and VTI pursue McCarthy to recoup losses from his apparent fraud.

224.     Mark Bunce was very clever with Defendant Rajan with the Repayment Amendment as he used threats and promises of help to scare Defendant Rajan and offer him help to legally pursue McCarthy.

225.     He and his representatives promised Mathu Rajan that they would not sue Mathu Rajan if he signed the Repayment Amendment.

226.     Mark Bunce breached those contracts and caused VTI harm and damage.

227.     As stated above, the perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

228.     Also as stated above, the enterprise value would have been over USD Five Hundred Million Dollars ($500,000,000) once the Stream TV assets were reacquired by Defendant Rajan and VTI.

229.     That value was lost due to the actions of Mark Bunce.

**COUNT III**
**(VTI Counterclaim against Mark Bunce)**
**NEVADA SECURITIES VIOLATION**

230.     All of the averments above are incorporated herein as if fully set forth.

231.     Nevada law NRS  90.245 defines "Fraud," "deceit" and "defraud" defined.    "Fraud," "deceit" and "defraud" are not limited to common-law fraud or deceit.

232.     The Big Lie information qualifies as fraud and deceit in NRS  90.245.

233.     Nevada Law, specifically NRS 90.570, prohibits people like Mark Bunce from purchasing securities, loans in his case, to make untrue statements of material facts and to otherwise defraud.

234.     Though the transactions between VTI and Bunce are exempt from registration, Mark

Bunce should have complied with Nevada securities laws.

235.    Nevada through NRS  90.295    defines a "security" as a note, stock, bond, debenture, evidence of indebtedness, and many other forms of security.

236.    The investment debt of Mark Bunce qualifies as a "security" as defined by Nevada and also Federal laws.

237.    Nevada NRS  90.660 allows for civil liability for the fraud committed by Mark Bunce with VTI.

## COUNT III
### (VTI Counterclaim against Mark Bunce)
### FRAUDULENT CONCEALMENT

238.    All of the averments above are incorporated herein as if fully set forth.

239.    Mark Bunce concealed or suppressed a material fact, namely that he wanted his money regardless of money from McCarthy or VTI raising more money (the "**Big Lie**").

240.    Mark Bunce was under duty to disclose the information behind the Big Lie—his expectations for repayment.

241.    Mark Bunce intentionally concealed or suppressed the information surrounding the Big Lie with the intent to defraud VTI (he wanted to induce VTI to take his money as a loan).

242.    VTI would not have taken the money Mark Bunce if they knew the information surrounding the Big Lie.

243.    Asa direct result of the Big Lie, VTI has sustained damages.

## COUNT IV
### (Third-Party Claim against Timothy McCarthy)
### MISREPRESENTATION

244.    All of the averments above are incorporated herein as if fully set forth.

245.    McCarthy became intimately involved with VTI.

246.    McCarthy portrayed himself as a seasoned investor in very big deals which he knew

would be relied on by VTI and other investors in VTI like Mark Bunce. Attached is a copy of the description McCarthy describes himself from the internet. **Exhibit D.**

247.     Mark Bunce spoke directly to McCarthy numerous times.

248.     Mark Bunce performed extensive diligence before all of his investments particularly with regard to McCarthy.

249.     Later, Bunce even admitted he knew McCarthy and/or his brother and their affiliation with Sir Richard Branson of various Virgin enterprises.

250.     McCarthy defrauded Mark Bunce, not VTI or Defendant Rajan.

251.     McCarthy's own declaration indicates how he portrayed his investment prowess and investment interest in VTI. The Declaration of McCarthy is attached as **Exhibit E** hereto and incorporated by reference as if fully set forth.

252.     McCarthy told lies to VTI, which it in turn passed on as information to Mark Bunce. **Exhibit F** hereto is a bank statement that McCarthy showed VTI in a virtual call.

253.     The bank statement shows over USD $103,018,461.95 in a bank account owned by McCarthy or his company.

254.     Representatives of VTI took a screen shot of the bank statement and verbally passed on information to Mark Bunce that they had seen a bank statement indicating that McCarthy had substantial money in his bank account.

255.     McCarthy caused Mark Bunce to be defrauded also by sending a letter from a company called Knight Asia Limited in Hong Kong that allegedly represented McCarthy and/or his company.

256.     Mark Bunce knows that he was defrauded by McCarthy as he attached that letter from Knight Asia Limited to his Complaint as exhibit 2.

257.     Knight Asia Limited has no affiliation or relationship whatsoever with VTI or Defendant Rajan.

258.     Attached as **Exhibit G** is an email from VTI confirming a call with McCarthy in which he (McCarthy) expressed enthusiasm for his investment.  It provides in pertinent part, that

> I was good to hear you so enthusiastic now that you are so close to getting your deal away, and I'm confident that I am not alone in wishing you good luck during this closing phase. (emphasis added)

259.     Exhibit G also asks McCarthy to talk to Bunce directly and keep him updated.

260.     McCarthy's representation that he would invest in VTI was fraud.

261.     McCarthy perpetrated that fraud numerous times.

262.     McCarthy knew or should have known that many people including Mark Bunce relied on his false promises to invest and/or wait for repayment.

263.     Mark Bunce has suffered injury or losses caused as a result of the falseness of McCarthy.

264.     McCarthy is responsible to Mark Bunce, not VTI or Defendant Rajan.

### Prayer for Relief

VTI and Defendant Rajan ask that

a)  judgment be entered in their favor against Mark Bunce;

b)  rescind any and all contracts of Mark Bunce and VTI;

c)  award them damages of $500,000,000 or an amount proven at trial;

d)  enter a finding or judgment that Timothy Mcarthy is responsible to Mark Bunce for all damages including the monies Bunce invested in VTI;

e)  Award any other relief the Court deems appropriate, including reasonable attorneys fee.

### Attachments

Exhibit A- Amendment making Bunce 2nd Loan Contingent
Exhibit B- Email of Mark Bunce wanting Repayment (11/4/2021)
Exhibit C- Email of Mark Bunce wanting Repayment (11/7/2021)
Exhibit D- McCarthy Biography

Exhibit E- McCarthy Declaration
Exhibit F- McCarthy Bank Statement
Exhibit G-Email Confirming McCarthy Enthusiasm and Contact Directly
Exhibit H-March 2011 Investment Contracts


Respectfully submitted,

/s/ Raja Rajan

Raja Rajan, Esquire
Attorney I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002
visualtechnologyinnovations@gmail.com

*Attorney for all Defendants*


Dated: April 24, 2024

## -Exhibit A-

Amendment making Bunce 2nd Loan Contingent

## AMENDMENT TO NOTE

THIS AMENDMENT dated as of April 5, 2021 ("**Amendment**") is between Mark Leonard Bunce or his/her/its registered assigns ("**Holder**") and Visual Technology Innovations, Inc., a Nevada USA corporation (the "**Company**"), with its principal offices at 1105 William Penn Drive, Bensalem, PA 19020 USA and amends the Convertible Note (Note VN21019-00) dated on or about March 8, 2021 or signed simultaneously between the Company and Purchaser ("**Note**"). All capitalized terms not herein defined shall have the meaning ascribed to them in the Agreement, as amended.

## WITNESSETH

**WHEREAS**, the Company and Holder wish to amend the Note.

**NOW, THEREFORE**, the parties hereto, in consideration of the mutual promises herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby agree to amend the Note as follows:

1. Unless otherwise specified herein, each term used herein that is defined in the Note, as amended, shall have the meaning assigned to such term in the Note.

2. Section 1 of the Note VN21019-00 shall amended in its entirety and will read as follows:

> The Note will Mature 10 days after the confirmation that the Company has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("**Maturity Date**").

3. Section 3 of the Note VN21019-00 shall be amended in its entirety and will read as follows:

> The Holder may convert the Total Value of the Note any time into Class A Common Shares of the Company ("**Shares**") at a price of $0.23 per Share or the Company may convert the Total Value of the Note into Shares at a price of $0.23 per Share upon the Maturity Date ("**Conversion Expiry**").

4. The Holder may request repayment with a notice of 10 business days for the Total Value at any time six (6) months after the date of this Amendment but prior to Conversion Expiry.

5. The Holder will be issued additional 300,000 bonus warrants in the same form of the warrants VW21025 as previously issued.

6. Except as expressly amended by this Amendment, the provisions of the Note, as amended, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed on the date first above written.

| COMPANY: | Visual Technology Innovations, Inc. | HOLDER: | Mark Leonard Bunce |
|---|---|---|---|
| SIGNED: NAME: | Mathu Rajan | SIGNED: NAME: | Mark Leonard Bunce |
| TITLE: | President | TITLE: | M.L. Bunce. |
| DATE: | Apr 6, 2021 | DATE: | 6 April 2021 |

**–Exhibit B–**
Email of Mark Bunce wanting Repayment (11/4/2021)

Dear Mathu

I understand that Vti ("the Company") has failed one of the Conditions of the Convertible Note ≠ VN21021-00, issue date May 4 2021, namely to raise the US$10m specified.

Therefore I am now, today, November 04 2021 giving notice that I expect repayment of such amount no later than 10 business days after the expiry date, November 04 2021, namely on or before November 18 2021.

The amount to be repaid stands at US$1,050,000.

Please confirm by return that funds will be received and the date repayment is expected to be made.

We reserve all rights to take action should funds not be forthcoming.

Regards

Mark Bunce

**-Exhibit C-**
Email of Mark Bunce wanting Repayment (11/7/2021)

Dear Mathu

I would appreciate confirmation of receipt of my email below. If not I will ask for it to be served in person to Vti.

Regards

Mark Bunce

> On 4 Nov 2021, at 17:50, Mark Bunce <marklbunce@me.com> wrote:
>
> Dear Mathu
>
> I understand that Vti ("the Company") has failed one of the Conditions of the Convertible Note ≠ VN21021-00, issue date May 4 2021, namely to raise the US$10m specified.
>
> Therefore I am now, today, November 04 2021 giving notice that I expect repayment of such amount no later than 10 business days after the expiry date, November 04 2021, namely on or before November 18 2021.
>
> The amount to be repaid stands at US$1,050,000.
>
> Please confirm by return that funds will be received and the date repayment is expected to be made.
>
> We reserve all rights to take action should funds not be forthcoming.
>
> Regards
>
> Mark Bunce

**-Exhibit D-**
McCarthy Biography



# BURLINGTON RESOURCES ASIA LIMITED

MENU

  

Burlington Resources Asia Limited provides financial and managerial services to a range of clients and joint venture partners.The company has a presitigious list of clients.

## Our Services

- Mergers, acquisitions and divestitures
- Corporate finance advisory
- Strategic consultancy
- Private capital raising and venture capital
- Sourcing of acquisitions and investment opportunities
- Reorganisations and debt/equity restructurings for companies under administration
- Project management of infrastructure related projects
- Cross border feasibility and transactions

## Our Clients

- Public and private corporations, from small to large cap
- Partnerships and joint ventures

- Institutions
- Entrepreneurs
- Investment funds
- High-net-worth individuals



## Leadership

The company retains Tim McCarthy as a special advisor. He is a graduate of Cambridge University in the UK and has an MBA from Cass Business School, City, University of London.

Tim has over 35 years' experience as an investment banker, stockbroker for Japan and South East Asia, corporate finance specialist and entrepreneur. Previously he worked in the City of London from 1979-93 with Morgan Grenfell & Co, Bank of America International Limited , WI Carr, Swiss Bank Corporation and was a director of Asia Equity a South East Asian brokerage which subsequently merged with Banque Paribas.

He has been on the boards of public and private companies, most notably as a director of Victory Corporation plc, Sir Richard Branson's Virgin branded cosmetics

and clothing company and his record label V2 Music Holdings plc. He has also been a director of a major private property group in Delhi, India - Sweta Estates Pvt. Ltd.

---

Copyright © Burlington Resources Asia Limited 2016

**–Exhibit E–**
McCarthy Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Stream TV Networks, Inc. | : | Case No. 21-10433 (KBO) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

**DECLARATION OF BURLINGTON RESOURCES ASIA LIMITED IN SUPPORT OF
DEBTOR'S RESPONSE TO
STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS REGARDING THE MOTIONS TO
DISMISS THIS CHAPTER 11 CASE AND JOINDER TO THE OMNIBUS OBJECTION**

1.     I, Tim McCarthy, hereby state that at all times relevant hereto, I have been over 18 years old and am competent to make this declaration.

2.     I am a Special Advisor and lead the business at Burlington Resources Asia Limited ("Burlington"), a Hong Kong Limited Company. Burlington is funding Visual Technology Innovations, Inc. ("VTI") which is the proposed Debtor- in-Possession financier in the above captioned bankruptcy matter. A copy of documents showing the background and bona fides of me and Burlington Resources Asia Ltd. are attached hereto as **Exhibit 1**.

3.     I have conducted due diligence on the Debtor and VTI, and I am generally familiar with the Debtor's day-to-day operations, organization, financial affairs, and books and records.

4.     I have over thirty-five years of experience as an investment banker and stockbroker for Japan and South East Asia. Previously, I worked in the City of London from



1979 to 1993 with Morgan Grenfell & Co, Bank of America International Limited, and WI Carr, Swiss Bank Corporation. I also was a director of Asia Equity a South East Asian brokerage which subsequently merged with Banque Paribas.

5.   Further, I have served on the boards of public and private companies, most notably as a director of Victory Corporation plc, which is Sir Richard Branson's Virgin branded cosmetics and clothing company, and V2 Music Holdings plc., which is a record label. Finally, I have served as a director of a major private property group in Delhi, India - Sweta Estates Pvt. Ltd.

6.   I have committed to fund certain operations and activities of VTI and its business, including and not limited to, Debtor-in-Possession financing for Stream TV Networks, Inc. ("Stream"), as well as the financing that will be needed for Stream to fund exit financing through the bankruptcy process.

7.   As part of this commitment, Burlington and its associates are providing VTI with USD $180 million with an option to go to $230 million and have executed agreements with VTI on Monday, May 3, 2021. Because these funds are coming from overseas to the United States, and from institutional investors of Burlington, the transfer of funds will need to take a few business days due to regulatory and banking procedures involved in the large transfer of funds cross borders. But this process is being initiated on the opening of business, May 3, 2021 and has been closed. Prior commitments have been restructured to address the disputed, but outstanding debt alleged by certain alleged secured creditors of the Debtor.



Signed under the pains and penalties of perjury.

Date: May 2, 2021                    BURLINGTON RESOURCES ASIA LTD.

By: _____
Timothy McCarthy
Special Advisor

# -Exhibit F-

McCarthy Bank Statment

 **DBS**

| | | | |
|---|---|---|---|
| Account Number : | ▌▌▌▌▌ - USD | Account Name : | BURLINGTON RESOURCES ASIA LIMITED - ▌▌▌▌▌ - USD |
| Product Type : | FOREIGN CCY SAVINGS ACCOUNT | | |
| Opening Balance : | 103,032,089.05 04-Feb-2021 | Earmark Amount : | 0.00 |
| Ledger Balance : | 103,018,435.47 24-Feb-2021 | Overdraft Limit : | 0.00 |
| Available Balance : | 103,018,435.47 24-Feb-2021 | | |

| Date | Value Date | Transaction Details | Debit | Credit | Running Balance |
|---|---|---|---|---|---|
| 06-Feb-2021 | 06-Feb-2021 | TRANSFER REMITTANCE 0807OI0263042 Mgt Fee Jan UNION ALPHA C.P.A Mgt Fee Jan UETR Ref:b9327e7b-3ed9-4b0e-b5a4-12deea0ae88a | 13,627.10 | | 103,018,461.95 |
| 06-Feb-2021 | 06-Feb-2021 | TRANSFER REMITTANCE CHARGES 0807OI0263042 Mgt Fee Jan UNION ALPHA C.P.A Mgt Fee Jan UETR Ref:b9327e7b-3ed9-4b0e-b5a4-12deea0ae88a | 7.07 | | 103,018,454.88 |
| 07-Feb-2021 | 07-Feb-2021 | TRANSFER BK CHG OI0263042 | 19.41 | | 103,018,435.47 |

| | | | |
|---|---|---|---|
| Total Debit Count : | 3 | Total Debit Amount : | 13,653.58 |
| Total Credit Count : | 0 | Total Credit Amount : | 0.00 |

Transactions performed on a non-working day will be posted on the next working day
If date requested is a non business day, please select the next business day to view your transaction(s)

**END OF REPORT**

**-Exhibit G-**
Glen Davis Email of McCarthy enthusiasm

**From:** Glen Davis [mailto:g.davis@knightdavis.com]
**Sent:** 09 April 2021 15:28
**To:** Timothy McCarthy (tim@burlingtonresources-asia.com)
**Cc:** mark@bunce.club
**Subject:** SBLC $50m

Tim hi

Thank you for your time on the call with Mark earlier, who has authorised me to send over his email (above) and his mobile number + 44 (0) 7512 131312.

As agreed can you please keep Mark abreast of events over the course of today, this weekend and it would be appreciated if you would continue with the updates until the Burlington's $30m arrives and is cleared into  VTI's Wells Fargo bank account.

Can you also include in your first email update a very brief description of the SBLC procedures, appropriate and timely Proof of Funds and the approximate timelines you outlined.  This will assist and keep us all on the same page and avoid any misunderstandings.

I was good to hear you so enthusiastic now that you are so close to getting your deal away, and I'm confident that I am not alone in wishing  you good luck during this closing phase.

Kind regards

Glen

Glen R Davis
Partner Specialist Sectors
Knight - Davis Associates LLP
Mob + 44 (0) 7885 361789
g.davis@knightdavis.com
www.knightdavis.com

Knight-Davis Associates LLP is a limited Liability Partnership incorporated in England and Wales with registered number OC366497

**CONFIDENTIALITY: Privileged or Confidential Information may be contained in this message. If you are not the addressee of this message (or responsible for its delivery to the addressee), you may not review or copy it, deliver it to anyone else or use information contained herein. In such a case, you should destroy this message and kindly notify the sender by reply email. Opinions, conclusions and other information in this message that do not relate to the official business of Knight-Davis Associates LLP are neither given nor endorsed by it.**