**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| vs. | : | No. 2:23-cv-01740 |
| | : | |
| VISUAL TECHNOLOGY INNOVATIONS, | : | District Judge Scott |
| INC. | : | |
| | : | Magistrate Judge Hey |
| and | : | |
| | : | |
| MATHU G. RAJAN, | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS**
**COUNTERCLAIMS AND TO STRIKE**

Michael P. Kohler
*admitted pro hac vice*
Georgia Bar No. 427727
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
(404) 962-6100
Michael.Kohler@millermartin.com

Michael D. Homans
ID No. 76624
HOMANSPECK, LLC
230 Sugartown Road
Suite 218
Wayne, PA 19087
(215) 419-7463
mhomans@homanspeck.com

*Counsel for Plaintiff Mark L. Bunce*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

I.      Procedural Background........................................................................................ 1

II.     Argument. ............................................................................................................ 3

        A.      Standards for deciding a motion to dismiss. ........................................... 3

        B.      The Court should dismiss VTI's fraud counterclaims. ........................... 3

                1.      VTI fails to plead fraud with particularity....................................... 5

                2.      VTI fails to plausibly allege the elements of common-law fraud. ................. 7

                3.      VTI fails to plausibly allege the elements of fraudulent concealment. ......... 10

        C.      The Court should dismiss VTI's counterclaim for breach of the implied
                covenant of good faith and fair dealing. ............................................... 11

                1.      VTI fails to state a claim for breach of the implied covenant of good
                        faith and fair dealing under Nevada law. ....................................... 12

                2.      VTI fails to state a claim for breach of the implied covenant of good
                        faith and fair dealing under Pennsylvania law. ............................... 14

        D.      The Court should dismiss VTI's counterclaim for breach of contract.................. 15

        E.      The Court should dismiss VTI's counterclaim for violation of Nevada
                securities law........................................................................................... 18

        F.      The Court should strike VTI's $500,000,000 claimed damages amount. ............ 20

III.    Conclusion. ........................................................................................................ 21

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 3

*Bayda v. Howmet Castings & Servs., Inc.*,
  859 F. App'x 623 (3d Cir. 2021)................................................................................... 5, 6

*Beauregard v. Sampson*,
  2:20-CV-02123, 2022 WL 17813072 (D. Nev. Sept. 28, 2022) ............................................ 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 3

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*,
  472 F. Supp. 3d 142 (W.D. Pa. 2020) .......................................................................... 4

*Bionix Dev. Corp. v. Sklar Corp.*,
  07-CV-4465, 2009 WL 3353154 (E.D. Pa. Oct. 14, 2009)........................................... 7

*Bortz v. Noon*,
  556 Pa. 489, 729 A.2d 555 (1999) ........................................................ 4, 8, 9, 10, 11

*Bral Corp. v. Johnstown Am. Corp.*,
  919 F. Supp. 2d 599 (W.D. Pa. 2013) ....................................................................... 5, 7

*Bulbman, Inc. v. Nev. Bell*,
  108 Nev. 105, 825 P.2d 588 (1992) ..................................................... 4, 8, 9, 10, 11

*Chavanne v. Second Look, Inc.*,
  594 F. Supp. 3d 662 (E.D. Pa. 2022) ....................................................................... 3, 7

*Chilutti v. Uber Techs., Inc.*,
  2023 Pa. Super. 126, 300 A.3d 430 (2023) ............................................................. 16, 17

*Collins v. Mary Kay, Inc.*,
  874 F.3d 176 (3d Cir. 2017)........................................................................................ 11

*Contreras v. Am. Fam. Mut. Ins. Co.*,
  135 F. Supp. 3d 1208 (D. Nev. 2015) ......................................................................... 15

*Cottman Transmission Sys., Inc. v. Melody*,
  869 F. Supp. 1180 (E.D. Pa. 1994) ............................................................................ 11

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) .......................................................................... 3, 7, 8

*Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*,
  36 F. Supp. 3d 981 (D. Nev. 2014) ..................................................................... 13

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*,
  247 F.R.D. 445 (D.N.J. 2007) ............................................................................... 7

*Engel v. Ernst*,
  102 Nev. 390, 724 P.2d 215 (1986) ..................................................................... 12

*Foge, McKeever LLC v. Zoetis Inc.*,
  605 F. Supp. 3d 682 (W.D. Pa. 2022) .................................................................... 5

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.*,
  655 Pa. 351, 217 A.3d 1227 (2019) .............................................................. 9, 15, 17

*Hanna v. Lincoln Fin. Grp.*,
  498 F. Supp. 3d 669 (E.D. Pa. 2020) ........................................................... 15, 17, 18

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*,
  107 Nev. 226, 808 P.2d 919 (1991) ..................................................................... 13

*In re Stream TV Networks, Inc.*,
  BR 23-10763 (MDC), 2024 WL 87639 (Bankr. E.D. Pa. Jan. 5, 2024) ...................................... 2

*J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*,
  120 Nev. 277, 89 P.3d 1009 (2004) ....................................................................... 5

*Johnson v. Toll Bros., Inc.*,
  2023 Pa. Super. 181, 303 A.3d 471 (2023) ............................................................... 8

*Kargbo v. FedEx Ground Package Sys., Inc.*,
  2:09-CV-2152-KJD-RJJ, 2010 WL 3896121 (D. Nev. Sept. 29, 2010) ...................................... 12

*Kovalev v. Lidl US, LLC*,
  647 F. Supp. 3d 319 (E.D. Pa. 2022) .................................................................... 20

*Krekstein v. McDonald's Corp.*,
  550 F. Supp. 3d 216 (E.D. Pa. 2021) ................................................................ 14, 15

*Laguerre v. Nev. Sys. of Higher Educ.*,
  3:10-CV-452-ECR-VPC, 2010 WL 5186794 (D. Nev. Dec. 10, 2010) ...................................... 16

*Lazer & Lazer Corp. v. Agronomed Pharm. LLC*,
    618 F. Supp. 3d 186 (E.D. Pa. 2022) ................................................................. 16

*May v. Anderson*,
    121 Nev. 668, 119 P.3d 1254 (2005) ............................................................ 16, 17

*McDonald v. Palacios*,
    2:09-CV-01470, 2014 WL 12781851 (D. Nev. Sept. 30, 2014) ............................ 20

*Melmark, Inc. v. Schutt by & Through Schutt*,
    651 Pa. 714, 206 A.3d 1096 (2019) ..................................................................... 4

*Messer LLC v. Devault Packing Co.*,
    CV 18-4705, 2020 WL 5820747 (E.D. Pa. Sept. 29, 2020) ............................ 11, 12

*Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*,
    498 F. Supp. 3d 725 (E.D. Pa. 2020) ................................................................... 3

*Nova Design Techs., Ltd. v. Walters*,
    875 F. Supp. 2d 458 (E.D. Pa. 2012) ............................................................. 6, 10

*Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*,
    933 F. Supp. 2d 1279 (D. Nev. 2013) ...................................................... 4, 6, 10

*Porter v. Chetal*,
    No. 3:13-CV-00661-LRH, 2015 WL 430241 (D. Nev. Feb. 3, 2015) .................... 15

*Progressive Gulf Ins. Co. v. Faehnrich*,
    130 Nev. 167, 327 P.3d 1061 (2014) ................................................................. 12

*Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*,
    949 F. Supp. 2d 599 (W.D. Pa. 2013) ............................................................... 12

*Saini v. Int'l Game Tech.*,
    *Tech.*, 434 F. Supp. 2d 913 (D. Nev. 2006) ................................................. 13, 17

*Schum v. Bailey*,
    578 F.2d 493 (3d Cir. 1978) ................................................................................ 4

*State Dep't of Transp. v. Eighth Judicial Dist. Court in & for Cnty. of Clark*,
    133 Nev. 549, 402 P.3d 677 (2017) ......................................................... 9, 13, 17

*Tyco Fire Prods. LP v. Victaulic Co.*,
    777 F.Supp.2d 893 (E.D. Pa. 2011) ..................................................................... 3

*United States ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*,
    660 F. Supp. 3d 381 (E.D. Pa. 2023) ............................................................... 5, 6

**Statutes**

28 U.S.C. § 1927 ................................................................................................... 21

Nev. Rev. Stat. Ann. § 90.245 ............................................................................... 19

Nev. Rev. Stat. Ann. § 90.295 ............................................................................... 18

Nev. Rev. Stat. §  90.570 .................................................................................. 18, 19

Nev. Rev. Stat. §  90.580 ....................................................................................... 19

Nev. Rev. Stat. § 90.660 ................................................................................... 18, 19

Nev. Rev. Stat. Ann. § 90.660(1) ........................................................................... 19

Nev. Rev. Stat. Ann. § 90.660(2) ........................................................................... 19

Nev. Rev. Stat. Ann. § 90.660(3) ........................................................................... 19

Nev. Rev. Stat. Ann. § 90.660(4) ........................................................................... 20

Court **Rules**

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 3

Fed. R. Civ. P. 9(b) .......................................................................................... 5, 6, 7

Fed. R. Civ. P. 12 ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 3

Fed. R. Civ. P. 12(f) ......................................................................................... 20, 21

Fed. R. Civ. P. 15(a)(1)(B) ...................................................................................... 2

Fed. R. Civ. P. 15(a)(1)(B) ...................................................................................... 2

E.D. Pa. Local Rule 5.1.1 ............................................................................ 3, 20, 21

E.D. Pa. Local Rule 7.1(c) ....................................................................................... 1

**Other Authorities**

69A Am. Jur. 2d *Securities Regulation—State* § 19 (May 2024) ............................... 19

Under Federal Rule of Civil Procedure 12 and Local Rule 7.1(c), Plaintiff Mark L. Bunce respectfully moves to dismiss the counterclaims asserted by Defendant Visual Technology Innovations, Inc. ("VTI") and to strike a certain allegation in VTI's counterclaims. *See* ECF Doc. 52.[1]

In its amended Answer, filed in response to Bunce's first Motion to Dismiss, Doc. 49, VTI asserts five amended counterclaims against Bunce: (1) Count I, for common law fraud; (2) Count II, for breach of the implied covenant of good faith and fair dealing; (3) Count III, for breach of contract; (4) Count IV (second Count III), for violation of Nevada securities law; and (5) Count V (third Count III), for fraudulent concealment. Doc. 52 at 20–27 ¶¶ 158–243. Each of these counterclaims alleges that Bunce has somehow harmed VTI by asking it to repay the $1 million that he loaned to it, per their contractually agreed repayment schedule. *Id.* In other words, VTI still has Bunce's money but claims that it has somehow been harmed by Bunce because he wants his loan repaid. VTI even goes so far as to allege that it lost, due to Bunce's desire for repayment, the staggering sum of $500 million, apparently as a scare tactic, without any plausible basis.

As with VTI's original counterclaims, the amended counterclaims remain factually and legally invalid and implausible and should be dismissed. The Court also should strike VTI's baseless, inflammatory demand for $500 million in damages.

## I.      Procedural Background.

In his Complaint, Bunce alleges Defendant Mathu G. Rajan fraudulently induced Bunce to loan $1,050,000 to Rajan's company, VTI. As alleged in the Complaint, Rajan's stated purpose for the loan was to enable VTI to obtain valuable intellectual property from another company owned by Rajan, Stream TV Networks, Inc., which Rajan caused to file for Chapter 11 bankruptcy

---

[1] Hereinafter ECF documents are referenced simply as "Doc. __."

in Delaware (and later in Pennsylvania). Doc. 1 at 3–5 ¶¶ 9–18; *In re Stream TV Networks, Inc.*, Case No. 21-10433 in the United States Bankruptcy Court for the District of Delaware; *see In re Stream TV Networks, Inc.*, BR 23-10763 (MDC), 2024 WL 87639, at *1–13 (Bankr. E.D. Pa. Jan. 5, 2024) (summarizing litigation relating to Stream TV Networks, Inc.). Once VTI had merged into a publicly traded company, as Rajan represented, Bunce could potentially profit by converting his loan into shares in VTI at the contract price. Doc. 1 at 3–5 ¶¶ 9–18. That never happened, and VTI and Rajan kept Bunce's money.[2]

In its initial Answer, VTI asserted three counterclaims against Bunce. Doc. 33. Bunce moved to dismiss and to strike. Doc. 49. As permitted by Fed. R. Civ. P. 15(a)(1)(B), VTI and Rajan filed an Amended Answer. In the Amended Answer, VTI asserts five counterclaims against Bunce: (1) Count I, common-law fraud; (2) Count II, breach of the implied covenant of good faith and fair dealing; (3) Count III, breach of contract; (4) Count IV, violation of Nevada securities law[3]; and (5) Count V, fraudulent concealment.[4] Doc. 52 at 20–27 ¶¶ 158–243. Defendants seek no less than $500,000,000 in damages. *Id.* at 29. Because each of VTI's counterclaims fails to meet the required pleading standard and is facially implausible, the Court should dismiss them all. The

---

[2] The Delaware bankruptcy of Stream TV Networks, Inc. was dismissed for having been filed in bad faith. *See In re Stream TV Networks, Inc.*, 2024 WL 87639, at *3. In Stream TV Networks, Inc.'s refiled bankruptcy in Pennsylvania, the bankruptcy court has found that testimony by Mathu Rajan about several matters was "difficult to believe," "not credible," "not believable," described a supposed transaction that was "not real," "evasive," "untrustworthy," "self-serving," "hyperbole at best, or fabrication at worst," "flippant," "unintelligible, or alternatively, intentionally deceptive," and displaying "lack of candor." *Id.* at *18, 22, 24, 27–28. The bankruptcy court also noted that Rajan "has administered these estates with an eye towards what he personally wants to accomplish and disclose, rather than acting consistent with his obligations to the Court and the estates' creditors" and has "breached his fiduciary duties." *Id.* at *22, 24.

[3] Mislabeled as a second "Count III" in the Amended Answer. Doc. 52 at 26.

[4] Mislabeled as a third "Count III" in the Amended Answer. Doc. 52 at 27.

Court should also strike VTI's $500,000,000 prayer for damages because it is baseless, implausible, and impertinent, and violates this Court's Local Rule 5.1.1.

## II.    Argument.

### A.    Standards for deciding a motion to dismiss.

The Court should dismiss VTI's counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Rule 8 and Rule 12(b)(6) apply equally to counterclaims. *See Tyco Fire Prods. LP v. Victaulic Co.*, 777 F.Supp.2d 893, 896–97 (E.D. Pa. 2011). "Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint." *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 732 (E.D. Pa. 2020). A counterclaim therefore must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Doe v. Princeton Univ.*, 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). The counterclaim must plausibly suggest facts "sufficient to 'draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged.'" *See id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In deciding a motion to dismiss, the Court must apply a three-step analysis: (1) it must consider the elements the counterclaimant must plead to state a claim; (2) it must identify mere legal conclusions, which are not deemed true; and, (3) the Court assumes well-pleaded allegations are true and decides whether they plausibly give rise to a claim for relief. *Chavanne v. Second Look, Inc.*, 594 F. Supp. 3d 662, 665 (E.D. Pa. 2022); *see Doe*, 30 F.4th at 341–42.

### B.    The Court should dismiss VTI's fraud counterclaims.

In its amended Answer, VTI has split its "misrepresentation" claim into two separate claims for: (1) common-law fraud, Doc. 52 at 20–24 ¶¶ 158–203; and (2) fraudulent concealment, *id*. at 27 ¶¶ 238–43. Despite this relabeling and the addition of factual allegations, in substance

these counterclaims have not changed. They allege that Bunce somehow defrauded VTI by enforcing the loan agreement and demanding to be repaid $1.05 million per the parties' contractually agreed schedule for repayment. *See* Doc. 1-8. These allegations remain too indefinite and implausible to state a fraud claim under either Pennsylvania or Nevada law.

A court with diversity jurisdiction applies the forum state's choice-of-law principles. *Schum v. Bailey*, 578 F.2d 493 (3d Cir. 1978). The Court must first decide whether a "true conflict" exists between the laws of the potentially applicable states, here Pennsylvania and Nevada. *Melmark, Inc. v. Schutt by & Through Schutt*, 651 Pa. 714, 727, 206 A.3d 1096, 1104 (2019). In both Pennsylvania and Nevada, a claim for misrepresentation requires alleging: (1) a representation; (2) material to the transaction at hand; (3) made falsely knowingly or with reckless disregard of its falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance by the plaintiff; and (6) injury caused by the reliance. *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992); *Bortz v. Noon*, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999). Fraudulent nondisclosure requires alleging, in addition to fraud's other elements, intentional concealment of a material fact that the fraudster had a duty to disclose. *Peri & Sons Farms, Inc. v. Jain Irrigation, Inc*., 933 F. Supp. 2d 1279, 1292 (D. Nev. 2013) (applying Nevada law); *Bortz*, 556 Pa. at 499, 729 A.2d at 560.

Because, for purposes of this motion, the elements for fraud are the same in Pennsylvania and Nevada, there is no conflict. The Court should thus apply the laws of the forum state, Pennsylvania. *Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 156 (W.D. Pa. 2020).[5]

---

[5] To assist the Court, Bunce throughout cites caselaw from both jurisdictions.

1. <u>VTI fails to plead fraud with particularity.</u>

The Court should dismiss VTI's common-law fraud and fraudulent misrepresentation counterclaims because, despite VTI's attempts to correct the deficiencies in it is initial pleading, its Amended Answer still fails to meet Rule 9(b)'s particularity requirement.

Under Federal Rule of Civil Procedure 9(b), state-law fraud claims must "state with particularity the circumstances constituting fraud." *Bayda v. Howmet Castings & Servs., Inc.*, 859 F. App'x 623, 624 (3d Cir. 2021). At a minimum, "'plaintiffs [must] support their allegations ... with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the *who, what, when, where* and *how* of the events at issue.'" *United States ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*, 660 F. Supp. 3d 381, 393 (E.D. Pa. 2023) (emphasis added) (citation omitted). "The purpose of Rule 9(b) is to 'give defendants notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements'" or to create leverage against a plaintiff's claims. *See Foge, McKeever LLC v. Zoetis Inc.*, 605 F. Supp. 3d 682, 692 (W.D. Pa. 2022) (citation omitted). Fraud claims must ultimately be proved by clear and convincing evidence. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 290, 89 P.3d 1009, 1018 (2004); *Bral Corp. v. Johnstown Am. Corp.*, 919 F. Supp. 2d 599, 618 (W.D. Pa. 2013) (applying Pennsylvania law).

VTI continues to allege that, for purposes of accepting Bunce's loan, it relied on his representations that he would not ask to be repaid unless certain conditions were met, Doc. 52 at 20, 23 ¶¶ 159–62, 193, and his failure to disclosure that he might want his loan repaid, *id*. at 21–22, 27 ¶ 168–69, 172, 176–78, 239–40.

First, as to common-law fraud, Bunce supposedly "misrepresented to VTI that [he] would wait unconditionally for repayment of his investment monies," would not seek repayment from

VTI until the company obtained certain additional investments and did not disclose that he would want his money back pursuant to the terms of the parties' loan agreement. Doc. 52 at 20–24, 27 ¶¶ 159, 162, 172, 175, 239. But VTI fails to allege when, where, how, or to whom this supposed misrepresentation was made. *See United States ex rel. Ellsworth Assoc.*, 660 F. Supp. 3d at 393.

Second, as to fraudulent concealment, VTI fails to allege *any* facts or circumstances that could impose on Bunce a duty of disclosure to VTI, such as a confidential or fiduciary relationship. *See* Doc. 52 at 20–27 ¶¶ 158–243. *See Nova Design Techs., Ltd. v. Walters*, 875 F. Supp. 2d 458, 471 (E.D. Pa. 2012) ("[M]ere silence is not sufficient [to establish fraudulent concealment] in the absence of a duty to speak.") (applying Pennsylvania law), *as amended* (June 29, 2012); *Peri & Sons Farms*, 933 F. Supp. 2d at 1292–93 (stating that, in applying Nevada law, fraudulent concealment requires showing that the "defendant was under a duty to disclose the fact to the plaintiff").

Third, for the same reasons, VTI's conclusory securities-fraud claim also fails for having not been pleaded with particularity as required by Federal Rule of Civil Procedure 9(b). VTI does not "state with particularity the circumstances constituting [securities] fraud." *Bayda*, 859 F. App'x at 624. The "who, what, when, where and how of the events at issue" and how they relate to the securities statutes—which VTI never quotes—are missing. *United States ex rel. Ellsworth Assoc.*, 660 F. Supp. 3d at 393. As further explained below, the counterclaims lack sufficient facts to even show that the Nevada Securities Act is implicated here, much less breached.

Moreover, each of VTI's fraud claims cannot help but refer to the notes themselves, Doc. 52 at 21–23 ¶¶ 165–67, 182, 185–86, which as amended plainly require VTI to repay Bunce's loan per a defined repayment schedule, Doc. 1-8 at 2. The notes govern the subject-matter of VTI's claims. VTI alleges no specific facts that could override VTI's written agreement to repay the loan per the agreed schedule.

"[V]ague and conclusory buzzwords," such as VTI's recitation of "misrepresented," "representation," "concealed," and "lie," do "not meet Rule 9(b)'s standards." *See Eisai Co., Ltd. v. Teva Pharm. USA, Inc*., 247 F.R.D. 445, 452 (D.N.J. 2007); *see Bionix Dev. Corp. v. Sklar Corp*., 07-CV-4465, 2009 WL 3353154, at *2 (E.D. Pa. Oct. 14, 2009) (dismissing fraud claim as "too vague"). Lengthy and repeated inflammatory allegations cannot compensate for the lack of factual specificity.

In sum, VTI's fraud counterclaims lack sufficiently *specific* factual allegations that would enable the Court, construing the facts for the nonmovant, to conclude that Bunce could be liable for any kind of fraud. *See* Fed. R. Civ. P. 9(b); *Doe*, 30 F.4th at 341–42.

### 2.   VTI fails to plausibly allege the elements of common-law fraud.

To survive a motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *See Chavanne*, 594 F. Supp. 3d at 665 (emphasis added) (citation omitted). A counterclaim can satisfy the plausibility standard only "when the facts alleged 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citation omitted). Although the plausibility standard is not "akin to a 'probability requirement,' there nevertheless must be more than a 'sheer possibility that a defendant has acted unlawfully.'" *Id*. (citations omitted). When a counterclaim "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citation omitted).

It follows that, to survive a motion to dismiss, VTI's counterclaim must plead *specific facts* that *plausibly* demonstrate: (1) a representation; (2) material to the transaction at hand; (3) made falsely knowingly or with reckless disregard of its falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance by the plaintiff; and (6) injury caused by the reliance. *See*

*Bulbman*, 108 Nev. at 111, 825 P.2d at 592 (Nevada law); *Bortz*, 556 Pa. at 500, 729 A.2d at 561 (Pennsylvania law).

First, VTI has not plausibly alleged a material, false representation by Bunce that he would not require VTI to repay the notes unless an unwritten condition were met (further investment by others in VTI). *See Bulbman*, 108 Nev. at 111, 825 P.2d at 592; *Bortz*, 556 Pa. at 500, 729 A.2d at 561. The Court may consider the notes without converting the motion to dismiss into a motion for summary judgment because they are integral to the counterclaims, which acknowledge the notes and seek to plead around them. *See Doe*, 30 F.4th at 342; *see generally* Doc. 52. Although earlier versions of the notes had a different maturity date, *see* Doc. 1-3 at 1 § 1; Doc. 1-5 at 1 § 1, the notes as amended required repayment according to a defined schedule, Doc. 1-8 at 2 § 2. The November 23, 2021 Amendment executed by VTI plainly requires it to repay $1,050,000 to Bunce per the following schedule: "(a) $225,000 to be paid on or before December 23, 2021; (b) $225,000 to be paid on or before January 23, 2022; (c) $200,000 to be paid on or before February 23, 2022; (d) $200,000 to be paid on or before March 23, 2022; and (e) $200,000 to be paid on or before April 23, 2022." Doc. 1-8 at 2 § 2. The notes, as amended, also state that they "may not be changed orally, but only by an agreement in writing signed by the parties ...." Doc. 1-3 at 3 § 12; *see* Doc. 1-5 at 3 § 12; Doc. 1-7 at 21 § 15; Doc. 1-8 at 2 § 5.

The alleged misrepresentation—that Bunce would not require the loan to be repaid as the notes, as amended, expressly say—cannot plausibly be squared with the notes themselves, which VTI admittedly signed and which address the same subject-matter as all the counterclaims. Doc. 52 at 20, 23 ¶¶ 159–62, 193. "[T]he substance of the allegations comprising a claim ... are of paramount importance, and, thus, the mere labeling ... of a claim as being in tort ... is not controlling." *Johnson v. Toll Bros., Inc.*, 2023 Pa. Super. 181, 303 A.3d 471, 476 (2023) (citation omitted). VTI's fraud claim is foreclosed by the amended notes, which govern exactly the subject-

matter as the fraud claim and expressly state the precise terms for repayment. VTI's common-law fraud claim merely tries to rewrite the parties' contract. *See State Dep't of Transp. v. Eighth Judicial Dist. Court in & for Cnty. of Clark*, 133 Nev. 549, 554, 402 P.3d 677, 682 (2017) ("[N]either a court of law nor a court of equity can interpolate in a contract what the contract does not contain."); *Gamesa Energy USA, LLC v. Ten Penn Ctr. Associates, L.P.*, 655 Pa. 351, 370, 217 A.3d 1227, 1238 (2019) (It "is not the function of this Court to re-write [a contract], or to give it a construction in conflict with the accepted and plain meaning of the language used.").

Second, for all these same reasons, VTI cannot plausibly show that it justifiably relied on a supposed oral representation by Bunce not to require VTI to repay his loan. Doc. 52 at 22 ¶ 179. VTI alleges no facts indicating that it reasonably relied on false representations by Bunce that he would not demand repayment, when the notes plainly require repayment per a defined schedule. *See* Doc. 52 at 20–24 ¶¶ 158–203. A viable fraud claim requires "justifiable reliance" on the alleged misrepresentation. *Bulbman*, 108 Nev. at 111, 825 P.2d at 592; *Bortz*, 556 Pa. at 500, 729 A.2d at 561. The November 23, 2021 Amendment indicates that VTI knew Bunce wanted to be fully repaid no later than April 2022 and reiterates the note's provision that their terms "may not be changed orally." *See, e.g.*, Doc. 1-3 at 3 § 12; *see* Doc. 1-8 at 1 § 5. Moreover, even before the November 23, 2021 Amendment set a defined repayment schedule, there were events other than VTI obtaining further investment that would trigger an immediate repayment obligation to Bunce. *See* Doc. 1-3 at 3–4 §§ 8–9; Doc. 4–5 §§ 8–9; Doc. 1 at 20 §§ 11–12.

Third, VTI also does not plausibly allege Bunce's intent to defraud VTI or that VTI suffered any damages from Bunce's alleged misrepresentation. *Bulbman*, 108 Nev. at 111, 825 P.2d at 592; *Bortz*, 556 Pa. at 500, 729 A.2d at 561. VTI alleges, in effect, that it has lost $500,000,000 because it has *kept* the $1,050,000 that Bunce loaned to it. *See* Doc. 52 at 20–29.

According to VTI, Bunce has caused VTI to lose $500,000,000 merely by *asking* for repayment. This alleged harm defies common sense and is utterly implausible.

      3.    <u>VTI fails to plausibly allege the elements of fraudulent concealment</u>.

To the extent VTI alleges it was harmed by the purported nondisclosure of Bunce's intentions, VTI's related counterclaim for fraudulent concealment is equally implausible.

To state a claim for fraudulent concealment, VTI's counterclaim must plead *specific facts* that *plausibly* demonstrate: (1) a representation; (2) material to the transaction at hand; (3) made falsely, knowingly or with reckless disregard of its falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance by the plaintiff; and (6) injury caused by the reliance. *See Bulbman*, 108 Nev. at 111, 825 P.2d at 592 (Nevada law); *Bortz*, 556 Pa. at 500, 729 A.2d at 561 (Pennsylvania law). In addition, VTI must plausibly allege intentional nondisclosure of some material fact that Bunce had a duty to disclose. *See Peri & Sons Farms*, 933 F. Supp. 2d at 1292 (Nevada law); *Bortz*, 556 Pa. at 499, 729 A.2d at 560 (Pennsylvania law). VTI has not done so.

VTI alleges that Bunce intentionally failed to disclose to VTI that he intended for VTI to repay the loan and thereby harmed VTI. Doc. 52 at 20–23, 27 ¶¶ 161, 168–69, 172, 176, 178, 190–92, 239–43. This allegation is facially implausible. The November 23, 2021 Amendment, which VTI itself signed, explicitly says VTI must repay the loan per a definite schedule. Doc. 1-8. VTI cannot plausibly disclaim knowledge of Bunce's intent to be repaid, nor can it plausibly allege justifiable reliance on Bunce's supposed nondisclosure. VTI likewise cannot show that Bunce had a duty to disclose to VTI his intent that the loan be repaid, consistent with the plain language of the notes. VTI has alleged no specific facts or circumstances (such as a confidential or fiduciary relationship) to support the legal conclusion that Bunce owed a duty of disclosure to VTI. And "mere silence is not sufficient [to establish fraudulent concealment] in the absence of a duty to speak." *Nova Design Techs.*, 875 F. Supp. 2d at 471 (applying Pennsylvania law).

Third, VTI also does not plausibly allege Bunce's intent to defraud VTI or that VTI suffered any damages from Bunce's alleged concealment. *Bulbman*, 108 Nev. at 111, 825 P.2d at 592; *Bortz*, 556 Pa. at 500, 729 A.2d at 561. Once again, VTI alleges, in effect, that it has supposedly lost $500,000,000 because it has *kept* the $1,050,000 that Bunce loaned it, despite a claim for repayment. *See* Doc. 52 at 20–29. This alleged harm lacks any plausibility and appears to have been added simply to frighten and intimidate Bunce, inflame this dispute, and mislead the public as to the scope of the respective damages involved.

For all these reasons, and the previously stated reasons why VTI's common-law fraud claims fails, VTI has failed to state a plausible counterclaim for fraudulent concealment.

### C.   The Court should dismiss VTI's counterclaim for breach of the implied covenant of good faith and fair dealing.

In "diversity cases such as this one, [the Court must] look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017).

Were the Court to determine that the notes, as amended, between Bunce and VTI constitute the contract VTI says Bunce breached in bad faith, the Court should apply Nevada law. The notes state that they "shall be governed by, and construed in accordance with, the laws of the State of Nevada USA." Doc. 1-3 at 3 § 10; Doc. 1-5 at 5 § 10; Doc. 1-7 at 2 § 6; *see also* Doc. 1-6 at 1 § 6; Doc. 1-8 at 2 § 5. "Pennsylvania courts have traditionally held that a choice of law provision in a contract will be upheld as long as the transaction bears a 'reasonable relationship to the state whose law is governing,'" *Cottman Transmission Sys., Inc. v. Melody*, 869 F. Supp. 1180, 1184 (E.D. Pa. 1994) (citation omitted), and as long as applying the chosen state's law would not contravene the fundamental public policy of the forum state, *Messer LLC v. Devault Packing Co.*,

CV 18-4705, 2020 WL 5820747, at *2 (E.D. Pa. Sept. 29, 2020) (applying Pennsylvania law). Nevada has a reasonable relationship to this action because VTI was organized under Nevada law. *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 171, 327 P.3d 1061, 1064 (2014); Doc. 52 at 2 ¶ 5. As in Pennsylvania, Nevada courts "'routinely honor' choice-of-law provisions in contracts." *Kargbo v. FedEx Ground Package Sys., Inc*., 2:09-CV-2152-KJD-RJJ, 2010 WL 3896121, at *1 (D. Nev. Sept. 29, 2010) (citing *Engel v. Ernst*, 102 Nev. 390, 395, 724 P.2d 215, 216 (1986)).

Alternatively, the Court might determine that VTI's counterclaim for breach of the implied covenant alleges a contract that is separate from the contractual relationship embodied in the notes, as amended. In such event, the Court must apply the forum state's conflicts-of-laws principles to determine what law governs the implied-covenant claim. For both tort and contract claims, "Pennsylvania courts use the 'most significant relationship' test, which qualitatively weighs the parties' contacts with the forums 'according to their relation to the policies and interests underlying' the issues in dispute. *Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am*., 949 F. Supp. 2d 599, 609 (W.D. Pa. 2013) (citations omitted). Under this analysis, Pennsylvania law should govern because VTI is headquartered there and VTI's dealings with Bunce were conducted in and from Pennsylvania. Doc. 1 at 2 ¶ 2; Doc. 52 at 2 ¶ 2.

Under either Nevada or Pennsylvania law, VTI fails to state a counterclaim for breach of the implied covenant of good faith and fair dealing.

1.   <u>VTI fails to state a claim for breach of the implied covenant of good faith and fair dealing under Nevada law.</u>

The Court should hold that VTI has failed to plausibly plead breach of the implied covenant under Nevada law. Under Nevada law, establishing breach of the implied covenant of good faith and fair dealing requires proving: (1) the existence of a contract; (2) the defendant owed a duty of

12

good faith and fair dealing to the plaintiff; (3) that the defendant breached its duty by performing in a manner unfaithful to the contract's purpose; and (4) the plaintiff's justified expectations under the contract were denied, resulting in damages. *See Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, 36 F. Supp. 3d 981, 990 (D. Nev. 2014) (applying Nevada law); *see also Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920 (D. Nev. 2006) (damages); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232–33, 808 P.2d 919, 922–23 (1991) (damages).

VTI apparently seeks to correct its defective counterclaim for breach of the implied duty of good faith and fair dealing by identifying the loan documents at issue in this case. Doc. 52 at 24 ¶¶ 208–212. That makes no difference. VTI continues to allege that Bunce promised he would not demand repayment until VTI had raised $1 million to $10 million in additional investments. Doc. 52 at 24–25 ¶ 205, 206, 213–15. This claim is implausible because it ignores the November 23, 2021 Amendment, which amends the notes by unconditionally requiring repayment of $1,050,000 according to a defined schedule. Doc. 1-8. VTI is really asking the Court to pretend that the November 23, 2021 Amendment does not exist and to write a new contract for the parties based on a vaguely claimed oral representation prior to the written contract, which this Court may not do. *See State Dep't of Transp.*, 133 Nev. at 554, 402 P.3d at 682.

Additionally, VTI has still pleaded no cognizable contractual damages due to the alleged breach of the implied covenant. *See Hilton Hotels,* 107 Nev. at 232–33, 808 P.2d at 923 (breach of the implied covenant of good faith and fair dealing provides a basis for recovering contractual damages). VTI still has the $1,050,000 that Bunce loaned to it (or whatever benefit it obtained from using that money). In effect, VTI alleges that Bunce has caused it to incur $500,000,000 in damages merely by asking VTI to repay a $1.05 million loan. This fails to plausibly allege that Bunce has caused VTI any harm. If anyone has been unlawfully deprived of the benefit of the bargain, it is Bunce, who loaned money to VTI that it simply refuses to repay.

Finally, VTI has still not plausibly pleaded that Bunce has acted in bad faith or dealt with VTI unfairly. Setting aside VTI's vague, immaterial, and impertinent rhetoric about supposed "bullying," "threatening," and "pressuring" by Bunce, VTI alleges that Bunce has acted in bad faith by "asking the contingency for repayment [to be] removed" from the notes. Doc. 52 at 25 ¶ 215. VTI cannot explain how seeking a contractual amendment plausibly amounts to bad faith or unfair dealing. It is merely non-actionable negotiation. VTI also alleges that Bunce acted in bad faith by "demanding his money back before they were due or mature as specified." *Id.* at 25 ¶ 214. VTI cites the loan documents but again conveniently ignores what those documents say. VTI executed the November 23, 2021 Amendment, which definitively requires VTI to repay the notes on a specific schedule. Doc. 1-8. VTI cannot plausibly explain how Bunce demanding that VTI comply with its contractual repayment obligations is unfair or in bad faith.

2.  VTI fails to state a claim for breach of the implied covenant of good faith and fair dealing under Pennsylvania law.

Were the Court to apply Pennsylvania law to VTI's claim for breach of the implied covenant of good faith and fair dealing, the Court should still dismiss it.

Under Pennsylvania law, alleging bad faith is "not sufficient in itself to state an actionable claim" for breach of the implied covenant. *Krekstein v. McDonald's Corp.*, 550 F. Supp. 3d 216, 220 (E.D. Pa. 2021) (applying Pennsylvania law). "Pennsylvania courts have a 'historical reluctance to recognize an independent claim for breach of that duty—sounding in contract or otherwise—except in very narrow situations: specifically, relationships between franchisor and franchisee, insurer and insured, and (sometimes) employer and employee." *Id*. (citations omitted). Moreover, "the Pennsylvania Supreme Court has held that the 'obligation of good faith is tied specifically to and is not separate from the duties a contract imposes on the parties.'" *Id*. (citations

14

omitted). "[C]ourts [must] proceed with caution under the doctrine, as it is not to be used to create new contractual obligations." *Id*. (citations omitted).

First, VTI's claim for breach of the implied covenant improperly asks this Court to create a new contract under which VTI need not repay the notes. That's inconsistent with Pennsylvania law (and Nevada law). *See Krekstein*, 550 F. Supp. 3d at 220; *Gamesa Energy USA*, 655 Pa. at 370, 217 A.3d at 1238. It is also inconsistent with the notes as amended by the November 23, 2021 Amendment, which VTI admittedly signed. Doc. 1-8.

Second, the claim fails because VTI has not pleaded and cannot plead any of the special relationships that are necessary for the implied covenant to apply under Pennsylvania law. *Krekstein*, 550 F. Supp. 3d at 220 (applying Pennsylvania law)).

Third, the claim for breach of the implied covenant fails under Pennsylvania law for all the same reasons it fails under Nevada law, discussed above. The November 23, 2021 Amendment, which VTI executed, unconditionally requires repayment of $1,050,000 according to a set schedule. Doc. 1-8. Bunce seeking to enforce this obligation is not bad faith. And VTI has pleaded no cognizable contractual damages arising from the alleged breach of the implied covenant. *See Hanna v. Lincoln Fin. Grp*., 498 F. Supp. 3d 669, 684 (E.D. Pa. 2020) (applying Pennsylvania law) (damages are an essential element of a contractual claim).

### D.   The Court should dismiss VTI's counterclaim for breach of contract.

VTI has failed to plausibly plead a claim against Bunce for breach of contract. Under both Nevada law and Pennsylvania law, to succeed on a breach-of-contract claim, a plaintiff must establish: (1) the existence of a valid contract, (2) breach of a duty imposed by the contract, and (3) damages resulting from the breach. *Hanna*, 498 F. Supp. 3d at 684; *Porter v. Chetal*, No. 3:13-CV-00661-LRH, 2015 WL 430241, at *3 (D. Nev. Feb. 3, 2015); *see Contreras v. Am. Fam. Mut. Ins. Co*., 135 F. Supp. 3d 1208, 1227 (D. Nev. 2015). A contract, whether written or oral, is formed

when there is an offer, the offered terms have been accepted, and consideration has been given. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005); *Chilutti v. Uber Techs., Inc.*, 2023 Pa. Super. 126, 300 A.3d 430, 443 (2023). The terms agreed upon must be sufficiently definite to be enforceable. *See Laguerre v. Nev. Sys. of Higher Educ.*, 3:10-CV-452-ECR-VPC, 2010 WL 5186794, at *3 (D. Nev. Dec. 10, 2010) (applying Nevada law); *Lazer & Lazer Corp. v. Agronomed Pharm. LLC*, 618 F. Supp. 3d 186, 199 (E.D. Pa. 2022) (applying Pennsylvania law).

VTI has not plausibly alleged the existence of a contract, oral or otherwise, that differs from the plain terms of the notes, as amended.

First, the terms of the contract that Bunce has supposedly breached are fatally vague and indefinite and lack consideration. VTI identifies multiple written contracts: Exhibits 3, 5, 6, 7, and 8 to Bunce's Complaint. Doc. 52 at 25–26 ¶¶ 221–23. VTI also identifies purported oral promises by Bunce—that he would "help Defendant Rajan and VTI pursue McCarthy to recoup losses from his apparent fraud," *id.* at 25 ¶ 223; "help to legally pursue McCarthy," *id.* at 26 ¶ 224; and "would not sue Mathu Rajan if [Rajan] signed the Repayment Amendment," *id.* at 26 ¶ 225. But the terms of the supposed oral contract—that Bunce would help Rajan and VTI "pursue McCarthy to recoup losses" or "legally pursue McCarthy," Doc. 52 at 25–26 ¶¶ 223–24—are too vague and indefinite to be enforceable. *Laguerre*, 2010 WL 5186794, at *3; *Lazer & Lazer*, 618 F. Supp. 3d at 199. The alleged agreement does not specify what Bunce promised to do or when or how he was supposed to do it or what he was to receive in exchange for this new promise. VTI has thus failed to plausibly plead the existence of an oral contract to help Rajan against McCarthy.

The alleged promise that Bunce would not sue Rajan if he signed the "Repayment Amendment," even if Rajan breached the Repayment Amendment, is likewise vague and indefinite. Doc. 52 at 26 ¶ 225. The counterclaim does not allege what Bunce was to receive in return for this supposed promise. VTI thus also alleges no consideration for this alleged promise

not to sue. Absent consideration, VTI cannot show that such a contract was ever formed. *See May*, 121 Nev. at 672, 119 P.3d at 1257; *Chilutti*, 300 A.3d at 443.

All the alleged new contractual terms are also implausible. These allegations cannot be squared with the plain terms of the notes, as amended. Doc. 1-8. They also make no sense for Bunce to agree to them. VTI alleges an alleged agreement under which Bunce receives no benefit and VTI gets to keep the $1.05 million Bunce loaned to it. VTI merely improperly wants to the Court to write a new contract for the parties. *See State Dep't of Transp.*, 133 Nev. at 554, 402 P.3d at 682; *Gamesa Energy USA*, 655 Pa. at 370, 217 A.3d at 1238.

Second, VTI fails to plausibly allege how Bunce has breached the notes or any other agreement by asking for his loan to be repaid per the defined, written schedule. Doc. 1-8.

Third, VTI fails to plausibly allege how the vaguely alleged oral representations before or after the written agreement in the notes could change or take precedence over the specific terms of the written contract. The notes, as amended, state that they "may not be changed orally, but only by an agreement in writing signed by the parties ...." Doc. 1-3 at 3 § 12; *see* Doc. 1-5 at 3 § 12; Doc. 1-7 at 21 § 15; Doc. 1-8 at 2 § 5.

 Fourth, VTI does not plausibly allege how Bunce caused VTI to suffer any cognizable damages. *Saini*, 434 F. Supp. 2d at 919–20 (applying Nevada law); *Hanna*, 498 F. Supp. 3d at 684. In its Amended Answer, VTI has asserted its own third-party claim against McCarthy (which is entirely irrelevant to Bunce's claims and an attempt to complicate simple claims). Doc. 52 at 27–28 ¶¶ 244–64. VTI has in fact asserted that third-party claim against McCarthy without needing any support from Bunce. VTI cannot plausibly allege any harm resulting from Bunce's alleged lack of "support." Any alleged loss caused by McCarthy is a matter that concerns only VTI (which still has Bunce's money). Moreover, VTI cannot plausibly allege that it has suffered *any* contractual damages—much less the outrageous sum of $500 million—simply because Bunce has

demanded that VTI repay the $1 million he loaned to it. *See Hanna*, 498 F. Supp. 3d at 684 (damages are an essential element of a contractual claim).

### E.    The Court should dismiss VTI's counterclaim for violation of Nevada securities law.

VTI has failed to plausibly plead a claim for violation of Nevada securities law. The facts alleged by VTI have nothing to do with transactions in securities or the statutes identified by VTI. As with VTI's other counterclaims, VTI again alleges Bunce has purportedly committed fraud merely by asking VTI to repay the money he loaned it, in accordance with the terms of the parties' notes. VTI now claims that this is fraud or deceit pursuant to Nevada securities law.

VTI claims that Bunce violated Nevada law, Nev. Rev. Stat. § 90.570, by making purportedly untrue statements while purchasing securities. Doc. 52 at 26 ¶ 233. VTI also claims that  Nev. Rev. Stat. § 90.660 imposes civil liability on fraudulent buyers of securities, like Bunce. These allegations fail as a matter of law.

First, VTI fails to plead any facts showing that this transaction is subject to the Nevada securities laws. Doc. 52 at 26–27 ¶ 234. No "securities" as defined by the Nevada Securities Act were bought, sold, or offered. *See* Nev. Rev. Stat. Ann. § 90.295 (defining "security"); *see also Beauregard v. Sampson*, 220-CV-02123, 2022 WL 17813072, at *4 (D. Nev. Sept. 28, 2022), *reconsideration denied*.[6] "When confronted with an unusual instrument not easily characterized as

---

[6] "'Security' means a note, stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in a profit-sharing agreement, a limited partnership interest, an interest in a limited-liability company, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, viatical settlement investment, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in an oil, gas or other mineral lease or in payments out of production of such a lease, right or royalty, a put, call, straddle or option on a security, certificate of deposit or group or index of securities including any interest therein or based on the value of any of the foregoing, or, in general, any interest or instrument commonly known as a security or any certificate of interest or participation in, temporary or interim certificate for, receipt for, whole or partial guarantee of or warrant or right to subscribe to or purchase any of the foregoing …." Nev. Rev. Stat. Ann. § 90.295.

a security, the courts should look to the economic reality underlying the transaction to determine whether the underlying economic reality indicates that the instrument is actually within the usual concept of a security." 69A Am. Jur. 2d *Securities Regulation—State* § 19 (May 2024). The loan to VTI here did not involve offering or selling any interest in VTI to Bunce, a point this Court has already made in denying Defendants' motion to dismiss. *See* Doc. 28. No publicly traded stocks were involved, the loan was unsecured (whether with interest in VTI or otherwise), and none of the warrants was executed. The "notes" at issue here thus did not involve any "securities" as defined by the Nevada Securities Act. The transactions at issue constituted loans.

Second, VTI fails to plausibly allege a violation of Nev. Rev. Stat. Ann. § 90.570 or Nev. Rev. Stat. Ann. § 90.660 because the counterclaim alleges no facts relating to the offering, sale, or purchase of a security. Doc. 52 at 26–27 ¶¶ 230–37.

Third, VTI has not alleged facts plausibly showing that Bunce has employed a scheme to defraud, engaged in a fraudulent course of business, or made untrue statements "in connection with the offer to sell, sale, offer to purchase or purchase of a security." Nev. Rev. Stat. Ann. § 90.570; *see* Nev. Rev. Stat. Ann. § 90.245. Bunce's loan was not made in connection with the sale or offer to sell a security. And even if it had been, VTI fails to plausibly allege how keeping Bunce's $1 million despite his request for repayment per the notes can somehow constitute a fraudulent act.

Fourth, Nev. Rev. Stat. Ann. § 90.660 cannot possibly have any application to Bunce. The statute mainly targets "[a] person who offers or sells a security," Nev. Rev. Stat. Ann. § 90.660(1), which does not apply to Bunce, as he never offered or sold a security. *Accord* Nev. Rev. Stat. Ann. § 90.660(2) ("A person who offers or sells a security …"). And "[a] person who willfully participates in any act or transaction in violation of NRS 90.580 is liable to a person who purchases or sells a security," Nev. Rev. Stat. Ann. § 90.660(3), but Nev. Rev. Stat. Ann. § 90.580 concerns

market manipulation, which has nothing to do with this dispute.[7] "The plain language of the statute indicates that it is intended to protect purchasers." *McDonald v. Palacios*, 2:09-CV-01470, 2014 WL 12781851, at *5 (D. Nev. Sept. 30, 2014).

     **F.**     **The Court should strike VTI's $500,000,000 claimed damages amount.**

     The Court should strike VTI's inflammatory contention that Bunce has caused it to lose $500 million, as it violates E.D. Pa. Local Rule 5.1.1:

> No pleading asserting a claim for unliquidated damages shall contain any allegations as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the court, and to reveal whether the case is or is not subject to arbitration under Local Civil Rule 53.2.

This alone is good cause to strike the allegation. *See* Doc. 33; Doc. 52.

     Moreover, courts have discretion to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 335–36 (E.D. Pa. 2022). Such motions are generally disfavored and are typically denied unless "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issue," and striking a portion of a pleading is "required for the purposes of justice." *Kovalev*, 647 F. Supp. 3d at 335–36 (citations omitted).

     For each counterclaim, VTI alleges that Bunce has somehow harmed VTI merely by asking it to repay the loan. And for each counterclaim, VTI alleges that Bunce has purportedly caused it to lose *$500,000,000* in "enterprise value." Doc. 52 at 24–26 ¶¶ 203, 218, 228 (emphasis added); *id*. at 29 (prayer for relief c). This amount of alleged unliquidated damages is unsupported by any pleaded facts. It is speculative, unrealistic, implausible, and otherwise immaterial and impertinent under Rule 12(f).

---

[7] Subsection 4 is also inapposite. *See* Nev. Rev. Stat. Ann. § 90.660(4) ("A person who directly or indirectly controls another person who is liable under subsection 1 or 3 …").

Worse, it appears to be included merely to shock, scare, and intimidate Bunce, and to mislead the Court and the public as to the respective value of damages and harm claimed.

Local Rule 5.1.1 and Fed. R. Civ. P. Rules 12(f) prohibit such baseless pleadings. The $500 million counterclaim damage amount therefore should be stricken.

## III.   Conclusion.

The Court should dismiss for the failure to state a claim each of VTI's counterclaims for common-law fraud, fraudulent concealment, breach of the covenant of good faith and fair dealing, breach of contract, and violation of Nevada securities law. The Court should also strike from VTI's Amended Answer its allegation that Bunce has somehow caused it to lose $500,000,000. Bunce reserves the right to seek his attorneys' fees. 28 U.S.C. § 1927.

Respectfully submitted,

By: _s/ Michael D. Homans_
　　　Michael D. Homans
　　　ID No. 76624
　　　HOMANSPECK, LLC
　　　230 Sugartown Road
　　　Suite 218
　　　Wayne, PA 19087
　　　(215) 419-7463
　　　mhomans@homanspeck.com

　　　_Attorneys for Plaintiff Mark L. Bunce_

Michael P. Kohler, _admitted pro hac vice_
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
(404) 962-6100
Michael.Kohler@millermartin.com

　　　_Attorneys for Plaintiff Mark L. Bunce_