# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE,<br><br>Plaintiff, | : : : : | |
| vs. | : | |
| VISUAL TECHNOLOGY INNOVATIONS, INC. and MATHU G. RAJAN,<br><br>Defendants/Counterclaim and Third-Party Plaintiffs | : : : : : : : : | Civil Action Case No.<br>C.A. No. 2:23-cv 01740 |
| vs. | : | |
| Mark Bunce ,<br>Counterclaim Defendant<br>and | : : : | |
| Timothy McCarthy<br>Third -Party Defendant | : : | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION FOR LEAVE

This memorandum of law is in support of the motion for leave to amend the Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint.

## I.      RELEVANT PROCEDURAL HISTORY

This case is only at its outset.  Plaintiff and Counterclaim Defendant Mark Bunce ("**Bunce**") filed the Complaint on May 5, 2023.  Defendants/Counterclaim and Third-Party Plaintiffs Visual Technology Innovations, Inc. ("**VTI**") and Mathu G. Rajan amended their Answer on April 24, 2024 and added several counterclaims against Mark Bunce.  A third party Complaint was also asserted joining Timothy McCarthy ("**McCarthy**") as a third-party defendant to this lawsuit.

VTI also filed suit against McCarthy in a federal court sitting in Nevada (for fooling VTI by fraud).

No depositions have occurred yet. The first deposition is scheduled for Andrea Bunce on May 29,2024. VTI expects Andrea to admit how seasoned and experienced she and her husband were as investors before they committed their monies to VTI in 2021.

Bunce has filed a Motion to Dismiss against the counterclaims asserted against him. This request for leave of Court is requested to address the issues in the request for dismissal.

## II.     RELEVANT SUMMARY OF FACTS

This case largely concerns a repayment of investment monies of Bunce. In 2021, Bunce invested in a Nevada-incorporated company called VTI three times. Bunce changed his mind[1] in 2021 because this time he was approached with a "no- risk" investment opportunity where his money may be committed for only thirty (30) days. The investment opportunity was a "dream-come-true" for investors. Bunce was being asked to invest as a precursor investor to McCarthy who had already promised thirty million dollars ($30,000,000) as common stock—no right of repayment to VTI.

**Third -Party Defendant** Timothy McCarthy never invested in VTI. He was not the salesmen that Bunce or VTI thought in 2021. McCarthy may have been a "con man" that fooled Bunce and VTI. That is why VTI is suing McCarthy in Nevada (*VTI v Timothy Mcarthy*, et. al., No 2:24-cv-00728 in district for Nevada) and making him a third-party defendant in this lawsuit for Bunce. VTI feels sorry for Bunce that he was fooled by McCarthy in the same manner that it was also fooled.

---

[1] Bunce previously was approached to invest in a venture that was VTI or its predecessor.

## III.    ARGUMENT

Do the words and actions of Bunce at the time of his investment govern or do the language Bunce used nearly eleven (11) months later. That is the primary question that is the basis of both the affirmative defenses and counterclaims. Under Rule 15(a)(1)(B) of the Rules of Civil Procedure, leave to amend the Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint may be unnecessary as its amended in response to Bunce's Motion Rule 12(b), (e) and (f). However, in an abundance of caution, Defendants seeks leave any way under Rule 15 (a)(2) which provides that such leave to amend should be given freely.

The lawsuit is only at the outset and no other party is prejudiced by this request to amend. This letter to amend is in response to the Motion to Dismiss Counterclaims filed by Bunce under Rule 12. The proposed changes to the Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint should eliminate the need for another Motion to Dismiss Counterclaims and so could promote judicial economy. The proposed Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint is attached hereto as a redline (so proposed changes are seen easily) as **Exhibit A**.

Bunce's Motion to Dismiss also includes a request to strike the five hundred million dollars ($500,000,000) in damages claimed by Defendants as one amount of loss. Defendants have much evidence for trial that amount may be accurate as to some of their losses. Nevertheless, Defendants are withdrawing that specificity in the proposed amendment.

The amendment is also proposing to add affirmative defenses and eliminate many averment that may be unnecessary under the notice" pleading required under Rule 8, et. seq. With everything considered, the leave to amend the Answer, Affirmative Defenses, Counterclaims and

Third-Party Complaint should be granted. *Glasser v. Bowling*, CIVIL ACTION No. 2:15-cv-01411, at *2 (S.D.W. Va. Sep. 14, 2017); "The Court finds no evidence." *Pride v. Pierce*, No. 5:14-CV-781-BO, at *3 (E.D.N.C. Mar. 8, 2016) (the court found no evidence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in amendments previously allowed or undue prejudice at this stage of the litigation);. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)." *Moreno v. Vi-Jon, LLC*, No. 21-56370, at *3 (9th Cir. Dec. 14, 2022) (when a claim can be cured, leave to amend should be freely given)). " *Hamilton ex rel United States v. Yavapai Cmty*. Coll. Dist., No. 21-16732, at *4 (9th Cir. Dec. 28, 2022) (when a complaint can be cured, leave to amend should be freely given *citing AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).)

## IV.    CONCLUSION

For the aforementioned reasons, Movants asks this Honorable Court to grant the proposed Order.

**Exhibit List**

Exhibit A-redline of proposed amended Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint.

Dated: May 21, 2024        Respectfully submitted,

/s/ Raja Rajan

Raja Rajan, Esquire
Attorney I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002
raja@rajanlawgroup.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE,<br><br>Plaintiff, | :<br>:<br>: | ~~Civil Action~~ |
| vs. | ~~:~~ ~~:~~ | ~~Case No. C.A. No. 2:23-cv 01740~~ |
| VISUAL TECHNOLOGY INNOVATIONS, INC.<br><br>   and<br><br>MATHU G. RAJAN,<br><br>       Defendants/Counterclaim<br>and Third-Party Plaintiffs | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action Case No.<br>C.A. No. 2:23-cv 01740 |
| vs. | : | |
| Mark Bunce ,<br>       Counterclaim Defendant<br>       and | :<br>:<br>: | |
| Timothy McCarthy<br><br>              Third -Party Defendant | :<br>: | |

**AMENDED**
**ANSWER, AFFIRMATIVE DEFENSES,**
**COUNTERCLAIMS, AND THIRD-PARTY CLAIMS**

**RESPONSIVE**
**INTRODUCTION**

Plaintiff's Introduction section contains numerous assertions in an improper format as specified by the rules. All the assertions in the Introduction are denied. Defendants assert counterclaims and claims against a third party to join in this action. Plaintiff seeks repayment of several promissory notes he provided in reliance that another investor by the name of Timothy

1

McCarthy was planning on investing in Defendant Visual Technology Innovations ("**<u>VTI</u>**") at the same time as him or after him. Plaintiff counted on McCarthy's investment size, in the vicinity of $30 million US Dollars, to be used to repay him quickly after investing in VTI. Plaintiff made his repayment entirely contingent on VTI raising more money. He did not tell VTI that he wanted his money back regardless of the money from McCarthy. Only months later did Plaintiff bully VTI to force it to repay him regardless of McCarthy or more investment money. This document raises counterclaims against Plaintiff for not informing VTI of his true intentions and his promises regarding McCarthy and t fairness under the investment documents.

## PARTIES

1.      Admitted. However, the exact address of Plaintiff is not provided.

2.      Admitted but the choice of law in Plaintiff's contracts specify Nevada law not Pennsylvania law. VTI is a corporation registered in Nevada.

3.      Admitted.

## JURISDICTION AND VENUE

4.      Denied. This averment is a legal conclusion to which no response is required.

5.      Denied. VTI is registered in Nevada. The alleged breach of contract dispute should be heard in Nevada as provided in the contracts between Plaintiff and VTI.

6.      Denied. Defendant Rajan did not engage in any misconduct. Rather, any fraud was conducted exclusively by another person Timothy McCarthy who is being sued in federal court in Nevada.

7.      Denied as Stated. Diversity of parties exist. This averment is a legal conclusion to which no response is required. However, this lawsuit should be determined in Nevada and not Pennsylvania.

8.      Denied. This averment is a legal conclusion to which no response is required.

However, the venue of this lawsuit is in Las Vegas, Nevada as provided in the investment contracts and not Pennsylvania.

## STATEMENT OF FACTS

9. Admitted. Stream TV Networks, Inc. may be abbreviated herein as "**Stream TV**".

10. Admitted.

11. Denied as stated. Stream TV had more debt than equity on its balance sheet shortly after its inception in 2009 since some investors chose to invest through venture debt and not equity. However, Stream TV never missed payroll for its employees since its inception until 2020 and only got into financial problems when the venture debt investors chose to unlawfully take everything and ignore their written debt-to-equity conversion agreements to eliminate their debt. However, the venture debt investors refused to convert the debt to equity, in spite of many promises, in order to seize Stream TV's 3D technology for themselves.

12. Denied. A faction of investors plotted with venture lenders to unlawfully take away all of the assets of Stream TV. Many lawsuits in many other courts exist as a result of the unlawful actions by certain former executives and board members of Stream TV.

13. Denied. Defendant Rajan always felt that the 3D assets of Stream TV were taken away illegally and he was joined in that opinion by many independent lawyers, Plaintiff, and Timothy McCarthy ("**McCarthy**"), mentioned below. Subsequently, the Delaware Supreme Court, sitting *en banc*, ruled unanimously in a fashion that proved the opinions of illegality were correct.

14. Admitted in part and denied in part. The implication that VTI was created to regain the 3D assets taken from Stream TV is admitted. It is denied that VTI was anything but a proper entity which Plaintiff and McCarthy verified before executing investment paperwork.

15. Denied as stated. Both Defendant Rajan and Glen Davis of Knight Davis

3

Associates, LLP., ("**Knight Davis**") provided Plaintiff with accurate information. Knight Davis and Glen Davis were retained by VTI and not Defendant Rajan. In addition, Plaintiff undertook extensive due diligence before he executed any paperwork.

16.     Denied as stated.  Knight Davis is an introducer which was working for and agent of VTI.

17.     Denied as stated.  The information provided to Plaintiff was more extensive than what is described. Plaintiff was fully aware that VTI had little assets at the time except for an inferior technology called "stitching and tiling" and VTI had to recover (acquire) the superior technology of Stream TV and that is why he required a bankruptcy filing to get those assets of Stream TV.

18.  Plaintiff's paragraph contains numerous allegations. They are all denied. At the time that Plaintiff describes, Burlington had already signed investment documents. The obviously fraudulent letter came from McCarthy and bears a date after the date of the phone call Plaintiff describes.   VTI through Davis only told Plaintiff about that letter afterwards.  VTI was duped by McCarthy as well as Plaintiff.

19.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

20.  Plaintiff's paragraph contains numerous allegations. They are all denied.  Plaintiff knew fully that VTI was to contest the Court rulings by an appeal.  Plaintiff knew his money and the money of McCarthy would go towards regaining assets of Stream TV.  That is why Plaintiff added a requirement in his first loan documents requiring Stream TV to seek bankruptcy protection and to regain Stream TV's assets.  Plaintiff admits that his money was to be repaid only when either McCarthy invested larger sums of funds or VTI raised money from other sources.

21.  Plaintiff knew that McCarthy duped him and VTI.  That is why he promised to help VTI to

4

sue McCarthy until he was told to take a different path for legal strategy reasons.

22.   Plaintiffs paragraph contains numerous allegations. They are all denied.

23.   Plaintiffs paragraph contains numerous allegations. They are all denied.

24.   Admitted except for the part of the allegations that refers to "false representation", which is specifically denied.

24a.      Denied.

24b.      Denied.

24c.      Denied.

24d.      Denied.

24. e.    Denied

24f.      Denied.

24g.      Denied.

24h.      Denied.

25.      Plaintiff's paragraph contains numerous allegations. They are all denied.

26.      Plaintiff's paragraph contains numerous allegations. They are all denied.

27.      Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

28.      Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself and any implications or additional extraneous facts are denied.

29.      Plaintiff's paragraph contains numerous allegations. They are all denied.

30.      Plaintiff's paragraph contains numerous allegations. They are all denied.

31.       Plaintiff's paragraph contains numerous allegations which are all denied.

32.       Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

33.     Plaintiff's paragraph contains numerous allegations. They are all denied.

34.     Denied.  Plaintiff conducted extensive due diligence including talking to anyone he wished.   In fact, his documents state specifically that he "…acknowledges that it [he] has conducted to its [his] satisfaction an independent investigation and verification of the financial condition, results of operations, assets, liabilities, properties and projected operations of the Company and, in making its determination to proceed with the transactions contemplated by this Agreement, Investor has relied on the results of its own independent investigation and verification…"

35.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.  McCarthy did not keep his written promises to either VTI or Plaintiff Mark Bunce.

36.     Plaintiff's paragraph contains numerous allegations. They are all denied.

37.     Plaintiff's paragraph contains numerous allegations. They are all denied.

38.     Plaintiff's paragraph contains numerous allegations. They are all denied, and, in addition, the referenced document speaks for itself.

39.     Plaintiff's paragraph contains numerous allegations. They are all denied, in addition, the referenced document speaks for itself.

40.     Denied.  The writing speaks for itself.  In addition, it is clear from the writing that VTI and Bunce were duped by McCarthy.

41.     Denied.  The writing speaks for itself.

42.     Denied as stated.

43.     Denied. To the contrary, Plaintiff Bunce and his wife were sure of investment by McCarthy.  Plaintiff was so sure of money from McCarthy he repeatedly inserted in his investment documents with VTI that he could only be repaid after VTI raised more money (USD $1 million

initially then USD $10 million).  Plaintiff did not tell anyone at VTI that he would want his money back regardless and without contingency if McCarthy's investment took too long.

44.     Denied as stated.

45.     Denied as stated.

46.     Denied. The writing speaks for itself and is incomplete.

47.     Denied.  The plain language in Plaintiff's notes refutes these assertions.  Plaintiff required a bankruptcy filing his investment documents.

48.     Denied.  Plaintiff's own writings required that bankruptcy filing.

49.     Admitted in part and denied in part.  It is admitted that Burlington Resources Asia Limited never invested any money in VTI, despite McCarthy's repeated assurances.  Any further part of the assertion are legal conclusions which are denied and require no responsive pleading.

50.     Denied.

51.     Denied.  Plaintiff Bunce's loans were used for lawful business purposes only.

52.     Denied.

53.     Plaintiff's paragraph contains numerous allegations.  The writing speaks for itself, and any implications or additional extraneous facts are denied.

54.     Denied. The writings speak for themselves.

55.     Denied.

56.     Denied.  Plaintiff did not want his money back until VTI raised more money.

57.     This averment is a legal conclusion to which no responsive pleading is required.

**COUNT I**
**BREACH OF CONTRACT**
**BUNCE v. VTI**

58.     This averment requires no responsive pleading.

7

59.     This paragraph states a legal conclusion to which no responsive pleading is required.  The assertions are denied if it is determined that a responsive pleading was required.

60.     Denied.  The contracts speak for themselves as they are written documents.

61.     This paragraph contains numerous assertions.  The writing mentioned speaks for itself.  The whole instance happened due to Plaintiff investing in reliance on investment by McCarthy and indicated that he could wait for his investment for repayment (maturity was dependent on more money in VTI).

62.     Denied.  This paragraph avers numerous allegations, and they are all denied.  The averments are legal conclusions to which no responsive pleading is required.

63.     Denied.  The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

64.     Denied.  The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

65.     The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

66.     The allegation that there has been an alleged breach is a legal conclusion to which no responsive pleading is required.

**COUNT II**
**FRAUDULENT INDUCEMENT**
**BUNCE v. RAJAN**

67.     This averment requires no responsive pleading.

68.     This paragraph contains numerous averments.  The averments are legal conclusions to which no responsive pleading is required.  To the extent that some facts are intertwined in the averment, they are denied.

69.     Denied.   This paragraph provides legal conclusions to which no responsive pleading is required.

70.     Denied.   This paragraph provides legal conclusions to which no responsive pleading is required.

71.     Denied.   This paragraph provides legal conclusions to which no responsive pleading is required. Plaintiff conducted his own due diligence and warranted in writing that he performed independent verifications.

72.     Denied.   This paragraph provides legal conclusions to which no responsive pleading is required.  Davis worked for VTI not Defendant Rajan.

73.     Denied.   This paragraph provides legal conclusions to which no responsive pleading is required.

74.     Denied.   This paragraph provides a legal conclusion to which no responsive pleading is required.

**COUNT III**
**UNJUST**
**~~ENRICHMENT~~NRICH**
**MENT**
**BUNCE v. RAJAN**

75.     This averment requires no responsive pleading

76.     Denied.   This paragraph provides numerous legal conclusions to which no responsive pleadings are required.

77.     Denied.  Plaintiff Bunce provided no benefit to VTI by misleading it in order to obtain warrants for equity.

78.     Denied. This averment states legal conclusions to which no responsive pleading is required.

79.     Denied. This averment states legal conclusions to which no responsive pleading is

required.

80. Denied. This averment states legal conclusions to which no responsive pleading is required.

74. This paragraph is numbered erroneously as it provides again the number 74 but after the number 80. The averment states a legal conclusion to which no responsive pleadings are required.

## PRAYER FOR RELIEF

75. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

76. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

77. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

78. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

79. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

80. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

81. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

82. This averment is incorrectly numbered, but it states a legal conclusion to which no responsive pleading is required.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**

Plaintiff's amendment to his debt that eliminated the pre-condition for repayment/maturity, Exhibit 8 to Complaint, is invalid as it was based on duress, undue influence, and other forms of undue pressure in a manner that invalidates that contract/amendment. Referred to as Repayment Amendment as fully described below. Also, there was no meeting of the minds for contract formation.

**Second Affirmative Defense**

Alternatively, Plaintiff's amendment to his debt that eliminated the pre-condition for repayment/maturity, Exhibit 8 to Complaint, was worded so that it provided an installment payment in addition to VTI raising $10,000,000. It did not use replacement language for the $10,000,000 precondition like the language used in other contracts referenced as amendments. For that reason, Plaintiff's loans are not yet mature. There was no meeting of the minds for contract formation.

**Third Affirmative Defense**

The loans/investments of Plaintiff Bunce are not yet mature nor collectable for the reasons mentioned in the background and counterclaims.

**Fourth Affirmative Defense**

The loans/investments of Plaintiff Bunce should be cancelled, rescinded, or voided for the reasons mentioned in the background and counterclaims including the fraud of Plaintiff Bunce.

**Fifth Affirmative Defense**

The contracts of Plaintiff were induced through the misrepresentation and false promises of Timothy McCarthy and not VTI, Defendant Rajan, or any of the representatives of VTI.

**Sixth Affirmative Defense**

The third-party claims against McCarthy should be used to offset and pay Plaintiff.

**Seventh Affirmative Defense**

McCarthy is responsible for any harm to Plaintiff Bunce since he induced him directly or indirectly to invest in VTI.

**Eighth Affirmative Defense**

Plaintiff's lawsuit should be heard in Nevada and not in Pennsylvania. There is no personal jurisdiction and venue is improper as the contracting parties selected Nevada for the location of disputes.

**Nineth Affirmative Defense**

A claim for unjust enrichment cannot exist in the same lawsuit when a breach of contract is also claimed.

**Tenth Affirmative Defense**

No meeting of the minds occurred with regard to a contract called "Amendment to Note" executed November 23, 2021 (the document is attached to Complaint as Exhibit 8). No contract or contract obligations were ever created.

**Eleventh Affirmative Defense**

The fraud of Plaintiff Bunce invalidated or voided any obligations to Plaintiff Bunce.

**Twelfth Affirmative Defense**

Exhibit 8 to the Complaint, Plaintiffs contract to seek immediate repayment of his unmatured loans is based on mistake or other reasons for not ~~formatting~~forming a contract.

**Thirteenth Affirmative Defense**

Exhibit 8 to the Complaint, Plaintiffs contract to seek immediate repayment of his unmatured loans never formed as it lacked consideration to repay a debt earlier than maturity.

**Fourteenth Affirmative Defense**

Exhibit 8 to the Complaint, fails as it was based on untruths told to obtain execution by fraud.

**Fifteenth Affirmative Defense**

Exhibit 8 to the Complaint fails as there was no legal consideration.

**Sixteenth Affirmative Defense**

The respective statute of limitations bars Plaintiff's claims.

**Seventeenth Affirmative Defense**

The respective claims of Bunce are barred under the doctrines of waiver.

## COUNTERCLAIMS AND THIRD-PARTY CLAIM

83.     All of the averments, responses of Defendants and information in the Defenses are incorporated herein by reference as if fully set forth.

### Parties

84.     Plaintiff, Mark Bunce, who is a Counterclaim Defendant is identified in Plaintiff's Complaint.

85.     ~~Another~~Timothy McCarthy ("**McCarthy**") is another person ~~is~~ being joined in this lawsuit as a third-party Defendant~~, his name is  Timothy McCarthy ("~~**~~McCarthy~~**~~")~~.~~.

86.      McCarthy is an adult individual with an address of Blackfoot Point, #104, 8826 Blackfoot Trail SE Calgary AB | T2J 3J1.

87.     McCarthy formerly resided in the United Kingdom not too far from Mark Bunce, who lives in the prestigious area of the Channel Island of Guernsey, but McCarthy divorced his wife and absconded to Canada after defrauding Mr. Bunce and VTI.

88. Adding/joining McCarthy to this lawsuit will not destroy diversity jurisdiction as Plaintiff and Defendants and the third party Defendant reside in different countries.

**Jurisdiction**

89. As stated by Plaintiff in his Complaint, jurisdiction in Federal Court is based on 28 U.S. Code § 1332. The requirements of that statute are met.

90. However, there is dispute between Plaintiff and Defendants if this lawsuit should be properly heard in Federal Court in Nevada as opposed to being heard in Federal Court in Pennsylvania.

91. In fact, a lawsuit has commenced already against McCarthy in Nevada Federal Court at 2:24-cv-00728-ART-EJY.

92. The third-party claim against McCarthy in this case is only about his legal responsibility to Mark Bunce instead of Defendants.

93. Jurisdiction is based on diversity of citizenship and the joinder of the third-party Defendant does not change the jurisdiction of the Federal Courts.

**Jury Demand**

94. A trial by Jury is demanded by Defendants.

**Background**

95. McCarthy signed investment paperwork through his company Burlington Resources Asia Limited ("**Burlington**") with VTI on or about February 10, 2021~~.~~ and promised to subscribe for thirty million dollars ($30,000,000).

96. McCarthy ~~did not close on~~indicated that ~~written promise and gave~~he would invest that sum for common stock in VTI ~~all kinds~~with no right ~~of excuses~~repayment.

97. ~~.~~But the investment paperwork of McCarthy ~~insisted~~/Burlington provided that VTI ~~find on~~would get his monies only thirty (30) days later.

14

~~97.~~98.     Right after he signed, McCarthy told VTI that it had better get a precursor investor ~~of USD one~~to him for a million dollars ~~or more to invest in VTI before his money closed so that he could call his money "growth investment."~~($1,000,000).

~~98.~~99.     ~~That insistence by McCarthy led to ~~VTI~~ finding Mark Bunce.

~~99.~~100.    ~~At all times Mark ~~Bunce was approached to be an investor to help conclude the money of McCarthy that was promised ~~in writing ~~but not yet closed.

101.     Mark Bunce ~~invested~~agreed to the proposal after conducting his due diligence and independent verifications.

~~100.~~102.    His first loan was only ~~seventeen (17~~fourteen (14) days from the date that McCarthy had signed investment paperwork with VTI.

~~101.       Mark Bunce never told VTI that he wanted his repayment regardless of McCarthy closing in VTI.~~

~~102.       In fact, Mark Bunce expressed the opposite in his investment writings that repayment of his investment loans was entirely contingent on more money into VTI.~~

~~103.       McCarthy and Mark Bunce spoke privately on the phone several times.~~

~~104.~~103.    Mark Bunce and his spouse Andrea Bunce were convinced that McCarthy would close the monies he promised in VTI.

~~105.       The Bunces performed extensive due diligence for their investments in VTI.~~

104.     Bunce wanted to desperately invest in VTI because: a) it was a loan with repayment rights unlike McCarthy who had subscribed to common stock with no repayment rights; b) it was likely to be short term like a bridge loan; and c) he would receive warrants for equity for simply providing a short term loan.

~~106.       ~~Mark Bunce ~~represented in a writing to ~~never told VTI that he ~~had conducted~~wanted his ~~own diligence before investing.~~

15

107.    ~~Mark Bunce also wrote that he knew the risks associated with investing.~~

105.    ~~Despite Mark Bunce's great experience and that~~repayment regardless of ~~his spouse Andrea~~McCarthy closing in VTI when he invested or loaned.

106.    Rather, Bunce~~, he~~ wrote in his first loan that he would only be repaid after VTI raised another million dollars ($1,000,000). Complaint, exhibit 3.

107.    McCarthy and Mark Bunce spoke privately on the phone several times.

108.    Bunce expected the ~~loan documents a precondition or~~ money from McCarthy to be received in the VTI bank account in days.

108.    ~~On his second loan, Bunce increased the~~ contingency ~~before the investment loans matured or could be repaid.~~

109.    ~~In the first investment of Mark Bunce, he specified that he could not seek repayment until~~ a) ~~another company called Stream TV Networks, Inc. declared bankruptcy and b) that USD One Million ($1,000,000) of the Thirty Million promised to VTI had closed.~~

110.    ~~Those conditions explain the mentality of Mark Bunce when he invested in VTI three (3) times.~~

111.    ~~That pre condition of USD One Million~~by ten times ($1,000,000)~~ was exactly the amount of the investment promised VTI by McCarthy with another $29,000,000 to follow.~~

~~112.~~109.    ~~Mark Bunce increased his contingency for repayment to USD Ten Million ($$10,000,000)~~ ~~before~~from the threshold he ~~could demand repayment; Mark Bunce made that change less than thirty (30) days after the second~~chose for his first loan ~~through an amendment.~~. That amendment is ~~attached as Exhibit 8~~exhibit 6 to the Complaint~~.~~ and hereinafter called the ("**Contingency Amendment**").

113.    ~~The Contingency Amendment delayed maturity for repayment~~ ~~**only when**~~ "…the Company has received an aggregate total of US Dollars Ten Million (US $10,000,000) in new capital~~

from the date of this Amendment ("Maturity Date")".

~~114.~~110. Before that amendment, the maturity date ~~in~~of ~~the~~ second loan was thirty (30) days.

~~115. Mark Bunce increased his contingency trigger for repayment to USD Ten Million Dollars ($10,000,000) from USD One Million Dollars ($1,000,000) in his First Loan.~~

~~116.~~111. Mark Bunce agreed to the contingency again when he invested more money in VTI in his third his third investment.

~~117.~~112. ~~The third investment of~~ Mark Bunce ~~provided~~invested again a third (3rd) time and structured his loan so that it does not mature until VTI ~~has~~ received USD Ten Million Dollars ($10,000,000).~~.~~ Exhibit 7 to Complaint, section 1.

~~118.~~113. Mark Bunce spoke directly to McCarthy to independently verify McCarthy's intentions regarding VTI since Mark Bunce relied on his monies ~~from McCarthy~~ so he could be repaid.

~~119.~~114. VTI only represented to Bunce what McCarthy had informed ~~them representative to them~~it until Mark Bunce began talking directly to McCarthy.

~~120.~~115. Eventually, Plaintiff Mark Bunce became doubtful of investment of McCarthy ~~in VTI as~~because McCarthy was constantly delaying the actual closing on his investment promises with VTI.

~~121. McCarthy even testified under oath in front of a federal judge to assure all parties that his intention to invest in VTI was coming.~~

116. ~~Even after his initial skepticism, Mark Bunce invested in VTI again, hopeful of the investment money from~~ Bunce was worried that Mathu Rajan was being fooled by McCarthy.

~~122.~~ McCarthy ~~finally coming through.~~

~~123.~~117. ~~Mark~~was fooling Bunce ~~wanted to believe McCarthy may close with VTI and again put in a "contingency" for repayment with his last investment/loan~~VTI.

~~124. Mark Bunce was and is a very sophisticated investor as he invested for over forty (40)~~

years.

118. ~~The wife of Mark~~ Then nearly eleven (11) months later, Bunce sprang into action.

125. Bunce, ~~Andrea Bunce, also was a very knowledgeable investor as she worked in the business of securing money for companies.~~

126. ~~Andrea Bunce obtained training and gained experience in legal matters related to deals involving investment capital for companies.~~

127. ~~She also knew which lawyers or law firms specialized in investing in companies; she knew from her work which legal advisers are extremely knowledgeable in securities and investments in the same manner of the transaction contemplated with VTI.~~

**Formatted:** Indent: Left: 0.19", First line: 0.5", Right: 0.08", Line spacing: single, No bullets or numbering

128. ~~Mark Bunce and Andrea Bunce lied to VTI as to their investments in order~~ was convinced that ~~VTI would view them as suitable as a precursor investor to Timothy~~ McCarthy. was a fraud

129. ~~The Bunces knew Defendant Rajan, the CEO of VTI, had raised million dollars in investments before~~ and ~~that if Mark Bunce did not appear suitable for McCarthy, Defendant Rajan would go to another investor instead of Mark Bunce.~~

130. ~~Mark Bunce did not tell VTI that they would invest in VTI but structure it a loan with repayment due on a date certain; rather Mark Bunce wrote that~~ so he determined he ~~would~~ needed to do something to get ~~no repayment options~~ until ~~VTI raised more money (initially $1,000,000 and then $10,000,000); Mark Bunce write that contingency to fool them.~~

131. ~~Mark Bunce, with Andrea's legal knowledge and ability to retain legal advisers, could have and should have structured their loan repayments to have no contingency or pre-condition for repayments; for example, they could have and should structure the loan that matures and is repaid after on 12/31/2021.~~

132. ~~They provided a date certain for maturity in the second loan documents until it they changed it by written amendment a few days later.~~

133. ~~A loan that is to bridge to another investment event (like the McCarthy investment) is~~

18

known as a "bridge" loan; whereas the typical loan matures on a date certain, with no contingency, and is known as a "straight" loan.

134.   Mark Bunce started regretting his lie to VTI.

135.119.  Mark Bunce started wanting his money back when he got tired of waiting for McCarthy for repayment..

136.   Mark Bunce stopped talking to Knight Davis, who were agents for VTI; they were friendly to McCarthy and only acted as the messenger to transmitted investment paperwork to him from VTI.

137.   Mark Bunce knew or should have known his investment documents did not allow him to get his money back from VTI since the paperwork tied repayment only when VTI received USD Ten Million Dollars ($10,000,000).

138.   Therefore, Plaintiff Mark Bunce realized he had to get a new replacement contract to try to recoup his money from VTI; otherwise, his investment loans would not mature until VTI raised at least $10,000,000.

120.   Mark Bunce pressured VTI to have DefendantBunce wanted Mathu Rajan to execute a new another amendment to allow him to collect his monies in VTI without VTI raising any money.

121.   Bunce wanted his loaned money back regardless of more monies in VTI by McCarthy which only seemed like "broken promises."

139.122.  On November 23, 2024, Bunce obtained the signature of VTI for an amendment no matter what the cost.that gave him the right to collect his monies without McCarthy. That amendment document is attached to the Complaint as Exhibit 8 thereto (hereafter called the "**Repayment Amendment**").

140.123.  Mark Bunce and his representative told Defendant Rajan he would not be sued if he signed the amendment mentioned below as Although poorly drafter, the Repayment Amendment and

19

purported to allowed Bunce to claim that ~~Plaintiff Bunce would only sue~~he should get repaid his monies on an installment schedule even without McCarthy.

124. The Repayment Amendment provides that "The Value of the Notes will be repaid to the Purchaser in the following schedule ("Maturity Date"):"

125. In fact, the Replacement Amendment specifically provides that "Except as expressly amended by this Amendment, the provisions of the Note, as amended, shall remain in full force and effect."

126. That amendment provided a schedule for repayment, but it did not use that replacement language that Bunce used before---instead it uses "additive" language.

127. The ~~Mark~~Repayment Amendment does not contain any word or phrase implying replacement and therefore, the repayment schedule can be interpreted as being additive (repayment schedule in addition to VTI raising more money).

128. The language that Bunce ~~bullied VTI through Defendant~~used in other amendments were the opposite of the language used in the Repayment Amendment.

129. Bunce amended his loans twice before he obtained the Repayment Amendment signed

a) On March 7, 2021, Bunce executed an amendment that replaced his first loan entirely and used the word "replaced" with a new agreement. (that new agreement was the 2nd loan by Bunce).

b) On April 5, 2021, the Contingency Amendment, provided that

Section 1 of the Note (the maturity definition) VN21019-00 **shall amended in its entirety** and will read as follows: The Note will Mature 10 days after the confirmation that the Company has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("Maturity Date").

Complaint, exhibit 6. (emphasis and clarification added).

130. That document also provided that" **Unless otherwise specified herein**, each term used

20

herein that is defined in the Note, as amended, shall have the meaning assigned to such term in the Note" and stated again that "Except as expressly amended by this Amendment, the provisions of the Note, as amended, **shall remain in full force and effect**. "Complaint, exhibit 6. (emphasis added).

131.     Clearly what Bunce wanted in the Repayment Amendment and what Mathu Rajan and VTI thought were different; there was no "meeting of the minds" for contract formation.

132.     Mathu Rajan and thought that Bunce knew that VTI had to raise more investment money to repay Bunce and so he thought he had time to close McCarthy or raise ten million dollars ($10,000,000) before the first installment payment was due under the Repayment Amendment.

133.     Bunce gave a full month (30 days) to start repaying him in the Repayment Amendment; Bunce could have demanded his money or a portion of it immediately.

134.     The technique that Bunce employed to obtain a counter-signature for the Repayment Amendment was using both the "carrot" and "stick."

135.     Bunce told Mathu Rajan that he and VTI would not be sued by him if he signed the Repayment Amendment.

136.     Bunce also began bullying Mathu Rajan and threatened to shut down VTI unless he was repaid (Repayment Amendment).

141.137.  The bullying by Mark Bunce caused himMathu Rajan severe apprehension where he felt he had to succumb to a new amendment of Mark Bunce.

142.     Attached as **Exhibit B** is an email from Mark Bunce to Defendant Rajan that conveyed demand for immediate repayment.  That email was sent November 4, 2021.

143.     Only three (3) days later Mark Bunce sent another email to Defendant Rajan threatening to cause massive disruption to VTI.  That email is attached hereto as **Exhibit C**.

144.138.  When Defendant Rajan spoke to Mark Bunce, Bunce made it clear that he wanted repayment immediately or he would shut down VTI and its desire to regain the assets and technology

21

of Stream TV which VTI hoped to recover.

139. Mathu Rajan thought he still could close McCarthy to repay Bunce on the schedule he wanted.

~~145.~~140. Defendant Rajan worried that many other people would be affected by the threats of Mark Bunce since VTI had many other investors who were shareholders.

~~146.~~141. Defendant Rajan finally signed the new ~~amendment~~Contingency Amendment because he felt he had no choice. ~~That amendment is attached~~ but to ~~the Complaint of Plaintiff Bunce as Exhibit 8 thereto (hereafter called the "Repayment Amendment")..~~execute it.

~~147.~~142. Plaintiff Bunce's entire breach of contract claim against VTI is based on that Repayment Amendment since all other prior documents made repayment only due only after USD $1-$10 Million Dollars was invested in VTI.

**COUNTER CLAIMS AND THIRD PARTY CLAIM (COMPLAINT)**

**COUNT I**
**(VTI Counterclaim against Mark Bunce)**
**BREACH OF CONTRACT**

143. All of the averments above are incorporated herein as if fully set forth.

144. Part of the investment contracts of Bunce with VTI are contained as attachments to the Complaint, as Exhibits, 3, 5, and 7.

145. In addition to the Convertible loan documents attached to the Complaint, Bunce also executed more elaborate investment documents three (3) times. The ~~entire breach of~~ first, second and third investment documents are attached as Exhibits A, B, C, respectively.

146. There are a total of six (6) investment documents for Bunce and many amendments thereafter. Besides Exhibits A, B, C, exhibits 3, 5, and 7 to the Complaint are also investment documents. The investment documents got modified by many amendments.

147.     All those are valid contracts.

148.     In Exhibit 3 of the Complaint, Bunce promised that he would seek repayment only after VTI raised one million dollars ($1,000,000).

149.     That amount is exactly the same amount as the paperwork of McCarthy provided ($1,000,000 initially then another $29,000,000).

150.     Then in Bunce's second loan, he set the maturity date to mature in thirty (30) days from the issue date. Complaint, exhibit 5.

151.     That maturity date had no contingency of VTI raising more money.

152.     Then about a month later, Bunce changed the maturity date to create a new contingency or pre-condition.

153.     Bunce made a non-contingent maturity date into a contingent one.

154.     Bunce increased the contingency ten (10) times from the threshold he set for his first loan.

155.     Bunce amended his maturity date set for thirty (30) days to only be triggered after VTI raised another ten million dollars ($10,000,000).   He wrote

1.     **Maturity Date**. The Note will Mature 10 days after the confirmation that the Company has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("**Maturity**").

Complaint, exhibit 6.

156.     As part of the investment contracts, Bunce promised VTI that

    a.   he purchased the investment entirely for his own account and was not a strawman for another;

    b.   he (presumably his lawyers) complied with securities laws with his investment; and

    c.   certified for VTI that he was not disqualified as an investor by reason of the SEC "bad boy" prohibitions.

157.    Bunce also certified that he was an "accredited investor (defined by the Securities and Exchange Commission and Federal Securities Act laws).

158.    He also promised to VTI three[1] (3) times that

    a)  that neither the Company (VTI) nor any other person acting on behalf of the Company has made any representation or warranty, express or implied, as to the accuracy or completeness of any information regarding the Company, except as expressly set forth;

    b)  he understood that his investment was made without any representations or warranties of the Company with regard to any risks that may pertain to the investment from either an offering or a business perspective.

    c)  he made his investment (s) on his own due diligence.

    d)  he understood that his investment was knowing that there are uncertainties inherent in attempting to make projections and plans;

    e)  that as an Investor he was familiar with such uncertainties;

    f)  he would have no claim in the future with respect the projections or plans

    g)  he conducted independent investigation and verification of the financial condition, results of operations, assets, liabilities, properties and projected operations of the Company;

    h)  he relied on the results of its own independent investigation and verification to proceed with the investment(s).

159.    Mark Bunce breached those contract claim is promises and caused VTI harm and damage.

---

[1] Plaintiff and Counterclaim Defendant Mark Bunce invested $150,000, then a eleven (11) days later another $850,000, then a final $50,000.  In all of those times, VTI counted on Bunce being honest with them as an investor with the specific acknowledgment in the investment documents.

160.     As stated above, the perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through VTI for the technology of Stream TV.

161.     The value of the loss that VTI suffered is the value of the Stream TV assets which was caused by the breaches of Bunce.

**COUNT II**
**(VTI Counterclaim against Mark Bunce)**
**GOOD FAITH AND FAIR DEALING**

162.     All of the averments above are incorporated herein as if fully set forth.

163.     All contracts imply a duty of good faith and fair dealing.

164.     The contracts with the duties of good faith and fair dealing implied are Exhibits A, B, C, and exhibits 3, 5, and 7 to the Complaint.  The amendments attached to the Complaint also have implied duties.

165.     All of Mark Bunce's original investment documents required repayment/maturity only after VTI raised USD One Million Dollars ($1,000,000) to USD Ten Million Dollars ($10,000,000).

148.166.   entirely on Only eleven (11) months later, did Bunce try to demand repayment without any contingencies with the Repayment Amendment since all prior contracts required repayment only after $10,000, 000 was invested in VTI.

167.     The Bunce could have demanded a similar repayment scheme as he did on November 23, 2021 (Exhibit 8 to the Complaint) in his first, second, and third loans with VTI.

168.     Bunce trying to enforce repayment under the Repayment Amendment is a breach of the duties of good faith and fair dealing.

169.     There is no consideration for November 23, 2021 amendment as VTI received benefit to repay the loans right away.

170.     As stated above, the Repayment Amendment was only countersigned due to the immense pressure applied by Bunce.

25

171.    VTI expected that Bunce would honor his contract signed at the time of his investments not what Bunce demanded after nearly eleven (11) months.

172.    VTI is entitled to what Bunce wrote in exhibits 3, 5 -6, 7 to get the benefits of the Bunce investment.

173.    That breach has caused VTI injury and damage.

174.    The perceived value of VTI was the value of the assets of Stream TV that VTI was going to acquire and develop.

**COUNT III**
**(VTI Counterclaim against Mark Bunce)**
**FRAUDULENT CONCEALMENT**

was written in opposite of the lie (

175.    All the averments above are incorporated herein as if fully set forth.

176.    Mark Bunce concealed or suppressed a material omission) that Mark fact, namely that he wanted his money repaid regardless of money from McCarthy or VTI raising more money (the "**Big Lie**").

177.    Bunce was truthful in the document attached to the Complaint as exhibit 8.

178.    Bunce knew that his intent expressed to VTI was false, but he misled anyway because he thought he would get away with his lie after McCarthy released his thirty million dollars ($30,000,000).

149.179.    Bunce told VTI to invest into VTIGlen Davis that he they would celebrate the closing with VTI with champagne.

150.180.    The lie (material omission) of Mark Bunce created obtained warrants for equity as a direct result of his own legal problems.misrepresentations.

181.    But Bunce could have revealed his true intent, disclosed by the Repayment Amendment did not contain a phrasebut he concealed that was used many times before a phrase that specified that the amendment replaced a previous sectionintent from VTI repeatedly.

**Formatted:** Indent: First line: 0.5"

**Formatted:** Indent: Left: 0.5", Hanging: 0.25"

151.182.    There is no greater disclosure required in a lender and now the section reads what the amendment specifiedborrower transaction then repayment terms expected by the lender.

Formatted: Indent: First line: 0.5"

183.    A borrower cannot determine acceptability of a loan without knowledge of repayment terms.

184.    Mark Bunce was under duty to disclose the information behind the Big Lie—his expectations for repayment.

Formatted: Indent: First line: 0.5"

185.    Mark Bunce intentionally concealed or suppressed the information surrounding the Big Lie with the intent to defraud VTI (he wanted to induce VTI to take his money as a loan).

186.    VTI would not have taken the money Mark Bunce if they knew the information surrounding the Big Lie; VTI would have acted differently if they were not mislead (by concealment) by Bunce.

187.    VTI was unaware of Bunce's true desire to want his money back regardless of more money from McCarthy at the time of Bunce's investments.

188.    As a direct result of the Big Lie, VTI has sustained damages including but not limited to the value it would have created if not for Bunce.

**COUNT IV**
**(VTI Counterclaim against Mark Bunce)**
**COMMON LAW FRAUD**

189.    All the averments above are incorporated herein as if fully set forth.

Formatted: Indent: Left: 0.5", Hanging: 0.25"

152.    For that reason and what was in the mind of Defendant Rajan, he executed the Repayment Amendment thinking that installments were only due if VTI obtained the USD $10,000,000 precondition.

153.    In essence, Defendant Rajan did not intend the Repayment Amendment to replace the USD $10,000,000 precondition but rather was an additional requirement.

154. The Repayment Amendment shows Mark Bunce's greed as he obtained another seven (7) million warrants for equity from VTI.

155. Mark Bunce knew he and VTI were misled and duped by McCarthy.

156. Mark Bunce complained about McCarthy's investment delay and how it was unfair to he and VTI.

157. Mark Bunce expressed to VTI that he would help sue McCarthy in a court of law but instead, after consulting advisors, Mark Bunce chose to sue only VTI and Defendant Rajan without McCarthy for legal strategy reasons.

**CLAIMS**

**COUNT I**
**(VTI Counterclaim against Mark Bunce)**
**COMMON LAW FRAUD**

158. All the averments above are incorporated herein as if fully set forth.

159. Mark Bunce and his wife misrepresented to VTI that they would wait unconditionally for repayment of his investment monies.

190. That was a lie and Mark Bunce knew Defendant Rajan, the CEO of VTI, had raised million dollars in investments before and that if Mark Bunce did not appear suitable for VTI to appease McCarthy, Defendant Rajan would go to another investor instead of Mark Bunce.

191. Had VTI been told of the lack of contingency for repayment to Mark Bunce, the suitability of Mark Bunce as an investor/lender in VTI would have been reassessed.

192. Mark Bunce never gave VTI the chance to reevaluate the suitability of Bunce's investment because of his misrepresentations.

193. For that reason, Bunce lied (provided false representations) to VTI to become an

28

investor/lender in VTI.

160. ~~Bunce committed~~ fraud ~~on VTI to induce it to take the investment money of Mark Bunce to invest with McCarthy.~~

161. ~~The fraud/lie was to convince VTI (by material omission) that he, Mark Bunce, would be a perfect precursor investor before McCarthy's monies.~~

194. ~~Mark Bunce convinced VTI by by~~ lying to VTI that he would wait for the investment of McCarthy before seeking repayment.

195. Bunce's true intent was revealed in his second loan where Bunce defined maturity as thirty (30) days after the date of his money; but Bunce changed that definition of maturity to only maturing after contingency was met.

~~162.~~196. Specifically, Bunce represented by amendment he would not seek repayment until VTI closed on another $10,000,000 which Mark Bunce assumed would be from McCarthy or new investors that Mcarthy knew.

Formatted: Indent: First line: 0.5"

163. ~~Mark Bunce thought that it~~ The intentional fraud/lie was ~~not risky as an investment because McCarthy had already promised VTI that he, McCarthy, would invest USD $30,000,000.~~

~~164.~~197. ~~Mark Bunce had known Defendant Rajan had raised USD $100,000,000 from many angel investors in other 3D ventures and~~to convince VTI (by material omission) that he, Mark Bunce, would be ~~rejected as an~~a perfect precursor investor ~~if he did not lie to VTI (by material omission).~~before McCarthy's monies.

Formatted: Indent: First line: 0.5"

198. ~~His lie is contained in his first investment, which triggered the repayment option (maturity)~~ Bunce spoke directly to McCarthy several times.

165. ~~Bunce wrote that he would only seek repayment~~ after VTI raised USD $1~~,000,000.~~

~~166.~~199. ~~In his second loan he forgot that contingency, so he amended the loan paperwork so that the maturity was changed to have a precondition that VTI raise another USD $~~

Formatted: Indent: First line: 0.5"

$~~10,000,000~~ Million Dollars.

~~167.~~ ~~In his third loan, Mark Bunce added the contingency again, so it said very clearly that the loan only matured after USD $10,000,000 more was raised.~~

~~168.~~ ~~Mark Bunce had a legal obligation to inform VTI that he would or might want his money back regardless of further investment or other monies into VTI.~~

~~169.~~ ~~He had that obligation to VTI to disclose that fact before any monies were exchanged.~~

~~170.~~ ~~That type of disclosure is very common for investors to tell a potential company before investment.~~

~~171.~~ ~~Had Mark Bunce invested in the common stock of VTI, he would never have been able to seek repayment—he could only profit through capital gains.~~

200. ~~Mark Bunce wanted a loan but~~VTI relied on Bunce's representations which turned out to be fraud.

~~172.~~201. Mark Bunce never told, either orally or in writing, VTI that he wanted his money back regardless of McCarthy's or more investment money into VTI before he invested in VTI.

~~173.~~ ~~Investors assume risks associated with investments, so full disclosure and transparency is paramount.~~

~~174.~~ ~~Had VTI been told of the lack of contingency for repayment to Mark Bunce, the suitability of Mark Bunce as an investor in VTI would have been reassessed.~~

~~175.~~ ~~Mark Bunce never gave VTI the chance to reevaluate the suitability of his investment because he misrepresented contingency for repayment in all of his investments (3).~~

~~176.~~ ~~Mark Bunce should have disclosed that he wanted his money back (repaid) with or without VTI raising more money (presumably from McCarthy).~~

~~177.~~ ~~Mark Bunce could have, as an example, indicated he wanted his money back~~

30

(repayment) in so many days to give VTI a reasonable chance to secure more monies elsewhere; for example, Mark Bunce could have had all his investments/loans matured and due for repayments at the end of 2021.

178. Mark Bunce intentionally chose not to tell such to VTI through its representatives.

179. VTI relied on that representation by Mark Bunce in accepting his investments.

180. Mark Bunce swore in his investment documents that he "...*is aware that an investment in the securities of any kind involves a number of very significant risks and understands any of such risk may materially adversely affect the Company's operations and future prospects...*"

181. VTI has suffered injury and harm as a result of relying on the untruths by Mark Bunce.

182. The written language of Mark Bunce is an indication and an example of his false statements.

183. At all times before the Repayment Amendment and the threats and email preceding the same, Mark Bunce portrayed himself and his investment as only requiring repayment after McCarthy or other larger money into VTI.

184. Mark Bunce falsely portrayed himself as the perfect investor to invest before McCarthy as he did not want his money back until after the investment of McCarthy closed.

185. Even on the third loan/investment of Mark Bunce, he provided language of a contingency before repayment was legally due.

186. Mark Bunce wrote in pertinent part that "…Maturity Date. The Note will Mature 10 days after the confirmation that the Company [VTI] has received an aggregate total of US dollars Ten Million (US $10,000,000) in new capital from the date of this Amendment ("Maturity")." (clarification added).

187. VTI should have been given the opportunity to not accept the loans of Mark Bunce or deny it if it were told the truth of the intentions of Mark Bunce.

31

188. Mark Bunce knew or should have known he would want his money back regardless of monies from McCarthy or other investors into VTI.

189. Mark Bunce intended to induce VTI to accept his loans so that he would have the opportunity to invest alongside McCarthy.

190. Mark Bunce knew that if he told VTI of his true intentions, he would likely not be allowed to invest in/lend to VTI.

191. Mark Bunce also obtained equity in VTI with his loans which he would not have received had he told the truth before his loans.

192. Mark Bunce deceived VTI because he knew that if he told the truth before his loans were accepted, he would likely not be able to invest alongside McCarthy.

193. Those representations by Mark Bunce were false and misleading to induced VTI to accept his monies.

194.202. Mark Bunce obtained warrants for equity as a direct result of his misrepresentations.

203. Bunce is either legally responsible to what he wrote in his investment documents, or he committed fraud. Those claims are alternative to each other.

204. The details of the writings of Bunce are recited in the breach of contract claim section.

195.205. The false statements and misrepresentation of Mark Bunce were material to VTI.

196.206. VTI has been much worse off because of the falsities of Bunce.

197.207. Mark Bunce is sophisticated and knew or should have known that his false representation may cause problems for VTI, yet heBunce proceeded anyway in disregard to VTI.

198.208. VTI was totally justified in believing Mark Bunce and his representations, which proved to be false.

209. Had Mark Bunce invested in the common stock of VTI (like McCarthy), he would never have been able to seek repayment —he could only profit through capital gains.

~~199.~~210. VTI has suffered damage as a result of the false representations of Mark Bunce.

Formatted: Indent: Left: 0.5", Hanging: 0.25"

~~200.~~211. VTI, through Defendant Rajan, relied on Plaintiff's false representations and accepted the investment monies of Mark Bunce.

Formatted: Indent: Left: 0.06", First line: 0.5"

~~201.~~212. Mark Bunce contributed to or caused the collapse of VTI's active operations.

~~202.~~213. The perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

~~203.~~214. Once the Stream TV assets were reacquired by Defendant Rajan and VTI, the enterprise value would have been over USD Five Hundred Million Dollars ($500,000,000).

215. VTI lost that value as a direct result of the fraud of Bunce.

**COUNT V**
~~COUNT II~~
~~(VTI Counterclaim against Mark Bunce)~~
~~GOOD FAITH AND FAIR DEALING~~

~~204. All of the averments above are incorporated herein as if fully set forth.~~

~~205. All of Mark Bunce's original investment documents required repayment/maturity only after VTI raised USD One Million Dollars ($1,000,000) to USD Ten Million Dollars ($10,000,000).~~

~~206. That is a contingency or pre-condition before repayment.~~

~~207. All contracts imply a duty of good faith and fair dealing; and the contracts that imposed that duty in Mark Bunce are identified below.~~

~~208. Mark Bunce made his first investment as a loan with two (2) contracts, namely a Convertible Note Agreement and a Convertible Note.~~

~~209. The second investment/loan also involved a Convertible Note Agreement and a Convertible Note.~~

210. The second loan documents defined "maturity" as thirty (30) days later from the execution.

211. Then less than thirty (30) days later, Mark Bunce Amended the second loan documents and redefined maturity as only occurring after VTI had raised USD $10,000,000.

212. The third investment/loan also involved a Convertible Note Agreement and a Convertible Note. (All of those documents are attached to Plaintiff's Complaint and are not added here again to save length.)

213. The duty of good faith and fair dealing emanates from all those contracts that largely impose the same obligations between Mark Bunce and VTI.

214. Mark Bunce breached the duties of good faith and fair dealing in all of these contracts by demanding his money back before they were due or mature as specified.

215. Bunce breached that duty of good faith and fair dealing by asking that the contingency for repayment be removed by reason of a new amendment called the Repayment Amendment.

216. That breach has caused VTI injury and damage.

217. As stated above, the perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

218. Also as stated above, the enterprise value would have been over USD Five Hundred Million Dollars ($500,000,000) once the Stream TV assets were reacquired by Defendant Rajan and VTI.

219. That value was lost due to the actions of Mark Bunce.

**COUNT III**
**(VTI Counterclaim against Mark Bunce)**
**BREACH OF CONTRACT**

220. All of the averments above are incorporated herein as if fully set forth.

221. The investment contracts of Mark Bunce with VTI are contained as attachments to the Complaint, as Exhibits, 3, 5, and 7.

34

222.     The documents for Exhibit 5 to them Complaint were amended by the documents attached to Complaint as Exhibit 6 to the Complaint. (there was another amendment also)

223.     VTI, through Defendant Rajan, only executed the amendment called the Repayment Amendment due to a) immense pressure of Mark Bunce, b) misunderstanding that the Repayment Amendment required immediate payment even before VTI raised more money and c) the promise of Mark Bunce that he will help Defendant Rajan and VTI pursue McCarthy to recoup losses from his apparent fraud.

224.     Mark Bunce was very clever with Defendant Rajan with the Repayment Amendment as he used threats and promises of help to scare Defendant Rajan and offer him help to legally pursue McCarthy.

225.     He and his representatives promised Mathu Rajan that they would not sue Mathu Rajan if he signed the Repayment Amendment.

226.     Mark Bunce breached those contracts and caused VTI harm and damage.

227.     As stated above, the perceived value of VTI was based on the assets that Mark Bunce, McCarthy and other investors were going to acquire through Stream TV.

228.     Also as stated above, the enterprise value would have been over USD Five Hundred Million Dollars ($500,000,000) once the Stream TV assets were reacquired by Defendant Rajan and VTI.

229.     That value was lost due to the actions of Mark Bunce.

**COUNT III**
**(VTI Counterclaim against Mark Bunce)**
**NEVADA SECURITIES VIOLATION**

230.216.     All of the averments above are incorporated herein as if fully set forth.

217.     While the securities laws are generally to promote transparency in the sale of securities, including convertible loans, they are written broadly that prohibit fraud by investor in the

35

purchase of a security or convertible loan like Bunce.

231. 218. Nevada law NRS 90.245 defines "Fraud," "deceit" and "defraud" defined. "Fraud," "deceit" and "defraud" are not limited to common-law fraud or deceit.

Formatted: Indent: Left: 0.06", First line: 0.44", Tab stops: 0.5", Left

232. 219. The Big Lie information qualifies as fraud and deceit in NRS 90.245.

233. 220. Nevada Law, specifically NRS 90.570, prohibits people like Mark Bunce from purchasing securities, loans in his case, to make untrue statements of material facts and to otherwise defraud.

234. 221. Though the transactions between VTI and Bunce are exempt from registration, Mark Bunce should have complied with Nevada securities laws.

235. 222. Nevada through NRS 90.295, defines a "security" as a note, stock, bond, debenture, evidence of indebtedness, and many other forms of security.

Formatted: Font: 11 pt
Formatted: Font: 11 pt

236. 223. The investment debt of Mark Bunce qualifies as a "security" as defined by Nevada and also Federal laws.

237. 224. Nevada NRS 90.660 allows for civil liability for the fraud committed by Mark Bunce with VTI.

Formatted: Font: 11 pt

### COUNT VI III
### (VTI Counterclaim against Mark Bunce)
### FRAUDULENT CONCEALMENT

238. All of the averments above are incorporated herein as if fully set forth.

239. Mark Bunce concealed or suppressed a material fact, namely that he wanted his money regardless of money from McCarthy or VTI raising more money (the "**Big Lie**").

240. Mark Bunce was under duty to disclose the information behind the Big Lie – his expectations for repayment.

Formatted: Indent: First line: 0.5"

241. Mark Bunce intentionally concealed or suppressed the information surrounding the Big Lie with the intent to defraud VTI (he wanted to induce VTI to take his money as a loan).

242.    VTI would not have taken the money Mark Bunce if they knew the information surrounding the Big Lie.

243.    As a direct result of the Big Lie, VTI has sustained damages.

**COUNT IV**
**(Third-Party Claim against Timothy McCarthy)**
**MISREPRESENTATION**

244.225.    All of the averments above are incorporated herein as if fully set forth.

245.226.    McCarthy became intimately involved with VTI even before his investment monies were placed in VTI.

227.    McCarthyHe signed investment paperwork with VTI on February 10, 2021 which Bunce asked for and reviewed before he invested.

228.    Mark Bunce performed extensive diligence before all of his investments particularly with regard to McCarthy.

246.229.    Bunce became enamored with McCarthy as he portrayed himself as a seasoned investor in very big deals which he knew would be relied on by VTI and other investors in VTI like Mark Bunce.  Attached is a copy of the description McCarthy describes himself from the internet. **Exhibit D.**

230.    McCarthy writes that he was on the board of directors of companies owned by Sir Richard Branson.

247.    Bunce hasMark Bunce spoke directly to McCarthy numerous times.

248.    Mark Bunce performed extensive diligence before all of his investments particularly with regard to McCarthy.

249.231.    Later, Bunce even admitted he knew McCarthy and/or his brother and their affiliation with Sir Richard Branson of various Virgin enterprises.

232.    Mark Bunce spoke directly to McCarthy numerous times.

37

233. McCarthy was an excellent salesman (VTI now contends McCarthy was a conman).

234. McCarthy convinced Bunce to have confidence in his investments and so Bunce loaned monies three (3) times.

~~250.~~235. McCarthy defrauded Mark Bunce, not VTI or Defendant Rajan.

Formatted: Indent: Left: 0.06", First line: 0.44"

~~251.~~ ~~McCarthy's own declaration indicates how he portrayed his investment prowess and investment interest in VTI. The Declaration of McCarthy is attached as **Exhibit E** hereto and incorporated by reference as if fully set forth.~~

236. McCarthy told lies to VTI, which it in turn passed on as information to Mark Bunce.

237. One example of the information McCarthy gave VTI which they passed onto Bunce is **Exhibit E** hereto.

~~252.~~238. Exhibit ~~F hereto~~E is a bank statement that McCarthy showed VTI in a virtual call~~ to VTI that shows that his company had over one hundred and thirty million dollars ($130,000,000) in savings.

Formatted: Font: Not Bold
Formatted: Indent: Left: 0.06", First line: 0.44"

~~253.~~239. ~~The~~Specifically, the bank statement ~~shows over USD $~~revealed that McCarthy had savings of one hundred and three million and eighteen thousand four hundred and sixty one dollars and ninety five cents ($103,018,461.95 ~~in a bank account owned by McCarthy or his company.~~).

~~254.~~240. ~~Representatives of VTI took a screen shot of the~~ That bank statement ~~and verbally passed on information to Mark Bunce that they had seen~~is with a bank in Singapore and has details usual in a bank statement ~~indicating that McCarthy had substantial money in his bank account~~with redactions of personal information like the account number.

Formatted: Font color: Auto
Formatted: Font color: Auto
Formatted: Font color: Auto

~~255.~~241. ~~McCarthy caused Mark~~ Bunce ~~to be defrauded~~ was also ~~by sending~~given a letter from ~~a~~McCarthy money managing company ~~called Knight Asia Limited~~ in Hong Kong, China that ~~allegedly represented~~ McCarthy was ready, willing, and~~/~~or his company able to invest in VTI.

256.242. ~~Mark Bunce knows that he was defrauded by McCarthy as he attached that~~That letter from McCarthy money manager, Knight Asia ~~Limited~~Ltd, is attached to ~~his~~the Complaint ~~as~~of Bunce, exhibit ~~2~~3, as evidence of the fraud perpetrated against him.

257.243. Knight Asia Limited has no affiliation or relationship whatsoever with VTI or Defendant Rajan.

244. Bunce also attached more proof the fraud committed against him by McCarthy as exhibit 4 to the Complaint.

245. In exhibit 4, is called "EXERCISE DRAWDOWN RIGHTS" which McCarthy wrote

The Investor [McCarthy] is hereby exercising the rights under clause 4 of the Agreement; Amount of Investment: $29,000,000. The Investor [McCarthy] will exercise through a wire transfer to a bank account set up by VTI or its affiliates at Commerzbank or in the alternative the Investor will deliver a Standby Letter of Credit ("SBLC") for US $35 million that is acceptable for VTI and for the avoidance of doubt this will be in full consideration of a total investment in VTI of $ 30,000,000 under the Agreement. Purpose: **Begin the takeover process of the Ultra-D technology and kick start stalled projects.** Complaint, exhibit 4. (emphasis and clarification added)

246. That "EXERCISE DRAWDOWN RIGHTS" is dated March February 10, 2021 which is only fifteen (15) days from the first loan of Bunce.

247. The reference in the "EXERCISE DRAWDOWN RIGHTS" to take over process of Ultra-D is a refence to the technology tradename of Stream TV.

248. McCarthy was investing in VTI only because of the technology of Stream TV which was considered the best in the world for 3D without glasses.

249. Bunce knew that fact and supported VTI mainly because he had confidence in McCarthy.

250. The bragging of McCarthy is also revealed in a declaration that he provided to a Court of law in a Stream TV bankruptcy that Bunce required. The Declaration of McCarthy is attached as **Exhibit F** hereto and incorporated by reference as if fully set forth.

Formatted: Normal, Indent: Left: 0.06", No bullets or numbering

251. The declaration of McCarthy was provided publicly on May 2, 2021 which is two (2) days before Bunce loaned more monies to VTI (Bunces' third loan).

252. Bunce believed in McCarthy so much he loaned more money (previously he loaned money on February 24, 2021, March 8, 2021).

253. In the declaration, McCarthy blames the delay of his monies to VTI on the facts that his money was held in institutions that are international and that there are banking and other regulatory issues causing a delay.

~~258.~~254. Attached as **Exhibit G** is an email from VTI confirming a call with McCarthy in which he (McCarthy) expressed enthusiasm for his investment. It provides in pertinent part, that

> I was good to hear you so enthusiastic now that you are so close to getting your deal away, and I'm confident that I am not alone in wishing you good luck during this closing phase. (emphasis added)

~~259.~~255. Exhibit G also asks McCarthy to talk to Bunce directly and keep him updated.

256. Exhibit G was sent to Bunce and McCarthy in April 5, 2021 only four days from Bunce's amendment linking his debt repayment to VTI closing more money.

257. Bunce's confidence in McCarthy grew after he started speaking with McCarthy directly.

~~260.~~258. McCarthy's representation that he would invest in VTI was fraud.

~~261.~~259. McCarthy perpetrated that fraud numerous times.

~~262.~~260. McCarthy knew or should have known that many people including Mark Bunce relied on his false promises to invest and/or wait for repayment.

~~263.~~261. Mark Bunce has suffered injury or losses caused ~~as a result~~because of the falseness of McCarthy.

~~264.~~262. McCarthy is responsible to Mark Bunce, not VTI or Defendant Rajan.

**Prayer for Relief**

40

VTI and Defendant Rajan ask that

a) judgment be entered in their favor against Mark Bunce;

b) rescind any and all contracts of Mark Bunce ~~and~~with VTI;

c) award them damages of ~~$500~~the lost value or consequential damages in excess of seventy-five thousand dollars ($75,000,000) or ~~an~~the amount proven at trial;

d) enter a finding or judgment that Timothy Mcarthy is responsible to Mark Bunce for all damages including the monies Bunce invested in VTI;

e) Award any other relief the Court deems appropriate, including reasonable attorneys ~~fee~~fees and other costs.

## **Attachments**

Exhibit A- ~~Amendment making Bunce 2nd Loan Contingent~~Convertible Note Agreement of February 24, 2021.
Exhibit B- ~~Email~~Convertible Note Agreement of ~~Mark Bunce wanting Repayment (11/4/~~March 7, 2021~~)~~.
Exhibit C- ~~Email~~Convertible Note Agreement of ~~Mark Bunce wanting Repayment (11/7/~~May 4, 2021~~)~~.
Exhibit D- McCarthy Biography
Exhibit E- McCarthy ~~Declaration~~Bank Statement
Exhibit F- McCarthy ~~Bank Statement~~Declaration
Exhibit G-Email Confirming McCarthy Enthusiasm and Contact Directly
~~Exhibit H- March 2011 Investment Contracts~~

Respectfully submitted,

/s/ Raja Rajan

Raja Rajan, Esquire
Attorney I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002
~~visualtechnologyinnovations@gmail.com~~

*Attorney for all Defendants*
41

Dated: ~~April 24~~May 21, 2024

<u>**CERTIFICATE OF SERVICE**</u>

I, Raja Rajan, hereby certify that on May 20, 2024, a true and correct copy of the foregoing was served via email to counsel listed below:

Michael D. Homans
ID No. 76624
HOMANSPECK,
LLC
mhomans@homanspeck.com

Michael P. Kohler*
MILLER & MARTIN
PLLC
Michael.Kohler@millermartin.com

*Attorneys for Plaintiff Mark L. Bunce*

Timothy McCarthy

tim@burlingtonresources-asia.com

*Third-Party Defendant*

/s/ Raja Rajan                                                      May 13, 2024
Raja Rajan,
Esquire Attorney
I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002

raja@rajanlawgroup.com

*For Defendants Visual Technology Innovations, Inc. and Mathu Rajan*