IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| vs. | : | No. 2:23-cv-01740 |
| | : | |
| VISUAL TECHNOLOGY INNOVATIONS, INC. | : | Judge Kai N. Scott |
| and MATHU G. RAJAN, | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS, STRIKE, OR SEVER THIRD-PARTY COMPLAINT, FOR DISCOVERY SANCTIONS, AND FOR AWARD OF ATTORNEYS' FEES**

First, under Fed. R. Civ. P. 4, 14(a)(4), 21, 41, and 42, Judge Scott's Policies & Procedures § III.E, and the Court's inherent authority, Plaintiff Mark Bunce respectfully moves to dismiss, strike, or sever Defendants' third-party complaint. Second, under Rule 37(b) and this Court's inherent authority, Bunce seeks sanctions against Defendants and their counsel for willfully refusing to comply with this Court's discovery order, Doc. 87. Third, under 28 U.S.C. § 1927, Bunce seeks attorneys' fees against defense counsel Raja Rajan for expanding these proceedings in bad faith. Fourth, under Rule 37 and the Court's inherent authority, Bunce seeks an award of his attorneys' fees against Defendants and defense counsel for both the fees incurred in preparing this motion and the fees generally incurred in this litigation to date because Defendants and defense counsel have acted vexatiously and in bad faith.

**I.  Background.**

*A.  Mathu Rajan falsely portrayed VTI as a viable business.*

Defendant Rajan induced Bunce to loan $1,050,000 to Defendant Visual Technology Innovations, Inc., by falsely representing that VTI had employees and assets and sold products. Doc. 1 at 4–8. None of this was true. This can be proved, in part, by Rajan's own testimony in

1

other lawsuits, which contradict his representations. *In re Stream TV Networks, Inc.*, BR 23-10763, 2024 WL 87639 (Bankr. E.D. Pa. Jan. 5, 2024); *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323 (Del. 2022); *In re Stream TV Networks, Inc.*, BR 21-10433 (Bankr. D. Del.).

Mathu Rajan and Raja Rajan, Mathu's brother and attorney here, were owners of Stream TV Networks, Inc. It "was founded in 2009 by Mathu … and Raja Rajan …. The company was founded to develop and commercialize a proprietary technology for viewing three-dimensional content without the need for 3D glasses or goggles." *In re Stream TV*, 2024 WL 87639, at *2. "The Rajan family controlled Stream primarily through an investment vehicle owned by Mathu Rajan, his brother Raja Rajan, and their parents. Together, they [held] … a majority of the Class B common stock and a majority of Stream's outstanding voting power." *Stream TV*, 279 A.3d at 326. Stream TV raised over $160 million in investments, and it developed some valuable intellectual property; but due to Mathu Rajan's mismanagement, it became insolvent and its creditors sought to foreclose on all its assets. *Id.* at 326–29; *In re Stream TV*, 2024 WL 87639, at *2–3.

Trying to avoid losing control over Stream TV's intellectual property, Mathu Rajan caused it to file bankruptcy in Delaware. *In re Stream TV Networks, Inc.*, BR 21-10433 (Bankr. D. Del.). To convince the bankruptcy court to permit Stream TV to resume operations with Rajan in control, Rajan filed a declaration on March 12, 2021, representing that VTI would loan $1 million to Stream TV. Doc. 63-5 at 19 ¶¶ 61–64, 22–23 ¶¶ 74–81; *see* Doc. 63-4. Not coincidentally, this declaration was filed four days after Bunce loaned $1 million to VTI. Doc. 1 at 9 ¶ 32; Doc. 1-5. Rajan had induced Bunce to make this loan by misrepresenting that it would be used by VTI to buy intellectual property from Stream TV, to advance VTI's own business, and to enable VTI to become publicly traded. Doc. 1 at 5–9 ¶¶ 19–32. In his declaration, Mathu Rajan falsely testified that VTI had business operations that enabled it to fund Stream TV. Doc. 63-5 at 7, 19. In reality, VTI was a newly created, shell entity with no employees, no real assets, no real products, and no

real operations. Doc. 63-6 at ¶¶ 3, 9, 14. VTI's money derived solely from recent private stock sales and loans, such as Bunce's. Doc. 1 at 4–14; Doc. 1-1. The Delaware bankruptcy court did not believe Mathu Rajan, and it dismissed the bankruptcy as filed in bad faith. Doc. 65-1 at 19.[1]

Mathu Rajan later caused Stream TV to refile bankruptcy here. *In re Stream TV Networks, Inc.*, BR 23-10763 (Bankr. E.D. Pa.); Ex. B (docket). Still struggling to control Stream TV's assets, Rajan represented that a different company, Visual Semiconductor, Inc. ("VSI"), would fund Stream TV's operations. *In re Stream TV*, 2024 WL 87639, at *3, 20; Ex. F (genuine copy of Mot., Pa. Bankr. Doc. 156). But VSI was not a genuine company either. It was just another Ponzi-scheme-like vehicle for funneling loans to Stream TV. Any money VTI still had was probably transferred to VSI. Finding that Rajan had lied under oath about VSI, however, the Pennsylvania bankruptcy court rejected VSI's bid to be a lender to Stream TV, removed Rajan from control of it, and replaced him with the U.S. Trustee. *In re Stream TV*, 2024 WL 87639, at *3, 17–34; *see* Ex. G (genuine copy of trans. Pa. Bankr. Doc. 178); Ex. H (genuine copy of trans. Pa. Bankr. Doc. 179), at 246–56 (ruling); Ex. I (genuine copy of order Pa. Bankr. Doc. 231).

B.  *Defendants and their counsel have filed a third-party complaint in bad faith.*

To defend against this lawsuit, Mathu Rajan and his brother and lawyer in this action, Raja Rajan, have intentionally obstructed, delayed, and proliferated these proceedings. The obvious purpose has been to cause Bunce to incur increased legal fees to try to deter him from prosecuting

---

[1] If approved by the Delaware bankruptcy court, VTI's unsecured loan to Stream TV as "debtor in possession" could have taken priority, as an "administrative expense," over the $160 million in secured loans made to Stream TV by others, which Stream TV was unable to repay. Doc. 63-5 at 23 ¶ 80 (citing 11 U.S.C. § 364(b)); *see* 11 U.S.C. § 503(b) (administrative expenses); 11 U.S.C. § 507(a)(2) (priority of administrative expenses); *In re Carco Elecs.*, 346 B.R. 377, 383 (Bankr. W.D. Pa. 2006) (explaining debtor-in-possession lending); *In re G-I Holdings, Inc.*, 308 B.R. 196, 202–03 (Bankr. D.N.J. 2004) (same). Unknown to Bunce, and contrary to what Rajan had told him, Rajan developed a kind of Ponzi scheme to use VTI as a vehicle to funnel over $160 million in loans to Stream TV, to remain in control of it. Ex. D (genuine copy of VTI document); Ex. E.

3

his claims. Raja Rajan has brazenly taunted Bunce about this: "It may be expensive to collect your money back unless you[r] lawyers are dirt cheap." Doc. 73-4 at 2.

To obstruct, delay, and increase Bunce's fees and expenses, Defendants and their counsel filed a third-party complaint against Timothy McCarthy. Doc. 33 at 21–23; Doc. 52 at 13–29. McCarthy's only connection with Bunce's claims is that McCarthy sent a letter from his company, Burlington Resources, saying it was prepared to invest $29 million in VTI. Doc. 1-2; *see* Doc. 1 at 9 ¶ 32. This helped Defendants induce Bunce into loaning money to VTI.

Defendants' third-party claims against McCarthy allege that he misrepresented to both VTI and Bunce the intent to invest money in VTI. Doc. 52 at 28–29 ¶¶ 252, 255–56, 260. According to Defendants, McCarthy, not Defendants, defrauded Bunce and he, not Defendants, should be held responsible. But these allegations, in addition to being implausible, are irrelevant to Bunce's claims against Defendants. Even if McCarthy had lied to both Bunce and Rajan, that cannot entitle *Rajan* and *VTI* to keep the money Bunce loaned to VTI, as they have done. Any claims Defendants might purport to have against McCarthy are entirely separate from Bunce's claim against VTI for breach of contract. And even if McCarthy lied to everyone, that cannot relieve Rajan from liability for his own lies that fraudulently induced Bunce to loan money to VTI. The third-party claims against McCarthy are thus a sideshow injected into this case solely to complicate and delay it and to increase Bunce's litigation costs, just as Raja Rajan has threatened.

Defendants have not served McCarthy, nor have they demonstrated any good-faith effort to do so. At the status conference on April 10, 2024, Doc. 50, attorney Raja Rajan represented to this Court that a process server would serve McCarthy the following week. It never happened. Instead, Defendants filed notice of a request for waiver of service on April 26, 2024, Doc. 54. But to date, there has been no acceptance by or return of service on McCarthy.

At the status conference on August 8, 2024, Doc. 81, this Court orally ordered attorney

4

Raja Rajan to file, within 14 days, a statement under oath describing his good-faith efforts to serve McCarthy. Nothing has been filed.

Meanwhile, VTI filed a separate lawsuit against McCarthy in Nevada *Visual Technology Innovations, Inc. v. Burlington Resources Asia Limited & Timothy McCarthy*, No. 2:24-cv-00728 (Dist. of Nev.). That lawsuit concerns the same matters as the third-party complaint. As of this filing, McCarthy has not been served with that lawsuit either, Ex. K (genuine copy of docket), and Bunce's counsel has not received any communications from McCarthy.

C. *Defendants and defense counsel have refused to comply with this Court's discovery order.*

Defendants have refused to comply with this Court's August 13, 2024, order commanding them to produce certain documents and information. Doc. 87. This ordered Defendants to make "good faith efforts to obtain authentic copies of all exhibits to deposition transcripts and evidentiary hearing transcripts from other lawsuits involving Mathu Rajan and/or VTI, and affidavits/declarations given by Mathu Rajan or on behalf of VTI in the other legal proceedings." Doc. 87 at 1. It also ordered Defendants to serve a response, "under oath, to Plaintiff's Interrogatory No. 16, explaining how VTI used and spent the $1,050,000 that plaintiff provided to VTI, or, in the alternative, explaining how VTI used and spent all its money, identifying all dates, recipients, amounts and documentation as to each transfer involving any portion of such funds." *Id*. at 1–2. Defendants have not complied with these orders. *See* Ex. A (redacted).

II. **The Court Should Dismiss, Strike, or Sever the Third-Party Complaint.**

A. *The Court should dismiss the third-party complaint.*

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time…. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1) …." Fed. R. Civ. P.

5

4(m). Third-party defendant Timothy McCarthy is alleged to reside in a foreign country (Canada). *See* Doc. 54. Rule 4(m) thus does not apply to serving him. But "[t]hat does not mean that the time to effectuate service is unlimited." *Graphic Styles/Styles Int'l LLC v. Men's Wear Creations*, 99 F. Supp. 3d 519, 525 (E.D. Pa. 2015) (citation omitted). "A court may still dismiss a case for failure to serve a foreign defendant within a reasonable time." *Id*. (citation omitted).

Defendants filed their third-party complaint on April 24, 2024, nearly five months ago. Doc. 52. They have made no genuine effort to serve McCarthy, as evidenced by defense counsel's failure to file a declaration describing good-faith efforts to do so. Under Rule 4 and 41(b), the Court should thus dismiss the third-party complaint without prejudice. *See Ingris v. Drexler*, No. CIV.A. 14-2404 ES, 2014 WL 7271905, at *2 & n.2 (D.N.J. Dec. 17, 2014).

B.       *Alternatively, the Court should strike the third-party complaint.*

"Any party may move to strike [a] third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). This Court "has inherent power to 'control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants.'" *United States v. Kramer*, 770 F.Supp. 954, 957 (D.N.J. 1991) (citation omitted). Whether to strike or sever a third-party complaint is up to the Court's discretion. *Core Constr. & Remediation, Inc. v. Village of Spring Valley, NY*, 06-CV-01346, 2008 WL 11515238, at *2 n.2 (E.D. Pa. 2008). The Court should consider whether the third-party complaint introduces "an unrelated controversy or [would] unduly complicate the case at trial." *Id*. (citation omitted). It does here.

The Court should strike the third-party complaint against McCarthy. VTI's third-party claim has no bearing on Bunce's claims against Defendants. Doc. 52 at 28–29 ¶¶ 252, 255–56, 260. As explained above, nothing McCarthy said or did could have caused Defendants to defraud Bunce or to breach their contract with him, by refusing to repay the money he loaned VTI. The third-party claim is also facially implausible. *LifeMD, Inc. v. Lamarco*, 607 F.Supp.3d 576, 588

6

(W.D.Pa. 2022). VTI and Rajan could cure any liability by simply repaying to Bunce the money he loaned, which they have kept. VTI and Rajan are solely responsible for this. Even if VTI and Rajan could seek indemnification from McCarthy, that could not affect Bunce's claims. The third-party claim is thus an "unrelated" and illegitimate "controversy" whose continued inclusion in this case would "unduly complicate the case at trial." *Core Constr.*, 2008 WL 11515238, at *2 n.2. Striking it could not possibly prejudice Defendants. VTI has already filed a separate lawsuit against McCarthy in Nevada. *See supra*. Permitting the third-party claim to remain would prejudice Bunce by unnecessarily delaying resolution of his claims and causing him to incur more fees.

      C.      *Alternatively, the Court should sever the third-party claims against McCarthy.*

Alternatively, the Court should sever the third-party claims against McCarthy.

First, the Court could treat the third-party claims as a separate lawsuit by severing them as misjoined under Rule 21, which says that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "Severance pursuant to Rule 21 essentially creates a separate case, the disposition of which is final and appealable." *Graudins v. Retro Fitness, LLC*, 921 F.Supp.2d 456, 468 (E.D. Pa., 2013). Misjoinder is "[t]he improper union of parties in a civil case." *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 81 (M.D.Pa., 2015) (citation omitted). Courts have broad discretion under Rule 21 and may consider "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." *Id*. The third-party claim against McCarthy is misjoined. It poses no disputed question of fact or law that overlaps with Bunce's claims against Defendants. *See* Fed. R. Civ. P. 20(a). Bunce does not even need any discovery from McCarthy. The claim is also misjoined because the third-party claim is facially implausible and subject to dismissal under Rule 12(b)(6) and asserted solely to obstruct, delay, and increase Bunce's costs.

Second, in the further alternative, the Court should try the third-party claims against

7

McCarthy separately, with their own separate discovery and trial. "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The same factors for Rule 21 are considered under Rule 42(b). *Graudins v. Retro Fitness, LLC*, 921 F.Supp.2d 456, 467 (E.D. Pa., 2013). Bunce should try his case against Defendants without it being impeded or complicated by Defendants' illegitimate third-party claims against McCarthy.[2]

### III. The Court Should Sanction Defendants for Violating This Court's Discovery Order.

Under Rule 37(b)(2)(A), the Court may sanction Defendants for not complying with this Court's discovery order: "If a party … fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Sanctions "may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

*A. Defendants and their counsel have willfully disobeyed this Court's discovery order.*

On August 14, 2024, this Court entered a Rule 37(a) order compelling defendants to provide certain information and documents. Doc. 87. Defendants have willfully refused to comply.

---

[2] McCarthy may be cooperating with Defendants in this. He testified on behalf VTI in the Delaware bankruptcy case. Doc. 52 at 43–45; Ex. C (genuine copy of trans., Del. Bankr. Case, Doc. 194), at 188–97; Ex. J at 5.

8

First, the Court ordered Defendants to obtain and produce transcripts and exhibits from other lawsuits involving Mathu Rajan and VTI:

> Defendants shall make good faith efforts to obtain authentic copies of all exhibits to deposition transcripts and evidentiary hearing transcripts from other lawsuits involving Mathu Rajan and/or VTI, and affidavits/declarations given by Mathu Rajan or on behalf of VTI in the other legal proceedings. These efforts shall include, but are not limited to, contacting their prior counsel and employees of predecessor companies to request these items. Defendants shall promptly produce any documents thy obtain to plaintiff. With respect to any documents they are unable to obtain, Defendants shall provide plaintiff with a written explanation describing the efforts they took to obtain them.

Doc. 87 at 1 ¶ 1. Defendants have not produced a single additional transcript or exhibit.

Defendants' failure to comply is willful. As recently as June 18, 2024, Mathu Rajan himself submitted a declaration in the Pennsylvania bankruptcy. Ex. L at 77 (genuine copy of Doc. 678-1). It hasn't been produced to Bunce. Defendants' barely intelligible "explanation" mostly just lists "missing" exhibits. Ex. A at 2–4. They otherwise try to relitigate Bunce's underlying motion to compel. Doc. 63, which this Court granted, by refusing even to admit their failure to produce any exhibits. Ex. A. As Bunce already showed, the transcripts reference numerous exhibits, not one of which had been produced. Doc. 63-1 at 2–3. Defendants still have not produced a single one of hundreds of referenced exhibits. *See, e.g.*, Doc. 25-3 (Transcr., Sept. 25, 2023, E. Dist. Pa. Bankr. Doc. 427), at 11–12, 15–17, 27–28, 30, 35, 37, 39–40, 53–54, 57, 63, 65–66, 79, 84, 87–89, 92, 113, 120–21, 124, 134, 137, 162, 173, 189 (referencing exhibits). Defendants' only supposed "effort" is "Rafael has been asked to obtain the exhibits that are allegedly missing." Ex. A at 2.

Defendants improperly suggest that they do not need to comply with this Court's order insofar as the exhibits and transcripts are not already within their "custody" or "possession." Ex. A at 1. Mathu Rajan can control the lawyers he has hired to represent him and his companies. He could simply direct them or the court reporters to provide the exhibits. He chooses not to.

Second, Defendants have refused to comply with this Court's order commanding them to

9

explain how VTI's money was used:

> No later than **August 26, 2024**, defendants shall serve on plaintiff an answer, under oath, to Plaintiff's Interrogatory No. 16, explaining how VTI used and spent the $1,050,000 that plaintiff provided to VTI, or in the alternative, explaining how VTI used and spent all of its money, identifying all dates, recipients, amounts and documentation as to each transfer or transaction involving any portion of such funds. To the extent defendants are unable to answer this interrogatory, they must explain, under oath, the reasons why they cannot answer it.

Doc. 87 at 1–2 ¶ 2; *see* Doc. 63-6 at 5. Defendants ignore the fact that the Court has *ordered* them to provide this information. They respond as if they were merely further objecting to Bunce's interrogatory. Ex. A at 5. Defendants improperly try to shift the burden back to Bunce to prove, once again, that he is entitled to receive this information. That has already been decided. Doc. 87.

Defendants' contention that commingling of funds means "only educated guesses and estimations are possible" is both beside the point and untrue. Ex. A, at 5. We already know from documents filed in bankruptcy cases that Defendants used some of VTI's money—$300,000—to pay Stream TV's Delaware bankruptcy lawyers, Dilworth Paxson LLP. Doc. 63-12 (Dist. Del. Bankr. Doc. 88). A declaration filed in the Pennsylvania bankruptcy case shows that both VTI and VSI also paid other lawyers, including Armstrong Teasdale, LLP. Ex. J (genuine copy of declar., Pa. Bankr. Doc. 180), at 3, 5–6. Defendants could and should, for example, have itemized these payments (which contradicted Rajan's representations to Bunce about how VTI's money would be used). They have not. The Court ordered Defendants to *itemize* the transfers of money and provide explanations (and supporting documents), which cannot be gleaned from the bank records produced. Defendants have not done so for even one transaction.

> B. *The Court should sanction noncompliance by Defendants by deeming certain facts conclusively established.*

Rule 37(b) "authorizes the imposition of sanctions for failure to comply with a discovery order," as Defendants have done. *Metal Marketplace, Inc. v. United Parcel Serv., Inc.*, 733 F.

10

Supp. 976, 981 (E.D. Pa. 1990). The purpose is "not only to penalize those whose conduct warrants it but also to deter the offending party and others from engaging in such conduct in the future." *Id*. Under Rule 37(b)(2)(A), which applies here, the choice of sanctions is up this Court's discretion, which must be "just" and "specifically related" to the discovery matter at issue. *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018). Courts also have the inherent authority to sanction discovery-related misconduct. *Reilly v. Home Depot U.S.A., Inc.*, 670 F. Supp. 3d 126, 140–41 (D.N.J. 2023). The sanctionable misconduct here is the refusal to provide documents and information that this Court has already specifically ordered Defendants to provide. These documents and information can help prove how Rajan lied to Bunce.

The Court should direct "that the matters embraced in the order [Doc. 87] or other designated facts be taken as established for purposes of the action, as the prevailing party [Bunce] claims …." Fed. R. Civ. P. 37(b)(2)(A)(i). In considering this sanction, the Court must "balance the following three factors: 1) culpability (including willfulness and bad faith, and whether the client was responsible or solely the attorney); 2) prejudice; and 3) whether lesser sanctions would have been effective." *Donofrio v. Ikea US Retail, LLC*, CV 18-599, 2024 WL 1998094, at *23 (E.D. Pa. May 6, 2024). Courts use a "sliding scale as part of this balancing." *Id*. The "harsher the sanction being imposed, the more the balance will have to be against the party being sanctioned to justify the sanction." *Id*. Willfulness and bad faith are not prerequisites, but their presence enhance the case for sanctions. *Id*.

First, Defendants and their counsel are culpable. *Donofrio*, 2024 WL 1998094, at *23. The transcripts and exhibits are within their control, and they exclusively possess knowledge about how VTI's money was used. Defendants obviously wish not to be inconvenienced by complying with this Court's order. Production would also help prove how Rajan defrauded Bunce. This is all the more reason why the information must be produced and withholding it is sanctionable.

Second, non-compliance with the Court's discovery order prejudices Bunce. *Donofrio*, 2024 WL 1998094, at *23. Prejudice "does not mean 'irremediable harm'" but rather "the burden imposed by impeding [Bunce's] ability to prepare effectively a full and complete trial strategy …." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 319 F.R.D. 480, 485 (E.D. Pa. 2017). Bunce is deprived of information directly relevant to proving Rajan's fraud and unjust enrichment. The non-produced information could show that Rajan, not VTI, benefitted from the money Bunce loaned to VTI and also that Rajan lied to Bunce. It could also show that Rajan used Bunce's money for purposes inconsistent with his representations to Bunce. These facts are important to Bunce's claims for fraudulent inducement and unjust enrichment and for imposing personal liability on Rajan for VTI's breach of contract. Doc. 1 at 14–17. Without the court-ordered documents and information, Bunce's trial preparation is hampered, and Defendants have an unfair advantage.

Third, a sanction lesser than deeming certain facts conclusively established would be inadequate and ineffective. *Donofrio*, 2024 WL 1998094, at *23. Bunce would have to prove his claims for fraudulent inducement and unjust enrichment against Rajan without the benefit of knowing how Bunce's or VTI's money was in fact used. Defendants might contend at trial, as they do now, that Rajan is supposedly immune from liability because VTI could use the loaned money for any lawful purpose. Ex. A at 1. Bunce needs the information to show that, in fact, VTI's money was used for improper and unlawful purposes, used in a manner inconsistent with Rajan's inducements to Bunce, and used solely for Rajan's personal benefit.

"When a court imposes an order pursuant to Rule 37(b) deeming certain facts to be taken as established and precluding the introduction of any evidence or testimony to contradict those facts, there can be no challenge as to such facts." *Transportes Aereos de Angola v. Ronair, Inc.*, 693 F. Supp. 102, 107 (D. Del. 1988). The Court should enter an order under Rule 37(b)(2)(A)(i). and (ii) holding that the following facts are deemed conclusively established and that Defendants

are prohibited from introducing any evidence contrary to these facts:

1. Defendant Mathu Rajan made statements under oath in legal proceedings in United States Bankruptcy Courts in Delaware and Pennsylvania and in a Delaware state court that prove Rajan made false representations of existing, material fact about Defendant Visual Technology Innovations, Inc. and about Rajan's present intentions to Bunce to induce him to loan $1,050,000 to VTI.

2. Defendant Mathu Rajan personally controlled all the money and assets of Defendant Visual Technology Innovations, Inc. (including the $1,050,000 that Plaintiff Mark Bunce loaned to VTI) and used all that money and assets (including the $1,050,000 that Plaintiff Bunce loaned to VTI) for Rajan's own personal benefit, to the detriment of VTI, and for purposes that contradicted the representations Rajan and his agents had made to Bunce to induced him to loan $1,050,000 to VTI.

## IV. Requests for Awards of Attorneys' Fees.

*A. The Court award attorneys' fees against Defendants and defense counsel under Rule 37(b)(2)(C).*

The Court should award Bunce his reasonable attorneys' fees incurred in preparing the discovery-sanction portion of this motion and in otherwise obtaining this Court's discovery order, Doc. 87. The Court should order this jointly and severally against Defendants and their counsel, Raja Rajan. Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

*B. Attorneys' fees should be awarded against defense counsel under 28 U.S.C. § 1927.*

The Court should also award Bunce his attorneys' fees incurred in filing this motion insofar as it relates to third-party claim and for otherwise having to deal with that claim against Raja Rajan under 28 U.S.C. § 1927. "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

13

expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Defense counsel has filed the third-party claim in bad faith for the improper purpose of obstruction, delay, and increasing burdens, fees, and costs. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018). The Court should also award Bunce his fees relating to Defendants' noncompliance with the Court's discovery order alternatively under § 1927.

   C. *The Court should award attorneys' fees under this Court's inherent authority.*

  Under its inherent authority, the Court should award Bunce's not only his attorneys' fees incurred in preparing this motion, but also all his fees and expenses incurred in this action. "One of the exceptions to the American Rule authorizes a federal court to award counsel fees to a successful party 'when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Perichak v. Int'l Union of Elec. Radio & Mach. Workers, Local 601, AFL-CIO*, 715 F.2d 78, 79 (3d Cir. 1983) (quoting *Hall v. Cole*, 412 U.S. 1, 4 (1973)). This power "derives from the equitable powers of the federal courts and covers both litigants and their counsel." *United Steelworkers of Am., Local 4-406 v. Int'l Matex Tank Terminals*, CV 22-05083 (JXN), 2024 WL 4024091, at *3 (D.N.J. Aug. 30, 2024). The purpose is deterrence and punishment. *King v. Caesar Rodney Sch. Dist.*, 396 F. Supp. 423, 428 (D. Del. 1975).

  The "district court has wide discretion to award or to deny fees pursuant to the 'bad faith' exception to the American rule. In order to properly exercise this discretion, the district court must balance the equities between the parties and 'may award attorney's fees when the interests of justice so require....'" *Perichak*, 715 F.2d at 79 (citations omitted). "The Third Circuit has … provided a two-step inquiry implementing the balancing test." *United Steelworkers of Am., Local 4-406*, 2024 WL 4024091, at *3 (citing *Perichak*, 715 F.2d at 80). First, the Court must determine whether Defendants acted in bad faith in relation to the merits of this action and in the manner this case was litigated. *Id.* The Court inquires whether "the losing party has litigated in bad faith,

vexatiously, or for oppressive reasons." *Alco Health Servs. Corp. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 169*, No. CIV. A. 91-3588, 1992 WL 167282, at *7 (E.D. Pa. July 10, 1992). Second, once bad faith is found, the burden shifts to Defendants to prove mitigating factors, if any, warranting the exercise of discretion against the award of attorney's fees, despite the fact that bad faith has been found. *Perichak*, 715 F.2d at 81.

Based on the facts stated above, including the conduct of Defendants and their counsel in this litigation, and based on the entire record in this case, the Court should conclude that Defendants and their counsel have repeatedly acted in bad faith, fraudulently, vexatiously, wantonly, and for oppressive reasons. The Court should award to Bunce and against Defendants and their counsel, jointly and severally, the entirety of Bunce's attorneys' fees and litigation costs and expenses incurred to date. The Court should also permit Bunce to seek any further fees, costs, and expenses he incurs in the future, until this case has been resolved.

## V. Conclusion.

First, the Court should dismiss Defendants' third-party claims against McCarthy without prejudice. Alternatively, the Court should strike the third-party claims or sever them and require them to proceed as a separate lawsuit or in an entirely separate track.

Second, the Court should award the requested sanctions against Defendants under Rule 37(b)(2)(A) to punish their non-compliance with this Court's discovery order by deeming certain facts established and prohibiting Defendants from introducing facts to the contrary.

Third, the Court should award Bunce his attorneys' fees and expenses against defense counsel under 28 U.S.C. § 1927.

Fourth, the Court should award Bunce his attorneys' fees and expenses against Defense counsel and their counsel for the fees incurred in preparing this motion, under Rule 37(b), and for this litigation as a whole under the Court's inherent authority.

Respectfully submitted,

By: /s *Michael Homans*

Michael D. Homans
ID No. 76624
HOMANSPECK, LLC
230 Sugartown Road
Suite 218
Wayne, PA 19087
(215) 419-7463
mhomans@homanspeck.com

*Attorneys for Plaintiff Mark L. Bunce*

Michael P. Kohler, *admitted pro hac vice*
Georgia Bar No. 427727
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
(404) 962-6100
Michael.Kohler@millermartin.com

*Attorneys for Plaintiff Mark L. Bunce*