## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| VISUAL TECHNOLOGY | : | Civil Action Case No. |
| INNOVATIONS, INC. | : | C.A. No. 2:23-cv 01740 |
| and | : | |
| MATHU G. RAJAN, | : | |
| | : | |
| Defendants/Counterclaim and Third- | : | |
| Party Plaintiffs | : | |
| vs. | : | |
| MARK BUNCE, | : | |
| Counterclaim Defendant | : | |
| and | : | |
| TIMOTHY McCarthy | : | |
| Third -Party Defendant | : | |

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTFF'S MOTION TO DISMISS, STRIKE,
## OR SEVER THIRD-PARTY COMPLAINT, FOR DISCOVERY SANCTIONS,
## AND FOR AWARD OF ATTORNEYS' FEES

Defendants oppose Plaintiff's Motion To Dismiss, Strike, or Sever Third-Party

Complaint, For Discovery Sanctions, and For Award Of Attorneys' Fees.

### Table of Contents

I.  RELEVANT PROCEDURAL HISTORY..................................................................- 2 -

II.  RELEVANT SUMMARY OF FACTS ...................................................................- 2 -

III.  ARGUMENT..........................................................................................................- 5 -

  A.  Introduction ........................................................................................................- 5 -

  B.  It would be legally improper to dismiss, strike, or sever the third-party complaint against
  McCarthy. ...............................................................................................................- 5 -

  C.  It would be improper to sanction Defendants or their counsel for refusing to comply with the
  Court's discovery order...........................................................................................- 7 -

  D.  It would be improper to award attorney's fees under 28 U.S.C. § 1927. ................- 12 -

  E.  It would be improper to award any sanction under the Court's inherent powers..................- 13 -

**IV.    CONCLUSION** ................................................................................................................... - 14 -

## I.    RELEVANT PROCEDURAL HISTORY

The Answer with counterclaims and third party complaint was filed about March 26, 2024 [docket:33].  The third party complaint was asserted against someone named Timothy McCarthy ("**McCarthy**").  A company (ABC Legal) who performs service of foreign persons in US lawsuits was retained within days [docket 91].  The third party complaint was dismissed **without prejudice** for <u>lack of service fast enough.</u>  [Docket:100] The Court wrote in pertinent part that

> ORDER THAT THE PLAINTIFF'S MOTION TO DISMISS, STRIKE, SEVER THIRD-PARTY COMPLAINT <u>89</u> IS GRANTED IN PART. PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 4 AND 41(B), THE FIRST THIRD-PARTY COMPLAINT FILED BY THIRD-PARTY PLAINTIFFS VISUAL TECHNOLOGY INNOVATIONS, INC. AND MATHU RAJAN ("THIRD-PARTY PLAINTIFFS") AGAINST TIMOTHY MCCARTHY AND THE AMENDED THIRD-PARTY COMPLAINT ARE **DISMISSED WITHOUT PREJUDICE** FOR FAILURE TO SERVE WITHIN A REASONABLE TIME. SIGNED BY DISTRICT JUDGE KAI N. SCOTT ON 9/19/24.9/19/24 ENTERED AND COPIES E-MAILED, MAILED TO UNREP. (bw) (Entered: 09/19/2024) (emphasis added) [docket 100]

That order presumes, by its own words, service of process under the Hague Convention treaty international is not a reasonable time in less than six (6) months (3/26/24 to 9/19/24). Service of process under the Hague convention under Federal Rule 4 (f) does not provide a time limit but the Court found less than six months was not fast enough.  The process server Company provided a sworn affidavit that service under the Hague was in process and needed more time. [docket 91] attachment Exhibit A thereto-Declaration of Karen Adams of ABC Legal-process server company].

## II.    RELEVANT SUMMARY OF FACTS

The third party Defendant, Timothy McCarthy ("**McCarthy**"), is intimately intertwined with Plaintiff Mark Bunce ("**Bunce**"). Bunce is trying to sever McCarthy from being part of this lawsuit to provide testimony against him. Before Bunce invested in the Nevada company Visual Technology Solutions, Inc ("**VTI**"), Bunce asked to look at Mcarthy's investment documents. Bunce was contacted to be a precursor investor to invest since McCarthy invested in VTI though he provided investment document already for thirty million dollars ($30,000,000). That investment document is attached hereto as **Exhibit A.**

Though McCarthy had already signed his promise to invest thirty million dollars ($30,000,000) he indicated that his money would not be in VTI until thirty (30) days. Exhibit A page 1, section 3. Bunce was approached to invest to help with the delay caused by Mcarthy and to placate his demands. Bunce considered the investment only because of perceived stature of McCarthy (he reportedly was on the board of Sir Richard Branson's company). Bunce asked to see the investment document of McCarthy for thirty million dollars ($30,000,000).

On February 18, 2021 at 8:26 am, an agent for VTI forwarded Bunce's due diligence questions to VTI for immediate answering since Bunce would not even entertain investment until he got answers listed in his email which provided that:

> *"I have had a read of the attachments. It sounds interesting but before taking anything forward I really need to put some flesh on the bones. The detail is lacking.*
> *Is it possible to supply the following as I would rather see these before having a conversation if possible. Copies of latest statutory accounts and management accounts Details of bank debt and charges* **Copy of the agreement to fund the $30m inflow.**
> **Any pre conditions or break clauses?** *Notes details on reverse target and any letters of comfort from brokers/lawyers Details of financial investment undertaken by the directors This cash injection would be to finance working capital for delivery of product that has firm orders. The presentation talks about delivery of prototypes rather than production line items!"*

*(formatting changed and emphasis added)*

Bunce also spoke directly to McCarthy.  As a result, Bunce invested in VTI three times. Bunce invested first about February 24, then again about March 8[1], and again about May 4 in the year 2021.  Each time Bunce made his loans to only mature only when VTI raises more monies ranging from one million dollars ($1,000,000) to ten million dollars ($10,000,000).   Complaint, Exhibits 3, 5, 6 (amendment) and 7 (ex 3 its sections 1 and 3.  In ex 6 which amended ex 5, its section 2. In ex 7 its section 1 of loan document which is part of a multi-page document). Bunce only demanded repayment of his money months later (in later November 2021) from VTI when he became convinced McCarthy would invest in VTI as promised.  Bunce then changed his mind and wanted repayment.  Defendants will imminently file a Motion for Summary Judgment for that contract modification in November of 2021.  That modification is without consideration according to ample case law.

Bunce was so enamored with investing in a VTI with McCarthy he demanded and obtained

- "**Bonus Warrants**" of 3, 695, 652 warrants for equity in VTI for his first loan.  He also received another 10,000 **bonus warrants** with a strike price of $0.01. Complaint, Exhibit 3, Section 4.

- Bunce amended the second loan and obtained more "**Bonus warrants"** in amount of 300,000 and 10,000 also.  Complaint, Exhibit 7 Section 4.

- Bunce received 300,000 "**Bonus warrants"** again for his third investment loan to VTI.  Complaint, Exhibit 7 Section 6.

McCarthy boasting of his experience is listed in his companied website at:

www.burlingtonresources-asia.com.  McCarthy describes himself as

a graduate of Cambridge University in the UK and has an MBA from Cass Business School, City, University of London.

[1] The loan was structured as one million dollars by adding the $150, 000 VTI received before with a new investment of $850,000.

Tim has over 35 years' experience as an investment banker, stockbroker for Japan and South East Asia, corporate finance specialist and entrepreneur. Previously he worked in the City of London from 1979-93 with Morgan Grenfell & Co, Bank of America International Limited , WI Carr, Swiss Bank Corporation and was a director of Asia Equity a South East Asian brokerage which subsequently merged with Banque Paribas. He has been on the boards of public and private companies, most notably as a director of Victory Corporation plc, Sir Richard Branson's Virgin branded cosmetics and clothing company and his record label V2 Music Holdings plc. He has also been a director of a major private property group in Delhi, India - Sweta Estates Pvt. Ltd.

## III.    ARGUMENT

### A.  Introduction

Plaintiff Bunce is seeking four (4) requests: First, he moves to dismiss, strike, or sever the third-party complaint against McCarthy. Second, he moves to sanction Defendants and their counsel for <u>willfully</u> refusing to comply with this Court's discovery order.  Third, he seeks attorney fees under 28 U.S.C. § 1927attorneys' fees against defense counsel Raja Rajan.  Fourth, he seeks additional legal fees for preparing his motion and what he has incurred in the litigation. For the reasons explained below, each of those arguments are without merit and are designed only to get advantage in this litigation. The case almost settled through Magistrate Judge Hey as payment stream for Bunce was agreed.

Defendants request time to subpoena witnesses for any fact hearing if the Court does not dismiss Bunce Motion without a hearing.  Many of those witness's work for other jobs and live far from this Court.  They helped VTI in the 2021 time frame which was nearly three (3). Through those witnesses, all of whom have provided, sworn declarations, the Court will be satisfied that Defendants and Defense Counsel have provided  more then good faith in addressing the Court orders and opposing counsel.

### B.  It would be legally improper to dismiss, strike, or sever the third-party complaint against McCarthy.

McCarthy was dismissed by the Court [docket 100] so Plaintiff Bunce to dismiss, sever McCarthy is moot.  McCarthy is no longer in this suit as the third party claim was dismissed already.

Nevertheless, Bunce acknowledges the promises of McCarthy as he attached at drawdown of McCarthy's money to his own Complaint.  In Exhibit 4 of Bunce's Complaint attached and that provides in pertinent that

> The Investor is hereby exercising the rights under clause 4 of the Agreement:
> Amount of Investment : $29,000,000.
> The Investor will exercise through a wire transfer to a bank account set up by VTI or its affiliates at Commerzbank or in the alternative the Investor will deliver a Standby Letter of Credit ("**SBLC**") for US $35 million that is acceptable for VTI and for the avoidance of doubt this will be in full consideration of a total investment in VTI of $ 30,000,000 under the Agreement.
> Purpose: Begin the takeover process of the Ultra-D technology and kick start stalled projects.

Bunce admits the importance of McCarthy to his claims by that attachment.  His own words in an email questioned whether McCarthy's investment promises had "***Any preconditions or break clauses?".  See above email with own words of Bunce.***

Bunce also attached to his Complaint, exhibit 4, which is a drawdown investment document to allow VTI to obtain McCarthy's funds.  Again, Bunce admits the importance of McCarthy to his claims by those attachments to the Complaint.

Federal Rule 14 Third-Party Practice specifically allows in subsection (a) 1 that "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." *Fed R. Civ.. P. 14.*

Bunce cannot in good faith argue against the how own admissions that He was intimately duped by McCarthy to invest in VTI.  Bunce has attached two (2) exhibits of McCarthy's alleged fraud in his own Complaint.  Bunce has sued Mathu Rajan for "fraudulent inducement" along with VTI.  McCarthy induced Bunce, not Mahu Rajan, to quickly loan money to VTI.  Mathu

Rajan has attached and affidavit to the Motion for Summary Judgment against Bunce that he never communicated with Buce at the time of Bunce investments. How could he "fraudulently induce" Bunce without even talking to him? However, the emails show McCarthy communicated with Bunce. Severing McCarthy from the lawsuit of Bunce would be prejudice to Defendants.

Bunce has already asked for a stay of proceedings to remedy the alleged discovery issues. Bunce wants more time to get documents from other proceedings in other lawsuits. On page 8 of *BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS, STRIKE, OR SEVER THIRD-PARTY COMPLAINT, FOR DISCOVERY SANCTIONS, AND FOR AWARD OF ATTORNEYS' FEES,* Bunce writes that "…(iv) staying further proceedings until the order is obeyed;"

### C. It would be improper to sanction Defendants or their counsel for refusing to comply with the Court's discovery order.

The Court issued a variety of discovery orders at the request of Bunce through his lawyers. The Court ordered three mandates [docket 87] in pertinent part that:

(a) Defendants shall make good faith efforts to obtain authentic copies of all exhibits to deposition transcripts and evidentiary hearing transcripts from other lawsuits involving Mathu Rajan and/or VII, and affidavits/declarations given by Mathu Rajan or on behalf of VII in the other legal proceedings. These efforts shall include, but are not limited to, contacting their prior counsel and employees of predecessor companies to request these items. Defendants shall promptly produce any documents they obtain to the plaintiff. With respect to any documents, they are unable to obtain, Defendants shall provide plaintiff with a written explanation describing the efforts they took to obtain them.

(b) No later than August 26, 2024, defendants shall serve on plaintiff an answer, under oath, to Plaintiffs Interrogatory No. 16, explaining how VII used and spent the $1,050,000 that plaintiff provided to VTI, or, in the alternative, explaining how VTI used and spent all of its money, identifying all dates, recipients, amounts and documentation as to each transfer or transaction involving any portion of such funds. To the extent the defendants are unable to answer this interrogatory, they must explain, under oath, the reasons why they cannot answer it.

(c) No later than August 26, 2024, defendants shall serve on plaintiff a supplemental answer to Plaintiffs Interrogatory No. 4, identifying the names and contact information of VTI's

investors. In accordance with the terms of the Protective Order entered on this date, the plaintiff shall not share the information contained in this supplemental interrogatory answer with any party outside of this civil action.

The actual Order is attached hereto as **Exhibit B.**

Bunce, through his lawyer, is misleading the Court and making false allegations in order to created litigation advantage through litigation chaos.  On (c) above, Defendants fully provided all contact information of all those investors were told that VTI would respect their "privacy" and not disclose personal information.  This Court had to issue a protective order to protect that privacy so VTI will not be in breach of its promises without Court compulsion.  See declaration of Suby Jospeh attached hereto as **Exhibit C** as to his efforts in this regard.

There were over 37 investors or shareholders in VTI and each of their names were provided to Bunce.  **Exhibit C-**declaration of Suby Joesph. On (b) above, Defendants ask a review the declaration of Suby Joseph (exhibit C).  He maintained and reviewed the bank statements of VTI in the 2021 time frame and performed services to estimate how Bunce investments may have been spent though his funds were commingled with other investors. Those calculations were never done in the past and were performed only performed now to appease Bunce and comply with the Court order.

Federal Rule 26 on discovery contemplates production in discovery information that exists already.  It does not contemplate requiring a party to (through contractors) perform future calculations. Plaintiff Bunce should have retained an expert to assess all payments (provided bank statements) and assess how the money was spent by VTI.  Instead, they asked VTI to retain Suby Jospeh to perform calculations that never was done by VTI.  Suby Joseph spent hours of his time and acted like an expert that Bunce should have retained for the trial to this matter.

Suby Joseph provided the following through Amanda Gonzalez and Defense Counsel a full spreadsheet listing as to how he estimates the money from Bunce may have been used by VTI. He writes in his declaration that:

> I also understand that Mr. Bunce provided, in his investment documents, very broad description of how his investment funds could be used by Visual Technology Innovations, Inc. Mr. Bunce did not choose to note how exactly **he wanted the funds to be used as other investors have in the past**. The Company's investment documents carried language along the following lines – *"Use of Proceeds. In accordance with the directions of the Company's Board of Directors, the Company will use the proceeds from the sale of the Note for **any lawful general business purpose**."*

Declaration of Suby Joseph, Exhibit C hereto. (emphasis added). He further added that

> 8. I personally was involved in the review of the company bank accounts for Visual Technology Innovations, Inc. in the 2021–2022-time frame and I can attest they were never used inconsistent with the language specified in Mr. Bunce's investment documents otherwise **I would have known that it was a violation of Mr. Bunce's requirements.**

Declaration of Suby Joseph, Exhibit C hereto. (emphasis added).

Mr. Bunce has very broad parameters for spending his money. There was approximately $1,267,500 invested as convertible debt in VTI. There was approximately $2,679,036 invested as straight debt in VTI. There was approximately $23,000 invested as straight equity in VTI. Mr. Joseph spent hours estimating how Bunce money may have been spent and certifies that it could not have been spent improperly.

Suby Joseph also helped provide information about shareholders in VTI with their names and contact information. He wrote:

> 3. Exhibit A hereto, is a **spread sheet identifying the names and contact** information of VTI's investors as provided in the Court Order. That information is private and is protected by the requirements of protective order granted by the Court and other laws.

Declaration of Suby Joseph, Exhibit C hereto. (emphasis added). Also Exhibit F contains the actual supplement redacted as to names and contact information.

It is nonsensical and inaccurate to argue like Bunce has through his lawyer that Defendants and Defense Counsel have complied with all the Court directives, but they failed to demonstrate "good faith" for directive (a) above. Defense counsel Amanda Gonzalez and directly contacted contractors that worked for VTI around the time of 2021 (the time Bunce invested). Her declaration is attached hereto as **Exhibit D** (Declaration of Amanda Gonzalez).

Legal counsel for Defendants was contacted to help retrieve missing exhibit from court transcripts from proceedings in 2020, 2021, and 2023 and after. Please review the declaration of Nicole Maneen, **Exhibit E** hereto.

Defense counsel also contacted those persons and contractors that provided any assistance to Mathu Rajan, Defendants also contacted legal counsel who was an attorney for VTI at that time. See declaration of Nicole Maneen attached hereto as Exhibit F. Most of the lawyers have claims against Stream TV whose assets are in a Bankruptcy court (In re Stream TV Networks, Inc., et. al., in United States Bankruptcy Court for the EDPA at 23-10763 MDC). Those documents are the property of the estate and not any Defendants hereafter. Therefore, attorney Raphael Zahralddin enlisted to help. Nicole Maeen articulates to the good faith reason:

> Raphael Zahralddin who was an attorney at the time of the alleged missing exhibits and although he's with a new firm he was solicited and asked to obtain those exhibits on Mathu's and VTI's behalf.

Nicole Declaration, **Exhibit E** hereto.

In compliance with the Court order specifically (a) above, Defendants provided the following in pertinent part:

| Received From | Name | Attorneys | Exhibits |
|---|---|---|---|
| pulled from online docket | Hearing Transcript 4.25.23 | Lewis Brisboise | No Exhibits Listed |
| assume we got from Law Firm | Hearing Transcript 20210510 | Dilworth Paxson/Armstong Teasdale | List of Exhibits |
| assume we got from Law Firm | Stream 8.15.23 Trial Transcript | Lewis Brisboise | No Exhibits Listed |
| pulled from online docket | Stream 8.17.23 Trial Transcript | Lewis Brisboise | No Exhibits Listed |
| assume we got from | Stream TV Hearing Transcript 10-16-23 | Lewis Brisboise | No Exhibits Listed |
| assume we got from Law Firm | Mathu Rajan 042821 MINI PDFA | Dilworth Paxson/Armstong Teasdale | List of Exhibits |
| assume we got from Law Firm | Mathu Rajan 110920 FULL PDFA | Elliott Greenleaf | List of Exhibits |
| assume we got from Law Firm | 11.13.23 Deposition Transcript of Mathu Rajan | Lewis Brisboise | No Exhibits Listed |
| assume we got from Law Firm | 4.29.21 Deposition of Charles Robertson | Dilworth Paxson/Armstong Teasdale | List of Exhibits |

The full supplemental discovery response is attached hereto as **Exhibit F.** Seven items do not even have exhibits. Those that do many documents are vaguely described and Amanda Gonzalez spent hours identifying the likely documents and whether they were produced already by bates numbers.

Some that have exhibits have confidentiality restrictions. See declaration of Charles (Bud) Robertson attached as **Exhibit G** hereto.

Attached to a Mr. Robertson's declaration is a Court order from Delaware protecting many documents and limiting use in the Delaware case only. Exhibit H, paragraph 6 and attachment thereto. Two documents above are depositions that list exhibits and they are covered by confidentiality in that case of counsel and ratified by the judge, The judge's order is attached to Mr. Robertson declaration as an addendum.

Defense counsel was a party to the Delaware lawsuit and the confidentiality of exbits was enforced. The lawyers in that had a strong confidentiality agreement. In all other cases Defense counsel was not involved which prompted assistance of former persons including an attorney. See Amanda Gonzalez Declaration, and Declaration of Nicole Maneen. The other documents listing exhibits are public bankruptcy proceeding where exhibits were not provided to Bud Robertson when he pulled the transcripts from the Court records.

Again, Defense counsel requests appropriate time to obtain subpoenas from the Clerk of Courts under Rule 45 and serve them as many need them to testify with their other work commitments. If a factual hearing is scheduled by the Court, Defense Counsel wants to call a subset of Nicole Maneen, Bud Robertson, Suby Jospeh and Amanda Gonzalez to testify besides providing declaration attached as exhibits hereto.

### D. It would be improper to award attorney's fees under 28 U.S.C. § 1927.

Bunce through his counsel is simply trying to weaponize 28 U.S.C. § 1927 for advantage in this lawsuit. That statute was not meant to be used for such purposes.

A court may impose sanctions pursuant to 28 U.S.C. § 1927. To do so, "a court must find that an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by **intentional misconduct."** *Toy v. Plumbers & Pipefitters Loc. Union No. 74 Pension Plan*, 317 Fed.Appx. 169, 172 (3d Cir. 2009) (emphasis added).

To the extent a party seeks "costs" and "expenses" under § 1927, in addition to attorney's fees, such costs and expenses are **limited to those enumerated in § 1920**. *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995) (emphasis added).

28 U.S. Code § 1920 - Taxation of costs provides:

(1)Fees of the clerk and marshal;
(2)Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)Fees and disbursements for printing and witnesses;
(4)Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)Docket fees under section 1923 of this title;
(6)Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Moreover, a party is entitled to only those attorney's fees, costs and expenses that result from the particular misconduct. *Id.* While § 1927 grants courts the authority to impose sanctions for misconduct by attorneys, "it is a power which the courts should exercise only in instances of a serious and studied disregard for the orderly process of justice." *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1191 (3d Cir. 1989) (quotation marks and citation omitted).

**E.  It would be improper to award any sanction under the Court's inherent powers.**

The Third Circuit Court has cautioned that excluding evidence is an "extreme sanction" for a violation of a discovery order. In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999) (citation and quotations omitted). The Third Circuit instructs district courts to consider the following factors in exercising its discretion to exclude evidence: "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence . . ." *B. Braun Melsungen AG v. Terumo Med. Corp.,* No. 09-347, 2010 WL 4438041, at *9 (D. Del. Oct. 28, 2010) (citing *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 718 (3d Cir. 1997)).

- 13 -

Even for legal fee is an extreme remedy as cautioned by the US Supreme Court. A court may only use its inherent power to assess attorney's fees as a sanction in narrowly defined circumstances. *Roadway*, 447 U.S. at 765. These rare situations are, for example, when a party has engaged in egregious acts such as litigating in bad faith, abusing judicial processes, or threatening witnesses with violence. See, e.g., *Republic of Philippines*, 43 F.3d at 73-74; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" subject to sanctions pursuant to a court's inherent power (citation omitted)).

Sanctions are not to be imposed as a matter of course upon the losing party in a discovery dispute. In evaluating the behavior of litigants unable to cooperate, courts are required to exercise sound discretion, taking account of both the need to encourage compliance with discovery rules and the rights of parties to make good faith arguments in their own interest. *Derry Finance N.V. v. Christiana Companies, Inc.*, 102 F.R.D. 892, 897 (D. Del. 1984).

The advisory committee notes to Federal Rule of Civil Procedure 11 make clear that discovery in support of sanctions motions "should be conducted only by leave of the court, and then only in extraordinary circumstances." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. "Courts, therefore, rarely grant discovery requests relating to motions for sanctions." *Hall v. Forest River, Inc*., No. 04-259, 2007 WL 2349620, at *1 (N.D. Ind. Aug. 15, 2007) ; see also *Indianapolis Colts v. Mayor & City Council of Baltimore* , 775 F.2d 177, 183 (7th Cir. 1985). *Paige v. Lerner Master Fund, LLC*, 584 B.R. 502, 512 (M.D. Pa. 2018).

## IV.    CONCLUSION

For the aforementioned reasons, respondent asks this Honorable Court dismiss Plaintiffs

Motion summarily.

Exhibit List

Exhibit A- McCarthy Investment Document
Exhibit B- Court Order for Compel
Exhibit C- Declaration of Suby Jospeh under penalty of perjury
Exhibit D Declaration of Amanda Gonzalez under penalty of perjury
Exhibit E- Declaration of Nicole Maneen under penalty of perjury
Exhibit F-Supplemental Discovery-Redacted
Exhibit G- Declaration of Charles (Bud) Robertson under penalty of perjury

Respectfully submitted,

/s/ Raja Rajan

Dated: September 25,
2024

Raja Rajan, Esquire
Attorney I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002
raja@rajanlawgroup.com

Exhibit A- McCarthy Investment Document

VTI Stock Purchase Agreement 210210

### STOCK PURCHASEAGREEMENT

An agreement (this "**Agreement**"), dated as of February 10, 2021 (the "**Effective Date**") , by and betweenVisual Technology Innovations, Inc., a NevadaUSA Corporation(the "**Company**") and Burlington Resources Asia Limited, with an address at 20th Floor, 88 Gloucester Road, Wanchai, Hong Kong(the "**Investor**"), with the Companyand the Investortogether referred to as the "**Parties**."

**WHEREAS**, the Company is anentity  formed pursuant to the laws of the State of Nevada USAas a Nevada corporation, and

**WHEREAS**,The Company desires to issue and sell to the Investor Class A Common Shares issued by the Company (the "**Shares**");

**WHEREAS**, the Investor  desires to purchase the Shares on the terms and conditions set forth herein; and

**WHEREAS**, the Company currently has  aclass of common stock ("**Common Stock**") having a par value \$0.00001 per share which is anticipated will be nullified and replaced on a one-for-one basis with shares of Class A Common Stock by an Amended and Restated Certificate of Incorporation which may soon be filed by the Company with the State of Nevada, such Class A Common Stock  is anticipated to be issued to Investor as a part of this Agreement; and

**WHEREAS**, it is anticipated that a new class of voting only (no economic rights) stock to be known as Class B Voting Stock would be issued to the Company's founder or his wholly-owned entity prior to the issuance of the Class A Common Stock to Investor, such Class B Voting Stock anticipated to have 10:1 voting rights, pursuant to that same Amended and Restated Certificate of Incorporation referenced above , and such issuance of the Class B Voting Shares is being identified to Investor in the spirit of full disclosure to Investor.

**NOW THEREFORE**, in consideration of the recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree to be bound by the terms as set out below.

## TERMS

1)      Subject to the terms and conditions of this Agreement, Investor agrees to purchase the Shares for the purchase price of a total of Thirty Million US Dollars (\$ 30,000,000) (the "**Purchase Price**") at a price per share of \$1.40 per Share

2)      The Investor will deliver to the Company a satisfactory form of proof demonstrating the ready availability of the Purchase Price under the Investor's authority ("**Proof of Funds**").

3)      The Investorwillinvest one million US dollars (US \$1,000,000) in the Shares immediately upon Execution. The funds would be made available in thirty (30) calendar days from Effective Date ("**Initial Closing**").



VTI Stock Purchase Agreement 210210

4)      The Company will present to the Investor a selection of business opportunities ("**Presentation**") with the required amount to fund the opportunity ("**Amount**") at various times during the Term, which has to be closed within twenty (20) business days.The form of the Presentation is shown in **Exhibit A**.

5)      The Initial Closing and each Presentationwill constitute a "**Closing**" and will be considered a part of the Purchase Price. Upon the absence of a Closing, the balance of the Purchase Price available to the Investor that is not yet invested will be reduced by the Amount. Each Closing may be together referred to as "**Closings**".

6)      All Closings should be completed within the earlier of (i) eighteen (18) months from the Effective Date; or (ii) closing of an access to the public markets; or (iii) merger or acquisition when there is a change of control ("**Term**").

7)      The Investor shall pay to the Company in immediately available funds a payment equal to the Amount in each Closing to the Company's bank account ("**Payment**"). The Company's bank wiring instructions are reflected at **Exhibit B**hereto.

8)      In addition, the Company will issue to the Investor 987,839 Shares of the Company immediately on the Effective Date ("**Signing Bonus**").

9)      The Investor will be issued an additional 1,141,230 Shares of the Company if there has not been any further Closings during the Term after the Initial Closing ("**Contingent Bonus**").

10)     The purchase and sale of the Shares shall take place remotely via the exchange of documents and signatures, at 10 a.m. Eastern Time, on the date hereof of each Closing. The issue date of the Shares will be the date of receipt of funds from each Closing in the designated bank account per Exhibit A.

11)     Use of Proceeds. In accordance with the directions of the Company's Board of Directors, the Company will use the proceeds from the sale of the Shares for any lawful general business purpose related to the Company.

## REPRESENTATIONS AND WARRANTIES

12)     Representations and Warranties of the Company. The Company hereby represents and warrants to Investor that, except as set forth on the Disclosure Schedule attached hereto, which exceptions shall be deemed to be part of the representations and warranties made hereunder, the following representations are true and complete as of the date of the Closing, except as otherwise indicated.

        a.      Organization. The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada and has all requisite corporate power and authority to carry on its business as presently conducted.

        b.      Capitalization. The Company currently has one class of Common Stock. It is

Page 2 of 20

VTI Stock Purchase Agreement 210210

contemplated in the future that the Company will have two classes of outstanding stock. Therewill be Class A Common Stock and Class B Voting Stock. The rights, privileges and preferences of the Class A Common Stock and Class B Voting Stock will beas stated in the Certificate of Incorporation, as restated and refiled, and as otherwise provided by the Nevada General Corporation Law.   All issued and outstanding shares of the Company's Class A Common Stock and Class B Voting Stock will have been duly authorized and validly issued and will befully paid and non-assessable. The fully diluted capitalization of the Company as of close of business January 25, 2020 comprises of 4,349,050 Shares; 5,275,100 warrants that are exercisable into Shares; and 3,500,000 stock options that are exercisable into Shares amounting to a fully diluted total of 13,124,150 Shares.

c.     Authorization. All corporate action required to be taken by the Company's Board of Directors and stockholders in order to authorize the Company to enter into this Agreement has been taken or will be taken prior to the Closing. All action on the part of the officers of the Company necessary for the execution and delivery of this Agreement, the performance of all obligations of the Company under this Agreement to be performed as of each Closing, and the issuance and delivery of the Shares has been taken or will be taken prior to the Closing. This Agreement constitutes the valid and legally binding obligation of the Company, enforceable against the Company in accordance with its terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally, or (ii) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

d.     Valid Issuance of Shares.  The Shares have been duly authorized and, when issued, sold and delivered in accordance with the terms and for the consideration set forth in this Agreement, will be validly issued.

e.     Governmental or Other Consents and Filings.  Assuming the accuracy of the representations made by the Investor in this Agreement, no consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any federal, state or local governmental authority or other person is required on the part of the Company in connection with the consummation of the transactions contemplated by this Agreement, except for filings, if any, pursuant to applicable securities laws.

f.     Litigation.   There is no material claim, action, suit, proceeding, arbitration, complaint, charge or investigation pending against the Company, or that questions the validity of this Agreement or the right of the Company to enter into this Agreement, or to consummate the transactions contemplated by this Agreement. The Company is not subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality.

g.  Intellectual Property. Except as set forth in the Disclosure Schedule:

i.     The Company owns or possesses sufficient legal rights to use all foreign and domestic rights in, to and concerning (i) trademarks, brand names, d/b/a's, Internet domain names, logos and trade names; (ii) patents, registrations, and applications therefore; and (iii) copyrights and registrations and applications therefore (collectively, the "Intellectual Property")



VTI Stock Purchase Agreement 210210

in all material respects necessary for its business as currently conducted.

      ii.     The Company has not received any communications alleging that the Company has violated or, by conducting its business as presently conducted, would violate any of the Intellectual Property of any other person.

      iii.    The Company has the right to use the Intellectual Property owned by it free and clear of any rights, liens, encumbrances or claims of others, except that the possibility exists that other persons may have independently developed trade secrets or technical information similar or identical to those of the Company. None of the Company's Intellectual Property has been cancelled or adjudicated invalid (other than any expiration in the ordinary course) or is subject to any outstanding order, judgment or decree restricting its use or adversely affecting or reflecting the Company's rights thereto.

      iv.    All contracts relating to Intellectual Property to which the Company is a party are valid and binding in accordance with their terms, and the Company is not in material default of any material terms thereof.

      h.    Compliance with Other Instruments. The Company is not in material violation or material default (i) of any provisions of its Certificate of Incorporation or Bylaws, (ii) of any instrument, judgment, order, writ or decree, or (iii) under any material contract to which it is a party or by which it is bound.

      i.    The Company makes no representations or warranties with regard to any risks that may pertain to this investment from either an offering or a business perspective and accepts that the Investoracknowledged that it has made its investment based solely on its own due diligence.

      j.    No Further Representations. EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS SECTION 2, THE COMPANY HAS NOT MADE ANY OTHER REPRESENTATIONS AND WARRANTIES AND HEREBY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT MADE OR INFORMATION COMMUNICATED (WHETHER ORALLY OR IN WRITING) TO INVESTOR OR ITS REPRESENTATIVES (INCLUDING ANY OPINION, INFORMATION OR ADVICE, WHICH MAY HAVE BEEN PROVIDED TO INVESTOR OR ITS REPRESENTATIVES BY ANY DIRECT OR INDIRECT EQUITYHOLDER, DIRECTOR, OFFICER, EMPLOYEE, ACCOUNTING FIRM, LEGAL COUNSEL, OR OTHER AGENT, CONSULTANT, OR REPRESENTATIVE OF ANY EQUITYHOLDER OF THE COMPANY OR ANY ESTIMATES, PROJECTIONS OR OTHER FORECASTS AND PLANS (INCLUDING THE REASONABLENESS OF THE ASSUMPTIONS UNDERLYING SUCH ESTIMATES, PROJECTIONS AND FORECASTS) INCLUDED IN ANY SUCH INFORMATION OR COMMUNICATIONS).

13)    Representations and Warranties of Investor. Investor hereby represents and warrants to the Company that:

      a.    Authorization. Investor has full power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement constitutes the valid and legally binding



obligation of Investor, enforceable in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally, and as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

     b.     Purchase Entirely for Own Account. Investor confirms that the Sharesare being acquired for investment for the Investor's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. Investor does not presently have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to the Shares. The Investor has not been formed for the specific purpose of acquiring the Shares.

     c.     Securities Laws. The Investor hereby represents that it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with any invitation to subscribe for the Shares or any use of this Agreement, including (i) the legal requirements within its jurisdiction for the purchase of the Shares, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any governmental or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale, or transfer of the Shares. The Investor's subscription and payment for and continued beneficial ownership of the Shares will not violate any applicable securities or other laws of the Investor's jurisdiction. The Investor hereby represents that it is not acquiring the Shares for the account or benefit of any U.S. Person and that it has no agreement, understanding or intention to distribute, sell, transfer or pledge the Shares, directly or indirectly, in the United States or to U.S. Persons. The Investor hereby agrees that it will not offer, sell, transfer or otherwise dispose of the Shares or any securities issued in respect of or exchange for the Shares except under circumstances which will not result in a violation of Regulation S under the Securities Act, that the Investor shall not engage in hedging transactions with regard to the Shares unless in compliance with the Securities Act.

     d.     Disqualification. Investor represents that neither Investor, nor any person or entity with whom Investor shares beneficial ownership of Company securities, is subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Securities Act (attached hereto as Annex I).

     e.     Acknowledgment. Investor acknowledges that neither the Company nor any other person acting on behalf of the Company has made any representation or warranty, express or implied, as to the accuracy or completeness of any information regarding the Company, except as expressly set forth in Section 2 of this Agreement. The Investor acknowledges that any investment it makes is made without any representations or warranties of the Company with regard to any risks that may pertain to the investment from either an offering or a business perspective. The Investor has made its investment based solely on its own due diligence.Investor acknowledges that there are uncertainties inherent in attempting to make such projections and plans, that Investor is familiar with such uncertainties, and that Investor shall have no claim with respect thereto. Investor acknowledges that it has conducted to its satisfaction an independent investigation and verification of the financial condition, results of operations, assets, liabilities, properties and projected operations of the Company and, in making its determination to proceed with the transactions contemplated by this Agreement, Investor has relied on the results of its

VTI Stock Purchase Agreement 210210

own independent investigation and verification

## MISCELLANEOUS

14)     Miscellaneous.

a.     Successors and Assigns.     This Agreement may not be assigned by the Investorwithout the express written consent of the Parties. The provisions hereof shall inure to the benefit of, and be binding upon the Parties hereto and their respective successors, permitted assigns, heirs, executors and administrators.

b.     Expenses.  Each party to this transaction shall bear its own expenses, including but not limited to legal fees.

c.     Confidentiality.  Each party agrees that, except with the prior written consent of the other party, it shall at all times keep confidential and not divulge, furnish or make accessible to anyone any confidential information, knowledge or data concerning or relating to the business or financial affairs of the other parties to which such party has been or shall become privy by reason of this Agreement.

d.     Placement Agents.  Such placement agents as the Company may disclose to the Investor. Such placement agents shall be compensated on such terms as the Company may agree to in its discretion.

e.     Governing Law.  This Agreement and any disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby shall be governed by and construed in accordance with the domestic laws of the State of NevadaUSA without giving effect to any choice or conflict of law provision or rule (whether of the State of NevadaUSA or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Nevada USA.

f.     Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

g.     Titles and Subtitles.  The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

h.     Notices.  All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or: (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to



VTI Stock Purchase Agreement 210210

the respective Parties at their address as set forth on the signature page, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this section.

i.     Amendments and Waivers. Any term of this Agreement may be amended, terminated or waived only with the written consent of the Parties.

j.     Severability. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, then a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid, void or unenforceable provision and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

k.     Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

l.     Entire Agreement. This Agreement constitutes the full and entire understanding and agreement between the Parties with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the Parties are expressly canceled.

m.     Dispute Resolution; Waiver of Jury Trial. The Parties (a) hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the District Court of Justice of the State of Nevada sitting in Las Vegas, Nevada and the federal courts of the United States of America located in the State of Nevada, as well as to the jurisdiction of all courts to which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the aforementioned courts, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court

WAIVER OF JURY TRIAL: EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE OTHER TRANSACTION AGREEMENTS, THE SECURITIES OR



VTI Stock Purchase Agreement 210210

THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER WARRANTS AND REPRESENTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

      n.     Publicity. The Investor shall not issue any press release or make any public disclosure with respect to this Agreement and the transactions contemplated hereby, unless such press release or public disclosure shall be approved in advance by the Company.

## ANNEX I

Rule 506(d)(1)(i) to (viii) under the Securities Act of 1933, as amended

(i) Has been convicted, within ten years before such sale (or five years, in the case of issuers, their predecessors and affiliated issuers), of any felony or misdemeanor:

(A) In connection with the purchase or sale of any security;

(B) Involving the making of any false filing with the Commission; or

(C) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(ii) Is subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before such sale, that, at the time of such sale, restrains or enjoins such person from engaging or continuing to engage in any conduct or practice:

(A) In connection with the purchase or sale of any security;

(B) Involving the making of any false filing with the Commission; or

(C) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(iii) Is subject to a final order of a state securities commission (or an agency or officer of a state performing like functions); a state authority that supervises or examines banks, savings associations, or credit unions; a state insurance commission (or an agency or officer of a state



VTI Stock Purchase Agreement 210210

performing like functions); an appropriate federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that:

(A) At the time of such sale, bars the person from:

(1) Association with an entity regulated by such commission, authority, agency, or officer;

(2) Engaging in the business of securities, insurance or banking; or

(3) Engaging in savings association or credit union activities; or

(B) Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within ten years before such sale;

(iv) Is subject to an order of the Commission entered pursuant to section 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(b) or 78o-4(c)) or section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3(e) or (f)) that, at the time of such sale:

(A) Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer or investment adviser;

(B) Places limitations on the activities, functions or operations of such person; or

(C) Bars such person from being associated with any entity or from participating in the offering of any penny stock;

(v) Is subject to any order of the Commission entered within five years before such sale that, at the time of such sale, orders the person to cease and desist from committing or causing a violation or future violation of:

(A) Any scienter-based anti-fraud provision of the federal securities laws, including without limitation section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 CFR 240.10b-5, section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(c)(1)) and section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)), or any other rule or regulation thereunder; or

(B) Section 5 of the Securities Act of 1933 (15 U.S.C. 77e).

(vi) Is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

(vii) Has filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or Regulation A offering statement filed with the Commission that, within five years before such sale, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or



VTI Stock Purchase Agreement 210210

(viii) Is subject to a United States Postal Service false representation order entered within five years before such sale, or is, at the time of such sale, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

VTI Stock Purchase Agreement 210210

## DISCLOSURE SCHEDULE

This Disclosure Schedule is delivered pursuant to and in connection with the Shares, as of the Effective Date, by and between the Parties.

Capitalized terms used but not defined herein shall have the respective meanings assigned thereto in the Agreement. The representations and warranties of the Company in the Agreement are made and given subject to the disclosures contained in the following schedules. Any matters disclosed in any part of this Disclosure Schedule shall be deemed disclosed for purposes of each other part of these Disclosure Schedules in which it is apparent on its face that it applies to such other section of this Disclosure Schedule.

The inclusion of any fact, item, matter, circumstance, transaction or event on a schedule is not deemed to be an admission or representation that the fact, item, matter, circumstance, transaction or event is or is not "material" and such inclusion shall not be deemed an acknowledgment that such fact, item, matter circumstance, transaction or event is required to be disclosed pursuant to the Agreement. In no event shall the listing of any matters in this Disclosure Schedule be deemed or interpreted to broaden or otherwise amplify the representations and warranties or covenants of the Company contained in the Agreement.

The introductory language and the heading to each schedule, if any, are inserted for convenience only and shall not create a different standard for disclosure than the language set forth in the Agreement. Headings in the schedules are inserted for convenience only and shall not create a representation regarding the completeness or accuracy of the organization of the information on such schedules.

| | |
|---|---|
| Organization | No exceptions |
| Capitalization | No exceptions |
| Authorization | No exceptions |
| Valid Issuance of Shares | No exceptions |

Governmental or Other Consents and Filings

No exceptions

Litigation                    The Company does not believe at this time that any claims are material to the Company's business or ongoing operations.

| | |
|---|---|
| Intellectual Property | No exceptions |
| Compliance with Other Instruments | No exceptions |
| No Further Representations | No exceptions |

Page 11 of 20

VTI Stock Purchase Agreement 210210

## PRIVACY AND CONSENT

### *Privacy Statement and Consent under The European Union General Data Protection Regulation (GDPR)*

The European Union General Data Protection Regulation (**GDPR**) requires every organization that collects sensitive personal data to request clear and specific consent regarding that data. According to the GDPR, personal data is any information that can be used to identify the data subject providing the personal data. GDPR best practices require the ability to obtain valid consent from the Company's investors to allow for the lawful collection and processing of personal data, as well as the ability for those investors to withdraw their consent.

The conditions of valid consent under the GDPR are that consent needs to be:

* freely given
* specific, per purpose
* informed
* an unambiguous indication
* given by a statement or by a clear act
* distinguishable from other matters
* in clear and plain language, intelligible, and easily accessible

### Privacy Statement – Q&A

* What kinds of personal information about you does the Company process?
  **Only that information you provided to the Company when you invested in the Company and may subsequently update.**

* What is the source of your personal information?
  **Provided when you invest in the Company.**

* What do we use your personal data for?
  **As required by law, for our auditors, or in the case of your name and holdings only, for investment bankers and past or future investors under confidentiality when performing due diligence on the Company.**

* What are the legal grounds for our processing of your personal information (including when we share it with others)?
  **As required by law, for our auditors, or in the case of your name and holdings only, for investment bankers and past or future investors under confidentiality when performing due diligence on the Company.**

* When does the Company share your personal information with other parties?
  **As required by law, for our auditors, or in the case of your name and holdings only, for investment bankers and past or future investors under confidentiality when performing due diligence on the Company.**

* How and when can you withdraw your consent?
  **You may withdraw your consent at any time after you have fully disposed of your interest in the Company.**



VTI Stock Purchase Agreement 210210

- Is your personal information transferred inside or outside the EU?
  **Yes, as required by law, for our auditors, or in the case of your name and holdings only, for investment bankers and past or future investors under confidentiality when performing due diligence on the Company.**

- Do we share your information with credit reference agencies?
  **No.**

- Do we share your information with Fraud Prevention Agencies?
  **No.**

- What should you do if your personal information changes?
  **Notify the Company in writing of the appropriate changes.**

- Do you have to provide your personal information to the Company?
  **Under the laws of various countries, including the USA, such information sharing may be required for the acceptance by the Company of your investment by the Company.**

- Does the Company do any monitoring involving the processing of your personal information?
  **Yes, to the extent required for safeguarding of such or thesharing such information.**

- What about other automated decision making?
  **There is none.**

- For how long is your personal information retained by the Company?
  **For so long as you remain an investor in the Company, or longer as and if required by law.**

- What are your rights under data protection laws?
  **The rights to notice, privacy, consent and the withdrawal thereof. If the Company needs the data to operate the service or to meet a legal requirement, such requirement will be communicated to the investor and the request denied or restrict processing of the data.**



VTI Stock Purchase Agreement 210210

### Form of Consent

Any personal information (the "Information") you provide to the Company, including and similar to your name, address, telephone number, e-mail address, copy of your ID, financial information, curriculum vitae and tax information, will be handled with care. This data will only be accessible by those Company employees or contractors where the processing is necessary for the performance of the retention of Confidential Information or for the purposes of the Company's legitimate interest in informing investment bankers and past and future investors upon request in connection with their due diligence concerning the Company. Your Information will not be released or released outside of the Company except as noted below.

- *Only Company employees or contractors will have access to your information on a strict need-to-know basis, prior to sharing with investment bankers and past and future investors upon request in connection with their due diligence concerning the Company.*
- *Your Information is registered in the Company's records and is available to only Company employees, or contractors on a strict need-to-know basis or for the purposes of the Company's legitimate interest in informing investment bankers and past and future investors upon request in connection with their due diligence concerning the Company.*
- *Your grant of consent covers future provisions of Information.*
- *You approve that your Information will be made available to only employees, or contractors on a strict need-to-know basis or for the purposes of the Company's legitimate interest in informing investment bankers and past and future investors upon request in connection with their due diligence concerning the Company and as required by law.*
- *You can send a request for removal of your Information at any time to our Investor Relations representative which shall be honored if possible. If it cannot be honored, you will be advised explaining the reasons thereof.*
- *You have the right to require the Company to delete Information in circumstances where: (a) the data is no longer necessary for the purpose in relation to which it was collected; (b) consent to processing has been withdrawn (if the Company has relied on your consent to process and access the personal data); (c) the Information was processed in breach of the GDPR; (d) the Information has to be deleted to comply with a legal obligation; or (e) you object to the processing and there are no compelling grounds to obviate that objection (such as the data being required in legal claims involving the Company).*
- *In case you would like to make use of this right at (e) above, please send your request to the Company's Investor relations representative.*
- *Requests for any changes to your Information can be sent to our Investor Relations representative and will be processed appropriately.*

**By my signature(s), I have acknowledged that I have read and understand the Company policy and have thereby provided my consent to the Company under GDPR.**

VTI Stock Purchase Agreement 210210

## SIGNATURE PAGE

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date first written above.

**COMPANY**
Visual Technology Innovations, Inc.

By: _Matthu Rajan_

Name:      Mathu Rajan
Title:     President
Address:   1105 William Penn Dr
           Philadelphia, PA 19020

**INVESTOR**
Burlington Resources Asia Limited

By: _____

Name:      Timothy McCarthy
Title:     CEO
Address:   Old St. James's Vicarage,
           Maxwell Road,
           London SW6 2HR, UK

VTI Stock Purchase Agreement 210210

## ACCREDITED INVESTOR CERTIFICATION

**For Individual Investors Only**
**(All individual investors must *INITIAL* where appropriate. Where there are joint investors both parties must *INITIAL*):**

Initial _____  I certify that I have a "net worth" of at least $1 million either individually or through aggregating my individual holdings and those in which I have a joint, community property or other similar shared ownership interest with my spouse.[1]

Initial _____  I certify that I have had an annual gross income for the past two years of at least $200,000 (or $300,000 jointly with my spouse) and expect my income (or joint income, as appropriate) to reach the same level in the current year.

**For Non-Individual Investors**
**(all Non-Individual Investors must *INITIAL* where appropriate):**

Initial _____  The undersigned certifies that it is a partnership, corporation, limited liability company or business trust that is 100% owned by persons who meet either of the criteria for Individual Investors, above.

Initial _____  The undersigned certifies that it is a partnership, corporation, limited liability company or business trust that has total assets of at least $5 million and was not formed for the purpose of investing in Company.

Initial _____  The undersigned certifies that it is an employee benefit plan whose investment decision is made by a plan fiduciary (as defined in ERISA §3(21)) that is a bank, savings and loan association, insurance company or registered investment adviser.

Initial _____  The undersigned certifies that it is an employee benefit plan whose total assets exceed $5,000,000 as of the date of the Subscription Agreement.

Initial _____  The undersigned certifies that it is a self-directed employee benefit plan whose investment decisions are made solely by persons who meet either of the criteria for Individual Investors, above.

Initial _____  The undersigned certifies that it is a U.S. bank, U.S. savings and loan association or other similar U.S. institution acting in its individual or fiduciary capacity.

Initial _____  The undersigned certifies that it is a broker-dealer registered pursuant to §15 of the Securities Exchange Act of 1934.

Initial _____  The undersigned certifies that it is an organization described in §501(c)(3) of the Internal Revenue Code with total assets exceeding $5,000,000 and not formed for the specific purpose of investing in Company.

Initial _____  The undersigned certifies that it is a trust with total assets of at least $5,000,000, not formed for the specific purpose of investing in Company, and whose purchase is directed by a person with such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment.

Initial _____  The undersigned certifies that it is a plan established and maintained by a state or its political subdivisions, or any agency or instrumentality thereof, for the benefit of its employees, and which has total assets in excess of $5,000,000.

Initial _____  The undersigned certifies that it is an insurance company as defined in §2(a)(13) of the Securities Act of 1933, as amended, or a registered investment company.

---

[1] For purposes of calculating net worth: (A) your primary residence shall not be included as an asset; (B) indebtedness that is secured by your primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and (C) indebtedness that is secured by your primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability.

VTI Stock Purchase Agreement 210210

## INVESTOR PROFILE

*(Must be completed by Investor)*

### Section A - Personal Investor Information

Investor Name(s): _____

Individual executing Profile or Trustee: _____

Social Security Numbers / Federal I.D. Number: _____

Date of Birth: _____ Marital Status: _____

Joint Party Date of Birth: _____
Investment Experience (Years): _____

Annual Income: _____
Liquid Net Worth: _____

Net Worth: _____

Resident of: _____
Home Street Address: _____

Home City, State & Zip Code: _____

Home Phone: _____ Home Fax: _____

Home Email: _____

Employer: _____

Employer Street Address: _____

Employer City, State & Zip (Postal) Code:

Bus. Phone: _____ Bus. Fax: _____

Bus. Email: _____

Type of Business: _____

Sales Agent Account Executive / Outside Broker/Dealer: _____

VTI Stock Purchase Agreement 210210

## Section B – Entity Investor Information

Investor Name(s):  Burlington Resources Asia Limited

Authorized Individual executing Profile or Trustee:  Timothy McCarthy

Social Security Numbers / Federal I.D. Number: _____

Investment Experience (Years): 35 years

Assets: US $ 60m +

Was the entity formed for the specific purpose of purchasing the Shares?

[ ] Yes [X] No

Principal Purpose (Trust) _____

Type of Business:  Investment Holding Company

Street Address: 20$^{th}$Floor, 88 Gloucester Road, Wanchai, Hong Kong

City, State & Zip Code: _____

Phone: _____ +44 7768943655    Fax: _____

Email: tim@burlingtonresources-asia.com

Sales Agent Account Executive / Outside Broker/Dealer:  Knight-Davis Associates LLP

Tim mh

VTI Stock Purchase Agreement 210210

## EXHIBIT A

Form of Presentation

1. Presentation of the opportunity
2. Cost of the opportunity
3. Subscription agreement for Shares with date of wire

## EXHIBIT B

### Checklist for complete documentation

| Holder Status | Individual(s) | Entity |
|---|---|---|
| Executed paperwork | ☐ Subscription Agreement<br>☐ Accredited Investor Questionnaire<br>☐ Individual Investor Profile | ☐ Subscription Agreement<br>☐ Accredited Investor Questionnaire<br>☐ Entity Investor Profile |
| KYC/ID Requirements | ☐ Copy of any gov. issued photo ID (Driver's License, Passport, etc) | ☐ Entity Formation Documents (Cert of Incorporation, Articles, Deed, etc)<br>☐ Authorized Signatories list |
| Wire Funds: | ☐ Process bank wire | |
| Email to: | Suby.joseph@vti-global.com<br>☐ Executed Paperwork<br>☐ KYC/ID<br>☐ Bank Wire confirmation | |

### Bank Wire Instructions for Payment to Company

| | |
|---|---|
| Bank | Wells Fargo Bank NA<br>420 Montgomery<br>San Francisco, CA 94104 |
| Beneficiary | Visual Technology Innovations, Inc.<br>1105 William Penn Drive<br>Bensalem, PA 19020 |
| Domestic Wire | Account: ▮▮▮▮▮<br>Routing/ABA Number: ▮▮▮▮▮ |



VTI Stock Purchase Agreement 210210

| International Wire | Account: ████████ |
| | SWIFT: ████████ |



Exhibit B- Court Order for Compel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK L. BUNCE, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **CIVIL ACTION** |
| | : | **NO. 23-1740** |
| VISUAL TECHNOLOGY INNOVATIONS, | : | |
| INC., and MATHU RAJAN, | : | |
| *Defendants*. | : | |

### ORDER

**AND NOW**, this **13th** day of **August, 2024**, upon consideration of Plaintiff's Motion to Compel, With Rule 26.1 Certification (ECF No. 63), Defendants' Opposition to Motion to Compel (ECF No. 67), and Reply in Support of Plaintiff's Motion to Compel (ECF No. 69), and after consideration of the representations made by counsel at the Status Conference held on August 8, 2024, it is hereby **ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** as follows:

1.      Defendants shall make good faith efforts to obtain authentic copies of all exhibits to deposition transcripts and evidentiary hearing transcripts from other lawsuits involving Mathu Rajan and/or VTI, and affidavits/declarations given by Mathu Rajan or on behalf of VTI in the other legal proceedings. These efforts shall include, but are not limited to, contacting their prior counsel and employees of predecessor companies to request these items. Defendants shall promptly produce any documents they obtain to the plaintiff. With respect to any documents they are unable to obtain, Defendants shall provide plaintiff with a written explanation describing the efforts they took to obtain them.

2.      No later than **August 26, 2024**, defendants shall serve on plaintiff an answer, under oath, to Plaintiff's Interrogatory No. 16, explaining how VTI used and spent the $1,050,000 that

plaintiff provided to VTI, or, in the alternative, explaining how VTI used and spent all of its money, identifying all dates, recipients, amounts and documentation as to each transfer or transaction involving any portion of such funds. To the extent the defendants are unable to answer this interrogatory, they must explain, under oath, the reasons why they cannot answer it.

3. No later than **August 26, 2024**, defendants shall serve on plaintiff a supplemental answer to Plaintiff's Interrogatory No. 4, identifying the names and contact information of VTI's investors. In accordance with the terms of the Protective Order entered on this date, the plaintiff shall not share the information contained in this supplemental interrogatory answer with any party outside of this civil action.

4. Plaintiff's request for an order directing the defendants to verify their interrogatory responses is **DENIED AS MOOT**.

BY THE COURT:

_____
**HON. KAI N. SCOTT**
**United States District Court Judge**

2

Exhibit C- Declaration of Suby Jospeh under penalty of perjury

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|:---:|---|
| MARK L. BUNCE,<br>                    Plaintiff, | :<br>: | |
| vs. | : | |
| VISUAL TECHNOLOGY<br>INNOVATIONS, INC.<br>and<br>MATHU G. RAJAN,<br>        Defendants/Counterclaim and Third-<br>Party Plaintiffs | :<br>:<br>:<br>:<br>:<br>: | Civil Action Case No.<br>C.A. No. 2:23-cv 01740<br><br>**Declaration of Suby Joseph** |
| vs. | : | |
| Mark Bunce,<br>        Counterclaim Defendant and | :<br>: | |
| Timothy McCarthy<br>        Third -Party Defendant | :<br>: | |

## <u>DECLARATION</u>

1. I am providing this declaration in a legal process, and I understand that it may be used in Court.

2. My name is Suby Joseph, and I used to work as a consultant to Visual Technology Innovations, Inc. and Mathu Rajan. I have helped Mathu Rajan more recently with some of particularly now that he is consumed with his medical issues.

3. I have communicated with Mark Bunce in the past with regard to the execution of agreements between Mark and VTI and was involved with some of his documentation.

4. I extensively tried to categorize the payments including using the description for each payment in the bank statements, from the company bank accounts to reflect how Mark Bunce's investments monies were spent by Visual Technology Innovations, Inc. and since those funds of Mark Bunce were comingled with other investors monies, but I tried to make educated guesses years later to show how the monies were spent.

5. Attached hereto as Addendum A is an Excel spreadsheet that provides the information described above to the best of my knowledge.

6. I understand that a subset of the Addendum was provided to counsel with the names of the other investors and also to help opposing counsel calculate how Mr.  Bunce's funds may have been spent.

7. I also understand that Mr. Bunce provided, in his investment documents, very broad description of how his investment funds could be used by Visual Technology Innovations, Inc. Mr. Bunce did not choose to note how exactly he wanted the funds to be used as other investors have in the past.  The Company's investment documents carried language along the following lines – *"Use of Proceeds.  In accordance with the directions of the Company's Board of Directors, the Company will use the proceeds from the sale of the Note for any lawful general business purpose."*

8.  I personally was involved in the review of the company bank accounts for Visual Technology Innovations, Inc. in the 2021–2022-time frame and I can attest they were never used inconsistent with the language specified in Mr. Bunce's investment documents otherwise I would have known that it was a violation of Mr. Bunce's requirements.

9.  I was solicited by Amanda Gonzalez on behalf of Raja Rajan to provide documents for any documents for Mark Bunce or Timothy McCarthy in the 2020–2021-time frame. There is not a central cloud server that facilitates all of our documents since that server was taken when our former employer, Stream TV Networks, Inc. went into litigation with shareholders in 2020.

10. I provided an update and documentation requested by Amanda Gonzalez on behalf of Raja Rajan. I also made sure that I sent all documents that I had in my possession per that request.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge on the date and time herein noted.*

DocuSigned by:

*Suby Joseph*

0B50EA69052C433...

Suby Joseph

Date: 9/25/2024

| Date | Description in Bank Statement | Category | Bank Account BofA 4060 | WF 5235 | Bunce funds - running balance | Comments |
|------|-------------------------------|----------|------------------------|---------|-------------------------------|----------|
| 1/22/2021 | DEPOSIT | Interco | | | | |
| 1/25/2021 | | Interco | | | | |
| | | Interco | | | | |
| 2/1/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| 2/2/2021 | | Payroll | | | | |
| | | Payroll | | | | |
| 2/3/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| 2/5/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| 2/9/2021 | | Misc | | | | |
| | | Misc | | | | |
| 2/17/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| 2/18/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| | | Fundraising | | | | |
| | | Fundraising | | | | |
| 2/19/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| | | Legal | | | | |
| | | Legal | | | | |
| 2/22/2021 | | Fundraising | | | | |
| | | Fundraising | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| 2/23/2021 | | Payroll | | | | |
| | | Payroll | | | | |
| | | Legal | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Payroll | | | | |
| | | Legal | | | | |
| 2/25/2021 | | Fundraising | | $150,000.00 | | |
| | | Fundraising | | | | |
| 2/26/2021 | | Payroll | | | | |





| Date | Category |
|------|----------|
| | Payroll |
| | Misc |
| | Production |
| | Payroll |
| | Payroll |
| | Legal |
| | Legal |
| | Legal |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Legal |
| | Fundraising |
| | Legal |
| | Misc |
| 3/16/2021 | |
| 3/18/2021 | Legal |
| | Legal |
| 3/19/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 3/23/2021 | Legal |
| | Advisory |
| | Payroll |
| | Advisory |
| | Payroll |
| | Legal |
| 3/29/2021 | Payroll |
| | Legal |
| | Fundraising |
| | Legal |
| | Payroll |
| | Accounting |
| | Payroll |
| | Fundraising |
| | Misc |
| | Legal |
| | Legal |
| 3/31/2021 | Plant |
| | Plant |
| 4/1/2021 | Payroll |
| | Payroll |
| 4/7/2021 | Payroll |



| Date | Category |
|---|---|
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Fundraising |
| 4/13/2021 | Misc |
| | Misc |
| 4/14/2021 | Legal |
| | Misc |
| | Legal |
| 4/15/2021 | Developmen |
| | Interco |
| | Payroll |
| | Developmen |
| | Payroll |
| | Interco |
| 4/16/2021 | Misc |
| | Interco |
| | Interco |
| | Interco |
| 4/19/2021 | Legal |
| | Payroll |
| | Payroll |
| 4/20/2021 | Legal |
| | Fundraising |
| | Legal |
| | Legal |
| 4/21/2021 | Plant |
| | Misc |
| | Interco |
| 4/22/2021 | Interco |
| | Payroll |
| | Interco |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |





| | | | |
|---|---|---|---|
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Accounting | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| 4/26/2021 | [redacted] | Misc | [redacted] |
| 4/27/2021 | [redacted] | Accounting | [redacted] |
| 4/28/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Misc | [redacted] |
| 4/29/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Plant | [redacted] |
| | [redacted] | Interco | [redacted] |
| 4/30/2021 | [redacted] | Fundraising | [redacted] |
| | [redacted] | Fundraising | [redacted] |
| | [redacted] | Misc | [redacted] |
| 5/3/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Interco | [redacted] |
| 5/4/2021 | [redacted] | Fundraising | [redacted] $49,967.00 [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Fundraising | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| 5/5/2021 | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Plant | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Plant | [redacted] |
| 5/6/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |

| Date | Category |
|---|---|
| 5/7/2021 | Payroll |
| | Fundraising |
| | Fundraising |
| | Legal |
| | Legal |
| | Payroll |
| 5/10/2021 | Misc |
| 5/12/2021 | Payroll |
| 5/17/2021 | Misc |
| | Misc |
| 5/18/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Legal |
| 5/19/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 5/20/2021 | Fundraising |
| | Fundraising |
| | Payroll |
| 5/21/2021 | Legal |
| | Legal |
| 5/24/2021 | Accounting |
| 5/27/2021 | Accounting |
| | Interco |
| | Interco |
| | Misc |
| 5/28/2021 | Payroll |
| | Interco |
| | Interco |
| | Misc |
| 6/1/2021 | Misc |
| 6/2/2021 | Production |
| 6/3/2021 | Fundraising |
| | Interco |
| | Fundraising |
| | Payroll |
| | Interco |
| | Payroll |
| 6/4/2021 | Interco |
| | Interco |
| | Interco |
| | Interco |
| | Payroll |
| | Payroll |



| | | | |
|---|---|---|---|
| | [redacted] | Payroll | [redacted] |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| 6/7/2021 | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| | | Fundraising | |
| | | Payroll | |
| 6/9/2021 | | Fundraising | |
| | | Misc | |
| 6/10/2021 | | Interco | |
| | | Fundraising | |
| | | Misc | |
| | | Interco | |
| | | Fundraising | |
| | | Interco | |
| 6/11/2021 | | Payroll | |
| | | Payroll | |
| 6/14/2021 | | Misc | |
| | | Payroll | |
| | | Misc | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| 6/17/2021 | | Interco | |
| 6/18/2021 | | Payroll | |
| | | Payroll | |
| 6/21/2021 | | Fundraising | |
| | | Fundraising | |
| | | Misc | |
| | | Misc | |
| | | Misc | |
| 6/22/2021 | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |
| | | Payroll | |

| Date | Category |
| --- | --- |
| | Payroll |
| | Payroll |
| | Accounting |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 6/23/2021 | Payroll |
| | Payroll |
| 6/24/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Interco |
| 6/25/2021 | Payroll |
| 6/28/2021 | Accounting |
| | Fundraising |
| 6/29/2021 | Fundraising |
| | Payroll |
| 6/30/2021 | Payroll |
| | Payroll |
| | Payroll |
| 7/1/2021 | Fundraising |
| | Misc |
| | Payroll |
| 7/7/2021 | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Interco |
| | Payroll |
| | Interco |
| | Payroll |
| | Payroll |
| | Payroll |
| 7/8/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Interco |
| | Interco |
| 7/9/2021 | Misc |
| | Legal |
| 7/12/2021 | Fundraising |
| 7/13/2021 | Payroll |
| | Payroll |
| | Fundraising |



| Date | Category |
|------|----------|
| 7/14/2021 | Misc |
| | Misc |
| 7/15/2021 | Fundraising |
| | Payroll |
| | Payroll |
| 7/19/2021 | Fundraising |
| | Misc |
| | Payroll |
| | Misc |
| | Misc |
| | Payroll |
| | Fundraising |
| 7/20/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 7/21/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 7/22/2021 | Accounting |
| | Misc |
| | Misc |
| 7/26/2021 | Fundraising |
| | Fundraising |
| 7/27/2021 | Payroll |
| | Accounting |
| | Payroll |
| 8/2/2021 | Fundraising |
| | Fundraising |
| 8/3/2021 | Payroll |
| 8/4/2021 | Fundraising |
| 8/5/2021 | Fundraising |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 8/6/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 8/9/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Fundraising |





| | | | |
|---|---|---|---|
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Interco | [redacted] |
| 8/10/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| 8/11/2021 | [redacted] | Fundraising | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| 8/12/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Legal | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Misc | [redacted] |
| 8/13/2021 | [redacted] | Misc | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Legal | [redacted] |
| | [redacted] | Misc | [redacted] |
| | [redacted] | Misc | [redacted] |
| 8/16/2021 | [redacted] | Fundraising | [redacted] |
| | [redacted] | Misc | [redacted] |
| 8/17/2021 | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Misc | [redacted] |
| 8/18/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| 8/20/2021 | [redacted] | Payroll | [redacted] |
| 8/23/2021 | [redacted] | Interco | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| | [redacted] | Fundraising | [redacted] |
| | [redacted] | Interco | [redacted] |
| | [redacted] | Accounting | [redacted] |
| 8/24/2021 | [redacted] | Payroll | [redacted] |
| | [redacted] | Payroll | [redacted] |
| 8/25/2021 | [redacted] | Payroll | [redacted] |
| 8/26/2021 | [redacted] | Payroll | [redacted] |
| | [redacted] | Legal | [redacted] |
| | [redacted] | Legal | [redacted] |
| 8/27/2021 | [redacted] | Legal | [redacted] |

| Date | Category |
|------|----------|
| | Legal |
| | Accounting |
| | Interco |
| 8/30/2021 | Fundraising |
| 8/31/2021 | Legal |
| | Interco |
| 9/1/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Legal |
| 9/2/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Interco |
| 9/3/2021 | Payroll |
| | Fundraising |
| | Payroll |
| 9/8/2021 | Developmen |
| 9/9/2021 | Developmen |
| 9/10/2021 | Legal |
| | Legal |
| | Misc |
| | Payroll |
| 9/13/2021 | Fundraising |
| | Misc |
| | Misc |
| | Payroll |
| | Payroll |
| | Legal |
| | Misc |
| 9/14/2021 | Developmen |
| | Developmen |
| 9/17/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 9/18/2021 | Misc |
| 9/20/2021 | Fundraising |
| | Payroll |

| Date | Category |
|---|---|
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 9/21/2021 | Interco |
| 9/22/2021 | Accounting |
| | Misc |
| | Interco |
| 9/23/2021 | Fundraising |
| | Misc |
| 9/24/2021 | Fundraising |
| | Interco |
| 9/27/2021 | Fundraising |
| | Legal |
| | Accounting |
| 9/28/2021 | Development |
| | Payroll |
| | Development |
| 9/29/2021 | Legal |
| | Misc |
| 9/30/2021 | Payroll |
| 10/1/2021 | Fundraising |
| | Payroll |
| 10/4/2021 | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Development |
| 10/5/2021 | Development |
| | Interco |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Misc |
| 10/6/2021 | Payroll |
| | Fundraising |
| | Payroll |
| 10/8/2021 | Fundraising |
| | Interco |
| 10/12/2021 | Legal |
| 10/13/2021 | Payroll |

| Date | Category |
|---|---|
| | Legal |
| | Misc |
| 10/14/2021 | Misc |
| 10/18/2021 | Fundraising |
| | Misc |
| 10/20/2021 | Misc |
| | Payroll |
| | Interco |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Interco |
| 10/21/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 10/22/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Accounting |
| 10/23/2021 | Misc |
| 10/25/2021 | Payroll |
| | Fundraising |
| 10/26/2021 | Misc |
| 10/27/2021 | Misc |
| | Accounting |
| | Developmen |
| 10/28/2021 | Payroll |
| | Developmen |
| 11/1/2021 | Fundraising |
| 11/2/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Fundraising |
| 11/3/2021 | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| 11/5/2021 | Fundraising |
| | Payroll |
| 11/8/2021 | Fundraising |
| | Fundraising |
| 11/9/2021 | Payroll |
| | Payroll |
| | Payroll |
| | Misc |
| 11/10/2021 | Payroll |
| | Payroll |

| Date | Category |
|------|----------|
| | Payroll |
| | Payroll |
| | Payroll |
| | Misc |
| 11/12/2021 | Sales |
| | Payroll |
| 11/13/2021 | Misc |
| 11/15/2021 | Fundraising |
| | Misc |
| | Payroll |
| | Misc |
| 11/18/2021 | Misc |
| 11/22/2021 | Payroll |
| | Payroll |
| | Fundraising |
| | Payroll |
| | Accounting |
| 11/23/2021 | Fundraising |
| | Payroll |
| | Payroll |
| | Misc |
| 11/24/2021 | Misc |
| | Payroll |
| | Fundraising |
| 11/26/2021 | Payroll |
| | Fundraising |
| 11/29/2021 | Fundraising |
| | Misc |
| | Accounting |
| | Fundraising |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Fundraising |
| | Fundraising |
| | Fundraising |
| | Fundraising |
| 11/30/2021 | Fundraising |
| | Fundraising |
| | Payroll |
| | Misc |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| 12/1/2021 | Fundraising |
| | Fundraising |
| | Fundraising |
| 12/2/2021 | Fundraising |
| | Fundraising |
| 12/3/2021 | Fundraising |
| | Fundraising |
| | Fundraising |
| | Fundraising |
| 12/6/2021 | Fundraising |
| | Payroll |
| | Fundraising |
| 12/7/2021 | Fundraising |

| Date | Category |
|---|---|
| | Fundraising |
| | Fundraising |
| | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| 12/8/2021 | Fundraising |
| | Fundraising |
| | Fundraising |
| | Fundraising |
| | Payroll |
| | Payroll |
| 12/9/2021 | Payroll |
| 12/13/2021 | Misc |
| 12/14/2021 | Fundraising |
| 12/15/2021 | Fundraising |
| | Misc |
| 12/16/2021 | Fundraising |
| 12/18/2021 | Misc |
| 12/20/2021 | Fundraising |
| | Payroll |
| | Misc |
| | Payroll |
| | Fundraising |
| | Misc |
| | Payroll |
| 12/21/2021 | Fundraising |
| | Payroll |
| 12/22/2021 | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Accounting |
| 12/23/2021 | Fundraising |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Payroll |
| | Misc |
| 12/27/2021 | Accounting |
| 12/28/2021 | Fundraising |
| | Fundraising |
| | Misc |
| | Misc |
| 12/29/2021 | Fundraising |
| | Payroll |
| | Fundraising |



Exhibit D- Declaration of Amanda Gonzalez under penalty of perjury

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE,<br>                    Plaintiff, | : <br> : | |
| vs. | : | |
| VISUAL TECHNOLOGY<br>INNOVATIONS, INC.<br>     and<br>MATHU G. RAJAN,<br>          Defendants/Counterclaim and Third-<br>          Party Plaintiffs | : <br> : <br> : <br> : <br> : <br> : | Civil Action Case No.<br>C.A. No. 2:23-cv 01740<br><br>**Declaration of Amanda<br>Gonzalez** |
| vs. | : | |
| Mark Bunce,<br>          Counterclaim Defendant and | : <br> : | |
| Timothy McCarthy<br>          Third -Party Defendant | : <br> : | |

## <u>DECLARATION</u>

1. I am providing this declaration in a legal process, and I understand that it may be used in Court.

2. My name is Amanda Gonzalez, and I work as a consultant that helps Visual Technology Innovations, Inc. and Mathu Rajan particularly now that he is consumed with his medical issues.

3. Attorney Raja Rajan contacted me Plaintiff was indicating that exhibits for some of the transcripts and other litigation were missing.  I reached out to a lot of the consultants that help Visual Technology Innovations, Inc. and Mathu Rajan to ask them if they had any of the missing exhibits in their possession, in order to comply with Plaintiff's request.

4. I also reached out to Mathu Rajan to ask them if they had any of the missing exhibits in their possession, in order to comply with the Plaintiff's requests.

5. Attorney Rajan informed me of the Court Order requesting that we do good faith efforts to try and attain those exhibits that are not in our possession that were in other lawsuits if available.

6. We contacted aa lawyer that used to represent Visual Technology Innovations, Inc. at that time. We gave that lawyer our best guess as to what exhibits are missing since Plaintiffs has not specified which exhibits he is missing.  We asked the lawyer to try and attain those exhibits but to date we have not had any response. Once we receive those exhibits, we will provide them to Plaintiff.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge on the date and time herein noted.*

*Amanda Gonzalez*_____                                    Date: 9/23/2024

Amanda Gonzalez

Exhibit E- Declaration of Nicole Maneen under penalty of perjury

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE,<br>Plaintiff, | : <br> : | |
| vs. | : | |
| VISUAL TECHNOLOGY<br>INNOVATIONS, INC.<br>and<br>MATHU G. RAJAN,<br>Defendants/Counterclaim and Third-<br>Party Plaintiffs | : <br> : <br> : <br> : <br> : <br> : | Civil Action Case No.<br>C.A. No. 2:23-cv 01740<br><br>**Declaration of Nicole Maneen** |
| vs. | : | |
| Mark Bunce,<br>Counterclaim Defendant and | : <br> : | |
| Timothy McCarthy<br>Third -Party Defendant | : <br> : | |

## <u>DECLARATION</u>

1. I am providing this declaration in a legal process, and I understand that it may be used in Court.
2. My name is Nicole Maneen, and I am an admin for Mathu Rajan, and I work as a consultant and help him with his day-to-day duties since he has a lot of medical problems currently and is unable to do many things himself.
3. Attached as Addendum A hereto is a communication I sent to Raphael Zahralddin who was an attorney at the time of the alleged missing exhibits and although he's with a new firm he was solicited and asked to obtain those exhibits on Mathu's and VTI's behalf.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge on the date and time herein noted.*


_____
Nicole Maneen

Date: 9/24/2024

| | |
|---|---|
| **From:** | nicole.maneen@visualsemi.com |
| **To:** | Zahralddin, Rafael |
| **Cc:** | "mathu rajan"; raja@rajanlawgroup.com; dan.rink@visualsemi.com; amanda.gonzalez@visualsemi.com |
| **Subject:** | Assistance with documents |
| **Date:** | Monday, August 26, 2024 12:53:58 PM |

Dear Raf:

I am forwarding this request to you on behalf of Mathu. He needs a favor—and it is our hope that you can procure the below-referenced documents through a simple email or a forward of this request to the law firms in question. Mathu is a Defendant in a lawsuit and Raja is representing him in that case. The other side has requested transcripts and depositions from other lawsuits. Raja provided all those but the other side claims some exhibits thereto are missing. Amanda has searched for the exhibits but could not find them. Some documents were from Eliott Greenleaf.

Below are the various missing Exhibits in question:


**11.09.2020 Mathu Deposition transcript from Elliot Green Leaf---missing Exhibits:**
No. 1, One-page E-Mail from Mathu Rajan to David Walpole, Bates No. Stream PI 020378
No. 2, January 30th, 2018, Letter Regarding "Loss Of Confidence," Bates Nos. SeeCubic-00000042 Through SeeCubic-00000044
No. 3, 6/19/20 E-Mail From Duncan Humphreys To Mathu Rajan, Subject:· Back Pay, Bates Nos. Stream PI 011084 Through Stream PI 011085
No. 4, 2/18/20 E-Mail From Mathu Rajan· To Arthur Morton With Corporate Governance Attached, Bates Nos. Stream PI 025539 Through Stream PI 025542
No. 5, 3/11/20 E-mail From Mathu Rajan· To Nicole Maneen, Subject:· Board, Bates No. Stream PI 025066
No. 6, 3/12/20 E-mail From Stream TV Networks, Subject:· Board Announcement, Bates No. Stream PI 2100
No. 7, 3/12/20 E-Mail From Nicole Maneen, Bates No. Stream PI 005456
No. 8, E-Mail Chain With Attachment Entitled "Stream TV Board Consent - Approve Interim Director 3-12-20 Clean," Bates Nos. Stream PI 029323 Through Stream PI 029328
No. 9, 3/17/20 E-Mail From Nicole Maneen To Amanda von Ahnen With 3/17/20 Stream TV Board Notes Attached, Bates Nos. Stream PI 047102
No. 10, Stream TV Networks, Inc. (Meeting Minutes: April 27, 2020), Bates Nos. Stream PI 1027 Through Stream PI 1029
No. 11, E-Mail Chain, Subject:· Stamped Tojoy Strategic Contract, Bates No. SeeCubic-00008524
No. 12, Stream TV Networks, Inc. (Board Meeting Minutes: May 4, 2020), Bates Nos. Stream PI 1054 Through Stream PI 1059
No. 13, E-Mail Chain With Attached Document Entitled "Upcoming Cash Flow Requirements (5.4.2020)," Bates Nos. Stream PI 046970 Through Stream PI 046972

No. 14, 5/7/20 E-Mail from Asaf Gola With Attached Document Entitled "Omnibus Signed COMPLETE," Bates Nos. Stream PI 1572 Through Stream PI 1594

No. 15, 5/12/20 E-Mail from Nicole Maneen With Attached Document Entitled "Changes To Omnibus 5.12.2020," Bates Nos. Stream PI 022156 Through Stream PI 022158

No. 16, E-Mail Chain, Bates No. Stream PI 044040

No. 17, 8/16/20 With Attached Document Entitled "Executive Memorandum - Executive Summary," Bates Nos. Stream PI 005307 Through Stream PI 005309·

No. 18, License, Business Cooperation and Manufacturing Agreement, Bates Nos. Stream PI 051224 Through Stream PI 051239

No. 19, Cancellation of License, Business Cooperation and Manufacturing Agreement, Bates Nos. Stream PI 051222 Through Stream PI 051223

No. 20, 7/9/20 E-Mail from Stream TV Networks To Larry Evans With Attached Document Entitled "NDA For Investors 2007, Bates Nos. Stream PI 002120 Through Stream PI 002125

No. 21, E-Mail Chain, Subject: ZWC Questions -- Urgent, Bates Nos.  Stream PI 009019 Through Stream PI 009021

No. 22, 1/18/19 E-Mail Chain With Attached Document Entitled "H1 2019 Stream TV Investor Update," Bates. Nos. Stream PI 007388

No. 23, E-Mail Chain, Subject:· SLS/Hawk Conversion Thoughts, Bates No. Stream PI 012452

No. 24, 6/28/20 E-Mail From Stream TV Networks, Subject: Update On Debt - Follow On Action, Bates No. Stream PI 003695

----------------------------------------------------------

**04/28/2021 Mathu Deposition transcript (** Dilworth Paxson/Armstong Teasdale**)missing Exhibits:**

1···Bates VTI00001523
2···McMichael Declaration
3···Bates SEECUBIC-BKR-000033480003135
4···Mathu Rajan, First Day Motions
5···Bates SEECUBIC-BKR-000033480000366
6···Bates SEECUBIC-BKR-000033480000363
7···Bates SEECUBIC-BKR-000033480000364
8···Bates SEECUBIC-BKR-000033480000365
9···Bates SEECUBIC-BKR-000033480000378
10··Mathu Rajan, Supplemental Dec.
11··Robertson Declaration
12··Monthly Operating Report
13··Video file
14··GFI deck
15··E-mail from S. Joseph w/attachment
16··E-mail, January 2, 2021
17··E-mail, January 24, 2021
18··E-mail, January 10, 2021
19··Bates VTI00001025··

Thank you for your assistance in this matter.

Raja Rajan

Exhibit F- Supplemental Discovery--Redacted

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE,<br><br>　　　　Plaintiff, | : :<br>: :<br>: : | |
| vs. | : : | |
| VISUAL TECHNOLOGY<br>INNOVATIONS, INC.<br>　　　And<br>MATHU G. RAJAN,<br><br>　　Defendants/Counterclaim and Third-<br>　　Party Plaintiffs | : :<br>: :<br>: :<br>: :<br>: :<br>: :<br>: : | Civil Action Case No.<br>C.A. No. 2:23-cv 01740 |
| vs. | : : | |
| Mark Bunce ,<br>　　Counterclaim Defendant<br>　　and | : :<br>: :<br>: : | |
| Timothy McCarthy<br>　　Third -Party Defendant | : :<br>: : | |

**DEFENDANTS' SUPPLEMENT TO**
**PLAINTIFF'S DISCOVERY**

Defendants Visual Technologies, Inc. ("**VTI**") and Mathu G. Rajan ("**Defendants**"), by

and through legal counsel, provide the following supplement to Plaintiff's discovery pursuant to

Court Order of August 13, 2024 [docket 87] ("**Court Order**").  This supplement is provided

without waiver of the prior responses, objections, instructions or definitions.

1. Legal Counsel has asked the third parties for copies of exhibits that Plaintiff claims some
   exhibits are missing from deposition transcripts and evidentiary hearing transcripts from
   other lawsuits but Defendants have produced all potential documents in their custody,
   control and possession of Defendants.

   Some of the alleged exhibits were given to Defendants from third parties who have filed
   claims in the Bankruptcy of Stream TV Networks, Inc.  The alleged payment of their
   claims is controlled by the Bankruptcy Court and trustee.  The Current lawyer
   representing Defendant indirectly is the law firm of Akerman, LLP.  In addition,

Defendants have sought the help of another lawyer to obtain the missing documents by the name of Rafael Zahralddin who worked at Elliot Greenleaf, Armstrong Teasdale, and Louis Brisbois. Rafael has been asked to obtain the exhibits that are allegedly missing since they are the firm controlling the bankruptcy proceedings.

Defense Counsel has a listing of all exhibits listed in order to determine which are allegedly missing.

Defendants have listed all the depositions and hearing transcript and all exhibit they relied upon in an effort of good faith.  Below is that are allegedly missing and those that have been produced with reference to their Bates Numbers.

| Received From | Name | Attorneys | Exhibits |
|---|---|---|---|
| pulled from online docket | Hearing Transcript 4.25.23 | Lewis Brisboise | No Exhibits Listed |
| assume we got from Law Firm | Hearing Transcript 20210510 | Dilworth Paxson/Armstrong Teasdale | List of Exhibits |
| assume we got from Law Firm | Stream 8.15.23 Trial Transcript | Lewis Brisboise | No Exhibits Listed |
| pulled from online docket | Stream 8.17.23 Trial Transcript | Lewis Brisboise | No Exhibits Listed |
| assume we got from | Stream TV Hearing Transcript 10-16-23 | Lewis Brisboise | No Exhibits Listed |
| assume we got from Law Firm | Mathu Rajan 042821 MINI PDFA | Dilworth Paxson/Armstrong Teasdale | List of Exhibits |
| assume we got from Law Firm | Mathu Rajan 110920 FULL PDFA | Elliott Greenleaf | List of Exhibits |
| assume we got from Law Firm | 11.13.23 Deposition Transcript of Mathu Rajan | Lewis Brisboise | No Exhibits Listed |
| assume we got from Law Firm | 4.29.21 Deposition of Charles Robertson | Dilworth Paxson/Armstrong Teasdale | List of Exhibits |

**A---Produced already with Bates #**

**4.29.21 Deposition of Charles Robertson transcript with Exhibits:**
EX 0001 Declaration of Mathu Rajan in Support of First Day Motions, RAJAN-001235-RAJAN-001258
EX 0002 Charles Bud Robertson First Day Declaration RAJAN-005580 – RAJAN-005629
EX 0003 Supplemental Declaration RAJAN-006172 – RAJAN-006197

**B---Listed Exhibits not in Defendants Production**

**11.09.2020 Mathu Deposition transcript from Elliot Green Leaf---missing Exhibits:**

No. 1, One-page E-Mail from Mathu Rajan to David Walpole, Bates No.  Stream PI 020378

No. 2, January 30th, 2018, Letter Regarding "Loss Of Confidence," Bates Nos. SeeCubic-00000042 Through SeeCubic-00000044

No. 3, 6/19/20 E-Mail From Duncan Humphreys To Mathu Rajan, Subject:· Back Pay, Bates Nos. Stream PI 011084 Through  Stream PI 011085

No. 4, 2/18/20 E-Mail From Mathu Rajan· To Arthur Morton With Corporate Governance Attached, Bates Nos. Stream PI 025539 Through Stream PI 025542

No. 5, 3/11/20 E-mail From Mathu Rajan· To Nicole Maneen, Subject:· Board, Bates No. Stream PI 025066

No. 6, 3/12/20 E-mail From Stream TV Networks, Subject:· Board  Announcement, Bates No. Stream PI 2100

No. 7, 3/12/20 E-Mail From Nicole Maneen, Bates No. Stream PI 005456

No. 8, E-Mail Chain With Attachment Entitled "Stream TV Board Consent - Approve Interim Director 3-12-20 Clean," Bates Nos. Stream PI 029323 Through Stream PI 029328

No. 9, 3/17/20 E-Mail From Nicole Maneen To Amanda von Ahnen With 3/17/20  Stream TV Board Notes Attached, Bates Nos. Stream PI 047102

No. 10, Stream TV Networks, Inc. (Meeting Minutes: April 27, 2020), Bates Nos. Stream PI 1027 Through Stream PI 1029

No. 11, E-Mail Chain, Subject:· Stamped Tojoy Strategic Contract, Bates No. SeeCubic-00008524

No. 12, Stream TV Networks, Inc. (Board Meeting Minutes: May 4, 2020), Bates Nos. Stream PI 1054 Through Stream PI 1059

No. 13, E-Mail Chain With Attached Document Entitled "Upcoming Cash Flow Requirements (5.4.2020)," Bates Nos. Stream PI 046970 Through Stream PI 046972

No. 14, 5/7/20 E-Mail from Asaf Gola With Attached Document Entitled "Omnibus Signed COMPLETE," Bates Nos. Stream PI 1572 Through Stream PI 1594

No. 15, 5/12/20 E-Mail from Nicole Maneen With Attached Document Entitled "Changes To Omnibus 5.12.2020," Bates Nos. Stream PI 022156 Through Stream PI 022158

No. 16, E-Mail Chain, Bates No. Stream PI 044040

No. 17, 8/16/20 With Attached Document Entitled "Executive Memorandum - Executive Summary," Bates Nos. Stream PI 005307 Through Stream PI 005309·

No. 18, License, Business Cooperation and Manufacturing Agreement, Bates Nos. Stream PI 051224 Through Stream PI 051239

No. 19, Cancellation of License, Business Cooperation and Manufacturing Agreement, Bates Nos. Stream PI 051222 Through Stream PI 051223

No. 20, 7/9/20 E-Mail from Stream TV Networks To Larry Evans With Attached Document Entitled "NDA For Investors 2007, Bates Nos. Stream PI 002120 Through Stream PI 002125

No. 21, E-Mail Chain, Subject: ZWC Questions -- Urgent, Bates Nos.  Stream PI 009019 Through Stream PI 009021

No. 22, 1/18/19 E-Mail Chain With Attached Document Entitled "H1 2019 Stream TV Investor Update," Bates. Nos. Stream PI 007388
No. 23, E-Mail Chain, Subject:· SLS/Hawk Conversion Thoughts, Bates No. Stream PI 012452
No. 24, 6/28/20 E-Mail From Stream TV Networks, Subject: Update On Debt - Follow On Action, Bates No. Stream PI 003695


**04/28/2021 Mathu Deposition transcript ( Dilworth Paxson/Armstong Teasdale)missing Exhibits:**


1· · ·Bates VTI00001523

2· · ·McMichael Declaration

3· · ·Bates SEECUBIC-BKR-000033480003135

4· · ·Mathu Rajan, First Day Motions

5· · ·Bates SEECUBIC-BKR-000033480000366

6· · ·Bates SEECUBIC-BKR-000033480000363

7· · ·Bates SEECUBIC-BKR-000033480000364

8· · ·Bates SEECUBIC-BKR-000033480000365

9· · ·Bates SEECUBIC-BKR-000033480000378

10· · Mathu Rajan, Supplemental Dec.

11· · Robertson Declaration

12· · Monthly Operating Report

13· · Video file

14· · GFI deck

15· · E-mail from S. Joseph w/attachment

16· · E-mail, January 2, 2021

17· · E-mail, January 24, 2021

18· · E-mail, January 10, 2021

19· · Bates VTI00001025· ·

**4.29.21 Deposition of Charles Robertson (**<mark>Dilworth Paxson/Armstong Teasdale</mark>**) transcript missing Exhibits:**
EX 0004 Assignment and Assumption Agreement, Bates stamped SEECUBIC-BKR-00000007,

**05.10.2021 Hearing Transcript (** <mark>Dilworth Paxson/Armstong Teasdale</mark>**) missing Exhibits:**
Declarations of Mathu Rajan
Declarations of Charles Roberton
Declarations of Burlington Resources
Declarations of Shad Stastney
Expert Report of Sven Dumoulin
Expert Report of Barbara Rumora-Scheltema
TX 44 Email, Tavill-Stastney
TX 179 Email, M. Rajan-McCarthy, 2/8/21
TX 181 Email, Tavill-M. Rajan
TX 193 Stock purchase agreement, 2/10/21
TX 197 Exercise of Drawdown Rights
TX 261 Email, R. Rajan
TX 268 Email, M. Rajan-Davis
TX 285 Declaration of Timothy McCarthy


Legal Counsel will supplement any exhibits provided to them promptly as they are received.


2.  Plaintiff seeks an explanation from Defendants as to how their investment money has been used. Plaintiff has been given the bank accounts ("**Bank Accounts**") which specify every outgoing payment of company.  Since the Bank Accounts contain commingled investor funds only educated guesses and estimations are possible, which is what is provided below.

Also, these calculations were not done historically but rather calculations had to be performed to provide the answers below.  Defendants believe the rules of discovery and caselaw do not contemplate future work for calculations except for subject matter experts (legal expert witness). Defendants ask that Plaintiff retain a forensic accountant to specify anything other than a guess.   The consultant that Defendant asked for help may likely send a bill for its professional services to Plaintiff.

It is noted that Plaintiff's documents say VTI could use the investment for broad lawful purposes.  The investment documents specify:

*Use of Proceeds. In accordance with the directions of the Company's Board of Directors,*
        *the Company will use the proceeds from the sale of the Note for any lawful general business*
        *purpose.*

There was approximately $1,267,500 invested as convertible debt in VTI. There was approximately $2,679,036 invested as straight debt in VTI. There was approximately $23,000 invested as straight equity in VTI.

- o Since Plaintiff's first investment was received on or about February 25, 2021, we can assume no expenditures before that date used any of Plaintiff's investment monies.
- o There were transfer of funds from the Company's Wells Fargo account to the Company's Bank of America Account. A tally of the spending from the Bank of America account related to the funds transferred from the Wells Fargo account have also been shared herein.
- o  Plaintiff's investment money was used for expenditures from the Wells Fargo account between February 25, 2021, and May 7, 2021 and from the Bank of America account on or about May 6, 2021.
- o Three transactions' funds were transferred from the Wells Fargo account to another VTI account at Bank of America (that statement has also been provided to Plaintiff) on April 16, 2021, May 3, 2021, and May 6, 2021.  Most of those monies transferred were paid to employees/consultants as payroll for services rendered.


        The names of the payees are identified in the bank statement given to Plaintiff already.  Details of payee documentation have also previously been provided to Plaintiff.  If Plaintiff desires another copy, Defendants will provide same if identified.

3.  Exhibit A hereto, is a spread sheet identifying the names and contact information of VTI's investors as provided in the Court Order.  That information is private and is protected by the requirements of protective order granted by the Court and other laws.



**Signature for Defendants**

Mathu Rajan, for himself and for Defendant VTI

**CERTIFICATE OF SERVICE**

      I, Raja Rajan, hereby certify that on this day the forgoing document was served

via email on the following:

Michael D. Homans
mhomans@homanspeck.com
Michael P. Kohler
Michael.Kohler@millermartin.com
Robert F. Parsley
Bob.Parsley@millermartin.com
*Attorneys for Plaintiff Mark L. Bunce*

Timothy McCarthy
tim@burlingtonresources-asia.com
*Third Party Defendant*

      Dated: August 26, 2024

                    By: */s/ Raja Rajan*
                    Raja Rajan
                    ID No. 58849 RAJAN
                    LAW GROUP

                    *Attorney for Defendants*

Exhibit G- Declaration of Charles (Bud) Robertson under penalty of perjury

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Mark L. Bunce,<br>        Plaintiff | : <br> : | |
| vs. | : | |
| Visual Technology Innovations, Inc.<br>    and<br>Mathu G. Rajan,<br>        Defendants/Counterclaim and<br>        Third-Party Plaintiffs | : <br> : <br> : <br> : <br> : | Civil Action Case No.<br>C.A. No. 2:23-cv 01740 |
| vs. | : | |
| Mark L. Bunce,<br>        Counterclaim Defendant<br>    and<br>Timothy McCarthy,<br>            Third-Party Defendant | : <br> : <br> : <br> : <br> : <br> : | |

## <u>DECLARATION OF CHARLES M. ROBERTSON</u>

1.      I am providing this declaration in a legal process, and I understand that it may be used in Court. I am prepared to testify to the truth of the matters described herein if called upon to do so.

2.      My name is Charles M. "Bud" Robertson, and I provided executive consultation services to Visual Technology Innovations, Inc. ("**<u>VTI</u>**") and Mathu Rajan from VSI's inception in January 2021 until approximately May 2022. Prior to that I was employed by Stream TV Networks, Inc. ("**<u>Stream</u>**") for approximately ten years, ending in December 2020. At the time I ended my employment with Stream, I was serving as an executive vice president.

3.      Stream filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Delaware on February 24, 2021 (Case No. 20-10766 (KBO), styled: *In re Stream TV Networks, Inc.*) SeeCubic, Inc. ("**<u>SeeCubic</u>**") opposed the filing and sought dismissal of Stream's chapter 11 case.

1

4.      The bankruptcy filing followed a preliminary injunction issued on December 8, 2020 in Delaware Court of Chancery litigation between Stream and SeeCubic related to SeeCubic's efforts to seize Stream's assets pursuant to a settlement agreement that Stream alleged was not valid (C.A. No. 2020-0766 JTL, styled: *Stream TV Networks, Inc. v. SeeCubic, Inc.*). Stream's claim was ultimately upheld by the Delaware Supreme Court in June 2022.

5.      During several months of litigation prior to the December 2020 preliminary injunction, both Stream and SeeCubic produced hundreds of pages of documents in discovery, with the stipulation that such documents would remain confidential.

6.      On October 14, 2020, Vice Chancellor Laster issued an order confirming the confidentiality of documents produced by both parties in discovery. A true and correct copy of the confidentiality order is attached hereto as **Exhibit A**.

7.      Following the express instructions of the confidentiality order, both parties marked virtually every document "confidential" in the Bates numbering.

8.      From February 2021 through May 2021, I participated in the bankruptcy proceedings of Stream on behalf of both Stream and VTI, which attempted to sponsor Stream's plan of reorganization. My participation in the Stream bankruptcy case included both a deposition on April 29, 2021 and testimony in court on May 10, 2021.

9.      During my deposition, counsel for SeeCubic, which was seeking dismissal of Stream's bankruptcy case, asked me questions related to a variety of documents which were listed as exhibits to my deposition. Many, if not most, of those exhibits were documents that had been provided by Stream or to Stream through discovery in the Chancery Court litigation.

10.     Similarly, many of the documents presented as exhibits by counsel for all parties in the May 10, 2021 bankruptcy court hearing were also documents that had been produced through discovery in the Chancery Court case.

11.     Since the opposing parties in the bankruptcy case were the same parties opposing each other in the temporarily stayed Chancery Court case, many documents produced in Chancery Court discovery were used by the parties in the bankruptcy proceedings, with what I believe was a general understanding that such documents would remain confidential outside of those proceedings.

12.     Documents produced during discovery in the Chancery Court case were unavailable for me to provide to VTI for use in the above captioned case for two reasons. First, I no longer have access to the Chancery Court docket for a case that was adjudicated almost two years ago, and I did not retain copies of such documents. Second, documents produced in discovery were to remain confidential as ordered by Vice Chancellor Laster.

13.     Raja Rajan and Amanda Gonzalez asked me to produce any communications or documents in my possession relating to the investment by Mark Bunce, but I had no direct interaction with his investment transaction and was not copied on any correspondence related thereto.

14.     The extent of my participation in the above captioned case was providing a copy of the Bankruptcy Court hearing transcript of May 10, 2024 which I had retained for my own records.


*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge on the date herein noted.*


_____                    Date: 9/23/2024

Charles M. Robertson

3

**Exhibit A**

**GRANTED**

EFiled: Oct 14 2020 11:59AM EDT
Transaction ID 66019653
Case No. 2020-0766-JTL

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STREAM TV NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0766-JTL |
| | ) | |
| SEECUBIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| SEECUBIC, INC., | ) | |
| | ) | |
| Counterclaim and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STREAM TV NETWORKS, INC., | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATHU RAJAN, and RAJA RAJAN, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL INFORMATION

WHEREAS, on September 8, 2020, Stream TV Networks, Inc.

("Stream TV" or the "Company") filed its Verified Complaint for Injunctive Relief

in the above-captioned action;

WHEREAS, on September 15, 2020, Seecubic, Inc. ("SeeCubic") filed its Verified Counterclaims and Third-Party Complaint against Stream TV, Mathu Rajan and Raja Rajan (the "Rajans");

WHEREAS, the parties to the above-captioned action (the "Litigation") are engaged in discovery proceedings, which include, among other things, taking depositions and producing documents; and

WHEREAS, those discovery proceedings will necessarily involve the production of certain information that the parties to the Litigation (the "Parties," each a "Party") believe to be confidential and sensitive commercial, financial, or business information;

IT IS HEREBY STIPULATED AND AGREED, by the Parties hereto, through their undersigned counsel, subject to the approval of the Court, pursuant to Court of Chancery Rules 5.1 and 26(c), that this Stipulation and Order for the Production and Exchange of Confidential Information (the "Stipulation") will govern the handling of documents, deposition testimony, deposition exhibits, deposition transcripts, written discovery requests, interrogatory responses, responses to requests to admit, and responses to requests for documents, and any other information or material produced, given or exchanged, including any information contained therein or derived therefrom ("Discovery Material") by or among any

Party or non-Party providing Discovery Material (each a "Producing Party") in this Litigation.

1.    Any Producing Party may designate any Discovery Material as "Confidential" under the terms of this Stipulation if such party in good faith believes that such Discovery Material contains non-public, confidential, proprietary, or commercially sensitive information that requires the protections provided in this Stipulation and Order ("Confidential Discovery Material").

2.    The designation of Discovery Material as Confidential Discovery Material shall be made in the following manner:

A.    In the case of documents or other materials (apart from depositions or other pre-trial testimony):  (i) by affixing the legend "Confidential" to each page containing any Confidential Discovery Material; or (ii) in the case of electronically stored information produced in native format, by including "Confidential" in the file or directory name, or by affixing the legend "Confidential" to the media containing the Discovery Material (e.g., CD-ROM, floppy disk, DVD).

B.    In the case of depositions or other pre-trial testimony: (i) by a statement on the record, by counsel, at the time of such disclosure or before the conclusion of the deposition or testimony; or (ii) by written notice, sent to all Parties within five (5) business days of the deposition or other pre-trial testimony; provided that only those portions of the transcript designated as Confidential Discovery

3

Material shall be deemed Confidential Discovery Material. The Parties may modify this procedure for any particular deposition or other pre-trial testimony, through agreement on the record at such deposition or testimony, without further order of the Court.

        C.    In the case of any other Discovery Material, by written notice that the Discovery Material constitutes Confidential Discovery Material.

        3.    The designation of Discovery Material as Confidential Discovery Material shall constitute a representation that such Discovery Material has been reviewed by an attorney representing the Party making the designation, and that there is a good faith basis for such designation.

        4.    Inadvertent failure to designate Discovery Material as Confidential Discovery Material shall not constitute a waiver of such claim and may be corrected. A Producing Party may designate as Confidential any Discovery Material that has already been produced, including Discovery Material that the Producing Party inadvertently failed to designate as Confidential, (i) by notifying in writing the Party to whom the production has been made that the Discovery Material constitutes Confidential Discovery Material, or (ii) in a manner consistent with Paragraph 2. Upon receiving such supplemental notice, the Parties shall thereafter mark and treat the Discovery Material so designated as Confidential Discovery Material, and such Discovery Material shall be fully subject to this Stipulation from

the date of such supplemental notice forward.  The Party receiving such notice shall make a reasonable, good-faith effort to ensure that any analyses, memoranda, notes, or other such materials generated based upon such newly designated information are immediately treated as containing Confidential Discovery Material.  In addition, upon receiving such supplemental written notice, any receiving Party that disclosed the Discovery Material prior to its designation as "Confidential" shall exercise its best efforts (i) to ensure the return or destruction of such Discovery Material, (ii) to ensure that any documents or other materials derived from such Discovery Material are treated as if the Discovery Material had been designated as "Confidential" when originally produced, (iii) to ensure that such Discovery Material is not further disclosed except in accordance with the terms of this Stipulation and Order, and (iv) to ensure that any such Discovery Material, and any information derived therefrom, is used solely for the purposes described in Paragraph 7 of this Stipulation and Order.

5.    Confidential Discovery Material may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

A.    The Parties and the directors, officers, employees, general partners, and limited partners of the Parties, or any subsidiary or affiliate thereof, who are assisting with or making decisions concerning the Litigation, to the extent

deemed reasonably necessary by counsel of record for the purpose of assisting in the prosecution or defense of the Litigation for use in accordance with this Stipulation;

B.      Counsel who represent Parties in this Litigation (including in-house counsel), and the partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such counsel (including outside copying and litigation support services) who are assisting with the Litigation for use in accordance with this Stipulation;

C.      Subject to Paragraph 7, experts or consultants assisting counsel for the Parties, and partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such experts or consultants (including outside copying services and outside support services) who are assisting with the Litigation;

D.      Subject to Paragraph 8, witnesses or deponents, and their counsel, only to the extent necessary to conduct or prepare for depositions or testimony in this Litigation;

E.      Any person indicated on the face of a document or accompanying covering letter, email, or other communication to be the author, addressee, or an actual or intended recipient of the document, or, in the case of meeting minutes, an attendee of the meeting;

F.    The Court, persons employed by the Court, and court reporters transcribing any hearing, trial, or deposition in this Litigation or any appeal therefrom; and

G.    Any other person only upon (i) order of the Court entered upon notice to the Parties, or (ii) written stipulation of, or statement on the record by, the Producing Party who provided the Discovery Material being disclosed, provided that such person signs an undertaking in the form attached as Exhibit A hereto.

6.    To the extent that testimony is sought concerning Confidential Discovery Material during any deposition or in any other pre-trial venue, any Party may exclude any person from the deposition or other venue during such testimony if the Confidential Discovery Material may not be disclosed to such person under the terms of this Stipulation.

7.    Notwithstanding Paragraph 5(C) above, Confidential Discovery Material may be provided to persons listed therein only to the extent necessary for such expert or consultant to prepare a written opinion, to prepare to testify, or to assist counsel in this Litigation, provided that such expert or consultant (i) is not currently an employee of, or advising or discussing employment with, or consultant to, any Party or any competitor or potential transaction counterparty of any Party, as far as the expert or consultant can reasonably determine, and (ii) is using said

Discovery Material solely in connection with this Litigation; and further provided that such expert or consultant agrees to be bound by the terms of this Stipulation by signing an undertaking in the form attached as Exhibit A hereto. Counsel for the Party showing, providing, or disclosing Confidential Discovery Material to any person required to execute an undertaking pursuant to this paragraph shall be responsible for obtaining such signed undertaking and retaining the original, executed copy thereof. Under no circumstances shall an expert or consultant who is a competitor or an employee of a competitor of a Party, or who is providing services to any of the foregoing, be provided access to Confidential Discovery Material absent further order of the Court or consent of the Producing Party. "Competitors" are persons or entities endeavoring to engage in the same or similar lines of business, provide the same or similar services, sell the same or similar products, and/or operate in the same markets, as well as any persons who are actually engaged in any of these activities.

8.      Notwithstanding Paragraph 5(D), Confidential Discovery Material may be provided to persons listed therein only after (i) they confirm their understanding and agreement to abide by the terms of this Stipulation by making such a statement on the record, and/or by signing an undertaking in the form attached as Exhibit A hereto, or (ii) a court of competent jurisdiction orders them to abide by the terms of the Stipulation. Counsel for the Party showing Confidential Discovery

Material to any person required to execute an undertaking pursuant to this paragraph shall be responsible for obtaining such signed undertaking and retaining the original, executed copy thereof.

9.     Discovery Material shall be used solely for purposes of this Litigation and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or any other litigation or proceeding; provided, however, that the foregoing shall not apply to Discovery Material that is or becomes part of the public record.

10.     Every person to whom Discovery Material is disclosed, summarized, described, characterized, or otherwise communicated or made available, in whole or in part, shall be advised that the information is being disclosed pursuant and subject to the terms of this Stipulation and may not be disclosed or used for purposes other than those permitted hereunder. Each such person shall maintain the Discovery Material, or information derived therefrom, in a manner reasonably calculated to prevent unauthorized disclosure.  Any Party issuing a subpoena to a non-Party shall enclose a copy of this Stipulation and notify the non-Party that the protections of this Stipulation are available to such non-Party.

11.     Any pleading, brief, memorandum, motion, letter, affidavit, or other document filed with the Court (a "Filing") that discloses, summarizes, describes, characterizes, or otherwise communicates Confidential Discovery

Material (a "Confidential Filing") shall be entitled to "Confidential Treatment," as defined in Court of Chancery Rule 5.1(b), and must be filed with the Court in accordance with the provisions of Court of Chancery Rules 5.1 and 79.1, and the Administrative Directive of the Chancellor of the Court of Chancery of the State of Delaware Amended No. 2003-1, dated March 15, 2007, regarding eFile Administrative Procedures.  Each Confidential Filing shall be submitted with a footer stating the following:

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT**
**ORDER.**

This footer must appear on every page of the Confidential Filing, except it may be omitted for voluminous exhibits.  In addition, every Confidential Filing shall have a cover page containing the caption in the Litigation, the title of the Document, and the following statements and information:

**YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING**
**FROM THE COURT OF CHANCERY OF THE STATE OF DELAWARE.**

**If you are not authorized by Court Order to view or retrieve this document, read no further than this page. You should contact the following person:**

**[Filing Attorney or Party's Name]**
**[Filing Attorney's Law Firm]**
**[Filing Attorney or Party's Address]**
**[Filing Attorney or Party's Telephone Number]**

10

If a public version of the Confidential Filing will be filed in accordance with Court of Chancery Rule 5.1(d), then the cover page shall also state:

**A public version of this document will be filed on or before [DATE].**

If a paper copy of that document is to be submitted to the Court for any reason, that document shall be submitted in a sealed envelope or package marked with the title of the Litigation and bearing a statement substantially in the following form:

<u>**CONFIDENTIAL**</u>

**CONFIDENTIAL FILING PURSUANT TO A PROTECTIVE ORDER DATED _____, 2020, GOVERNING CONFIDENTIALITY OF DOCUMENTS AND INFORMATION OBTAINED DURING THE COURSE OF THIS LITIGATION.**

**THIS ENVELOPE IS NEITHER TO BE OPENED NOR THE CONTENTS THEREOF DISPLAYED OR REVEALED EXCEPT BY OR TO QUALIFIED PERSONS OR BY COURT ORDER.**

12.     Any Parties making a Confidential Filing must comply with the provisions of Court of Chancery Rule 5.1(d), including, without limitation, the provisions governing the filing of a copy of the Confidential Filing for public inspection in accordance with Court of Chancery Rule 5.1(d)(1).  Notwithstanding the foregoing, the Parties have no obligation to file public versions of any documentary exhibits or deposition transcripts to a Confidential Filing, unless otherwise ordered by the Court or required by the Register in Chancery.

11

13.     During the pendency of this Litigation, any Party objecting to the designation of any Discovery Material or testimony as Confidential Discovery Material may, after making a good-faith effort to resolve any such objection, move on reasonable notice for an order vacating the designation.   While such an application is pending, the Discovery Material or testimony in question shall be treated as Confidential Discovery Material pursuant to this Stipulation.   The provisions of this Stipulation are not intended to shift any burdens of proof, including the burden of establishing that any Discovery Material validly constitutes Confidential Discovery Material, which burden remains on the party that designates such Discovery Material or testimony as Confidential.

14.     The Parties reserve the right to apply, pursuant to Court of Chancery Rule 5.1 and/or Rule 26(c), upon short notice, for an order seeking additional safeguards with respect to the use and handling of Discovery Material or to modify the terms of this Stipulation.

15.     Entering into this Stipulation, or agreeing to and/or producing or receiving Discovery Material or otherwise complying with the terms of this Stipulation, shall not:

A.     Prejudice in any way the rights of any Party to (i) seek production of documents or information it considers subject to discovery, or (ii)

12

object to the production of documents or information it considers not subject to discovery;

        B.     Prejudice in any way the rights of any Party to object to the authenticity or admissibility into evidence of any Discovery Material;

        C.     Operate as an admission by any Party that any particular Discovery Material constitutes Confidential Discovery Material or contains or reflects trade secrets or any other type of confidential information;

        D.     Prejudice in any way the rights of any Party to (i) petition the Court for a further protective order relating to any purportedly Confidential Discovery Material, or (ii) seek a determination by the Court whether any Discovery Material or Confidential Discovery Material should be subject to the terms of this Stipulation;

        E.     Prevent any Party from agreeing in writing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material;

        F.     Prejudice in any way the rights of any Party to object to the relevance, authenticity, use, or admissibility into evidence of any document, testimony, or other evidence subject to this Stipulation and Order;

        G.     Preclude any Party from objecting to discovery that it believes to be otherwise improper; or

H.    Operate as a waiver of any attorney-client, work product, business strategy, trade secret, or other privilege.

16.    This Stipulation has no effect upon, and shall not apply to, a Producing Party's use or disclosure of its own Discovery Material for any purpose. Nothing herein shall:  (i) prevent a Producing Party from disclosing its own Discovery Material; or (ii) impose any restrictions on the use or disclosure by any person of documents, materials, or information designated as Confidential Discovery Material obtained lawfully by such person independently of the discovery proceedings in this Litigation, and not otherwise subject to confidentiality restrictions.

17.    If Discovery Material that is subject to a claim of attorney-client privilege, attorney work product, or any other applicable privilege or immunity or ground on which production of that information should not be made to any Party ("Inadvertent Production Material") is inadvertently produced to that Party or Parties, such inadvertent production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, work product, or other applicable privilege or immunity.

A.    A claim of inadvertent production shall constitute a representation by that Producing Party that the Inadvertent Production Material has

14

been reviewed by an attorney for such Producing Party and that there is a good faith basis for such claim of inadvertent production.

    B. If a claim of inadvertent production is made pursuant to this Stipulation, with respect to Discovery Material then in the custody of another Party, the Party possessing the Inadvertent Production Material shall:  (i) refrain from any further examination or disclosure of the claimed Inadvertent Production Material; (ii) if requested, promptly make a good-faith effort to return the claimed Inadvertent Production Material and all copies thereof (including summaries and excerpts) to counsel for the Producing Party, or destroy all such claimed Inadvertent Production Material (including summaries and excerpts) and all copies thereof, and certify in writing to that fact; and (iii) not use the Inadvertent Production Material for any purpose until further order of the Court.

    C. A Party may move the Court for an order compelling production of the claimed Inadvertent Production Material; however, while such motion is pending, the Discovery Material in question shall be treated as Inadvertent Production Material, and such motion may not assert as a ground for entering such an order the fact or circumstance of the inadvertent production, nor shall such motion include or otherwise disclose, as an attachment, exhibit, or otherwise, the Inadvertent Production Material (or any portion thereof) that is the subject of such motion.

18.    Nothing herein shall be deemed to waive any applicable common law or statutory privilege or work product protection.

19.    In the event additional Parties join or are joined in this Litigation, they shall not have access to Confidential Discovery Material until the newly joined Party by its counsel has executed and filed with the Court its agreement to be fully bound by this Stipulation.

20.    The Parties agree to be bound by the terms of this Stipulation pending the entry by the Court of this Stipulation, and any violation of its terms shall be subject to the same sanctions and penalties as if this Stipulation had been entered by the Court.

21.    Subject to the requirements of Court of Chancery Rule 5.1, and any applicable rule of the Delaware Supreme Court, the provisions of this Stipulation shall, absent written permission of the Producing Party or further order of the Court, continue to be binding throughout and after the conclusion of the Litigation, including, without limitation, any appeals therefrom, except as provided in Paragraph 24.

22.    In the event that any Confidential Discovery Material is used in open court during any court proceeding or filed as a trial exhibit, the material shall lose its confidential status and become part of the public record, unless the Producing Party applies for and obtains an order from this Court specifically maintaining the

16

confidential status of particular material. Prior to any court proceeding in which Confidential Discovery Material is to be used, counsel shall confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of any such Discovery Material.

23.    Within 30 days after receiving notice of the entry of an order, judgment, or decree finally disposing of this Litigation, or any other proceeding in which Confidential Discovery Material is permitted to be used, including the exhaustion of all possible appeals, and upon the written request of the Producing Party, all persons having received Confidential Discovery Material shall either (i) make a good-faith and reasonable effort to return such material and all copies thereof (including summaries, excerpts, and derivative works) to counsel for the Producing Party; or (ii) make a good-faith and reasonable effort to destroy all such Confidential Discovery Material, and certify to that fact in writing to counsel for the Producing Party. However, counsel for the Parties shall be entitled to retain court papers, deposition and trial transcripts, and litigation files (including attorney work product and discovery material containing Confidential Discovery Material), provided that such counsel, and employees of such counsel, shall maintain the confidentiality thereof and shall not disclose such court papers, deposition and trial transcripts, and litigation files (including attorney work product and discovery material containing Confidential Discovery Material) to any person except pursuant to a court order or

17

agreement by the Producing Party or except as otherwise required by law. All materials returned to the Parties or their counsel by the Court likewise shall be disposed of in accordance with this paragraph.

      24.    If any person in possession of Confidential Discovery Material (the "Receiver") receives a subpoena or other compulsory process seeking the production or other disclosure of Confidential Discovery Material produced or designated as "Confidential" by a Producing Party other than the Receiver (collectively, a "Demand"), the Receiver shall give written notice (by hand, email, or facsimile transmission) to counsel for the Producing Party (or Producing Parties) within three business days of receipt of such Demand (or if a response to the Demand is due in less than three business days, at least 24 hours prior to the deadline for a response to the Demand), identifying the Confidential Discovery Material sought and enclosing a copy of the Demand, and must object to the production of the Confidential Discovery Material on the grounds of the existence of this Stipulation. The burden of opposing the enforcement of the Demand will fall on the Producing Party. Nothing herein shall be construed as requiring the Receiver or anyone else covered by this Stipulation to challenge or appeal any order requiring production of Confidential Discovery Material covered by this Stipulation, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court or any other court. Compliance by the Receiver with any order

directing production pursuant to a Demand of any Confidential Discovery Material will not constitute a violation of this Stipulation.

25.    No Receiver shall reveal any Confidential Discovery Material, or the information contained therein, to anyone not entitled to receive such Confidential Discovery Material under the terms of this Stipulation.  In the event that Confidential Discovery Material is disclosed to any person other than in the manner authorized by this Stipulation, or that any information comes to the Receiver's attention that may indicate there was or is likely to be a loss of confidentiality of any Confidential Discovery Material, the Receiver responsible for the disclosure or loss of confidentiality shall immediately inform the Producing Party of all pertinent facts relating to the disclosure or loss of confidentiality, including, if known, the name, address, and employer of each person to whom the disclosure was made.   The Receiver responsible for the disclosure or loss of confidentiality shall also make reasonable efforts to prevent disclosure of Confidential Discovery Material or by each unauthorized person who receives the information.

26.    The Parties agree that the production of any Discovery Material by any non-Party shall be subject to and governed by the terms of this Order.

*/s/ Jenness E. Parker*
Robert S. Saunders (ID No. 3027)
Jenness E. Parker (ID No. 4659)
Bonnie W. David (ID No. 5964)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

OF COUNSEL:

Eben P. Colby
Marley Ann Brumme
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
Tel.: (617) 573-4800
Fax: (617) 573-4822

*Attorneys for Seecubic, Inc.*

*/s/ Rafael X. Zahralddin-Aravena*
Rafael X. Zahralddin-Aravena (No. 4166)
Shelley A. Kinsella (No. 4023)
Jonathan M. Stemerman (No. 4510)
ELLIOTT GREENLEAF, P.C.
1105 N. Market Street, Suite 1700
Wilmington, DE  19801
Tel.:  (302) 384-9400
Fax:  (302) 384-9399

*Attorneys for Stream TV Networks, Inc.,*
*Mathu Rajan, and Raja Rajan*


DATED:  October 12, 2020


SO ORDERED this _____ day of _____, 2020.


                                Vice Chancellor Laster

20

| | |
|---|---|
| **This document constitutes a ruling of the court and should be treated as such.** | |
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | J Travis Laster |
| **File & Serve Transaction ID:** | 66010196 |
| **Current Date:** | Oct 14, 2020 |
| **Case Number:** | 2020-0766-JTL |
| **Case Name:** | STREAM TV NETWORKS, INC. v. SEECUBIC, INC. |
| **Court Authorizer:** | J Travis Laster |

/s/ **Judge J Travis Laster**

**CERTIFICATE OF SERVICE**

I, Raja Rajan, hereby certify that on September 25, 2024, a true and correct copy of the foregoing was served via email to counsel listed below:

Michael D. Homans
ID No. 76624
HOMANSPECK,
LLC
mhomans@homanspeck.com

Michael P. Kohler*
MILLER & MARTIN
PLLC
Michael.Kohler@millermartin.com

*Attorneys for Plaintiff Mark L. Bunce*

Timothy McCarthy

tim@burlingtonresources-asia.com

*Third-Party Defendant*

/s/ Raja Rajan                                          September 25, 2024
Raja Rajan,
Esquire Attorney
I.D. 58849
2009 Chestnut Street
Philadelphia, PA 19103
215-550-1002

raja@rajanlawgroup.com

*For Defendants Visual Technology Innovations, Inc. and Mathu Rajan*

- 1 -