**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK L. BUNCE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| vs. | : | No. 2:23-cv-01740 |
| | : | |
| VISUAL TECHNOLOGY INNOVATIONS, INC., | : | District Judge Scott |
| | : | |
| | : | Magistrate Judge Hey |
| and | : | |
| | : | |
| MATHU G. RAJAN, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE TO ATTORNEY RAJA RAJAN'S
OMNIBUS MOTION, ECF NO. 210**

Attorney Raja Rajan hasn't learned his lesson.

On February 27, 2025, the Court sanctioned Rajan for his use of made-up cases and other authorities that did not support his propositions.[1] ECF No. 153. Despite fining Rajan $2,500 and ordering him to complete a CLE on the use of artificial intelligence and legal ethics, Rajan has once again used a made-up case and cited to other authorities that don't support his propositions in opposing the reasonableness of Plaintiff Mark Bunce's travel expenses, seeking sanctions

---

[1] Rajan has been sanctioned three times in this case. ECF Nos. 154 (sanctioning Rajan $2,500 and ordering him to attend a legal ethics CLE), 156 (sanctioning Rajan $16,270.47 for discovery abuse), 205 (sanctioning Rajan $78,705.23 plus certain travel expenses for various litigation misconduct). The stain of these sanctions and the media scrutiny surrounding them have proved no deterrent. *See, e.g.*, https://www.lawnext.com/2025/03/my-dear-miss-glory-the-robots-are-not-people-says-judge-in-yet-another-hallucinations-case.html (last visited March 6, 2026); https://www.law.com/njlawjournal/2026/02/04/nj-lawyer-faces-nearly-79k-fed-court-sanction-over-canceled-deposition-nonsensical-counterclaims/?slreturn=20260306082712 (last visited March 6, 2026).

against Bunce's counsel for Rajan going to court to challenge the reasonableness of Bunce's travel expenses, and seeking leave to post a bond in lieu of paying what the Court already ordered him to pay ($78,705.23 plus travel expenses) over 30 days ago. ECF No. 154.

This is yet another tactic to delay, obstruct, and unreasonably and vexatiously multiply this proceeding.

**Background**

On February 2, 2026, the Court: (1) sanctioned Rajan in the amount of "$78,705.23 plus Mr. Bunce's reasonable travel expenses" related to Bunce's canceled deposition; and (2) ordered Bunce to provide Rajan with his "reasonable travel costs for his" cancelled deposition no later than February 16, 2026. ECF Nos. 205 & 206. As ordered, Bunce provided Rajan (and this Court) with his travel costs ($10,519.50) to attend his cancelled deposition from overseas. Rajan has not paid a single penny towards the sanction order.

On February 16, 2026, Bunce's counsel provided Rajan wiring instructions, demanding immediate payment in satisfaction of the sanctions award. The next day, Rajan wanted to "meet and confer" about the travel expenses, believing they were "neither reasonable nor appropriate," though he provided no explanation as to why. Given the history of this dispute (and the need for everything to be in writing so that there's no miscommunication), Bunce's counsel declined his invitation to meet, noting that: (1) there's no dispute concerning the $78,705.23 the Court already ordered him to pay; (2) the payment of $78,705.23 should be delivered no later than February 20 or appropriate relief from the Court would be sought; and (3) that if he didn't believe the travel expenses Bunce actually incurred to attend his overseas deposition, the matter can be addressed with the Court as he failed to articulate why he believes the expenses were not

reasonable. **Exhibit A**. Rajan didn't respond, and no payment was received by the February 20 deadline.

Instead, on the day of the deadline, Rajan rushed to Court, noting for the first time his purported concerns with Bunce's travel expenses, demanding sanctions against Bunce's counsel for not "meeting" to discuss his undisclosed concerns about the travel expenses, and requesting that he be able to post bond in lieu of having to pay Bunce what the Court already ordered him to pay.

The motion should be denied; Rajan should be sanctioned again for using a made-up case and other authorities that don't support his propositions; and Rajan should be ordered to pay Bunce $78,705.23 plus his travel expenses immediately or face contempt.

### The Argument & Law

1. **Rajan once again uses a made-up case and other authorities that do not support his position.**

Before turning to the merits of Rajan's motion, Bunce will first address the made-up case and other authorities he relies upon that do not support his propositions.

- Fed. R. Civ. P. 26(g). Rajan contends this rule requires certifications that discovery expenses are reasonable. Br. [ECF No. 210-1] 2. This rule has no application here as this matter doesn't involve a Rule 26 disclosure or discovery request. Even so, the purpose of this rule is to curtail discovery abuse relating to the service of discovery requests, responses, and objections that unnecessarily increase the costs of litigation. This matter involves the reasonableness of Bunce's travel expenses to attend his deposition from overseas.

- *Teamsters Local 639 v. Cassidy Trucking, Inc.*, 646 F.2d 865, 868 (4th Cir. 1981). Rajan contends this case means a party must act reasonably to minimize costs. Br. [ECF No.

210-1] 2. This case, however, is about whether an employee was entitled to the return of money paid into a health trust under ERISA; it has nothing to do with the minimization of costs.

▪ *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rajan cites this case for the proposition that a court awarding expenses as a sanction retains the full authority and obligation to ensure those expenses are reasonable. Br. [ECF No. 210-1] 2. This case is actually about constitutional law and civil rights; it doesn't involve sanction awards at all.

▪ *Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, No. 93-CV-1719, 1996 WL 732133, at *4 (N.D.N.Y. Dec. 12, 1996). Rajan relies on this case for the proposition that "spouse's travel is a personal expense, not recoverable as litigation costs." Br. [ECF No. 210-1] 3 – 4. This case appears to be made up as it could not be located using Westlaw or Pacer.

▪ *In re Diet Drugs Prods. Liab. Litig.,* 553 F. Supp. 2d 442, 475 (E.D. Pa. 2008). Rajan cites this case for the proposition that federal courts routinely exclude alcohol from recoverable costs. Br. [ECF No. 210-1] 5. The word alcohol does not even appear in the case. The pin cite relates to how the complexity and duration of litigation are relevant in the court's analysis in awarding attorneys' fees in class action cases.

▪ *Hebert v. Exxon Corp.*, 953 F.2d 936 (5th Cir. 1992). Rajan relies on this case for the position that federal appellate courts have consistently treated sanctions awards as money judgments subject to supersedeas bond practice. Br. [ECF No. 210-1] 8. This case is not about sanctions, but about whether a declaratory judgment is considered a money judgment under Rule 62.

On February 2, 2026, the Court ordered Rajan to pay Bunce $78,705.23 plus his travel expenses associated with his cancelled deposition. By February 17, 2026, Rajan had not paid a penny. Instead, Rajan sought more delay by wanting to "meet" with Bunce's counsel to discuss

the reasonableness of Bunce's travel expenses instead of articulating his concerns in writing. And when faced with a February 20, 2026 deadline for payment, Rajan rushed to Court, articulating for the first time his purported concerns about the reasonableness of Bunce's travel expenses, but providing no justification for his failure to pay what's undisputedly owed ($78,705.23). In his haste, Rajan once again failed to confirm that the legal authorities he relied upon either exist or support his propositions—many do not as demonstrated above.

As this is not the first time Rajan has relied on made-up cases or legal authorities that clearly do not support his position, the Court should sanction Rajan again. *See, e.g.*, ECF No. 154 (sanctioning Rajan $2,500 and ordering him to attend a legal ethics CLE).

**2.      Bunce's travel expenses are reasonable and necessary.**

Bunce resides in Guernsey, which is across the Atlantic. He and his wife (who was deposed in this case) had to travel to Philadelphia to attend Bunce's deposition, which was scheduled for July 1, 2024.

To do so:

- They first flew from Guernsey to London on June 25, 2024. The flight totaled £459.94 (or about $556.53), https://fiscaldata.treasury.gov/currency-exchange-rates-converter/). ECF No. 209-1 at 20 - 23. While in London, the Bunces stayed at the Hilton Garden Inn one night at £376.56 (or about $455.64). ECF No. 209-1 at 24.

- The next day they flew from London to Boston. ECF No. 209-1 at 3 - 10. They were not charged a base fare for this leg of the trip because they used their loyalty points with Virgin Atlantic. ECF No. 209-1 at 6 - 7. They only incurred taxes and other fees, which totaled $1,072.58. *Id.* Had they

not used their loyalty points, the Bunces would have incurred approximately $2,712.12 in additional charges. ECF No. 209-1 at 42 - 43.

- And finally, they flew from Boston to Philadelphia on American Airlines, flying economy. ECF No. 209-1 at 11 - 19. That flight totaled $554.60, plus a $35 luggage charge. ECF No. 209-1 at 14, 16. While in Philadelphia, the Bunces stayed at the Hilton, arriving on June 26 and departing on July 5. ECF No. 209-1 at 25 - 27. The Bunces' hotel stay totaled $2,509.31.  ECF No. 209-1 at 26.

- The Bunces incurred additional customary charges while travelling, including meals and transportation, totaling about $1,684.82. ECF No. 209-1 at 28 - 41.

The invoices and receipts related to the Bunces' travel to attend Bunce's deposition were filed with the Court on February 16, 2026. ECF No. 209-1.

Rajan has raised several objections to the reasonableness of the travel expenses. Bunce will address each in turn.

**Virgin Atlantic Flight**. Rajan objects to the Bunces flying "premium" from London to Boston on Virgin Atlantic. Premium on Virgin Atlantic, however, is an economy cabin offering, which offers, among other things, more legroom for someone flying across the Atlantic. https://flywith.virginatlantic.com/us/en.html (last visited March 6, 2026). The Bunces didn't fly first-class, which is called "Upper Class" at Virgin Atlantic.  *Id.* What's more, the Bunces used their loyalty points to travel this leg of the trip, so they were only charged for taxes and fees. The Bunces, however, should be reimbursed ($2,712.12) for having to use their loyalty points to

subsidize this leg of their trip. The Virgina Atlantic flight was reasonable, particularly for an overseas flight.

**Ms. Bunce**. Rajan objects to the travel expenses incurred by Ms. Bunce. Ms. Bunce is a witness in this case, was deposed by the defendants, is Bunce's spouse, and was providing Bunce and his counsel assistance and support in the preparation and defense of Bunce's deposition. Her attendance was necessary. Rajan relies on *Miele* to argue that federal courts "uniformly hold that spouse's travel" is not recoverable as litigation costs. The *Miele* case, however, appears to be made up. Regardless, it is not unreasonable to expect a spouse to travel with her husband overseas to provide necessary support in a matter pending before a foreign court. Her expenses should be reimbursed.

**The Hotel**. Rajan claims that the Hilton Hotel where the Bunces stayed is a "luxury hotel" in one of Philadelphia's most expensive neighborhoods, yet the Bunces were only charged $235.36 (plus taxes and fees) a night—a reasonable rate. Rajan also contends that their 9-day stay was not reasonable. But the Bunces needed to arrive well in advance of Bunce's July 1 deposition so that they could get acclimated and Bunce could get prepared to testify. The departure date was scheduled to accommodate a deposition that may run beyond just one day. The length of stay was reasonable.

**The Cancellation**. Rajan claims that any expenses incurred after he tried to unilaterally cancel Bunce's deposition on June 26, 2024, should not be included. Bunce, however, rejected Rajan's attempt to unilaterally cancel the deposition, notified Rajan that he still planned to attend his deposition, and confirmed that Rajan's failure to appear at the deposition would be done so at his own peril. While Bunce attended his scheduled deposition (from overseas no less), Rajan failed to do so. **Exhibit B**. Rajan should bear the expenses the Bunces incurred even after he

tried to unilaterally cancel Bunce's deposition, which didn't happen until the Bunces were already in Philadelphia.

**Miscellaneous Expenses**. Rajan objects to where the Bunces ate, what they ordered, and how they got to their destinations. Nothing about these expenses were unreasonable, and Rajan's contention that "federal courts routinely exclude alcohol from recoverable costs" is not at all supported by *In re Diet Drugs Prods. Liab. Litig.* as he argues.

When you require an in-person deposition, when a virtual deposition could have sufficed, there are costs. When that deposition happens overseas, in a foreign country, and in an unfamiliar city, there are often considerable costs. And when one unilaterally cancels the deposition after the deponent has already arrived from overseas to be deposed, there are consequences. Rajan's objections are not supported by the law. The Bunces' travel expenses were reasonable and necessary.

The purpose of Rajan's objections is not to take legitimate dispute with the travel expenses, but to continue to delay payment of what's undisputedly owed—$78,705.23. The Court should overrule Rajan's objections and order him to pay $78,705.23, plus Bunce's travel expenses (totaling $10,519.50) immediately by cashier's check or money order. *See* ECF No. 156 (ordering Rajan to pay sanction of $16,270.47 by cashier's check or money order on or by a date certain).

### 3.    Rajan's request for sanctions is frivolous.

Rajan claims Bunce's counsel somehow violated Rule 26(c)(1) and Local Rule 26.1(f) when he refused to "meet" with Rajan to discuss his purported concerns regarding the reasonableness of Bunce's travel expenses. These rules, however, have no application here. Rule 26(c)(1) involves the process of seeking protective orders, and Local Rule 26.1(f) requires the

parties to confer to resolve a discovery dispute. This matter doesn't involve a protective order or a discovery dispute. This latest dispute involves whether Bunces' travel expenses were reasonable and necessary, and Rajan chose not to articulate his concerns until filing this motion, which was interposed solely to delay his payment of the Court's sanction award.

To drum-up support for his latest sanctions request, Rajan commits more falsehoods. He tells the Court that Bunce's counsel "represented to the court that his client Mr. Bunce boarded a plan [sic] from overseas and was in Philadelphia when the deposition was cancelled. That is blatantly false as demonstrated below." Br. [ECF No. 210-1] 6. Rajan is wrong. First, Rajan admits that he tried to unilaterally cancel the deposition on June 26. *Id.* Second, Bunce's travel records, including his Hilton Hotel bill, confirm that the Bunces were in fact in Philadelphia when Rajan tried to unilaterally cancel the deposition. *See, e.g.,* ECF No. 209-1 at 25. Rajan's lack of candor to this tribunal knows no bounds.

Rajan's sanction request should be denied.

### 4. The Court should order Rajan to pay the sanction immediately, not post bond.

Rajan seeks permission to post a bond in lieu of paying the sanction. His request should be denied.

A supersedeas bond is not proper for the sanctions award in this case. Bunce is entitled to immediate payment of the discovery sanctions award, and Rule 62 does not serve to undo the compensatory function of that award. Furthermore, Rule 62 is not a tool to rewrite this Court's order, nor is it a mechanism to merely grant extra time to a party who simply prefers not to pay. These travel costs and attorneys' fees were already incurred, and every day of delay prejudices Bunce.

The Court's February 2, 2026 Order denied Rajan's request to immediately appeal the order granting attorney's fees. ECF No. 205. This Court cited *Cunningham v. Hamilton Cnty., Ohio* for the proposition that "an order imposing sanctions on an attorney under Rule 37 is not immediately appealable even when the attorney no longer represents a party in the case." ECF No. 205 at 9; 527 U.S. 198, 200 (1999).  Considering this court already denied Rajan's right to immediate appeal, Rule 62 does not apply, and Rajan cannot stay Bunce's recovery of the sanctions award by filing a supersedeas bond.

Fed. R. Civ. P. 62(b) provides that "At any time ***after judgment is entered***, a party may obtain a stay by providing a bond or other security." (emphasis added). In *Cunningham*, the United States Supreme Court held that a discovery sanction entered against an attorney under Rule 37(a)(4) was not a final decision appealable under 28 U.S.C. § 1291. 527 U.S. at 200. The Court held this even though the attorney no longer represented a party in the case. *Id.* While this case involves sanctions for filing frivolous written motions, the holding furthers the general rule that discovery orders are interlocutory in nature and not appealable.

Similarly, in *E. Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H.*, the United States Court of Appeals for the Third Circuit denied an appeal of a discovery sanctions award against a nonparty attorney. 658 F.2d 944, 951 (3d Cir. 1981). The court reasoned that "The objective of [Rule 37] is the prevention of delay and costs to other litigants. . . ." *Id.* at 950. The court further held that "No irreparable harm is suffered by the party if it must pay the expenses immediately and then await final adjudication of the claim. At least the harm is no less than what the opposing party would suffer if it could not receive its expenses until after final judgment." *Id.* at 948.

- 10 -

While the court, in dicta, indicated that a civil contempt award against an attorney may be immediately appealable, the court noted that "in such situations the purpose of the sanction is not simply to deter harassment and delay, but to effect some discovery conduct." *Id.* at 949. Here, however, the Court's contempt order against Rajan was entered due to his repeated abuses of the discovery process and bad faith in attempting to expand litigation unreasonably. *See* ECF No. 205 at 6. This sanctions award was not entered to merely effect some discovery conduct, but to compensate Bunce for costs incurred by Rajan's bad-faith lawyering, to punish Rajan for his vexatious conduct, and to deter Rajan from engaging in such conduct going forward. *See Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 914 F. Supp. 1172, 1179 (E.D. Pa. 1996) (Holding that "Sanctions allowed under Rule 37 are intended to: 1) compensate the court and other parties for the added expenses caused by discovery abuses; 2) compel discovery; 3) deter others from engaging in similar conduct, and 4) penalize the offending attorney.") (citation omitted).

Allowing a stay on the execution of this sanctions award would undermine the court's very purpose in ordering the sanctions. A supersedeas bond would harm rather than protect Bunce here, and postponing payment would reward Rajan for the very conduct the sanction was intended to deter. Thus, this Court should deny Rajan's request and once again hold that the sanctions award is not immediately appealable and further hold that the award is not subject to Rule 62.

If the Court were to allow the posting of a bond, the Court should ensure that any bond is issued by a reliable corporate surety and is sufficient in amount. Federal courts in other jurisdictions have held that "the court's role is not to rubber-stamp whatever bond the judgment debtor presents." *Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, 245 F.R.D. 65,

68 (D. Conn. 2007). Instead, there must be a showing that the bond is sufficient, and "[t]he trial judge is the sole party to make the decision in judging the solvency of sureties and the sufficiency of securities for the purpose of a supersedeas bond." *Id.* at 68–69 (citation omitted). Thus, should the Court approve Rajan's request for a supersedeas bond, it should exercise discretion to ensure that the bond comes from a reliable surety and that the bond is sufficient in amount. *See N. River Ins. Co. v. Greater New York Mut. Ins. Co.*, 895 F. Supp. 83, 84 (E.D. Pa. 1995) (Denying a supersedeas bond request because the proposed bond did not afford the appellee sufficient protections as the amount did not include post-judgment interest, fees, and costs associated with the appeal).

Specifically, the Court should require that the bond be sufficient to cover the full amount of the sanctions award, as well as post-judgment interest, fees, and costs in the event Bunce is successful on appeal. Additionally, this Court should require the bond to come from a corporate surety registered to do business in Pennsylvania and listed in Treasury Circular 570 maintained by the United States Department of Treasury. Such requirements would ensure that the deterrent and compensatory purposes of the award are not undermined and that Bunce is adequately secured in receiving future payment without facing collection issues.

**Conclusion**

For the reasons above, Bunce respectfully requests that:

1.      The Court sanction Rajan for once again submitting a made-up case and citing to other cases that plainly do not stand for the propositions advanced, including awarding Bunce his attorneys' fees and litigation costs for having to respond to his latest delay tactic;

2.      The Court award Bunce his travel expenses in the amount of $10,519.50;

- 12 -

3.      The Court order Rajan to *immediately* pay Bunce (by cashier's check or money order) **$78,705.23** (as detailed in the Court's February 2, 2026 order) and **$10,519.50** (for Bunce's travel expenses);

4.      The Court deny Rajan's request for sanctions;

5.      The Court deny Rajan's request to post a supersedeas bond, or, in the alternative, order Rajan to post a bond in the amount of **$275,000** (to cover the principal of the award plus interest, costs, and appellate fees) from a top-rated surety bond company with a Superior A+ rating or higher (*e.g.*, Travelers, Liberty Mutual, Zurich, CAN Surety, Chubb); and

6.      The Court award Bunce any additional relief it believes is just and proper.

This 6th day of March, 2026.

By:    */s/ Michael P. Kohler*
       Michael P. Kohler, *admitted pro hac vice*
       **MILLER & MARTIN PLLC**
       Regions Plaza Suite 2100
       1180 West Peachtree Street, NW
       Atlanta, Georgia 30309-3407
       (404) 962-6100
       Michael.Kohler@millermartin.com

       -and-

       Michael D. Homans
       ID No. 76624
       **HOMANSPECK, LLC**
       230 Sugartown Road
       Suite 218
       Wayne, PA 19087
       (215) 419-7463
       mhomans@homanspeck.com

       *Attorneys for Plaintiff Mark L. Bunce*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing document was filed using the Court's electronic filing system on March 6, 2026, and served upon all counsel of record via ECF notification. I further certify that the foregoing was served on the following via electronic mail:

Raja Rajan
raja@rajanlawgroup.com
raja@advisory-capital-solutions.com

This 6th day of March, 2026.

/s/ Michael P. Kohler
Michael P. Kohler, *admitted pro hac vice*