UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK L. BUNCE.                          :
              *Plaintiff,*              :
                                :
             v.                    :    CIVIL NO. 23-1740
                                :
VISUAL TECHNOLOGY INNOVATIONS,  :
INC., and MATHU RAJAN
           *Defendants.*           :
                                :

<u>MEMORANDUM</u>

**Scott, J.**                                                      **April 20, 2026**

Pursuant to Rule 11(c), Defendants' attorney Raja Rajan is required to pay a $5,000 penalty, complete additional Continuing Legal Education ("CLE") pertaining to artificial intelligence and legal ethics, and provide proof of CLEs he has already taken, as sanctions for his improper use of AI in this case in violation of Rule 11(b).

## I.    BACKGROUND

At the conclusion of the underlying litigation, Plaintiff Mark Bunce sought reasonable travel costs for a cancelled deposition. (ECF Nos. 206, 209.) In response, Mr. Rajan filed an omnibus motion seeking sanctions and objecting to the Plaintiff's travel costs. (ECF No. 210.) Plaintiff responded accordingly, highlighting that although Mr. Rajan was sanctioned previously "for his use of made-up cases and other authorities that did not support his propositions [. . .] Rajan has once again used a made-up case and cited to other authorities that don't support his propositions[.]" (ECF No. 212 at 1.) In his Reply, Mr. Rajan only briefly addressed this issue in a footnote. (ECF No. 213 at 1-2 n.1.) On March 11, 2026, this Court Ordered Mr. Rajan to pay Plaintiff all reasonable travel costs, denying his omnibus motion and ordering him to show cause

as to why his citations in his omnibus motion did not violate Rule 11(b) or this Court's Standing Order Re: Artificial Intelligence ("AI").[1]  Mr. Rajan filed a response to the Court's Order to Show Cause in which he again responded to the claims of improperly using AI.  (ECF No. 215).  On April 13, 2026, this Court held a hearing on the matter, ultimately deciding to sanction Mr. Rajan for his repeated improper use of AI.  This Memorandum accompanies the Order sanctioning Mr. Rajan.

## II.  LEGAL STANDARD

Rule 11(b)(2) states that any attorney or party who presents a filing to a federal court certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"  Fed. R. Civ. P 11(b)(2); *see also Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers,* 855 F.2d 1080, 1091 (3d Cir. 1988) ("To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court.").  Thus, attorneys and litigants are expected to "promote the fair administration of justice by grounding their arguments in binding, persuasive, or otherwise instructive authority" and abide by their duty of candor to the Court.  *OTG N.Y., Inc. v. Ottogi Am., Inc.*, No. 24-cv-07209, 2025 U.S. Dist. LEXIS 183358, at *4 (D.N.J. Sept. 18, 2025).  These "obligations [. . .] obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court. [. . .] [A]ttorneys and *pro se* litigants [must] conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents[.]"  Fed. R. Civ. P. 11 advis. comm. n. 1993 amend.

---

[1] The Court's Standing Order requires attorneys and *pro se* litigants who have used generative AI in a citation of any legal authority to (i) disclose that such AI has been used and (ii) certify that every citation has been verified as accurate.

The appropriate legal standard for courts to review conduct under Rule 11 is "reasonableness under the circumstances, [. . .] with reasonableness defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 289 (3d Cir. 1991) (internal quotations omitted). The Third Circuit has said that "Rule 11 requires only negligence, not bad faith" for a court to find that an attorney failed to meet their obligations under the rule. *Wharton v. Superintendent Graterford SCI Phila. Dist. Attorney's Off.*, 95 F.4th 140, 147 (3d Cir. 2024). "In other words, courts can sanction lawyers for what they should have known, not just what they knew." *Id.* at 148.

## III.    DISCUSSION

Contrary to his assertions, it was patently unreasonable for Mr. Rajan to file his omnibus motion with erroneous citations, at least one of which was made up. In his Response to the Court's Order to Show Cause, Mr. Rajan asserts that "[t]he question is whether a reasonable attorney, under the particular circumstances, would have acted similarly." (ECF No. 215 at 2). He answers his own question in the affirmative, stating that a reasonable attorney would have filed the motion with the erroneous citations because the opposing party refused to confer with him on the matter of travel fees. *Id.*

This is incorrect, both as a characterization of the governing law and what a reasonable attorney would do. As discussed above, the proper question is whether Mr. Rajan should have known that the citations in his filing were incorrect. He should have. As Rule 11 discusses, every attorney and *pro se* litigant must verify the veracity of their filings before submitting them to this Court. Full stop. It was not enough that Mr. Rajan felt like he had no other choice because opposing counsel refused to meet with him to discuss a matter that the Court already resolved.

3

Nor was it enough that Mr. Rajan believed that his time to object was set to expire soon so he had to rush to submit his filing. (Hearing Tr. 7:18-8:1.)  He simply could have requested an extension of time, which the Court would have readily granted.  Instead, he "haphazard[ly]" submitted a document generated by AI without verifying its accuracy and then, when challenged by opposing counsel, deflected by trying to blame opposing counsel, doubled down on his conduct, and argued that the Court's Standing Order did not clearly specify the need for "human verification only." (Hearing Tr. 6:3-6; ECF No. 215 at 3).  This approach was ill advised.

Mr. Rajan was unable to identify any valid reason for why he had not verified his erroneous citations.  He stated that the erroneous citations were mistakes due in part to the fact that he does not normally practice law.  (Hearing Tr. 14:25-25).  This explanation was unpersuasive.  Any first-semester, first-year law student would know that a fundamental rule of lawyering—during litigation or otherwise—is to ensure that any authority to which a lawyer cites does indeed support the proposition for which he cites it.  It therefore makes no sense that Mr. Rajan—a lawyer for nearly 40 years—failed to do so, even if he primarily focuses on "business stuff" and relies on local counsel to manage court filings.  (Hearing Tr. 15:3-12.)

What's more, in his Response and at the hearing on the Order to Show Cause, Mr. Rajan pleaded with the Court not to sanction him more harshly than "a modest deterrent penalty of $950" due to the more than $73,000 in sanctions he has paid to date, the travel expenses he has already been ordered to pay, and the "unreimbursed time spent preparing the Omnibus Motion." (ECF No. 215 at 5-6.)  Thus, he continues, those fees and the reputational harm he has already suffered necessitate a lower sanction for his second time violating Rule 11.  This Court disagrees.

First, this situation is of Mr. Rajan's own making.  This Court may be one forum in which he is held accountable for his improper conduct, but the Court is not responsible for the reputational

4

harm and myriad fees he brought on himself.  Second, and perhaps more importantly, the other fees were for conduct separate from the issues before the Court now.  Mr. Rajan cannot expect not to be sanctioned for *additional* improper conduct because he engaged in *other* improper conduct previously.  If anything, the series of improper conduct demonstrates Mr. Rajan's inability or unwillingness to rectify his behavior, a sign that additional deterrence is needed.  (Hearing Tr. 22:21-23) ("I'm not sure what I'm supposed to say to that, Your Honor. All I ask is that whatever the court thinks is reasonable and fair to stop me from this nonsense.")  For his previous Rule 11 violation, this Court imposed a penalty of $2,500.  The Court remains unconvinced that a significantly reduced penalty for a second Rule 11 violation *for the same conduct* would adequately remedy the repeated behavior.  Thus, the Court imposes a penalty of $5,000.

The Court remains appalled by Mr. Rajan's improper conduct.  Rule 11 makes clear that any attorney or *pro se* litigant submitting any paper to any federal court has an obligation to certify the veracity of the representations made therein.  Furthermore, Pennsylvania's Rules of Professional Conduct also impose a duty of candor to the tribunal that mirror those sentiments.[2] Those duties do not disappear solely because an attorney chooses to outsource his labor to AI. Indeed, it becomes even more important for lawyers to check their work when using technology known to be inaccurate at best or hallucinate and make up cases at worst.  Should Mr. Rajan engage in this improper conduct before this Court for a third time, this Court will not hesitate to sanction him once more and refer him to the Pennsylvania Disciplinary Board for further proceedings.

The Court does not seek to discourage lawyers from embracing new technology in their practices.  But like with any tool, lawyers must exercise pristine judgment when using AI while

---

[2] Rule 3.3(a)(1) provides, in relevant part, that a "lawyer shall not knowingly: make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

administering their duties before this or any court. The sanctions discussed herein should serve as an admonition to all lawyers that the law is fundamentally a human enterprise under which lawyers serve as vital stewards of society. Do not get so comfortable that you forget your duties to clients, courts, or society writ large, because if you do, it will be your name and license on the line, not ChatGPT's.

## IV.    CONCLUSION

For the reasons discussed above, the Court sanctions Mr. Rajan in the accompanying Order, requiring him to pay a $5,000 penalty to the Clerk of Court, complete additional CLE courses pertaining to artificial intelligence and legal ethics, and provide proof of relevant CLEs he has already taken.

BY THE COURT:

HON. KAI N. SCOTT
United States District Court Judge

6